1          IN THE UNITED STATES DISTRICT COURT

2        FOR THE SOUTHERN DISTRICT OF TEXAS

3              HOUSTON DIVISION

4  UNITED STATES OF AMERICA    §    CASE NO. 4:22-CR-00612-
                               §    (02) & (08)
5  VERSUS                      §    HOUSTON, TEXAS
                               §    TUESDAY,
6  PERRY "PJ" MATLOCK (02)     §    DECEMBER 13, 2022
   AND DANIEL KNIGHT (08)      §    2:42 P.M. TO 3:23 P.M.

7

8              **BOND HEARING / ARRAIGNMENT**

9        BEFORE THE HONORABLE CHRISTINA A. BRYAN
              UNITED STATES MAGISTRATE JUDGE

10

11

12     APPEARANCES:                 (SEE NEXT PAGE)

13     CASE MANAGER:                MELISSA MORGAN

14     COURT RECORDER:              BRANDIS ISOM

15

16

17

18

19

20            TRANSCRIPTION SERVICE BY:

21     JUDICIAL TRANSCRIBERS OF TEXAS, LLC
              935 Eldridge Road, #144
22            Sugar Land, TX 77478
                 281-277-5325
23         www.judicialtranscribers.com

24
   Proceedings recorded by electronic sound recording;
25     transcript produced by transcription service.

1                          <u>APPEARANCES</u>:

2

3   FOR THE GOVERNMENT:          US ATTORNEY'S OFFICE
                                 Scott P. Armstrong, Esq.
4                                DOJ-CRM
                                 Fraud Section
5                                1400 New York Avenue NW
                                 Washington, DC  20005
6                                202-353-0801

7   FOR DEFENDANT
    PERRY "PJJ" MATLOCK:         FLOOD & FLOOD
8                                Charles T. Flood, Esq.
                                 914 Preston
9                                Suite 800
                                 Houston, Texas  77002
10                               713-223-8877

11  FOR DEFENDANT
    DANIEL KNIGHT:               FED. PUBLIC DEFENDER'S OFFICE
12                               Victoria Gilcrease-Garcia
                                 440 Louisiana Street
13                               Suite 1350
                                 Houston, Texas  77002
14                               713-718-4600

15

16  ALSO ATTENDING:
                                 PRETRIAL SERVICES OFFICER
17                               Tiffani Dabney

18

19

20

21

22

23

24

25

1      **HOUSTON, TEXAS; TUESDAY, DECEMBER 13, 2022; 2:42 P.M.**

2              THE COURT:  All right.  United States of America

3      versus Perry "PJ" Matlock and Daniel Knight, Case No.

4      4:22-CR-612-2 and 612-8.

5              MR. ARMSTRONG:  Good afternoon, Your Honor.

6              Scott Armstrong for the United States.

7              THE COURT:  Thank you, Mr. Armstrong.

8              MR. FLOOD:  Good afternoon, Your Honor.

9              Charles Flood for Mr. Matlock.

10             THE COURT:  Good afternoon, Mr. Flood.

11             How are you?

12             MR. FLOOD:  I'm well.  Thanks.

13             THE COURT:  Who is Mr. Matlock?  Okay.  Good

14     afternoon, Mr. Matlock.

15             And you're Mr. Knight?

16             DEFENDANT KNIGHT:  Yes, ma'am.

17             THE COURT:  And is there any counsel present for

18     Mr. Knight?

19             DEFENDANT KNIGHT:  Until I'm getting some.

20     Afterwards I have.

21             THE COURT:  Okay.  Have you already spoken with

22     Mr. Knight, Ms. Gilcrease-Garcia?

23             MS. GILCREASE-GARCIA:  Yes, Your Honor.

24             THE COURT:  All right.  So let's just --

25     Mr. Matlock, you are -- you've already retained Mr. Flood to

1    represent you in this case?

2            DEFENDANT MATLOCK:  Yes.

3            THE COURT:  Okay.  And you're making your

4    appearance for all purposes, Mr. Flood.

5            MR. FLOOD:  For bond, if I can, Your Honor, if

6    you'll allow it.

7            THE COURT:  I mean, I'll allow limited appearances

8    in this district so I can't say what a district judge will

9    do, but if you make an appearance --

10           MR. FLOOD:  I understand, Your Honor.

11           THE COURT:  -- you've made an appearances.

12           MR. FLOOD:  I understand, Your Honor.

13           THE COURT:  All right.  I'm looking for

14   Mr. Knight's -- here we go.

15           Mr. Knight, do you swear that this information on

16   your financial affidavit is true and correct to the best of

17   your knowledge?

18           DEFENDANT KNIGHT:  Yes, ma'am.

19           THE COURT:  Do you understand that this is --

20   you're swearing to this under penalty of perjury?

21           DEFENDANT KNIGHT:  I do.

22           THE COURT:  All right.  You're currently employed?

23           DEFENDANT KNIGHT:  Yes.

24           THE COURT:  At this point, sir, you do not qualify

25   to receive court-appointed counsel so we'll address that

1   issue and we'll have to schedule you for counsel

2   determination hearing later.

3                 DEFENDANT KNIGHT:  Okay.

4                 THE COURT:  I just wanted to see what the

5   financial affidavit said.

6                 Have you already spoken with Mr. Knight regarding

7   what the initial appearance is about?

8                 MS. GILCREASE-GARCIA:  I have, Your Honor.

9                 THE COURT:  Okay.  All right.  I'm going to let

10  you just stand here -- stand in as federal public defender.

11  Just looking at this affidavit right now, I cannot appoint

12  court-appointed counsel for him.

