UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

### United States' Response in Opposition to Defendant Rybarczyk's Motion to Modify Conditions of Release

The United States, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant Rybarczyk's Motion to Modify Conditions of Release (ECF No. 160). The Court should deny the motion because the current conditions—including GPS location monitoring—are the least restrictive that will reasonably assure the Defendant's appearance. A change in the current conditions is unwarranted.

**I.     Background**

A Grand Jury in this District returned an Indictment on December 7, 2022, charging the Defendant and seven alleged coconspirators with conspiracy to commit securities fraud, substantive counts of securities fraud, and a money laundering count. (ECF No. 1.) That Indictment charged Defendant Rybarczyk in the conspiracy count and with four substantive counts of securities fraud. (*Id.* ¶¶ 116, 120.)

Defendant Rybarczyk was arrested in Nashville, Tennessee on December 13, 2022. (*See* ECF No. 71.) He made his initial appearance in the United States District Court for the Middle District of Tennessee that day. (*Id.*) The Magistrate Judge imposed conditions of release, including limiting his travel to the Middle District of Tennessee and the Southern District of Texas, and requiring that he surrender his passport and not obtain another passport or other international travel

document. (*See id.* at 55.) The materials from the record also show that court issued an order indicating that "[o]n the basis of Defendant's affidavit in this cause, the Court determines that Defendant: . . . is financially unable to employ counsel and . . . is financially unable to pay the fee of any witness . . . ." (*Id.* at 51.)

Defendant made his initial appearance in this District on December 15, 2022. The Magistrate Judge issued new release conditions that maintained restrictions on the Defendant's travel, and added new conditions, including GPS location monitoring and a $1,000,000 bond secured by a $100,000 cash deposit. (Minute Entry, Dec. 15, 2022; ECF Nos. 29, 30.)

The following day, December 16, 2022, this Court issued an order, stating:

> It has come to the attention of the Court that various Defendants and future Defendants in this case may have initial appearances in other District Courts where conditions of release on bond may vary between District Courts. For any future Defendant appearing in this case with bond conditions set in another District, the Court hereby authorizes the duty Magistrate Judge to set the conditions of release on bond necessary to ensure that said Defendant does not pose a threat to himself or others and will ensure proper dispensation of justice in this case. Further, any modifications of the conditions of release should [be] in parity with others similarly situated.

(ECF No. 40.)

A Grand Jury in this District returned a Superseding Indictment on February 8, 2023, which realleges all charges in the original Indictment and adds nine substantive counts of securities fraud. (*See* ECF No. 134.) Two of those new counts charge Defendant Rybarczyk, thus, charging him with a total of six substantive securities fraud counts in addition to the conspiracy charge. (*See id.* ¶ 121.) Defendant was arraigned on these charges on February 14, 2023. (Minute Entry, Feb. 14, 2023.)

## II. Legal Standard

When considering pretrial release, if a court determines further conditions are warranted, courts must fashion "the least restrictive further condition, or combination of conditions, that . . . will reasonably assure the appearance of the person as required . . . ." 18 U.S.C. § 3142(c)(1)(B). The factors a court should consider in making this determination include, among others:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including— . . . financial resources . . . ; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III. A change in the Defendant's bond conditions is unwarranted because the current combination of conditions is the least restrictive that will reasonably assure the Defendant's appearance.

### A. The record shows the Magistrate Judge conducted an individualized assessment and tailored bond conditions specific to Defendant Rybarczyk.

The principal contention in Defendant Rybarczyk's motion is that the Magistrate Judge did not make an individualized assessment of conditions as to him personally before imposing GPS location monitoring. (*See* ECF No. 160.) But the record does not support this claim. Rather, the record indicates that the Magistrate Judge reflected on the facts before fashioning new conditions distinct from those previously in place and bespoke to Defendant Rybarczyk.

First, as the Defendant's motion noted, GPS location monitoring was not a condition imposed at his first initial appearance in Tennessee. (ECF No. 71 at 54; ECF No. 160 at 2.) It was not until Defendant Rybarczyk's initial appearance in this Court on December 15, 2022, that the Magistrate Judge imposed this condition. (ECF No. 30 at 3.) The reasonable inference is that the Court considered Defendant Rybarczyk's existing release conditions inadequate when declaring

them "null and void," and imposed what it viewed as the least restrictive combination of conditions reasonably to assure his future appearance. (*See* Minute Entry, Dec. 15, 2022.) Notably, the Defendant's appearance in this Court occurred prior to the Court's order concerning "parity of similarly situated defendants" that the Defendant challenges. (*See* ECF No. 40.)

