# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** § | | |
| § | | |
| **VS.** § | **NO. 4:22-cr-00612-3** | |
| § | | |
| **JOHN RYBARCZYK** § | | |

_____

### RYBARCZYK'S OPPOSED MOTION FOR A BILL OF PARTICULARS AND GRAND JURY TRANSCRIPTS
_____

**TO THE HON. ANDREW HANEN, UNITED STATES DISTRICT JUDGE:**

John Rybarczyk ("Rybarczyk"), Defendant, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii), 7(f), 12(b)(3)(B)(iii) and (v), moves for a Bill of Particulars and for the production of grand jury transcripts because the Superseding Indictment ("Indictment") in this novel securities fraud prosecution fails to comply with basic requirements of both the Constitution and Federal Rules of Criminal Procedure. Despite two attempts, the Indictment omits information sufficient to enable Rybarczyk to adequately prepare for trial, avoid prejudicial surprise, receive effective assistance of counsel, present a defense, and prevent double jeopardy. Rybarczyk requests the stocks and all communications, and other documents that are the basis for Counts 1, 3, 7, 12, 13, 16, and 17, be more sufficiently identified.

1

### I.  Introduction - The Indictment Alleges $114 Million in Fraudulent Profits over More than Two Years, $100 Million of which arise from Unidentified Stocks and Unspecified Representations

As relevant here, the Indictment charges a single conspiracy to commit securities fraud that occurred over a roughly two-and-a-half-year period (January 2020 to June 2022). All eight charged defendants are alleged to be co-conspirators, and they are alleged to have conspired amongst themselves as well as with "other individuals, known and unknown" to the grand jury.

In addition to the conspiracy count, as relevant to this Motion, the Indictment charges 19 separate counts of securities fraud related to trading in a particular stock by a particular set of defendants, and at a particular time—usually a one or two month window (*see, e.g.*, Count 13 charges Rybarczyk with securities fraud as relating to ABVC in August 2021). The charged counts encompass only approximately 18 stocks with an aggregate profit of approximately $14 million. Dkt. 1 at pp. 9-34, ¶¶21-115.

The Indictment provides further details regarding the alleged conspiracy and charged schemes in the "General Allegations" section, which describes the fraud as follows:

> 1. From in or around January 2020 to in or around April 2022, the Defendants…engaged in a scheme to "pump and dump" securities based on false and misleading information and material omissions about those securities that the defendants published on social media platforms, including Twitter, Inc., and Discord, Inc. To carry out the scheme, the defendants (1) purchased shares of a security in their

trading accounts; (2) posted messages on social media platforms with false, positive information about the security–including as to, among other things, the defendants' position in the security, how long the defendants intended to hold the security, the defendants' view that the security would increase in price, and the price the security could reach–to induce other investors to buy the security and artificially drive up its price, and (3) secretly sold their own shares of the security at a higher price to secure a profit for themselves, at or around the time they posted messages to induce other investors to purchase the same security and concealed their intent to sell. **From in or around January 2020 to in or around April 2022, the defendants profited at least approximately $114 million from their scheme.**

Dkt. 134, pp. 1-2. (emphasis added).[1]

In short, the Indictment only attempts to describe the purported "pump and dump" of approximately 18 stocks for an aggregate profit of approximately $14 million, but the Indictment *alleges* a total conspiracy of $114 million, a jaw-dropping $100 million difference.[2] Accordingly, there are two overarching problems with this Indictment that make a bill of particulars necessary:

*First*, although the actual stocks alleged in the Indictment are few and total no more than $14 million in proceeds, the recitation in the General Allegations section makes clear that in fact, the Government is contending that there was actually an additional $100 million in proceeds from the fraudulent scheme. The Indictment

---

[1] This paragraph is incorporated by specific reference into each of the other counts. *See, e.g.* Dkt. 134. at pg. 34 ¶116.

[2] The prosecution touted the $114 million figure in the headline and body of their December 14, 2022, press release. Available at https://www.justice.gov/opa/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social-media (last viewed February 15, 2023).

makes this accusation without identifying *any* of the additional stock tickers traded by the Defendants that generated those proceeds, how those tickers were the subject of an unlawful pump and dump, which Defendants or co-conspirators were involved in trading those tickers, and what false or fraudulent statements were uses to carry out the scheme. In short, the Indictment effectively argues, with no support, that *all* of Defendants' social media statements about stocks and trades in those stocks were fraudulent.

