IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S
MOTION FOR A BILL OF PARTICULARS AND GRAND JURY TRANSCRIPTS**

**TO THE HON. ANDREW HANEN, UNITED STATES DISTRICT JUDGE:**

Defendant Edward Constantinescu ("Constantinescu"), pursuant to Federal Rules of Criminal Procedure 6(e)(3)(E)(ii), 7(f), 12(b)(3)(B)(iii) and (v), moves for a Bill of Particulars and for production of grand jury transcripts because the Superseding Indictment ("Indictment") fails to comply with basic requirements of both the Constitution and Federal Rules of Criminal Procedure. Among other things, the Indictment alleges 5 counts of violations of 18 U.S.C. § 1348 against Constantinescu predicated on purported "false" statements made on Twitter. While the Indictment identifies tweets made by Constantinescu, it fails to allege what about these statements is "false" or how they are "false."[1] *Id.* at ¶¶ 92, 99. 101, 106–15.

A letter requesting particulars concerning the purportedly "false" statements quoted in the Indictment was submitted to the government on Constantinescu's behalf on February 16, 2023. *Exhibit A*. Three weeks later, on March 8, 2023, the government told Constantinescu's counsel

---

[1] There is nothing in the government's production to date that would explain, demonstrate, or otherwise suggest that the Twitter posts allegedly by Constantinescu quoted in the Indictment were false.

that other than a list of tickers and time ranges relevant to calculation of the alleged $114 million in profits referenced in paragraph one of the Indictment, it "otherwise decline[s] to disclose the requested information at this time." *Exhibit B*.

The government, however, is required to apprise Constantinescu of *why or how* the statements it attributes to him in the Indictment are "false," that is, what about them makes them false. Constantinescu remains hindered in preparation of his defense because the reason the government believes the statements to be false is not apparent on their face nor does anything in the hundreds of thousands of pages produced suggest they are false. For the Court's review, a complete list of tweets attributed to Constantinescu in the Indictment is set forth below. Accordingly, Constantinescu respectfully asks this Court order the government to provide particulars concerning his alleged "false representations"—namely, explanation of how the alleged statements by Constantinescu quoted in the Indictment are "false."

## RELEVANT FACTS

The Indictment charges Constantinescu with the following offenses:

a. One count of conspiracy to commit securities fraud (18 U.S.C. § 1349), along with seven other defendants;

b. Five counts of securities fraud (18 U.S.C §§ 1348 & 2), in connection with 5 identified securities;

c. One count of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957).[2]

Each of the five counts of securities fraud for which Constantinescu is charged are predicated on the government's allegation that he made false statements in posts on Twitter. The

---

[2] Constantinescu currently has an outstanding Motion to Dismiss Count 21, which was argued on March 14, 2023 and the Court has taken under advisement.

Indictment quotes the following public Twitter posts by Constantinescu, all of which the government alleges are "false":[3]

*Re: CEI (Camber Energy, Inc.)*

1. "CEI is going to 10 . . ." (¶ 98),
2. "$CEI is a $10 stock all day long" (¶ 98),
3. "OIL going to $100 $CEI going to $10" (¶ 98),
4. "$CEI 10+" (along with a link to a tweet of a Reuters.com news article describing how the price of oil would rise to "100+ in Winter months") (¶ 99),

*Re: DATS (DatChat, Inc.)*

5. "$DATS I want $30+ with all the upcoming catalysts" (¶ 106),
6. "$DATS We're early and shorts are trying hard. We'll squeeze that seeking alpha hoe. He's short. See you at over $30 b*tches." (along with a photo of upcoming milestone of DATS through Q4 2021") (¶ 106),
7. "$DATS $30+ maybe $50 or $100" (¶ 106),
8. "$DATS has nothing to do with CEI. The scam paid room was grouping them together. We're going to $10 $20 $30 maybe $50. Sick app and only 12 million float with lots of catalysts on the way" (¶ 106),
9. "$DATS See you on Mars[,]" (¶ 107),
10. "$DATS I'm holding shares LT [long term]. I could careless of [sic] a short report comes out. I'll gobble up the dip and f them." (¶ 107),
11. "$DATS Let's do a short report at the bottom. Lol idiots squeeze these hoes. $DATS $30++." (¶ 107),

*Re: BBI (Brickell Biotech, Inc.)*

12. "added big on the dip" (¶ 112),
13. "$BBI 1-2 week hold for me. Looking for .50–$1" (¶ 113),
14. $BBI .33 is my add zone" (¶ 113),
15. "$BBI I'm pumping while it's still cheap. Don't tag me when you chased over .50 [cents per share.]" (¶ 113),
16. "$BBI dips for my crips. We're going over .50 and higher. We got catalysts baby . . . ." (¶ 113),
17. "$BBI to $1" (¶ 113),
18. "still fully in $BBI" (¶ 113),

---

[3] Constantinescu does not admit to any allegations in the Indictment.

