UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § <br> § <br> § |
| v. | §    Case No. 4:22-cr-612 <br> § |
| DANIEL KNIGHT, | § <br> § |
| Defendant. | § <br> § |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas; Thomas Carter, III, Assistant United States Attorney; Scott Armstrong, Assistant Chief, United States Department of Justice, Fraud Section; John J. Liolos, Trial Attorney, United States Department of Justice, Fraud Section; and the Defendant, DANIEL KNIGHT ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreements

1. Defendant agrees to plead guilty to Count One of the Superseding Indictment. Count One charges the Defendant with conspiracy to commit securities fraud in violation of Title 18, United States Code, Section 1349. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment proven to a jury or a judge beyond a reasonable doubt.

1

### Punishment Range

2.      The *statutory* maximum penalty for the violation of Title 18, United States Code, Section 1349, is a term of imprisonment of not more twenty-five years and a fine of not more than $250,000 or, alternatively, not more than the greater of twice the gross pecuniary gain derived from the offense or twice the gross pecuniary loss to a person other than the defendant. *See* 18 U.S.C. § 3571(d). Additionally, Defendant may receive a term of supervised release after imprisonment of up to five years. *See* 18 U.S.C. §§ 3559(a)(2), 3583(b)(1). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for no more than two years, without credit for time previously served on post release supervision. *See* 18 U.S.C. §§ 3559(a)(3), 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.      Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized

United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this Plea Agreement carries the potential for a motion for departure under Section 5K1.1 of the United States Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Department of Justice, Criminal Division, Fraud Section. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraphs 18 through 27 of this Plea Agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that the usage "fully cooperate," as used herein, includes providing all information relating to any criminal activity known to Defendant—including, but not limited to, securities fraud. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a) Defendant agrees that this Plea Agreement binds only the United States Attorney for the Southern District of Texas; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant, and that it does not bind any other United States Attorney or other component or unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this Agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete, and accurate information and testimony and understands any false statements made by Defendant to the grand jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) At the Government's specific request, Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, *if any*, not meet Defendant's expectations, Defendant understands that he remains bound by the terms of this Plea Agreement and that he cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal and Collateral Review

7.      Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford Defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collateral[ly] attack" a judgment of conviction and sentence after they have become final. Defendant knowingly and voluntarily waives the right to appeal or "collateral[ly] attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute to which the Defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this Plea Agreement and seek specific performance of these waivers.

8.      In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction and not a promise; **did not induce his guilty plea**; and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220, 245 (2005).

5

Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated Guidelines range.

9. Defendant understands and agrees that each and all waivers contained in this Plea Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

   (a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two-level downward adjustment under Section 3E1.1(a) of the Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines;

   (b) If the Court determines that Defendant qualifies for an adjustment under Section 3E1.1(a) of the Sentencing Guidelines and Defendant's offense level is 16 or greater, the United States will move under Section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently;

   (c) If Defendant substantially assists the United States, and a Motion is made to the Court, the United States will recommend to the Court that the reduction in sentence be subtracted from the low end of the applicable guideline range; and

   (d) If Defendant abides by the terms of this agreement and fulfills his obligations under the agreement, which will be determined by the United States in good faith and in its sole discretion, at the time of sentencing, the United States will move to dismiss Count 6 of the Superseding Indictment, which charges Defendant with one count of securities fraud in violation of 18 U.S.C. § 1348.

## Agreement Binding – Southern District of Texas and
## U.S. Department of Justice, Criminal Division, Fraud Section Only

11. The United States Attorney's Office for the Southern District of Texas and the United States Department of Justice, Criminal Division, Fraud Section agree that they will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the Superseding Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas; the United States Department of Justice, Criminal Division, Fraud Section; and Defendant. It does not bind any other United States Attorney or any other component of the Department of Justice. The United States Attorney's Office for the Southern District of Texas and the Department of Justice, Criminal Division, Fraud Section will bring this Plea Agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

12. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right to:

    (a)    Bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

    (b)    Set forth or dispute sentencing factors or facts material to sentencing;

    (c)    Seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

    (d)    File a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

    (e)    Appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

13. Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to be run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

14. The United States and Defendant agree to recommend to the Court, based on the Factual Basis for the guilty plea in Paragraph 17, that the base offense level for Count One, conspiracy to commit securities fraud, is determined by Section 2B1.1(b)(1)(J) of the Sentencing Guidelines, because the amount of loss attributable to the Defendant is more than $3,500,000 but less than $9,500,000. The United States and Defendant further agree to recommend to the Court, based on the Factual Basis for the guilty plea in Paragraph 17, that a two-point enhancement to the base offense level should apply under Section 2B1.1(b)(2)(A) of the Sentencing Guidelines, because the offense involved 10 or more victims. The United States and the Defendant agree that no other enhancements or reductions to the offense level apply under Chapter 2 of the Sentencing Guidelines. The United States and Defendant agree to recommend to the Court, based on the

Factual Basis for the guilty plea in Paragraph 17, that a three-point reduction in the offense level is appropriate under Section 3B1.1 of the Sentencing Guidelines, because the Defendant was a minimal participant in the criminal activity for purposes of the Guidelines calculation.

