UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

### United States' Response in Opposition to Defendant Constantinescu's Motion for a Bill of Particulars and Grand Jury Transcripts

The United States, by and through undersigned counsel, respectfully submits this Response in Opposition to Defendant Constantinescu's Motion for a Bill of Particulars and Grand Jury Transcripts (Doc. No. 219). The Court should deny the motion because the Superseding Indictment, coupled with the United States' substantial discovery and disclosures, provide adequate notice of the nature of the charges against the Defendant. The Motion is a thinly veiled attempt to get the United States to preview its trial evidence and theory of the case. A bill of particulars and release of the Grand Jury transcripts are inappropriate here.

I.  Background

  A.  Procedural History

A Grand Jury in this District returned the original Indictment on December 7, 2022, charging the Defendant and seven alleged coconspirators with conspiracy to commit securities fraud, substantive counts of securities fraud, and a money laundering count. (Doc. No. 1.) A Grand Jury in this District returned a Superseding Indictment on February 8, 2023, which realleges all charges in the original Indictment and adds nine substantive counts of securities fraud. (*See* Doc. No. 134 ¶ 121.) The Superseding Indictment charges Defendant Constantinescu with conspiracy

to commit securities fraud, five substantive counts of securities fraud, and a money laundering count. (*See id.* ¶¶ 117, 121–126.)

The United States has articulated at length on multiple occasions the contents of the Superseding Indictment as relevant to the Defendant's Motion and incorporates those descriptions by reference here. (*See, e.g.*, Doc. Nos. 174 at 1–3; 206 at 1–4.) In the context of this Motion, however, it is worth reemphasizing the general description of the Defendants' scheme contained in paragraph 1 of the Superseding Indictment, which states that the Defendants:

> **engaged in a scheme to "pump and dump" securities based on false and misleading information and material omissions about those securities that the defendants published on social media platforms, including Twitter, Inc. and Discord, Inc.** To carry out the scheme, the defendants (1) purchase shares of a security in their trading accounts; (2) posted messages on social media platforms with false, positive information about the security—**including as to, among other things, the defendants' position in the security, how long the defendants intended to hold the security, the defendants' view that the security would increase in price, and the price the security could reach**—to induce other investors to buy the security and artificially drive up its price, and (3) **secretly sold their own shares of the security at a higher price to secure a profit for themselves, at or around the time they posted messages to induce other investors to purchase the same security and concealed their intent to sell.**

(Doc. No. 134 ¶ 1 (emphasis added).) Notably, the bolded sections in the passage above provide general explanation of the types of false statements at issue in this case and general description of why and how many statements were false or misleading. (*See id.*) And the remainder of the Superseding Indictment supplies copious instances of particular examples of false and misleading statements falling under those general descriptions, including many statements by Defendant Constantinescu. (*See, e.g., id.* ¶¶ 98–99, 106–107, 112–114.)

Further, to remove any doubt about the notice provided to Defendants concerning the contours of the charged conduct, paragraph 13 specifically details even more examples of the false

and misleading statements at the core of this case. Those statements, as laid out in the Superseding Indictment, include:

    a. Messages representing that a defendant intended to hold the security, including for a "swing" or a longer-term trade, as opposed to a short-term trade or day trade;

    b. Messages representing that a defendant "joined" another defendant in purchasing the security or was "adding" to a position in the security;

    c. Messages concerning a purported price target for the security that was significantly higher than the price at which the security was currently trading, and that was higher than the defendants actually valued the security; and

    d. Messages concerning "due diligence" about the security and purported catalysts that would increase the security's price over time.

(*Id.* ¶ 13.) Thus, the general descriptions in paragraphs 1 and 13, along with the copious specifics supplied throughout the Superseding Indictment, provide the Defendants fair notice about the types of false and misleading statements that comprise the core of their alleged criminal conduct.

Further, as the United States has also recently apprised the Court, the United States timely made significant discovery productions so that this case may move expeditiously towards the October trial date.[1] Critically, here, the Defendant has had all his relevant trading and social media records for several months.

