IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S REPLY IN SUPPORT OF
MOTION FOR BILL OF PARTICULARS AND GRAND JURY TRANSCRIPTS**

Defendant Edward Constantinescu, ("Constantinescu"), respectfully submits his Reply to the government's Response in Opposition to his Motion for Bill of Particulars and Grand Jury Transcripts (the "Motion").

### INTRODUCTION

Throughout the Indictment, the government alleges: "CONSTANTIN falsely claimed in a tweet . . ." *See* Indictment, ¶¶ 15, 99, 106–07, 113–15. The five individual counts of securities fraud[1] against Constantinescu rest on the purported falsity of 21 specific tweets made by Constantinescu. Constantinescu has repeatedly asked the government to explain *what about those statements makes them* "false," but it continues to decline. Rather, the government maintains Constantinescu has received "adequate notice of the nature of the charges" based on three things: (1) the Superseding Indictment, (2) the government's "substantial discovery," and (3) its additional

---

[1] The Indictment includes alleged statements concerning only three of the five securities for which Constantinescu is charged with securities fraud under 18 U.S.C. § 1348. It does not include any statements or specific allegations with respect to Onconova Therapeutics, Inc. (ONTX) or My Size, Inc. (MYSZ); it just lists those tickers.

"disclosures," specifically, a spreadsheet produced on March 31, 2023 listing stock tickers (and time frames) not mentioned in the Indictment that purportedly represent 402 discreet "pump and dumps" Constantinescu allegedly conspired to commit by tweeting in violation of 18 U.S.C. § 1349. [ECF 234 at 1]. None of these items explain how or why, for example, the statement: "$DATS See you on Mars[,]" is false. *See* Indictment, ¶ 107.[2]

**ARGUMENT**

A. <u>The government has not described, alleged, produced, or disclosed anything to explain how or why the quoted statements it attributes to Constantinescu in the Indictment are "false."</u>

At the outset, the government gripes that Constantinescu has asked the government to "explain why each and every false or misleading statement posted by [Constantinescu] during the course of the multi-year conspiracy was, in fact, false or misleading . . ." [ECF 234 at 5]. This is not accurate. It conflates the Indictment's five § 1348 securities fraud counts with the Indictment's § 1349 conspiracy charge. To be clear, Constantinescu seeks particulars concerning the specific 21 tweets the government attributes to him in support of its § 1348 fraud counts against him, and identified as "false" in the Indictment. [*See* ECF 219 at 3].[3] In disregarding those quoted statements, the government asks the Court to adopt an overbroad interpretation of the Indictment's "general descriptions," to trust that trade records explain the falsity of the statements (they do not), and to wait until June 5, 2023 for the government to produce "similar" statements about *other tickers* (which will do nothing to explain why those quoted in the Indictment and presented to the Grand Jury are "false").

1. *The text of the Indictment does not illustrate what about the statements is "false."*

---

[2] Given that "a false or fraudulent pretense[], representation[], or promise" is a fundamental element of 18 U.S.C. § 1348(2), the government's omission in this regard suggests a defect of law in its presentation to the Grand Jury.
[3] Constantinescu does not waive any rights with regards to the anticipated June 5, 2023 disclosures related to the conspiracy charge.

According to the government, its "general description of the Defendants' scheme" explains what about the tweets attributed to Constantinescu were false. [ECF 234 at 2]. But its "general description" does nothing to answer this question. As the supposed first step of the scheme, the government takes issue with Constantinescu's purchase of shares through bona fide market transactions at prevailing market rates. Next, the government asserts that Constantinescu posted "false, positive information *about the security*" on Twitter, and proceeds to list four "categories" of statements, two of which are not even arguably related to the character or attributes of the company or the security itself. Instead, the categories of statements the government suggests feature "false, positive information about the security" are: (1) "the defendants' position in the security," (2) "how long the defendants intended to hold the security," (3) "the defendants' view that the security would increase in price," and (4) "the price the security could reach."