13                MS. GILCREASE-GARCIA:  Understood, Your Honor.

14                THE COURT:  Okay.  Do you both have a copy of the

15  Indictment?

16                DEFENDANT KNIGHT:  Yes, ma'am.

17                DEFENDANT MATLOCK:  Yes.

18                THE COURT:  All right.  It is quite a lengthy

19  indictment.

20                I believe Mr. Knight is charged only in Count 1;

21  is that correct?

22                DEFENDANT KNIGHT:  Yes, ma'am.

23                THE COURT:  And Mr. Matlock is charged in

24  Counts -- the way I read it it's in Count 1 and Count 2

25  through 6 so I think this information sheet that says he's

6

1  charged in Counts 1 through 11 may be incorrect.

2          MR. ARMSTRONG:  That's correct, Your Honor.  He's

3  charged in Count 1 and the substantive counts of 1348,

4  Counts 2 through 6.

5          THE COURT:  2 through 6.  All right.  I am not

6  going to cover the 20 -- 34 pages of facts that are -- that

7  precede the counts in the Indictment, but to summarize the

8  facts alleged, a scheme and conspiracy to commit securities

9  fraud involving multiple securities, multiple individuals

10 who -- I don't have a redacted copy.  I know this tells me

11 it's sealed but I don't know whose identity is still sealed.

12         MR. ARMSTRONG:  Yes, Your Honor.  At this point,

13 we would move to unseal the Indictment.

14         THE COURT:  The entire Indictment.

15         MR. ARMSTRONG:  Yes, Your Honor.

16         THE COURT:  All right.  Mr. Matlock and

17 Mr. Knight, you all are charged along with

18 Edward Constantinescu, John Rybarczyk, Gary Deel,

19 Stefan Hrvatin, Tim [sic] Cooperman, Mitchell Hennessey and

20 Perry "PJ" Matlock and Daniel Knight.  As I mentioned, there

21 are 34 pages of facts describing a conspiracy to commit

22 securities fraud.

23         Count 1 is the charge of conspiracy to commit

24 securities fraud, in violation of 18, United States Code,

25 Section 1349 and charged in Count 1 are Mr. Constantinescu,

1  Mr. Matlock, Mr. Rybarczyk, Mr. Deel, Mr. Hrvatin,

2  Mr. Cooperman, Mr. Hennessey and Mr. Knight.

3          Count 1 alleges that there was a -- from January

4  2020 through June of 2022, in the Southern District of Texas

5  and elsewhere, all of those individual Defendants conspired

6  and agreed with each other and others to commit the offense

7  of securities fraud, which means knowingly and with the

8  intent to defraud, executing or attempting to execute a

9  scheme and artifice to defraud any person in connection with

10 any security of an issue or registered under Section 12 of

11 the Securities and Exchange Act of 1934.

12          The specific securities that are alleged to be at

13 issue include China SXT Pharmaceuticals; Torchlight Energy

14 Resources; GTT Communications; Surface Oncology; Alzamend

15 Neuro, Incorporated; Universe Pharmaceuticals; ABVC

16 BioPharma; Camber Energy, Inc.; and DatChat, Inc.  This is a

17 violation of 18, US Code, Section 1348.

18          Then, Mr. Knight, that's the only charge in the

19 Indictment against you.

20          Mr. Matlock, there are -- Counts 2 through 6 are

21 charged against you along with Mr. Constantinescu,

22 Mr. Rybarczyk, Mr. Deel, Mr. Hrvatin, Mr. Cooperman and

23 Mr. Hennessey.  And the charges in 2 through 11 specifically

24 involve the stocks China SXT Pharmaceuticals; Torchlight

25 Energy; GTT Communications; Surface Oncology; Alzamend

1   Neuro, Inc. and that is it.  And the actual dates of the

2   fraud are alleged.

3          Count 2 involves September 2020, the China SXT

4   Pharmaceuticals stocks.

5          Count 3 is Torchlight in February 2021.

6          Count 4 is GTT Communications in March of 2021.

7          Count 5 is Surface Oncology in May of 2021.

8          And Count 6 is Alzamend in June of 2021.

9          If you are convicted on Count 1, the maximum

10  statutory penalty you face is:

11         Up to 25 years in prison;

12         A fine of up to $250,000;

13         A five-year term of supervised release;

14         And a $100 mandatory special assessment.

15         Mr. Matlock, for Counts 2 through 6, you face:

16         Up to 25 years in prison per count;

17         Same $250,000 fine;

18         A five-year term of supervised release;

19         And there's always the $100 special assessment per

20  count of conviction.

21         Without telling me anything about whether these

22  allegations are true, do you both understand what you're

23  charged with and what the maximum statutory penalty is if

24  you are found guilty?

25             DEFENDANT MATLOCK:  Yes.

1           DEFENDANT KNIGHT:  Yes, Your Honor.

2           THE COURT:  All right.  You both have the right to

3   remain silent with respect to these allegations.  You never

4   have to speak to anyone including law enforcement or SEC

5   representatives regarding any of these allegations.  You

6   should only speak to your attorney regarding them because

7   anything you say to someone else could be used against you

8   in the case.

9           Do you understand your right to remain silent?

10          Mr. Knight?

11          DEFENDANT KNIGHT:  Yes, Your Honor.

12          THE COURT:  And, Mr. Matlock?

13          DEFENDANT MATLOCK:  Yes, Your Honor.

14          THE COURT:  You also have the right to be

15  represented by counsel at all stages of the proceeding

16  regardless of whether or not you can afford to retain

17  counsel.

18          Mr. Matlock, you have retained counsel to

19  represent you and Mr. Flood has appeared here.

20          Mr. Knight, you have asked for court-appointed

21  counsel at this point.  You do not -- based on the

22  information I have, you do not qualify for court-appointed

23  counsel.  I will set you for a counsel determination

24  hearing.  Probably we'll set -- well, we'll talk about the

25  date later, but you'll need to retain counsel and appear so

1   that I can be sure that you have counsel.