The Defendant points to the fact that GPS monitoring was not ordered by the Magistrate Judge in Tennessee, and seems to suggest with italics that the Court should conclude from that fact that this Magistrate Judge's decision to impose the condition was unreasonable. (*See* ECF No. 160 at 2.) But the fact that GPS monitoring was not imposed in Tennessee has little bearing on this Court's decision to do so, particularly when it appears that the record the court considered was different from the one before this Court. (*See* ECF Nos. 29, 71 at 51.) Indeed, that court's order finding the Defendant financially unable to afford counsel is in error when considering the Defendant's multiple properties and substantial millions. (*See* ECF No. 71 at 51.) The fact of that order alone casts more doubt on the individual assessment performed, and conditions imposed, by *that* court than that court's actions cast doubt on the conditions imposed by this one. The Defendant's wealth, which that court presumably did not adequately consider, is a principal reason necessitating GPS monitoring because it provides him significant means to flee.

Second, the order setting the Defendant's conditions of release in this Court contains a hand-written, personalized condition stating, "No CBD oil," under the section pertaining to use of controlled substances. (*See* ECF No. 30 at 2.) This condition reflects that the Magistrate Judge conducted an individualized assessment sufficient to include bespoke, hand-written conditions of release for Defendant Rybarczyk. (*See id.*) Indeed, such a condition does not appear on an order setting conditions of release for another defendant in this case signed by the same Magistrate Judge the very next day. (*See* ECF No. 64 at 2, 4.)

4

In addition to criticizing the Magistrate Judge, the Defendant also claims the United States fails to consider individually each particular defendant in taking its positions on appropriate pretrial release conditions in this case. (*See* ECF No. 160 at 4–5.) Defendant Rybarczyk takes issue with the United States relying on the Court's reasonable order stating that "conditions of release should [be] in parity with others similarly situated." (*See id.* at 4; *see also* ECF No. 40.) But the "parity" sought here is not uniformity for parity's sake. The Defendant's reading of the order improperly minimizes the important language limiting that "parity" to those "similarly situated."

The defendants in this case are "similarly situated" in at least two respects critical to this analysis: (1) they all made substantial sums of money in their charged conspiracy, providing the means to flee; and (2) they all face significant consequences for perpetrating that charged conspiracy, giving them motive to do so. Thus, the parity is with Defendant Rybarczyk's similarly situated codefendants, all of whom have significant means and incentive to flee.

That is also, in part, why "each defendant in this case presents a flight concern if allowed to travel internationally." (*See* ECF No. 132 at 3; ECF No. 160 at 4.) Despite the Defendant's assertion, there is no "nonsensical assumption that every criminal defendant, regardless of . . . **wealth . . . or other factors**, is a flight risk simply for traveling outside the United States." (ECF No. 160 at 4 (emphasis added).) Indeed, the defense's claim—that seeking GPS location monitoring for these particular well-heeled defendants facing serious consequences implies such a reflexive assumption—itself belies the defense's lack of genuine individual assessments for each defendant in this case. Those assessments demonstrate that location monitoring is warranted. That reasonable conclusion is reflected in the Magistrate Judge's recent order imposing GPS location monitoring for Defendant Hennessey, who claimed similar strong community ties in an effort to avoid that condition. (*See, e.g.*, ECF Nos. 107, 109; Minute Entry, Feb. 16, 2023.)

Further, the United States has never "conced[ed] that all Defendants, including Rybarczyk, are not flight risks if travel is restricted to the United States." (ECF No. 160 at 4.) Rather, the United States has consistently sought conditions restricting travel narrowly to this District and, at times, other districts merited by particularized consideration of each defendant and his circumstances. The United States has never agreed, would not agree, and in fact has refused, to extend those conditions to travel within the entire continental United States without prior permission. Rather, each time a defendant in this case has made a travel request beyond the operative travel restrictions, the United States has made individual assessments of the particular defendant, the current bond conditions, and the details of the request prior to the United States taking a position. The United States expects to do the same with each future request and would certainly oppose unwarranted travel within the United States that is inconsistent with the law or facts of this case.