This broad allegation, sweeping in its scope and breadth, and encompassing hundreds of thousands if not millions of communications and Tweets, ensures that the Government has come nowhere near fulfilling its legal obligation to provide Rybarczyk with notice of his alleged crimes. Rybarczyk is entitled to notice of the basis of the other $100 million alleged profit. Despite ostensibly providing sufficient information to twice persuade grand juries months apart to indict using the $114 million figure, the Government has not yet shared the supporting facts with those accused of fraudulently profiting in this amount.[3] Until the Government does, Rybarczyk must speculate, based on the voluminous discovery provided thus far, about which of the many stocks traded and voluminous communications made over

---

[3] As noted in the Certificate of Conference, the Government has now communicated it "will be providing by the end of the month a list of tickers and time ranges relevant to the profit allegation in paragraph one of the Superseding Indictment." This falls well short of the information required.

a period of years that are at issue in the Indictment. It is ironic that in a case in which the Government accuses Defendants of committing fraud by failing to disclose material information about stock trades, it fails to disclose the alleged stocks or communications that are the very subject of the same fraud by non-disclosure.

Make no mistake, the Government is not done with the $114 million figure. Prosecutors will undoubtedly broadcast this $114 million figure to the petit jury in summary charts at trial,[4] as well as use it to calculate loss under the Sentencing Guidelines[5] and then seek restitution at any sentencing.[6] They have said as much.[7] These deficiencies metastasize throughout the Indictment, where nothing more than a ticker and purported date range is provided for eight other stocks. Absent additional notice, Rybarczyk cannot prepare a defense, his counsel cannot render effective assistance, and, upon acquittal, the Government may return with additional charges arising from previously unspecified tweets and stocks that were traded during the alleged conspiracy's two-and-half-year existence.

*Second*, the Conspiracy and Securities Fraud counts (1-20) allege *both*

---

[4] *See* Fed. R. Evid. 1006.

[5] *See* U.S.S.G. § 2B1.1(b)(1)(M).

[6] *See* 18 U.S.C. §§ 3583(d), 3663(a)(1), 3663A(c).

[7] *See* § II.B., below. If that is not the prosecution's intent, it should state it *now* in writing and on the record.

manners and means of 18 U.S.C. §1348. Dkt. 134 at pp. 34-35, 38-39. Sec. 1348 (1) prohibits a general "scheme or artifice– (1) to defraud…" while (2) prohibits "a scheme or artifice– (2) **to obtain, by means of false or fraudulent pretenses, representations or promises**…." 18 U.S.C. § 1348 (emphasis added). In other words, "the false pretenses, representations or promises" are *an element* the prosecution is required to prove beyond a reasonable doubt. Therefore, Defendant has a due process right to notice of the stocks and "fraudulent pretenses, representations, or promises" he is alleged to have either made, conspired to make, or aided and abetted.[8]

Count 1 is the conspiracy count and lists eighteen stocks, while counts 3, 7, 12, 13, 16, and 17 charge Rybarczyk with aiding and abetting securities fraud of six different stocks. Like the bare conspiracy count (1), these charges include a security name or stock ticker and relevant time-period. While all substantive counts (save for 16 and 17), are accompanied elsewhere in the Indictment by some facts,[9] even those factual allegations fail to provide Rybarczyk with adequate notice because they either do not or inconsistently identify the alleged misrepresentations or omissions, including medium, website, or audience, where any duty to disclose arose from, who

---

[8] Counts 2 – 20 are alleged to have been "[a]ll in violation of 18 U.S.C. §§ 1348 and 2." Dkt. 134 at pg. 39.

[9] The Securities Fraud counts (2-20) relate to eighteen different stocks, eight of which there are *no* facts about at all anywhere in the Indictment. Dkt. 134. at pp. 37-39, ¶121.

the duty was owed to, the nature of any falsity, and how stock prices reacted to the Tweets.[10] Rybarczyk's constitutional rights, and the rules, require more information.

Accordingly, Rybarczyk requests the identification of all stocks and communications the Government contends are tainted by any alleged conspiracy or fraud. Through identification Rybarczyk can identify potentially relevant evidence from the voluminous data produced (more than 400 gigabytes) and obtain copies of relevant documents to prepare his defense. Thus, this Court should Order the Government to disclose *all* stocks and communications that form the basis for this $114 million figure and for each and every stock or security the subject of prosecution:

(a) name or ticker of each security or stock;

(b) dates of trading of the security or stock;

(c) alleged fraudulent statement or omission;

(d) identity of the person who made it;

(e) who it was made to;

(f) where it was made;

---

[10] As an example, for ABVD (¶¶82-91), the Indictment provides nine paragraphs of allegations, but provides only five tweets by Mr. Rybarczyk, failing to describe, for the most part, why those Tweets were false or fraudulent, who relied on those Tweets, what role they played in inflating the price of the stock, and what actions the Defendant did to induce others to purchase the securities.