3

   19. "$BBI It's going past .50 I feel it in my heart" (¶ 114),
   20. "$BBI Bullish!!!!!!" (¶ 114),
   21. "$BBI You're going to feel so stupid when this hits .50+" (¶ 115).

*Re: ONTX (Onconova Therapeutics, Inc.)*

   22. The Indictment does not include any general allegations with respect to ONTX, nor descriptions of any tweets, retweets, or statements by Constantinescu regarding ONTX.

*Re: MYSZ (My Size, Inc.)*

   23. The Indictment does not include any general allegations with respect to MYSZ, nor descriptions of any tweets, retweets, or statements by Constantinescu regarding MYSZ.

Each of the above-mentioned alleged tweets is introduced in the Indictment with emphasis that the statement is false.

With respect to these allegations, Constantinescu requested, pursuant to a letter addressed to the government on February 16, 2023, particulars regarding his allegedly "false" statements. *Exhibit A*. Among others, Constantinescu requested identification of the source of the government's knowledge, information, or suspicion that (i) each representation was, in fact, "false," and (ii) that Constantinescu was aware that each representation was "false." *Exhibit A*. To date, the government has refused to provide this information. *Exhibit B*

## LEGAL STANDARDS

### I. Bill of Particulars

Federal Rule of Criminal Procedure 7(f) grants courts wide discretion to order the government to file a bill of particulars. Fed. R. Crim. P. 7(f); *see also United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977) ("The granting of a bill of particulars is addressed to the sound discretion of the trial court") (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)). "The purposes of a bill of particulars are to obviate surprise at trial, *enable the defendant to prepare his*

4

*defense with full knowledge of the charges against him*, and to enable double jeopardy to be pled in case of a subsequent prosecution." *Id*. (emphasis added). The court must strike a "prudent balance" between the legitimate interests of the government and the defendant. *United States v. MacFarlane*, 759 F. Supp. 1163, 1169 (W.D.Pa.1991). And in response to a motion for a bill of particulars, it is *insufficient* for the government to simply "point to the voluminous discovery already provided." *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006).

II. **Grand Jury Materials**

"The Fifth Amendment provides that '(n)o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'" *Branzburg v. Hayes*, 408 U.S. 665, 687 (1972) (quoting U.S. Const. amend. V.). The grand jury serves a "dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Id*. at 686-87. The grand jury's adoption "in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice." *Id*. at 687 (quoting *Costello v. United States*, 350 U.S. 359, 362 (1956)).

In grand jury proceedings, "[t]he prosecutor's responsibility is to advise the grand jury on the law and to present evidence for its consideration. In discharging these responsibilities, the prosecutor must be scrupulously fair to all witnesses and must do nothing to inflame or otherwise improperly influence the grand jurors." Dep't of Just. Manual U.S. Atty's Manual § 9-11.010 (4th Ed. 2022). An indictment obtained on the basis of spurious premises or "statements or argu[ments] [made] in a manner calculated to inflame the grand jury unfairly against an accused" should be dismissed. *United States v. Hogan*, 712 F.2d 757, 759 (2d Cir. 1983). This bedrock principle is so fundamental that it applies even where the government misleads the grand jury unintentionally.

*See United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984) (even "reckless misleading of the grand jury as to an essential fact" is impermissible). Accordingly, Federal Rule of Criminal Procedure 6 provides that the Court may authorize disclosure of grand jury material "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii).

## ARGUMENT AND AUTHORITIES

**A. An Order requiring the government to file a Bill of Particulars regarding what about each of the statements identified in the Indictment makes them false is necessary to protect Constantinescu's right to effectively prepare his defense.**

On the face of the Indictment, the government's assertions of falsity with respect to each alleged tweet by Constantinescu are dubious. Repeatedly, the government simply boasts: "CONSTANTIN falsely claimed in a tweet . . . " *See Indictment*, ¶¶ 15, 99, 106, 107, 113). But *how* each statement it quotes is "false" remains completely unclear.