## Rights at Trial

15. Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this Plea Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

> (a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree.
>
> (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses, and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.
>
> (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. But if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

16. Defendant is pleading guilty because he *is* guilty of the charges contained in Count One of the Superseding Indictment. If this case were to proceed to trial, the United States could prove each element of the offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt. From in or around January 2020 through at least in or around April 2022:

   (a) As charged in the Superseding Indictment, in the Southern District of Texas and elsewhere, DANIEL KNIGHT, the Defendant, knowing the unlawful purpose of the plan and intentionally joining it, did agree and conspire with others, including defendants Edward Constantinescu a/k/a Edward Constantin, Perry "PJ" Matlock, John Rybarczyk, Gary Deel, Stefan Hrvatin, Tom Cooperman, and Mitchell Hennessey, to try to accomplish a common and unlawful plan to commit securities fraud in violation of Title 18 United States Code, Section 1348, that is, to knowingly, and with the intent to defraud, execute, and attempt to execute, a scheme and artifice (1) to defraud any person in connection with any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)), and (2) to obtain, by means of materially false and fraudulent pretenses, representations, promises, and material omissions, any money and property in connection with the purchase and sale of any security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*) and that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)),

   All in violation of Title 18 United States Code, Section 1349.

   (b) KNIGHT resided in the Southern District of Texas in or around the relevant period. KNIGHT used the Twitter, Inc. account "@DipDeity" and had over 175,000 followers on Twitter. KNIGHT used the Discord, Inc. account "Dan, Deity of Dips#8114" and was a member of Atlas Trading Discord. Atlas Trading Discord purported to be a stock trading community run by KNIGHT and his coconspirators. KNIGHT and his coconspirators encouraged investors to join the Atlas Trading Discord, Atlas Trading's free chatroom or server on Discord, purportedly to learn how to trade securities and receive "alerts" or messages from KNIGHT and others about securities. Over time, Atlas Trading Discord grew to become one of the largest stock-trading chat rooms, with over 250,000 members. KNIGHT and his coconspirators posted alerts in Atlas Trading Discord and Twitter about the securities that KNIGHT and his coconspirators traded in furtherance of the securities fraud conspiracy.

(c) KNIGHT also co-hosted the podcast Pennies: Going in Raw ("PGIR") with Hennessey, which they advertised as the "#1 Stock Market Podcast." Hennessey was the principal host of the podcast, with KNIGHT playing a supporting role. KNIGHT, Hennessey, and their coconspirators utilized PGIR to hold themselves out to the public as accomplished stock traders, and to legitimize their Twitter accounts and the Atlas Trading Discord, all in furtherance of the conspiracy.

(d) In addition to on PGIR, KNIGHT and his coconspirators held themselves out to investors on Twitter, Discord, and elsewhere as skilled stock traders. KNIGHT and his coconspirators, for example, posted on social media about the profit from their trading activities. KNIGHT and his coconspirators also posted pictures on social media of their luxury lifestyle, purportedly achieved through their trading profits. KNIGHT and his coconspirators also encouraged investors to join Atlas Trading Discord purportedly so that other investors could share in KNIGHT and his coconspirators' financial gains by trading securities.

(e) KNIGHT and his coconspirators used their credibility to maximize their own trading profits through their tweets and posts in Atlas Trading Discord, often at the expense of their Twitter followers and members of Atlas Trading Discord. KNIGHT and his coconspirators used their social media influence to pump and dump securities for their own financial gain.

(f) To do so, KNIGHT or one or more of his coconspirators would first purchase a security, often notifying other coconspirators of the purchase so that they, too, could "load" and buy the security. After purchasing or "loading" the security, KNIGHT or one or more of his coconspirators sought to "pump" the price of that security by posting false and misleading information about the security on Twitter and Atlas Trading Discord so that other investors were induced to purchase the security and artificially increase its price.

(g) These messages were false and misleading, and omitted material information, because KNIGHT and his coconspirators concealed their intent to use these messages to induce other investors to purchase the securities so that KNIGHT and his coconspirators could sell their shares at a higher price at and around the time of the messages. Indeed, because KNIGHT and his coconspirators recognized that their followers on Twitter and members of Atlas Trading Discord frequently purchased securities based on their social media posts, KNIGHT and his coconspirators sought to conceal from, and further mislead, their Twitter followers and members of Atlas Trading Discord about their true trading positions and intentions. In this way, KNIGHT and his coconspirators used social media to induce other investors to purchase and hold the same securities that KNIGHT and his coconspirators were selling or dumping so that KNIGHT and his coconspirators could maximize their own profits.