In addition to all this material, on March 31, 2023, the United States disclosed to all Defendants a letter with an attachment, included here as Exhibit 2, that contains information regarding the profit allegations in paragraph 1 of the Superseding Indictment.[2] As the Court can

---

[1] The United States incorporates by reference its prior description of those productions. (*See, e.g.*, Doc. No. 206 at 4.)

[2] Exhibit 1 is the transmittal email to counsel to which the documents in Exhibit 2 were attached. The balance of the email chain in Exhibit 1 is redacted as irrelevant, among other reasons. Note that the United States produced to counsel the chart in Exhibit 2 as a sortable Microsoft Excel spreadsheet.

see, Exhibit 2 contains much significant information, including: (i) the stock tickers at issue, (ii) the specific time periods in which Defendants were trading in and/or posting about those stocks, and (iii) the particular Defendants who closed a position in each particular stock within each precise time period.[3] (*See* Ex. 2 at 2.) As the Court also can see, the letter indicates that the United States will disclose, in connection with its expert disclosures on June 5, 2023, the approximate profit and loss figures for each Defendant as to each of those stocks in each of those specified time periods, and particular false or misleading statements occurring with respect to each of those stocks in each of the specified time periods. (*See id.* at 1.)

## II.     Legal Standard[4]

"A defendant possesses no right to a bill of particulars . . . ." *United States v. Burgin*, 621 F.2d 1352, 1358–59 (5th Cir. 1980). Rather, "the decision on the motion lies within the discretion of the court," *id.*, which "is afforded substantial discretion" in making that determination. *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978).

Defendants may not use a bill of particulars as an investigative tool; a bill "is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *Burgin*, 621 F.2d at 1359; *see also United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) ("A defendant should not use the bill of particulars to obtain a detailed disclosure of the government's evidence prior to trial.") (internal quotations and citation omitted)); *Davis*, 582 F.2d at 951 ("[I]t is well established that generalized discovery is not a

---

[3] Although the United States views these materials as more germane to the production of expert reports, which in this case are not due until June 5, 2023, the United States provided this information voluntarily at this early date in order to keep firm the October 23, 2023 trial date. The United States reserves the right to make any necessary edits to this information at the time of furnishing its expert reports.

[4] The United States incorporates by reference its more comprehensive exposition of the applicable legal standard set forth in its Response to Defendant Rybarczyk's Motion for a Bill of Particulars. (*See* Doc. No. 206 at 5–7.)

permissible goal of a bill of particulars."). Defendants "'are not entitled to discover all the overt acts that might be proved at trial' through a bill of particulars." *United States v. Djuga*, No. 14-cr-140, 2015 WL 1412100, at *2 (E.D. La. Mar. 25, 2015) (quoting *Kilrain*, 566 F.2d at 985). Instead, the Court "must balance the needs of the defendant against the government's right not to disclose its witnesses, evidence or legal theories." *United States v. Miller*, 210 F. Supp. 716, 717 (S.D. Tex. 1962). Ultimately, the question is not whether the information sought would be helpful to the defendant, but rather whether it would be *necessary* to prepare a defense. *See United States v. Barrentine*, 591 F.2d 1069, 1077 (5th Cir. 1979).

### III. The Court should deny the Defendant's motion because a bill of particulars is unwarranted, particularly in light of the Superseding Indictment, discovery, and the United States' disclosures.

The Defendant seeks a bill of particulars to gain premature insight into the United States' trial strategy and legal theories, which is neither appropriate for nor available through a bill of particulars. *See, e.g.*, *United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982) ("[A] bill of particulars cannot be required to compel revelation on the full theory of the case or all the evidentiary facts." (internal citation omitted)). The Defendant's request for the United States to explain why each and every false or misleading statement posted by the Defendant during the course of the multi-year conspiracy was, in fact, false or misleading would require the United States to disclose its trial strategy and legal theories, and the Court should not permit it. *See, e.g.*, *id*.

The 44-page Superseding Indictment leaves no doubt as to the nature of the charges against the Defendants and the nature of the false or misleading statements at issue. The Superseding Indictment sets out in detail, among other things, the specific categories of statements that are alleged to be false and misleading. (*See* Doc. No. 134 ¶¶ 1, 13.) The Superseding Indictment further provides many examples of particular false or misleading statements, along with the Defendants'

trading activity that demonstrates that they in fact did not believe what they said publicly or were not trading as they represented publicly. (*See, e.g.*, *id.* ¶¶ 21–115.)