Category (1) is irrelevant here because none of Constantinescu's tweets quoted in the Indictment for which he requests particulars include information allegedly representing his position in a particular security. Categories three and four intersect in that they both relate to statements which effectively amount to price predictions. Thus, of the four categories described in the government's "general descriptions" Constantinescu's requested particulars concerning the quoted tweets in the Indictment fall within two classifications: (i) price predictions and (ii) statements of future intent.

As a matter of common sense, it is puzzling why the Indictment affirmatively alleges that statements constituting clearly identifiable *predictions* are "false." Does the government claim they were "false" at the time the prediction was posted on Twitter? Or does the purported falsity of the statements rest on whether his alleged predictions came true within some unspecified time

period? Constantinescu does not understand these allegations and absent particulars concerning the purported falsity of his alleged *predictions*, he cannot adequately prepare his defense.

The government's position is similarly perplexing with respect to how or why Constantinescu's alleged statements of future intent were "false," especially given his actual trading activity—omitted from the Indictment and, presumably, the Grand Jury proceeding.

2. *The government's production and disclosures do not illustrate why the statements in the Indictment are "false," but rather highlight the need for review of the government's presentation to the Grand Jury.*

With respect to Constantinescu's requested particulars, the government points to its "significant discovery productions," that is, hundreds of thousands of pages of documents, including the Defendants' complete "social-media activity and trading records." [ECF 234 at 3, 6]. But it is well-settled that simply "point[ing] to the voluminous discovery already provided" is an insufficient response to the particulars requested—namely, *how and why* the statements quoted in the Indictment are false. *See United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006); *see also United States v. Davis*, No. CRIM.A. H-14-171S-12, 2014 WL 6679199, at *4 (S.D. Tex. Nov. 25, 2014) ("While it is possible for the Government to fulfill its obligations by providing materials, if the materials are voluminous, then documents alone are not a substitute for disclosure of the alleged fraudulent transactions").

More troubling is the Indictment's allegation that Constantinescu posted "false" information about "how long [he] intended to hold certain securities." This allegation is completely at odds with reality—his trading records not only corroborate the truthfulness of his alleged statements but further elucidate the Indictment's misrepresentation of Constantinescu's actual trading activity. Constantinescu should be permitted to review grand jury transcripts to determine

exactly how the government obtained an indictment pursuant to 18 U.S.C. § 1348(2) on such specious pretenses.

On this point, the government also misunderstands Constantinescu's position. It falsely claims that he "seeks to obtain the transcripts based *solely* on reading the face of the Superseding Indictment." [ECF 235 at 8] (emphasis added). But Constantinescu's Motion clearly asserts that "the reason the government believes the statements to be false is not apparent on their face *nor does anything in the hundreds of thousands of pages produced suggest they are false*." (ECF 219 at 2] (emphasis added).

By way of example, the Indictment's allegation that Constantinescu's tweet: "$DATS I'm holding shares LT . . ." represents a false statement is negated by Constantinescu's actual trading activity. Even accepting the Government's dubious allegation that LT means "holding shares [long term]," it remains unclear how the statement "$DATS I'm holding shares LT" could be false considering Constantinescu's actual trading in DATS during the relevant time period.[4]

The Indictment alleges that Constantinescu "purchased *and held*" shares of DATS beginning in mid-August 2021. (Indictment, ¶ 102) (emphasis added). From August to October, Constantinescu held shares of DATS, selling only a *de minimis* portion of his shares over those first two months. As the Indictment acknowledges, he sold *some* shares of DATS on October 13, 2021. It further alleges that after selling *some* shares of DATS, "CONSTANTIN *falsely claimed in a tweet* '$DATS I'm holding shares LT [long term]. I could careless of [sic] a short report comes out. I'll gobble up the dip and f them.'" (Indictment, ¶ 107) (emphasis added). But the government's interpretation of that statement and its position that Constantinescu *falsely claimed*

---

[4] Constantinescu disagrees with the government's bracketed addition of the words "long term," purporting to explain what Constantinescu meant by tweeting "$DATS I'm holding shares LT," as this insertion of the government's presumed interpretation is not only inappropriate but constitutes a gross misunderstanding of day trading concepts and terminology.

he would hold DATS shares "long term" remains dubious considering his subsequent trading in DATS. In fact, Constantinescu continued to purchase shares of DATS for the next several days and did not close his position until five days later. He then purchased more shares of DATS on October 25 and again on November 10.