2          DEFENDANT KNIGHT:  Yes, I was going to do that

3   whenever I left.

4          THE COURT:  Okay.  All right.  So you both

5   understand your right to be represented by counsel at all

6   stages.

7          For Mr. Matlock, I need to give the United States

8   the *Brady* order.  Under Rule 5(f), counsel for the United

9   States is ordered to comply with the disclosure obligations

10  of *Brady versus Maryland* and its progeny.  The failure to do

11  so may result in the dismissal of charges, excluding of

12  evidence, adverse jury instructions, contempt proceedings

13  and sanctions.

14         All right.  We'll do the *Brady* order for

15  Mr. Knight once his counsel appears.

16         Do we have -- do you have any motions with respect

17  to the issue of detention?

18         MR. ARMSTRONG:  We're not seeking detention,

19  Your Honor.

20         THE COURT:  All right.  Have you all discussed --

21  I don't yet -- I haven't yet seen the bond reports for

22  Mr. Knight or Mr. Matlock.  Hold on.  Let me look at them.

23      (Pause in the proceedings.)

24         THE COURT:  Mr. Flood, let me start with you.

25         Have you had any conversations with the United

1  States about bond conditions?

2         MR. FLOOD:  I have, Your Honor.  One agreement

3  we've made with the Government is that there are some

4  vehicles which are held which we've agreed not to transfer

5  or sell prior -- without government approval.

6         I'm assuming as part of it, they are seeking a

7  secured bond, Your Honor.  We are seeking an unsecured bond.

8  I think that's about the biggest difference between us and

9  the Government in terms of bond.

10        THE COURT:  Let me hear from the Government about

11 the secured bond.

12        MR. ARMSTRONG:  Yes, Your Honor.  As to

13 Mr. Matlock, the Indictment charges a pretty substantial

14 securities pump-and-dump scheme in which the Defendants

15 profited over $100 million.  Mr. Matlock was one of the

16 ringleaders of the scheme and as you can see in the

17 Probation Report, he has substantial assets including almost

18 a million dollars just in cars alone.  And so a $100,000

19 unsecured bond would not be sufficient to assure his

20 appearance at trial.  We respectfully request a $500,000

21 secured bond.

22        THE COURT:  And Mrs. Stroud (phonetic) is your

23 wife; is that correct?

24        DEFENDANT MATLOCK:  Yes, Your Honor.

25        THE COURT:  So hang on, let me look at this here.

1          MR. FLOOD:   And, Your Honor, just for the Court's

2   edification.

3          THE COURT:  Yes.

4          MR. FLOOD:  I'm in possession of two of the four

5   firearms in the Report and the other two are on their way to

6   my office and I have his passport with me here today.

7          THE COURT:  Okay.  Thank you, Mr. Flood.

8          I am going to -- based on the net worth that I see

9   here, I am going to require a secured bond.  I think that

10  the amount that the Government is asking for will not

11  interfere with his ability to retain counsel and pay for

12  counsel.

13         There may be an issue about -- I understand you're

14  saying that there are two -- how many cars did you say you

15  were --

16         MR. FLOOD:  There's two vehicles, Your Honor, that

17  we've agreed not to transfer them at this point so that's

18  the only reason I brought that up.

19         And I just wanted to clarify one point with the

20  Government, Your Honor.  In the event of a large secured

21  bond, that his accounts aren't frozen.  There's been some

22  discussion that his accounts were frozen; are they?

23          MR. ARMSTRONG:  Your Honor, at this time, we have

24  not moved to seize any of his accounts, but we can't make

25  any promises about that going forward.  That's handled by

1   the asset forfeiture at the US Attorney's Office and --

2           THE COURT:  Well, here's the deal.  You're asking

3   for a $500,000 secured bond and he's got to retain an

4   attorney so if you freeze his assets, he can't use those

5   assets to retain an attorney.

6           So why don't we do this?  How long has he lived

7   in Texas?

8           DEFENDANT MATLOCK:  My whole life.

9           MR. FLOOD:  His whole life, Your Honor.

10          THE COURT:  Here's what I'm going to do: I'm not

11  going to require the secured bond, but I'm going to require

12  as a condition of his release that he not transfer or sell

13  any assets, cars, homes --

14          MR. FLOOD:  That's reasonable, Your Honor.

15          THE COURT:  -- whatever else he may have access

16  to.  And then I think when -- depending on what you're going

17  to do with respect to the assets and whether or not they're

18  going to be frozen, we can readdress the need for a bond,

19  but he still has substantial assets even apart from the

20  $500,000 of security that you're asking for in terms of a

21  bond, but that's probably the money that he's going to

22  have -- if you freeze all of his other assets, that's

23  probably the money he's going to have to use just to retain

24  his attorney so that's the problem.

25          I can require the bond -- the secured bond now,

1   but I'm telling you if we come back in and he tells me that

2   his assets have been frozen and he can't pay his attorney,

3   I'm going to release the security so that he can pay his

4   attorney.

5              MR. ARMSTRONG:  I understand, Your Honor.

6              MR. FLOOD:  Thank you, Your Honor.

7              THE COURT:  Okay.

8              DEFENDANT MATLOCK:  Thank you, Your Honor.

9              MR. ARMSTRONG:  Your Honor, I think it would be

10  helpful too to actually list on the Record the vehicles that

11  Defense Counsel is talking about.  I think that there's a

12  McLaren, a Lamborghini and also a Lexus.

13             THE COURT:  And I'm going to ask -- as part of

14  the conditions of release, I'm going to say that he cannot

15  transfer or sell any assets without at least notifying

16  counsel for the United States that there's an intent to do

17  so so that --

18             MR. ARMSTRONG:  Thank you, Your Honor.

19             THE COURT:  -- you all can be aware of it.

20             Here's how I think we're going to handle this:

21  I'm going to say $500,000 secured bond.  If his assets get

22  frozen, file a motion to modify the conditions including

23  release of the security if that is needed to pay for

24  counsel.