### B. The relevant 18 U.S.C. § 3142(g) factors demonstrate GPS-monitoring is warranted.

The relevant Section 3142(g) factors support the Magistrate Judge's conclusion that GPS monitoring is warranted in the set of the least restrictive combination of conditions necessary to secure Defendant Rybarczyk's appearance. Of the Section 3142(g) factors to consider, the Defendant's characteristics are most relevant in his particularized analysis—specifically, the substantial wealth he accumulated from the alleged fraudulent scheme. Notwithstanding the Defendant's ties to the United States, he has millions of dollars providing the means to flee. The significant consequences of conviction provide him the incentive to do so. The Court may reasonably conclude that GPS location monitoring is warranted on that basis alone. Under such circumstances, there is nothing "excessive" about GPS location monitoring. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747, 752, 755 (1987) (affirming the constitutionality of the Bail

Reform Act on multiple grounds and reversing appellate court in upholding district court's order of pretrial detention).

The other Section 3142(g) factors also counsel for the Defendant's current conditions of release. Regarding the nature and circumstances of the offense, it is true that the Defendant does not stand accused of violent crime. But he does stand accused of an extensive, pervasive campaign of fraud and deceit that amassed tens of millions of dollars from thousands of victims. Even the prospect that such allegations bearing on the Defendant's veracity are true raises valid concern about the credibility of the Defendant's representations such that, at the very least, the prudence of GPS monitoring is warranted.

Regarding the novelty of this prosecution, although it is unique in some respects (*e.g.*, the importance of social media as a means of execution), the basic structure of a securities fraud pump and dump is, troublingly, a scheme that springs eternal. *See, e.g.*, *United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) (ECF Nos. 1, 11, 28) (securities fraud guilty plea for social media-based pump and dump); *United States v. Enger*, 427 F.3d 840, 854 (10th Cir. 2005) (affirming securities fraud conviction where "[t]he record show[ed] that at the same time as Wenger had been advising readers to buy PanWorld stock, Wenger himself was selling his shares"); *SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998 (the "practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors"); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1265–66 (9th Cir. 1979) (finding that financial columnist's failure to reveal to readers his practice of "scalping" the stocks of companies he wrote about was a material nondisclosure creating liability). Indeed, the defense's inchoate rambling on potential victim-blaming defenses (*see* ECF No. 160 at 7)—and the law's clear, repeated prohibition on casting such aspersions as defenses to fraud—demonstrate just how

common are some aspects of this case. *See, e.g., United States v. Serfling*, 504 F.3d 672, 679 (7th Cir. 2007) ("[T]he perpetrator of a fraud may not defend himself by blaming the victim . . . ."); *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (collecting cases on victim blaming as a non-viable defense to fraud); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980).

The weight of the evidence is substantial; it continues to grow as more comes to light. The social media and trading records demonstrate the Defendant and his coconspirators conducting their pump and dump scheme repeatedly, across years, through innumerable false and misleading statements and omissions. The fraudulent nature of these statements is laid bare by comparing them with the trading records, as well as private communications among coconspirators that further demonstrate the defendants orchestrating the scheme and confirm their fraudulent intent. The Defendant's motion singles out less than $2,000 in profit for three charged coconspirators from the activity that is summed in paragraph 45 of the Superseding Indictment. (ECF No. 160 at 6–7.) Given that the scheme netted the defendants at least $114 million dollars, those two facts together indicate just how pervasive was the alleged fraudulent scheme, and, necessarily, the substantial evidence demonstrating that prevalent conduct.

## Conclusion

For the foregoing reasons, the Court should deny the Defendant's motion and maintain the current conditions of release, including GPS location monitoring.

Dated: February 27, 2023               Respectfully submitted,

                                      GLENN S. LEON
                                      Chief, Fraud Section
                                      Criminal Division, Department of Justice

By: */s/ John J. Liolos*
Scott Armstrong, Assistant Chief
John J. Liolos, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Tel.: (202) 768-2246


ALAMDAR HAMDANI
United States Attorney
Southern District of Texas

By: */s/ Thomas Carter*
Thomas H. Carter
Assistant United States Attorney
State Bar No.: TX24048387
1000 Louisiana Street, 25th Floor
Houston, Texas 77002
Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