(g) when it was made;

(h) with respect to omissions, the source of any duty to disclose;[11]

(i) to whom that alleged duty was owed; and

(j) how the statement or omission is fraudulent.

In addition, the Government should disclose to the defense the names of all unindicted coconspirators, and the names of conspirators the Government plans to call as witnesses at trial.

## II. ARGUMENT AND AUTHORITIES

### A. Bills of Particulars are Intended to Provide Defendants Adequate Notice of the Charges Against Them

Fed. R. Crim. Pro. 7(c)(1) requires that an Indictment contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." This secures the rights guaranteed by the 5th and 6th Amendments to the United States Constitution (defendant's right to due process, notice, and indictment by grand jury). However, Rule 7(f) also grants courts wide discretion to order a Bill of Particulars even where an indictment meets the minimum requirements set out in Rule 7(c) and the minimum constitutional standards. *See* Fed. R. Crim. P. 7(f) ("The court may direct the government to file a bill of particulars.").

---

[11] The Indictment fails to allege Rybarczyk had a duty to disclose his trades in at all or in real time so that others could, presumably, adjust their trades accordingly. Likewise, it fails to allege any *relationship* (fiduciary, agency, or otherwise) that would have led any person, let alone a reasonable investor, to believe that Rybarczyk was acting on their behalf or in their best interest.

"[A] Bill of particulars has for its purpose informing a defendant of the nature of the charges against him so that he will have sufficient detail to prepare for this defense, to avoid or minimize the danger of surprise at trial, and to enable him to plead double jeopardy in the event of a subsequent prosecution for the same offense." *United States v. Murray,* 527 F.2d 401, 411 (5th Cir. 1976); *See also United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977); *United States v. Carlock,* 806 F.2d 535, 550 (5th Cir. 1986) ("The purpose of a bill of particulars is to minimize surprise by giving 'sufficient notice of a charge for its defense.'"). In addition, a "bill of particulars is a proper procedure for discovering the names of co[-]conspirators the Government plans to call as witnesses at trial," where the information is necessary for the defendants to prepare for trial. *See United States v. Addison*, 2015 WL 1245556, at *4 (E.D. La. Mar. 18, 2015) (*citing United States v. Hughes*, 817 F.2d 268, 272 (5th Cir. 1987)).

**B.     The Government Has Not Provided Notice to Rybarczyk Elsewhere**

The Government has not otherwise identified either the alleged stocks, communications, or other information sufficient to provide notice to Rybarczyk. Earlier in this prosecution, defense counsel inquired if the Government was going to rely solely on the identified stocks (tickers) in the Indictment or if the Government was relying on:

> "b) much larger set (or perhaps all) of the defendant's trading activity during that time period of which these named stocks are just a

9

representative sample, but the government is going to be pursuing remedies (guidelines calculations, restitution, forfeiture etc.) for activity relating to many more not identified in the indictment."

The prosecutor replied that it was going to be the above, but that it would "disclose the tickers included in that $114-million figure." *See* Ex. A[12].

Despite obtaining the Superseding Indictment, this has not yet occurred. The Government has produced at least 548 gigabytes of discovery in more than 350,000 files. The discovery includes folders for a handful of individual stocks the subject of some counts, but also contains voluminous spreadsheets and business records reflecting *the entirety* of Rybarczyk's trading activity. Similarly, the Government has produced all of Rybarczyk's Twitter activity over several years and a voluminous subset of his direct message activity from Twitter and Discord. This "haystack of needles" leaves Rybarczyk to guess which of the many stocks he traded and thousands of communications to which the Government is referrs.

## C. Voluntary Disclosure at the Government's Discretion is Insufficient

Currently, a handful of stocks and communications have been identified through pleadings and memoranda of interviews of potential witnesses. The Government has, through discovery, provided some, but not all, communications segregated by a handful of stock tickers, the basis of its allegations. This is

---

[12] The remainder of the email chain has been redacted because it is non-pertinent. Additionally, individual email addresses have been redacted in an abundance of caution.

incomplete. This number and related disclosures will grow before or during trial or even at sentencing.

An at-will method of disclosure leaves the initiative to the Government to both voluntarily disclose to Rybarczyk and do so in a time frame sufficient to allow Rybarczyk to review or obtain copies of the additional relevant records from the Government or third parties, review them, seek appropriate exculpatory evidence, and prepare for trial such that he may receive effective assistance of counsel and present a defense in accordance with his 6th Amendment rights.