Constantinescu is charged with five counts of securities fraud under 18 U.S.C. § 1348. To prevail on a charge under section 1348(2), the government must prove that a defendant obtained money or property in connection with the purchase or sale of any security "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1348(2). With respect to other Chapter 63 fraud offenses, courts have concluded that factual particularity is necessary to apprise the defendant of the nature of the accusations. *See United States v. Steffen*, 687 F.3d 1104, 1113 (8th Cir. 2012) ("where an indictment alleges a scheme to defraud under the bank, mail, or wire fraud statutes, it must specify facts 'not merely in the general words of the statute, but with such reasonable particularity ... as will ... apprise [the defendant], with reasonable certainty, of the nature of the accusation ... and as will enable the court to say that the facts stated are sufficient in law to support a conviction.'") (quoting *Brown v. United States*, 143 F. 60, 62 (8th Cir.1906)); *see also United States v. Hughes*, 195 F. Supp. 795, 800 (S.D.N.Y. 1961) (government ordered to provide

6

particulars including "[a]ny untrue statements of material facts alleged . . . to have been made by defendants in the offer and sale of stock which the Government will offer evidence . . . , [t]he actual facts as opposed to the false statements . . . , [and] the material fact, omissions to state which were the means of obtaining money and property . . . and the statement which was necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (b) the misleading statements").; *cf. United States v. Serafini*, 7 F. Supp. 2d 529, 538 (M.D. Pa. 1998), aff'd, 167 F.3d 812 (3d Cir. 1999) ("an indictment must set forth the particular falsehood with clarity along *with the government's factual basis for asserting that it is false*, such that a jury can determine the falsity of the statement") (citing *United States v. Tonelli*, 577 F.2d 194, 200 (3d Cir.1978)) (emphasis added).

      Here, because false or fraudulent representations are requisite elements of the securities fraud charges against Constantinescu, the Indictment was required to specify in detail the precise false or fraudulent pretenses, misrepresentations, or omissions. *See United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974) (indictment must identify "the particular pretenses, representations or promises claimed to have been false"). The government has failed to do so and, in fact, has only even identified statements with respect to three of the five securities for which Constantinescu is charged with securities fraud.

      Finally, Constantinescu cannot be presumed to know or understand *how* the statements the government attributes to him are "false," and such a premise would be inconsistent with the presumption of innocence. *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998). Instead, the government should be required to (i) explain what about the statements is false, (ii) identify any additional "false" statements by Constantinescu, if they exist, and (iii) identify how the statements are attributable to Constantinescu. *Id*. at 21–22 ("The government must provide information as to

exactly what the false statements are, what about them is false, who made them, and how [the defendant] caused them to be made"). Simply put, in cases involving alleged false statements, the defendant is entitled to "know precisely which allegedly false statements the government relies on in each paragraph, [and] *the way in which the government alleges them to be false . . . .*" *Anderson*, 441 F. Supp. 2d at 20 (emphasis added). Such disclosure by the government is fundamental to ensuring the ability to effectively prepare a defense and must be afforded to Constantinescu here.

**B. Review of the Grand Jury transcripts is necessary to ensure the Grand Jury was presented with evidence demonstrating the falsity of the statements referenced in the Indictment.**

The Indictment refers to purportedly "false" statements by the Defendants no less than 100 times in its 44 pages. Accordingly, the Grand Jury should have been presented with evidence explaining how statements supporting charges against Constantinescu for securities fraud were actually false. But deficiencies regarding the alleged "false" statements referenced in the Indictment raise the question as to whether the Grand Jury was misled or misunderstood the requisite fraud, false or fraudulent pretenses, representations, or promises the government must prove to establish securities fraud under 18 U.S.C. § 1348. And if the Grand Jury was not presented with evidence demonstrating the apparent falsity of those statements, there is a substantial risk that the Grand Jury proceedings were tainted by an inaccurate presentation of the statute's legally required elements. Given the considerable risk to Constantinescu's Fifth Amendment rights, these proceedings should be disclosed. Alternatively, Constantinescu requests that this Court conduct an in camera review of the Grand Jury transcripts and, upon review, grant this Motion.

## CONCLUSION

For the reasons set forth herein, Constantinescu respectfully ask the Court to issue an Order directing the government to file a bill of particulars and ordering the disclosure of grand jury transcript.

Respectfully Submitted:

_____
Matthew A. Ford
Cara J. Filippelli
Ford O'Brien Landy, LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Tel: (212) 858-0040
mford@fordobrien.com
cfilippelli@fordobrien.com

*Attorneys for Defendant
Edward Constantinescu*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

   */s/ Matthew A. Ford*   
Matthew A. Ford