11

(h)     KNIGHT recognized that his conduct, and the conduct of his coconspirators, was market manipulation because KNIGHT's coconspirators routinely posted on social-media false and misleading information about securities both to deceive retail investors and fraudulently induce retail investors to purchase securities and thereby maximize the profits of KNIGHT and his coconspirators.

(i)     During the conspiracy, KNIGHT recognized that his conduct, and the conduct of his coconspirators, had the effect of "robbing idiots of their money," a reference to the members of Atlas Trading Discord and the retail investors who followed KNIGHT and his coconspirators on Twitter. Nonetheless, KNIGHT concealed his true knowledge of the crime from both (i) members of Atlas Trading Discord and (ii) retail investors that followed KNIGHT and his coconspirators on Twitter. By doing so, KNIGHT sought to maximize his own trading profits, and the trading profits of his coconspirators, at the expense of members of Atlas Trading Discord and other retail investors who KNIGHT and his coconspirators sought to deceive and otherwise fraudulently induced to purchase securities.

(j)     KNIGHT personally profited from the conspiracy at least $198,373, which constitutes proceeds from the conspiracy subject to forfeiture. KNIGHT's personal profit from the conspiracy was vastly lower than the personal profits of his indicted coconspirators. KNIGHT was also less active than the indicted coconspirators in posting false and misleading information about the particular securities that were being pumped and dumped as part of the conspiracy.

### Breach of Plea Agreement

17.     If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. Failure to fulfill completely all of the obligations under this Plea Agreement includes, but is not limited to, failure to tender the Plea Agreement to the Court, making false or misleading statements before the Court or to any agents of the United States, committing any further crime, or attempting to withdraw the Plea after the Court accepts Defendant's guilty plea. If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that

have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Restitution, Forfeiture, and Fines

18. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

19. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500) no later than <u>two weeks after the re-arraignment</u>. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

20. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks that have custody of his assets to deliver all funds and records of such assets to the United States.

21. Defendant understands that forfeiture, restitution, and fines are separate

components of sentencing and are separate obligations.

## Restitution

22. Defendant agrees to pay full restitution to the victims. Defendant understands and agrees that the Court, at the time of sentencing, will determine the amount of restitution to fully compensate the victims. The amount of restitution likely will significantly exceed the amount of the Defendant's personal gain from the conspiracy. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

23. Defendant stipulates and agrees that the property listed in the Superseding Indictment Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

24. Defendant stipulates and agrees that the Defendant obtained *at least* $198,373 from the criminal offenses and that the factual basis for his guilty plea supports the forfeiture of *at least* $198,373. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Codes, Section 853(p), exists. Defendant agrees to forfeit any of his property in substitution, up to a total forfeiture of $198,373. Defendant agrees to the imposition of a personal money judgment in that amount.

25. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

26. Defendant consents to the order of forfeiture becoming final as to Defendant

14

immediately following this guilty plea, pursuant to Rule 32.2(b)(4)(A) of the Federal Rules of Criminal Procedure.

27. Subject to the provisions of Paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

28. Defendant understands that, under the Sentencing Guidelines, the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the United States for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

29. This written Plea Agreement, consisting of 18 pages, including the Plea Agreement Addendum, constitutes the complete agreement between the United States, Defendant, and his counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on March 27, 2023.

_____
DANIEL KNIGHT
Defendant

Subscribed and sworn to before me on March 27, 2023.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Department of Justice

By: _____
Scott Armstrong, Assistant Chief
John J. Liolos, Trial Attorney

By: _____
Cordt Akers
Attorney for Defendant

ALAMDAR S. HAMDANI
United States Attorney
 for the Southern District of Texas

By: _____
Thomas Carter III, AUSA

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| v. § | Case No. 4:22-cr-612 |
| § | |
| DANIEL KNIGHT, *et al.*, § | |
| § | |
| Defendant. § | |

## PLEA AGREEMENT ADDENDUM

I have fully explained to Defendant his rights with respect to the Superseding Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines that may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

_____                     ___3/27/23___
Cordt Akers                                                              Date
Attorney for Defendant Daniel Knight

17

I have consulted with my attorney and fully understand all my rights with respect to the Superseding Indictment against me. My attorney has fully explained and I understand all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual that may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this Plea Agreement, and I voluntarily agree to its terms.

_____  _____ 3/27/23
Daniel Knight                     Date
Defendant