Further, as noted, Defendants have already had in their possession for almost three months the two pillars of the United States' evidence in this case: their social-media activity and trading records. This material was organized into folders based on the source or type of documents and produced in electronic form. Thus, the Defendant can readily access and review documents, and organize trading and social-media records adequately to answer his own questions and prepare his own defense.

Further still, the discovery was supplemented by the United States disclosure set forth in Exhibits 1 and 2. And this abundance of information will be further supplemented by the United States' expert disclosures and, at an appropriate time prior to trial, trial exhibits. With this wealth of information in the Superseding Indictment, the discovery, and the United States' disclosures, the Court should reject the Defendant's blatant attempt to use a bill of particulars to have the United States also explain its trial evidence and strategy. *See, e.g.*, *Hajecate*, 683 F.2d at 898.

The Defendant's February 16, 2023 letter reads precisely as sets of interrogatories submitted in a civil case, where the defendant's attorney asks the plaintiff for all of the facts supporting a specific allegation in the civil complaint. (*See* Doc. No. 220.) But the letter and the motion are improper. This is not a civil case. The United States is not required to respond to eleven-page detailed requests of every conceivable question that a Defendant could resolve by himself through moderate diligence and review of discovery and disclosures. A bill of particulars may not be used in a federal criminal case as a fishing expedition. *See, e.g.*, *Burgin*, 621 F.2d at 1358–59; *see also United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981) (affirming the denial of a bill

6

of particulars and explaining that "[t]he defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved").

The several cases cited by the Defendant, which were largely cited by Defendant Rybarcyzk and addressed in the United States' response to that motion, do not change this conclusion.[5] (*See* Doc. No. 206 at 11–16.) Further, the Defendant's cherry-picking of cases from other districts that might support his strained theory omits reference to any of the innumerable cases that do not. *See, e.g.*, *United States v. Davis*, No. 14-cr-171S-12, 2014 WL 6679199, at *3 (S.D. Tex. Nov. 25, 2014) (denying, in part, defendant's request for bill of particulars where request "seem[ed] to be for a detailed disclosure of the Government's evidence prior to trial"); *see also United States v. Moyer*, 674 F.3d 192, 203 (3rd Cir. 2012) ("Although the government did not identify every omission or inclusion that rendered false the documents identified in the indictment, and thus did not, at the pre-trial stage, weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant, the government was not required to do so." (internal quotations and citation omitted)); *United States v. Fitzgerald*, No. 305-cr-00013, 2006 WL 734005, at *1 (W.D. Va. Mar. 21, 2006) (denying defendant's motion for a bill of particulars to provide notice of the particular false statements at issue where the full scope of discovery was made available); *United States v. Carey*, 152 F. Supp. 2d 415, 431–32 (S.D.N.Y. 2001) (denying the defendant's motion to identify what the government alleges is false about the particular false statements at issue where the defendant had access to all the potential statements in discovery, the time to go through the materials, and did "not cite a single case from this jurisdiction—and the court is unaware of any—in which the government has been required to disclose its theory before trial as to why a particular statement is false"); *United States v. Cisneros*,

---

[5] The United States incorporates by reference its exposition of those cases in its prior Response. (*See* Doc. No. 206 at 11–16.)

26 F. Supp. 2d 24, 55–56 (D.D.C. 1998) (denying bill of particulars seeking identification of alleged false statements where the 65-page indictment, with 31 pages of background facts, "[r]ead as a whole . . . clearly provides enough information to allow [the defendant] to understand the charges against him and prepare to defend himself against those charges").