Specifically, at the end of the day on October 13, 2021 (after the purportedly "false" tweet representing, according to the government, his plans to hold "[long term]"), Constantinescu was still holding 45,942 shares of DATS, which closed at about $11 per share, for a total value of approximately $505,362.00. In other words, Constantinescu was holding *a half million dollars in DATS stock* as of close of market on October 13, 2021. The Indictment then selectively acknowledges his sale of 300,000 of 695,942 shares the next day but omits the fact that *after* the sale of those shares, Constantinescu purchased another 163,882 shares of DATS before the end of October 14, 2021, and continued to purchase and sell shares of DATS on October 15.

The Indictment also suggests: "On or about October 18, 2021, CONSTANTIN closed his positions in DATS." (Indictment, ¶ 108). Yet, it declines to acknowledge his purchase of another 112,370 shares of DATS a week later, on October 25, 2021. He bought those shares at an average price of $8.53, meaning Constantinescu held approximately $958,516.00 in DATS on October 25, 2021, a week after he had "closed his position in DATS," according to the Indictment.

Finally, with respect to November 2021, the Indictment alleges that "after falsely touting the long-term prospects of DATS for weeks," Constantinescu informed another Twitter user on November 3, 2021 that he was no longer "holding large on DATS," (Indictment, ¶ 109), and takes issue with Constantinescu allegedly "publicly claim[ing] to still hold positive view of DATS, all while holding zero shares of the security." (Indictment, ¶ 109). But the Indictment fails to

6

acknowledge that Constantinescu did, in fact, purchase shares of DATS again on November 10, 2021.

The Indictment's omissions, with respect to Constantinescu's trading activity in DATS, represent just one example of the dilemma presented by its allegation that these statements of future intent were "false." It also raises a serious concern regarding the government's presentation before the Grand Jury, demonstrating a "particularized need" for review of the Grand Jury transcripts.

3. *The additional "similar" false statements the government has promised to produce in June will do nothing to explain why the statements described in the Indictment are "false."*

Like its position with respect to its "significant discovery productions," the government's reference to its spreadsheet "regarding the profit allegations" similarly says nothing about how or why the quoted statements in the Indictment are "false." [*See* ECF 234 at 4].

The spreadsheet presents additional stock tickers not mentioned in the Indictment which supposedly support the government's conspiracy charge. In its cover letter to the spreadsheet, also attached to the government's Response, the government represented it will "detail the false and misleading statements relevant to [the underlying profit calculation for the conspiracy charge]" in its June 5, 2023 expert disclosures. [ECF 234 at 4, citing Ex. 2]. But those purported "false or misleading" statements for the additional stock tickers will be "similar" to the statements in the Indictment that are the precise subject of Constantinescu's Motion. [*See* ECF 234 at 4, Ex. 2]. So, even if in two months the government provides "similar" examples of more statements it considers "false," those will do nothing to explain how or why the tweets it has quoted in the Indictment are false.

For these reasons, neither the Indictment nor the government's productions/disclosures demonstrate how or why the 21 tweets attributed to Constantinescu and relied on in the Indictment

are "false."  A bill of particulars detailing the purported falsity of these statements is necessary to enable Constantinescu to adequately prepare his defense. In addition, because certain statements in the Indictment are negated by Constantinescu's actual trading activity, review of the government's presentation before the Grand Jury is necessary to assess the validity of the Indictment.

## CONCLUSION

For the reasons set forth herein as well as those in his opening memorandum of law, Constantinescu respectfully requests the Court grant the Motion, issue an Order directing the government to file a bill of particulars and ordering the disclosure of grand jury transcripts, and award any other relief deemed just and proper.

Respectfully Submitted:

_____
Matthew A. Ford
Cara J. Filippelli
Ford O'Brien Landy, LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Tel: (212) 858-0040
mford@fordobrien.com
cfilippelli@fordobrien.com

*Attorneys for Defendant*
*Edward Constantinescu*

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2023, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

                                                                                   */s/ Matthew A. Ford*
                                                                                   Matthew A. Ford