25             MR. FLOOD:  I get it.

1          THE COURT:  All right.  Okay.  Here's where we

2    are on conditions.  Let me make sure that I've covered

3    everything else.

4          I think we covered everything else other than the

5    bond conditions, correct?

6          MR. ARMSTRONG:  Your Honor, I believe that we

7    have come to an agreement -- of course I'm happy to stand

8    corrected -- as to GPS, ankle monitoring and the like.

9          MR. FLOOD:  That's correct, Your Honor.

10          THE COURT:  Okay.

11          MR. FLOOD:  We agreed to an ankle monitor.

12          THE COURT:  Okay.  And is that -- what type?  US

13    Probation is going to ask me what kind of monitoring?

14    Standalone, the kind that he's on the GPS monitor and it's

15    monitoring him all the time, he doesn't have a curfew or are

16    you asking for --

17          MR. FLOOD:  We not asking for a curfew,

18    Your Honor.  I think that just the standalone monitor will

19    be fine.  Thank you.

20          THE COURT:  Okay.  Standalone monitoring.  Okay.

21          All right.  Any other nonstandard conditions that

22    you're asking for with respect to Mr. Matlock?

23          MR. FLOOD:  No, Your Honor.

24          MR. ARMSTRONG:  Yes, Your Honor.  So two in

25    particular.  So Mr. Matlock, as alleged in the Indictment,

1   executed the scheme in social media so we would request that

2   he's not be allowed to post on social media to include

3   Twitter, Discord about securities.  That's number one.

4               Number two, that he not be allowed to trade in

5   securities during the pendency of the case.

6               DEFENDANT MATLOCK:  Let me -- so trading is --

7   that's how I make money is I trade stocks for a living.  I

8   day trade so I'm in and out of stocks every day.  So if you

9   take that away, I won't be able to do what I do for a

10  living.

11              MR. FLOOD:  And I believe, Your Honor, the

12  allegation is that he uses social media to somehow influence

13  so I think if we cut one head off that, the other one is

14  fine.  I don't know that --

15              DEFENDANT MATLOCK:  Right.

16              MR. FLOOD:  -- day trading without interference

17  of social media would be in violation of --

18              DEFENDANT MATLOCK:  I'm happy to cut social media

19  out.  I don't post a lot anyway so.

20              THE COURT:  Counsel?

21              MR. ARMSTRONG:  Your Honor, it's the equivalent

22  of a healthcare provider not being allowed to bill Medicare

23  after being indicted for healthcare fraud.  It's a pretty

24  standard condition in this district.

25              THE COURT:  Well, it's slightly different and

1   I've had those kinds of charges and we have allowed medical

2   doctors to continue seeing patients, just not billing

3   Medicare or not billing the insurance company that's alleged

4   to have been defrauded.

5          The scheme here, as I read the 34 pages, was the

6   pump and dump so the allegation is that they are making

7   false representations about the securities to increase their

8   profits from this.  So I'm not going to prevent someone from

9   working.

10          However, obviously if any new crimes are

11   committed, those are subject to being charged, but I am

12   going to prevent you from posting on social media or

13   communicating in --

14          DEFENDANT MATLOCK:  Completely.

15          THE COURT:  -- any other form about value or your

16   activity -- the value of anything you're trading in or your

17   activity -- your trading activity.

18          DEFENDANT MATLOCK:  Okay.

19          THE COURT:  It should remain private with you

20   only.  Don't talk to anyone else about it.

21          DEFENDANT MATLOCK:  So does that include normal

22   posts if I was to make a post?

23          MR. FLOOD:  No, no social media.

24          THE COURT:  No social media.

25          MR. FLOOD:  No social media.

1          DEFENDANT MATLOCK:  Okay.

2          THE COURT:  No Twitter, no -- I don't know what

3  all these --

4          DEFENDANT MATLOCK:  Discord.

5          THE COURT:  Discord.

6          DEFENDANT MATLOCK:  A hundred percent.

7          THE COURT:  No Facebook, Instagram.

8          MR. FLOOD:  Yeah, no public communication via the

9  Internet.

10          DEFENDANT MATLOCK:  Okay.  Just to clarify.

11          THE COURT:  No social media.

12          DEFENDANT MATLOCK:  Yes, ma'am.

13          THE COURT:  You can work as a day trader, but you

14  cannot communicate with anyone about your trades.

15          DEFENDANT MATLOCK:  Yes, Your Honor.

16          THE COURT:  Understood?

17          DEFENDANT MATLOCK:  Yes, Your Honor.

18          THE COURT:  All right.

19          DEFENDANT MATLOCK:  Thank you.

20          THE COURT:  Okay.  Here are the -- is there

21  anything else that we haven't covered yet?

22          MR. ARMSTRONG:  The Court's indulgence?

23  Your Honor, just the standard condition about no

24  communication with the other defendants (indiscernible).

25          THE COURT:  I will.

1            MR. FLOOD:  And the amendment I always have to

2    make is: with counsel present, can we communicate with

3    others?

4            THE COURT:  Correct.

5            MR. FLOOD:  Okay.

6            THE COURT:  If I miss any of these as I'm going

7    through them, be sure and remind me.  All right.

8            You may not violate -- we haven't talked about

9    Mr. Knight.

10           MR. ARMSTRONG:  Right.

11           THE COURT:  Do you want to just do that

12   separately?

13           MR. ARMSTRONG:  That'd be great.

14           THE COURT:  All right.  I'm going to give you the

15   conditions of your release, Mr. Matlock.  I will explain the

16   penalties for violating once both of you have your

17   conditions.  All right.