Should the Government choose to add specific stocks at or near trial, Rybarczyk will be prejudiced by his inability to prepare and present a defense, confront and cross examine the witnesses, and receive effective assistance of counsel. Until then, Rybarczyk must guess which of the many stocks and communications during the alleged time period are the subject of the case. This precludes Rybarczyk from effectively retaining and utilizing the services of consulting and potentially testifying experts or investigators as the time and cost involved in expert review of every trade activity and examine every one of the communications that could form the basis of Count 1 and proof at trial is prohibitive to all but the wealthiest of defendants. This is prejudicial to Rybarczyk.

**C.     Rybarczyk is Prejudiced and his Constitutional Rights Violated by the Government's Failure to Identify Fraudulent Trades and Communications**

Without knowing the specific trades and communications that form the basis of the charges made under the conspiracy count: (1) Rybarczyk cannot adequately prepare for trial—counsel must comb through, compare, and temporally align several years worth of trades and thousands of communications in hopes of identifying relevant communications/trades; (2) Rybarczyk likely will be prejudicially surprised at trial—the Government could simply shift focus to new communications/stocks each time Rybarczyk proves a particular trade or statement was not fraudulent; and (3) Rybarczyk may be subject to double jeopardy in the future—the Government could refrain from using unspecified claims at trial, regardless whether they formed the basis of this Indictment, and later use them as the basis for future charges if this prosecution is unsuccessful.

If this Motion is denied, then each time a new stock or tweet is discussed at trial, Rybarczyk will be forced, in order to protect his 5th and 6th Amendment rights, to move for a recess or continuance so that counsel may find the records, have them reviewed by his counsel and expert, locate and interview the witnesses and prepare a defense. Such a process would unnecessarily delay the proceedings and frustrate the Defendant's rights to Due Process, Confrontation, and Effective Assistance of Counsel.

### D.     Courts Have Granted this Request under Analogous Circumstances

The alleged "pump and dump" of *many* stocks through online social media is a unique circumstance compared to the typical securities fraud case which involves one or a small number of securities and false statements. However, this Court and others have consistently ordered the identification of individuals and representations under analogous circumstances. Specifically, in cases alleging false statements or omissions, courts have consistently required the prosecution to identify all the statements or omissions in a bill of particulars.

In the *United States v. Trie,* 21 F. Supp. 2d 7, 21-22 (D. D.C. 1998), the court held that the government's provision of "45 pages of excerpts in which it represents that all the false statements at issue are contained" was insufficient. It ordered that "[t]he government must provide information as to exactly what the false statements are, what about them is false, who made them, and how [the defendant] caused them to be made." *Id.* In doing so, the Court observed that "[a] defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against … when the government knows precisely the statements on which it intends to rely and can easily provide the information." *Id; See also United States v. Anderson,* 41 F. Supp.2d 15, 20 (D.D.C. 2006) ("[Defendant] is entitled to know precisely which allegedly false statements the government relies on in each paragraph, the way in which the government alleges

13

them to be false, and when approximately they were allegedly made."); *United States v. Meek* No. 1:19-cr-00378-JMS-MJD at ECF No. 57, 2020 U.S. Dist. LEXIS 80594 *19; 2020 WL 2218953 (S.D. Ind. May 7, 2020)("[A] bill of particulars identifying the alleged false or misleading statements at issue in Counts 10 and 11 is appropriate.").

In a nearly billion-dollar bank fraud case in this circuit arising from numerous loans in which defendants were accused of "lying on loan documents about borrowers' creditworthiness, the purposes of the loans, and the method of repayment" a bill of particulars was granted "to identify the specific statements within the loan packages which are alleged false and the material omissions, if any." *United States v. Ryan*, 2:20-cr-00065-EEF-KWR at ECF No. 227 at pp. 3-4, 2021 U.S. Dist. LEXIS 95892, 2021 WL 2018081 (E.D. May 20, 2021). The court held that "[i]n a bank fraud case of this complexity with such voluminous discovery, this is necessary for Defendants to adequately prepare their defenses and alleviates the potential for surprise at trial. *Id.*

In *United States v. Davis,* a Judge in this District ordered the Government to provide the names "of Medicare beneficiaries whose claims were allegedly tainted by illegal kickbacks." *United States v. Davis*, No. CRIM.A. H-14-171S-12 at Dkt. 296, 2014 WL 6679199, at *4 (S.D. Tex. Nov. 25, 2014)(Miller, J.). As the Court noted in *Davis*, "Courts have held that a bill of particulars may be appropriate when

14

the indictment fails to specify documents and transactions that the Government contends are fraudulent, and, with regard to health care fraud, several courts have found that defendants should be provided information identifying the medical claims that were fraudulent." *Id.* (internal citations omitted).