    **IV.**     **The Court should deny the Defendant's request for the Grand Jury transcripts because the Defendant has not demonstrated a particularized need to violate Grand Jury secrecy and the basis of the Defendant's request has been rejected by the Supreme Court of the United States multiple times.**

The Defendant's request for Grand Jury transcripts marks the second time in this case where a Defendant has sought to violate the long-established bulwark of Grand Jury secrecy without even mentioning the applicable "particularized need" test, let alone articulating such a need. *See* (Doc. Nos. 196 at 15–16; 219 at 8); *see also Dennis v. United States*, 384 U.S. 855, 868–69 (1966); *Posey v. United States*, 416 F.2d 545, 557 (5th Cir. 1969). The Defendant seeks to obtain the transcripts based solely on reading the face of the Superseding Indictment and speculating that "deficiencies regarding the alleged 'false' statements referenced in the Indictment raise the question as to whether the Grand Jury was misled or misunderstood . . . ." (Doc. No. 219 at 8.)

The Supreme Court of the United States made clear long ago that the Defendant's stated grounds to attempt to obtain the Grand Jury transcripts are entirely inappropriate. *See United States v. Williams*, 504 U.S. 36, 51–54 (1992). As the Supreme Court explained:

> A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was "incomplete" or "misleading." Our words in *Costello* bear repeating: **Review of facially valid indictments on such grounds "would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it."**

8

*Id.* at 54–55 (emphasis added) (quoting *Costello v. United States*, 350 U.S. 359, 364 (1956)); *see also Costello*, 350 U.S. at 362–364 (expressly rejecting defendant's request to establish a rule "permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence" and noting that a Justice in 1852 "could say, 'No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.'" (quoting *United States v. Reed*, 27 F. Cas. 727, 738 (No. 16,134) (CCNDNY 1852))).

The Defendant's motion does not mention the term "particularized need," articulates only bases that have been expressly rejected by the Supreme Court, and cites no case that supports his request. *See* (Doc. No. 219 at 8); *see also Williams*, 504 U.S. at 51–54; *Costello*, 350 U.S. at 364; As such, the Court should deny the Defendant's motion. *See, e.g.*, *United States v. Miramontez*, 995 F.3d 56, 59 (5th Cir. 1993) (noting that movant's general description of types of errors or defects that may occur in grand jury proceedings does not constitute a particularized need without a showing that such errors occurred in the particular case before the court); *In re Grand Jury Testimony*, 832 F.2d 60, 63 (5th Cir. 1987) (explaining the need for grand jury testimony "must be real" before grand jury transcript may be disclosed; "bald assertions of such need are not sufficient"); *United States v. Harbin*, 585 F.2d 904, 907 (8th Cir. 1978) (finding court did not err in refusing to breach grand jury secrecy and allow defendant to inspect minutes where defendant stated no particularized need but made "only a general plea that inspection might yield a ground upon which to move to dismiss indictment"); *United States v. Basciano*, 763 F. Supp. 2d 303, 314–16 (E.D.N.Y. 2011) (denying defendant's motion to compel production of grand jury minutes that

was based entirely on speculation about what may have occurred before the grand jury and, thus, failed to make a particularized showing of need).

## Conclusion

The Court should deny the Defendant's Motion because it seeks impermissibly to obtain the United States' trial theories and to violate Grand Jury secrecy without showing a particularized need.

Dated: April 4, 2023                    Respectfully submitted,

                                      GLENN S. LEON
                                      Chief, Fraud Section
                                      Criminal Division, Department of Justice

By:    */s/ John J. Liolos*
           Scott Armstrong, Assistant Chief
           John J. Liolos, Trial Attorney
           Fraud Section, Criminal Division
           United States Department of Justice
           1400 New York Ave. NW
           Washington, DC 20005
           Tel.: (202) 768-2246

                                      ALAMDAR S. HAMDANI
                                      United States Attorney
                                      Southern District of Texas

By:    */s/ Thomas Carter*
           Thomas H. Carter
           Assistant United States Attorney
           State Bar No.: TX24048387
           1000 Louisiana Street, 25th Floor
           Houston, Texas 77002
           Tel.: (713) 567-9470

## **CERTIFICATE OF SERVICE**

      I hereby certify that on April 4, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF. system, which will provide copies to counsel for all parties.

                            */s/ John J. Liolos*
                            John J. Liolos, Trial Attorney
                            U.S. Department of Justice
                            Criminal Division, Fraud Section