18           Mr. Matlock, I'm going to require you to post a

19   $500,000 secured bond.  That means you will have to post the

20   $500,000.  I'll give you -- can you do it by close of

21   business tomorrow?

22           MR. FLOOD:  Yes, Your Honor, no problem.

23           THE COURT:  Okay.  By close of business tomorrow.

24           As I mentioned, if the United States freezes your

25   assets, your counsel can make a motion.  If that $500,000 --

1   if you demonstrate that that $500,000 in security is

2   required to retain your counsel or to pay for the services

3   of your counsel, make a motion and I will address that.

4              You cannot violate any federal, state or local

5   law while on conditions of release.  That includes any laws

6   such as securities laws or anything else.  If you're going

7   to continue to trade, you cannot violate the law.

8              You must advise your Pretrial supervising officer

9   in writing and in advance if you make any change in your

10  address or telephone number.

11             You must appear in court as required.

12             If you are convicted, you must surrender to serve

13  the sentence that is imposed.  The failure to do so is going

14  to be a violation of your conditions.

15             You must continue your employment.  Your Pretrial

16  officer is going to want to make sure that they can verify

17  that employment so you need to be aware of that fact.

18             You'll be supervised by Pretrial Services here.

19             Your attorney is going to turn in and surrender

20  your passport.  You may not obtain any new passport.

21             You have to avoid all contact with any person who

22  is a victim, witness or co-defendant in the case.

23             Do you understand that?  Unless your counsel and

24  their counsel are present.

25             DEFENDANT MATLOCK:  Yes, Your Honor.

1          THE COURT:  You may not possess any firearm,

2    destructive device or other dangerous weapon.  I understand

3    two of the weapons that were in your home have already been

4    turned over to your counsel.  The other two have to be

5    removed from your home before you can return there.

6          You're going to be required to live at the

7    74 North Lamerie Way in The Woodlands, Texas.

8          Do you have someone who's going to -- you told me

9    you already have someone who's moving those weapons.

10          DEFENDANT MATLOCK:  Yes.

11          THE COURT:  All right.  Your travel is going to

12   be restricted to the Southern District of Texas.  Anything

13   beyond that has to be preapproved.

14          You're going to have a standalone GPS monitor.

15          You may not transfer any of your assets or sell

16   anything or in any way materially move assets that the

17   Government is going to be seeking in the case without at

18   least talk to your attorney.  If there's going to be some

19   sort of transfer, it has to be communicated to the United

20   States and the United States has to be given an opportunity

21   to object.

22          DEFENDANT MATLOCK:  I'm able to pay normal bills

23   and everything?

24          THE COURT:  Normal bills, yes.  You can't sell

25   homes, you can't sell cars.  And I understand there are at

1   least three cars, a Lamborghini, a McLaren and was it a

2   Lexus?

3              MR. ARMSTRONG:  Yes, Your Honor.

4              THE COURT:  And a Lexus.  If you own other homes

5   or properties, you can't sell or transfer any of them.

6              To the extent Pretrial Services thinks it's

7   necessary, you must be evaluated for mental health

8   treatment.  If they decide you need to participate in a

9   mental health treatment program, you must do so.  The same

10  goes for a drug abuse program.  If they decide that's

11  necessary, you would have to participate.

12             Refrain from the excessive use of alcohol.  Don't

13  possess narcotic drugs or controlled substances unless they

14  are prescribed to you by a licensed medical practitioner.

15  Don't use substances that contain CBD oil.  Submit to any

16  alcohol or drug testing as required by Pretrial.

17             Any contact with law enforcement has to be

18  reported to your supervising officer.

19             And then you will incur the costs for any GPS

20  monitoring or other services that you receive.

21             Have I forgotten anything?

22             MR. ARMSTRONG:  I believe Your Honor already

23  mentioned the no communicating about trading positions with

24  others just to be inclusive.

25             THE COURT:  Yes.  No social media use and no

1  communication about your trades or trading positions with

2  anyone.

3          DEFENDANT MATLOCK:  Okay.

4          THE COURT:  Okay.  I think that covers it.

5          MR. ARMSTRONG:  Thank you, Judge.

6          MR. FLOOD:  Thank you, Your Honor.

7          DEFENDANT MATLOCK:  Thank you, Your Honor.

8          THE COURT:  So Mr. Matlock can execute his bond

9  paperwork here and then we can --

10          MR. FLOOD:  We'll turn over the passport and -- I

11  mean, the passport and we'll have the deposit made by

12  tomorrow at the close of business.

13          THE COURT:  By tomorrow?  Okay.  If you give me a

14  minute before leaving the courtroom, we'll do the

15  arraignment.

16          Is he ready for arraignment today?

17          MR. FLOOD:  He's ready for arraignment,

18  Your Honor.

19          THE COURT:  Okay.  Let me cover Mr. Knight.

20          Do you have anything you want to say with respect

21  to the bond conditions for Mr. Knight?

22          MR. ARMSTRONG:  Your Honor, we would similarly

23  request a secured bond of $250,000 for Mr. Knight given his

24  involvement in a very lucrative fraud scheme that went over

25  about two years and given his assets, we believe that that

1   amount of money would be a reasonable amount to secure his

2   appearance at trial.

3            THE COURT:  Okay.  According to the Pretrial

4   Services Report, his net worth is materially different from

5   Mr. Matlock's.

6            Are you aware of -- I've only got two assets

7   listed here.  Are you aware of other assets that he has

8   other than the two things that are listed in the Pretrial

9   Services Report?

10           MR. ARMSTRONG:  Your Honor, not listed on this

11  Report is obviously his trading account.

12           DEFENDANT KNIGHT:  I don't have any trading

13  accounts anymore.  They closed my trading matrix.