Each of these cases also hold that the Government cannot merely point to its voluminous production of discovery (548 gigabytes in this case and counting) and tell Defendants that they contain all the fraudulent statements at issue. The *Ryan* court referenced *United States v. Bazezew*, 783 F. Supp. 2d 160, 168 (D.D.C. 2011) quoting, "[i]t is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided or by relying on a governmental open file policy." As the *Davis* Court, observed, "documents alone are not a substitute for disclosure of the alleged fraudulent transactions." *Davis,* supra.

### E. The Grand Jury Transcripts Should Be Produced to Ensure Rybarczyk's 5th Amendment Rights Were Not Violated

Rybarczyk requests, pursuant to Rule 6(e)(3)(E)(ii) the Court the transcription and disclosure of the grand jury proceedings in this case because "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Specifically, Rybarczyk may file a motion to dismiss pursuant to Rule 12(b)(3)(A)(v), because his 5th Amendment right to indictment may have been violated.

Rybarczyk has a 5th Amendment right to not " be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" was not violated. "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Russell v. United States*, 369 U.S. 749, 771 (1962). In other words, the Grand Jury must have actually reviewed the factual basis of an indictment. Although Rybarczyk has moved for a bill of particulars, "[A] bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 763-66, 69-70 (1962). The Indictment's deficiencies, particularly the paucity of facts for Counts 16 and 17 raise the question as to whether the Grand Jury was provided any information on these counts. Therefore, these proceedings should be disclosed. Alternatively, Rybarczyk requests that this Court conduct an *in camera* review of the Grand Jury transcripts and, upon review, grant this Motion.

**F.     This Court should Order the disclosure of the names of co-conspirators the Government plans to call as witnesses at trial.**

This case is, at its core, a novel social-media stock fraud case alleging that the Defendants manipulated the price of stocks by Tweeting falsities about the stocks, thereby raising their price, and then selling the stocks into that "pump." As discovery has shown, and as is common sense, the Defendants did not operate in a vacuum; rather, their Tweets were re-tweeted, forwarded, and replied to by others on the

16

Internet on many occasions. This "re-Tweeting," done by others, helped ensure that the Tweets gained traction on social media. This then begs the question, were the re-Tweeters simply witnesses to the Defendants' behavior, or were they active co-conspirators (assuming *arguendo* there is a criminal conspiracy) working to falsely inflate the price of stocks so that they could then sell the stocks into that pump?

In order for the Defendants to prepare for trial, the Government must identify the names of co-conspirators alleged to have participated in the crimes through re-Tweeting or commenting on social media and who may testify at trial. The Government must inform the defense as to whether it intends to treat these people as mere witnesses or as co-conspirators who also have criminal exposure because of their actions. Obviously, the Government's decision on how to classify these numerous individuals is critical, as it will inform the Defendants' strategies in preparing for trial.

## CONCLUSION

Defendant Rybarczyk respectfully requests that the Court grant the relief requested, and order the production of a Bill of Particulars providing the requested information and grand jury transcripts within thirty (30) days of the Order.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

/s/ *Philip H. Hilder*
Philip H. Hilder
Texas Bar No. 09620050
Q. Tate Williams
Texas Bar No.: 24013760
Stephanie K. McGuire
Texas Bar No. 11100520
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

Eric Samuel Rosen
Freedman Normand Friedland LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel: (617) 977-4163
erosen@fnf.law

ATTORNEYS FOR DEFENDANT
JOHN RYBARCZYK

## CERTIFICATE OF CONFERENCE

I have communicated with AUSA Scott Armstrong by electronic mail regarding this motion to determine the Government's position. On March 8, 2023, he informed me by email that:

1. *We will be providing by the end of the month a list of tickers and time ranges relevant to the profit allegation in paragraph one of the Superseding Indictment.*
2. *We decline to produce any grand-jury materials.*

3. *We decline to identify co-conspirators at this time. We will, of course, produce names of witnesses in advance of trial to assist the defense's trial preparations.*
4. *We otherwise decline to disclose the information relating to your other requests.*

From this response, the motion should be treated, other than item #1, above, opposed.

/s/ *Q. Tate Williams*
Q. Tate Williams

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2023, a true and correct copy of the above and foregoing *Motion for a Bill of Particulars* was served on all counsel of record via ECF.

/s/ *Philip H. Hilder*
Philip H. Hilder