14           THE COURT:  Remember the right to remain silent

15  so probably don't -- especially since you're not represented

16  by counsel.  If you -- Ms. Gilcrease-Garcia is here to

17  advise you about the initial appearance, but don't make any

18  other statements.

19           Hold on let me read this.  You live with -- you

20  live at 777 Preston, sir?

21           DEFENDANT KNIGHT:  Yes, ma'am.

22           THE COURT:  Do you own a home?

23           DEFENDANT KNIGHT:  No, I do not.

24           THE COURT:  And you own these two cars?

25           DEFENDANT KNIGHT:  No, ma'am, just one car.

1              THE COURT:  Okay.

2              DEFENDANT KNIGHT:  And I'm still paying it off.

3              THE COURT:  Do you have other significant assets

4    other than these two cars?

5              DEFENDANT KNIGHT:  Nothing of value.

6              MS. GILCREASE-GARCIA:  Your Honor, I know that

7    my office is not formally representing Mr. Knight, but I

8    would -- if I may draw the Court's attention to the fact

9    that his estimated net worth, according to the Pretrial

10   Report, is $40,000, which means that requiring a secured

11   bond of $250,000 would virtually assure he remained

12   detained.  And also the Probation Office seems to be

13   recommending $40,000 unsecured bond.

14             THE COURT:  Uh-huh.  Whose house -- Ms. Knight,

15   is that your mother?

16             DEFENDANT KNIGHT:  Yes, ma'am.

17             THE COURT:  Okay.  This is just her.  Okay.

18             All right.  I'm not going to require a secured

19   bond for Mr. Knight, but I am going to require that you post

20   a $200,000 unsecured bond.  That means you don't have to

21   deposit the $200,000, but that is going to be the amount of

22   your bond and if you violate conditions, that's the amount

23   of the bond that can be forfeited and you'd be subject to a

24   money judgment in that amount, understood?

25             DEFENDANT KNIGHT:  Understood.

1    THE COURT:  All right.  Sir, you are going to

2  have -- have you talked -- well, are you asking for any

3  other conditions besides the secured bond?

4    MR. ARMSTRONG:  Your Honor, we'd similarly ask

5  for GPS monitoring, standard monitoring that applies to

6  Mr. Matlock and also the other defendants who have been

7  arraigned elsewhere.

8    THE COURT:  All right.  These are the conditions

9  of release I'm going to release you under, Mr. Knight.

10    The $200,000 unsecured bond.

11    You'll be supervised by Pretrial Services.

12    Is your job day trading also?

13    DEFENDANT KNIGHT:  No, ma'am.

14    THE COURT:  Okay.  What do you do for work?

15    DEFENDANT KNIGHT:  It's the podcast.

16    THE COURT:  About trading?

17    DEFENDANT KNIGHT:  Personal finance, yeah.  Yes,

18  ma'am.

19    THE COURT:  Do you talk on the podcast about --

20    DEFENDANT KNIGHT:  We stopped talking about

21  specific stocks a while ago to avoid this.

22    THE COURT:  All right.  You cannot -- right now

23  I'm going to tell you you cannot talk about any specific

24  stocks in your podcast.  Once you have your counsel

25  retained, if we need to address any of these conditions,

1   your counsel can file a motion to modify the conditions of

2   release, but right now I'm going to say no talking about any

3   specific stock or your position in any specific stock on

4   your podcast.

5              DEFENDANT KNIGHT:  And I'm not supposed to talk

6   with any co-defendant.

7              What if my co-defendant is my co-host?  Sorry.

8              THE COURT:  Well, anything you say to someone

9   other than your attorney about any of the facts alleged in

10  the Indictment can be used against you.  It's not

11  privileged.  When you talk to your attorney, it's

12  privileged.  Anything you say to someone else is not

13  privileged.  It can be repeated in court and used against

14  you in the case; do you understand that?

15             DEFENDANT KNIGHT:  Yes, ma'am.

16             THE COURT:  If you are working with your co-host

17  on this podcast and not speaking about specific stocks, I

18  don't have any objection to that, but to the extent you see

19  this person and communicate with this person, if you mention

20  anything about anything that is alleged in the Indictment,

21  that is not going to be privileged and it can be used

22  against you.

23             DEFENDANT KNIGHT:  Understood.

24             THE COURT:  And when I tell you what the

25  penalties for violating the conditions of release are, I'm

1   going to tell you that you can receive up to 10 years in

2   prison for interfering with or tampering with a witness,

3   informant or victim.  If you have conversations with someone

4   who's a co-defendant in the case, that could apply.  You

5   could receive an additional 10 years in prison which

6   wouldn't begin to run until you serve any underlying

7   sentence if you're convicted of these charges, understood?

8            DEFENDANT KNIGHT:  Understood.  So just to make

9   sure there's no mentioning of specific stocks on the

10  podcast.

11           THE COURT:  On the podcast, no mention of any

12  specific stocks.

13           DEFENDANT KNIGHT:  Yeah.  I'll only talk to

14  (indiscernible) and it'll be recorded and it won't

15  (indiscernible).

16           THE COURT:  All right.  Okay.

17           MR. ARMSTRONG:  Your Honor, if I may?  I would

18  just add no talking about a co-defendant about this case

19  period.

20           THE COURT:  No, that's what I just said.

21           DEFENDANT KNIGHT:  Okay.

22           THE COURT:  If I didn't say that, that's what I

23  mean.

24           DEFENDANT KNIGHT:  I understood that part.

25           THE COURT:  No talking at any co-defendant or

1   anyone who's involved in the case as a victim or a witness

2   about the case.

3           DEFENDANT KNIGHT:  About the case, correct,

4   understood.

5           MR. ARMSTRONG:  Thank you, Judge.

6           THE COURT:  Uh-huh.  All right.  Do you have a

7   passport?

8           DEFENDANT KNIGHT:  No, ma'am.  I believe it

9   expired when I was like 12 to 14.  My mom probably has it.

10          THE COURT:  Okay.  If you find your passport, you

11  need to surrender it.  You may not get any other passport.

12          DEFENDANT KNIGHT:  Okay.

13          THE COURT:  You're going to be on a GPS monitor.

14          Your travel is going to be restricted while

15  you're on that monitor to the Southern District of Texas.

16          Do you have any need or reason to travel outside

17  the Southern District of Texas?

18          DEFENDANT KNIGHT:  Just to South Alabama for

19  Christmas to see my family.

20          THE COURT:  All right.  You can travel to see

21  your family for Christmas.  You just need to make sure your

22  supervising officer has the -- all of your travel

23  information.

24          DEFENDANT KNIGHT:  Okay.

25          THE COURT:  Okay.  We've talked about no contact

1  with any co-defendant, witness, victim or potential victim

2  with the exception that a co-defendant will work with you on

3  the podcast.  There can be no discussion about the case or

4  anything relating to the case with that co-defendant.

5            Cannot possess any firearm, destructive device or

6  other dangerous weapon.

7            Do you have any weapons in your home?

8            DEFENDANT KNIGHT:  No, ma'am.

9            THE COURT:  Okay.  You must refrain from the use

10 of -- hold on.  You must refrain from the excessive use of

11 alcohol.  Don't possess any narcotic drugs or controlled

12 substances unless they're prescribed to you by a licensed

13 medical doctor.

14           If US Probation believes you need to submit to

15 alcohol or drug testing, you will.  The same goes for out-

16 patient therapy, mental health counseling, substance abuse,

17 anything like that.  If recommended by US Probation, you

18 will have to comply with the recommendation.

19           DEFENDANT KNIGHT:  Yes, ma'am.

20           THE COURT:  Report all contact with law

21 enforcement.

22           You'll have to pay the costs of your GPS monitor

23 and any treatment that you receive.

24           You cannot violate any federal, state or local

25 law while on conditions release.

1        And you must advise your supervising officer in

2   advance in writing if you change your address or phone

3   number.  Okay.

4        Have I covered all of the conditions of release?

5        MR. ARMSTRONG:  Your Honor, the last condition

6   that we would request is a similar prohibition on the

7   transfer of assets without prior notification to the United

8   States.

9        THE COURT:  Don't transfer, sell any cars --

10       DEFENDANT KNIGHT:  Yes, ma'am.

11       THE COURT:  -- or any other assets without

12  informing your counsel who will notify the United States and

13  they have to be given an opportunity to object.

14       DEFENDANT KNIGHT:  Yes, ma'am.

15       THE COURT:  All right.  Okay.  There are severe

16  penalties for violating conditions of release.  If you

17  violate any of the conditions of release, a warrant could be

18  issued for your arrest.  You can be detained until trial.

19  The pretrial release can be revoked.  You can be prosecuted

20  for contempt of court, imprisoned, fined or both.

21       And as I mentioned, the bond -- the unsecured

22  bond can be forfeited and the secured bond can be forfeited.

23       Understood?

24       DEFENDANT MATLOCK:  Yes, ma'am.

25       DEFENDANT KNIGHT:  Yes, Your Honor.

1          THE COURT:  It is a crime punishable by 10 years

2  in prison and a fine of up to $250,000 or both to obstruct a

3  criminal investigation or to attempt to influence or tamper

4  with a witness, informant or victim or co-defendant.

5          Don't have any contact with any co-defendant,

6  witness or victim except as we discussed, Mr. Knight, with

7  your podcast.

8          If you commit a crime while on conditions of

9  release, that would include any crime including securities

10  fraud, you can be punished more severely than you would be

11  if you committed the same crime while not on conditions of

12  release.

13          If you commit a federal felony while on

14  conditions of release, you could receive an additional

15  10 years in prison.  That would only begin to run after the

16  underlying sentence is served.  And you could receive an

17  additional $250,000 fine.

18          If you fail to appear in court when required or

19  if you're convicted and you fail to surrender to serve your

20  sentence, you could receive an additional 10 years in prison

21  and an additional fine of up to $250,000.  Again that

22  additional prison time would not begin to run until after

23  your underlying sentence is served.  As I mentioned, your

24  bond could be forfeited.

25          If you are found not guilty or if you are

1   convicted and you surrender to serve your sentence, the bond

2   will be released.

3           Any questions?

4           DEFENDANT MATLOCK:  No, Your Honor.

5           THE COURT:  Okay.  You're going to have to fill

6   out the bond paperwork here today.

7           Mr. Knight, we need to set you for counsel

8   determination.

9           How about Friday morning at 10:00 a.m.?

10          DEFENDANT KNIGHT:  Okay.  And just show up here?

11          THE COURT:  Come here with your lawyer that you

12  have hired --

13          DEFENDANT KNIGHT:  Right.

14          THE COURT:  -- or come here with information for

15  why you can't afford a lawyer that's different from what is

16  in this financial affidavit --

17          DEFENDANT KNIGHT:  All right.

18          THE COURT:  -- that I will then have you swear to

19  under penalty of perjury.

20          DEFENDANT KNIGHT:  I shall (indiscernible).

21          THE COURT:  All right.  Anything else that I've

22  forgotten?

23          MR. FLOOD:  We can do an arraignment if you'd

24  like, Your Honor.

25          MS. GILCREASE-GARCIA:  Your Honor, could I

1  briefly note for Mr. Knight?  Again I know we're not

2  appointed --

3             THE COURT:  Yes.

4             MS. GILCREASE-GARCIA:  -- but I have notice

5  issues come up with travel restrictions unless the language

6  "except as approved -- to be approved by the Probation

7  Office" is included so I --

8             THE COURT:  Okay.  Yes.  So his travel

9  restrictions are Southern District of Texas unless as

10 approved by Pretrial Services and I am giving him permission

11 to go to Alabama, I believe so --

12            DEFENDANT KNIGHT:  Yes, ma'am.

13            THE COURT:  -- for the Christmas holidays.

14            PRETRIAL SERVICES OFFICER DABNEY:  Thank you,

15 Your Honor.

16            Your Honor, are you ordering that they have the

17 monitor installed before they leave today?

18            THE COURT:  You can do it today, right?

19            PRETRIAL SERVICES OFFICER DABNEY:  Yes, we can do

20 that.

21            THE COURT:  Yes.  That monitor's installed before

22 you leave today.

23            We can only do the arraignment for Mr. Matlock.

24 Mr. Knight doesn't have his counsel yet.  Yes?

25            MR. ARMSTRONG:  Your Honor, if I may?  I don't

1  believe that Your Honor mentioned that Mr. Knight be

2  similarly prohibited from posting on social media about

3  specific stocks as well.

4           THE COURT:  Okay.  You didn't ask me about that

5  because I --

6           MR. ARMSTRONG:  I apologize.

7           DEFENDANT KNIGHT:  Understood.

8           THE COURT:  All right.

9           MR. ARMSTRONG:  Thank you, Judge.

10          THE COURT:  Add to the conditions for

11 Mr. Knight that he may not post on social media regarding --

12 well, can you just stay off social media altogether?  That

13 would be easier.

14          DEFENDANT KNIGHT:  I guess.

15          THE COURT:  Posting, no posting.

16          DEFENDANT KNIGHT:  Okay.  No posting.  Yeah, I

17 don't --

18          THE COURT:  You can lurk in the shadows and look

19 at what other people post like my husband does.

20          DEFENDANT KNIGHT:  I'll take that.

21          THE COURT:  All right.

22          DEFENDANT KNIGHT:  Thank you for meeting me in

23 the middle.

24          THE COURT:  Sorry?

25          DEFENDANT KNIGHT:  I said thank you for meeting

1  me in the middle.

2          THE COURT:  No problem.  Okay.  I can let you go,

3  Mr. Knight, because you cannot be arraigned until you have

4  an attorney that you have retained.

5          I'm going to do the arraignment for Mr. Matlock.

6          And, Mr. Knight, you will return to this

7  courthouse --

8          DEFENDANT KNIGHT:  Friday at 10:00 a.m.

9          THE COURT:  -- Friday at 10:00 a.m. --

10          DEFENDANT KNIGHT:  Yes, ma'am.

11          THE COURT:  -- with your counsel.  Okay.

12          All right.  Mr. Matlock, I have -- have you fully

13  reviewed the entire Indictment with your attorney?

14          DEFENDANT MATLOCK:  Yes, yes, Your Honor.

15          THE COURT:  And you understand there are 34 pages

16  of facts in this Indictment.

17          DEFENDANT MATLOCK:  Yes, Your Honor.

18          THE COURT:  And you're familiar with them.

19          DEFENDANT MATLOCK:  Yes.

20          THE COURT:  All right.  And you understand you're

21  charged in Count 1 with conspiracy to commit securities

22  fraud, in violation of 18, United States Code, Section 1349

23  and you're charged in Counts 2 through 6 with securities

24  fraud, in violation of 18, United States Code, Section 1348

25  and Section 2.

1    DEFENDANT MATLOCK:  Yes, Your Honor.

2    THE COURT:  All right.  And I have told you that

3 the maximum penalty you face if convicted on each of those

4 counts is per count:

5    Up to 25 years in prison;

6    A $250,000 fine;

7    Five years of supervised release;

8    And a $100 special assessment.

9    DEFENDANT MATLOCK:  Yes, Your Honor.

10    THE COURT:  Are you ready at this point to enter

11 your formal plea to the charges in the Indictment?

12    DEFENDANT MATLOCK:  Yes, Your Honor.

13    THE COURT:  How do you plead to the charges in

14 Counts 1 and 2 through 6 of the Indictment?

15    DEFENDANT MATLOCK:  Not guilty.

16    THE COURT:  All right.  I'm going to enter a not

17 guilty plea on your behalf.

18    Your case is assigned to Judge Hanen.  You are

19 set for trial on February 13th of 2023 at 9:00 a.m.  Your

20 motions are due by January 3rd.  Responses are due by

21 January 17.  Pretrial conference is February 6th at 8:30.

22    Estimated number of trial days.

23    MR. ARMSTRONG:  Your Honor, given that there are

24 currently eight defendants, I would estimate approximately

25 three weeks.

1        THE COURT:  Three weeks.  You said other

2   defendants have been arrested in other jurisdictions.

3        MR. ARMSTRONG:  Yes, Your Honor.

4        THE COURT:  Okay.  All right.  Anything else for

5   Mr. Matlock?

6        MR. FLOOD:  Nothing from us, Your Honor.

7        THE COURT:  Anything else, Mr. Matlock?

8        DEFENDANT MATLOCK:  No, Your Honor.  Thank you

9   very much.

10        THE COURT:  All right.  Thank you.  You're

11   excused.

12        (The parties thank the Court.)

13        (Hearing adjourned at 3:23 p.m.)

14                    *  *  *  *  *

15        *I certify that the foregoing is a correct*

16   *transcript to the best of my ability due to the condition of*

17   *the electronic sound recording of the proceedings in the*

18   *above-entitled matter.*

19   */S/ MARY D. HENRY*

20   *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

21   *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

22   *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

23   *JTT TRANSCRIPT #66664*

24   *DATE FILED:  JANUARY 2, 2023*

25