**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | Case No. 22-cr-00612 |
| | § | |
| MITCHELL HENNESSEY, | § | |
| | § | |
| *Defendant*. | § | |

<u>**MITCHELL HENNESSEY'S MOTION TO DISMISS**</u>
<u>**THE SUPERSEDING INDICTMENT**</u>

Defendant Mitchell Hennessey respectfully moves the Court to dismiss the superseding indictment because it fails to allege a viable theory of fraud and constitutes a significant infringement of Mr. Hennessey's constitutional right to free speech.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ..................................................................................................2

     A.     TRCH – Count 5 ......................................................................................4

     B.     SURF – Count 10 .....................................................................................6

III.    LEGAL STANDARD..........................................................................................9

IV.    ARGUMENT .....................................................................................................10

     A.     Mr. Hennessey had no fiduciary or fiduciary-type duty to disclose when he intended to sell his stock. ..............................................12

           1.     The government's theory relies on a fiduciary or fiduciary-type duty to disclose. ..........................................12

           2.     Unilateral expectations or reliance are insufficient to create a fiduciary or fiduciary-type duty. ..................................13

           3.     The superseding indictment does not allege that Mr. Hennessey had a fiduciary or fiduciary-type duty, nor does it allege facts sufficient to establish such a duty. ............................................15

     B.     Mr. Hennessey made no statements regarding when he intended to sell his stock, so he had no obligation to disclose information on that particular subject. ...........................................................................18

           1.     A duty to disclose only arises if a defendant discloses material facts on a particular subject but fails to speak the whole truth on that particular subject. ....................................18

           2.     The superseding indictment does not allege that Mr. Hennessey ever spoke on the particular subject of when he intended to sell stock. ........................................................19

           3.     Mr. Hennessey's alleged statements refer to owning stock—"long"—and a type of trading—"swing"—not when he intended to sell stock..................................................................21

                 a.     Definition of Long. ......................................................22

                 b.     Definition of Swing......................................................23

                 c.     Mr. Hennessey's alleged statements refer to types of trades and circumstance that would cause him to close out his entire position in SURF, not when he intended to sell stock. ........24

     C.     Mr. Hennessey's statements could not have been materially false or misleading. ............................................................................25

     D.     The prosecution of Mr. Hennessey under § 1348 is unconstitutional under the void-for-vagueness doctrine..........................................26

E.    Count 1 of the superseding indictment must be dismissed because the government fails to allege an unlawful object of the conspiracy ........................... 27

F.    The prosecution violates Mr. Hennessey's First Amendment rights under the Free Speech Clause. ................................................................................ 28

1.    Strict scrutiny applies because the government seeks to criminalize Mr. Hennessey's pure speech based on the content of his posts. ............. 29

2.    The government cannot articulate a compelling basis to criminalize Mr. Hennessey's truthful protected speech ................................................ 30

3.    The government's prosecution is an unconstitutional attempt to compel speech. ......................................................................................... 32

V.    CONCLUSION ................................................................................................... 33

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Martin*,
No. 2:08-CV-400, 2010 WL 3715165 (E.D. Tex. Aug. 20, 2010) ...................................14, 16

*Alexandra Glob. Master Fund, Ltd. v. Ikon Office Sols., Inc.*,
No. 06 CIV. 5383, 2007 WL 2077153 (S.D.N.Y. July 20, 2007) ..........................................17

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988) ...............................................................................................................25

*In re BP p.l.c. Sec. Litig.*,
843 F. Supp. 2d 712 (S.D. Tex. 2012) ...............................................................................26, 31

*Chiarella v. United States*,
445 U.S. 222 (1980) ...................................................................................................11, 13, 14

*Citizens United v. Federal Election Comm'n*,
558 U.S. 310 (2010) ...........................................................................................................28, 29

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ...................................................................................................4

*Commodity Trend Serv. v. Commodity Futures Trading Comm'n*,
149 F.3d 679 (7th Cir. 1998) ..................................................................................................29

*Dirks v. SEC*,
463 U.S. 646 (1983) ................................................................................................................13

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
238 F. Supp. 3d 799 (S.D. Tex. 2017) .....................................................................................14

*In re Enron Corp. Sec. Derivative & ERISA Litig.*,
610 F. Supp. 2d 600 (S.D. Tex. 2009) ....................................................................................14

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
No. 1446, 2016 WL 4095973 (S.D. Tex. Aug. 2, 2016), *aff'd sub nom.*
*Giancarlo v. UBS Fin. Services, Inc.*, 725 F. App'x 278 (5th Cir. 2018)........................11, 15

*First Va. Bankshares v. Benson*,
559 F.2d 1307 (5th Cir. 1977) ...........................................................................................18, 30

*Jackson v. Ladner*,
626 F. App'x 80 (5th Cir. 2015) ..............................................................................................28

*Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*,
    387 F. Supp. 2d 691 (S.D. Tex. 2004) ...................................................................16

*Jornaleros de Las Palmas v. City of League City*,
    945 F. Supp. 2d 779 (S.D. Tex. 2013) ...................................................................28

*Kolender v. Lawson*,
    461 U.S. 352 (1983) ...............................................................................10, 26

*Lowe v. SEC*,
    472 U.S. 181 (1985) ...........................................................................................29

*McNamara v. Bre–X Minerals Ltd.*,
    57 F. Supp. 2d 396 (E.D. Tex. 1999) ...................................................................19

*Miami Herald Publishing Co. v. Tornillo*,
    418 U.S. 241 (1974) ...........................................................................................32

*Moldea v. New York Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ...............................................................................31

*New Jersey v. Sprint Corp.*,
    314 F. Supp. 2d 1119 (D. Kan. 2004) ...................................................................11

*Pettibone v. Biden*,
    No. 3:20-CV-01464-YY, 2022 WL 19521759 (D. Or. Sept. 22, 2022) ..................4

*R.A.V. v. City of St. Paul, Minn.*,
    505 U.S. 377 (1992) ...........................................................................................29

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
    487 U.S. 781 (1988) ...........................................................................................32

*Rock the Vote v. Trump*,
    No. 20-CV-06021-WHO, 2020 WL 6342927 (N.D. Cal. Oct. 29, 2020) ...............4

*Rutherford v. Exxon Co., U.S.A.*,
    855 F.2d 1141 (5th Cir. 1988) ...............................................................................14

*SEC v. Curshen*,
    372 F. App'x 872 (10th Cir. 2010) .......................................................................19

*SEC v. Huttoe*,
    No. CIV.A. 96-2543, 1998 WL 34078092 (D.D.C. Sept. 14, 1998) ......................17

*SEC v. Mapp*,
    240 F. Supp. 3d 569 (E.D. Tex. 2017)...........................................14, 15, 16, 18, 19

*SEC v. Park*,
    99 F. Supp. 2d 889 (N.D. Ill. 2000) ....................................................................17

*Serv. Employees Intern. Union, Local 5 v. City of Houston*,
    595 F.3d 588 (5th Cir. 2010) ..............................................................................29

*Sonnier v. Crain*,
    613 F.3d 436 (5th Cir. 2010), *opinion withdrawn in part on reh'g*, 634 F.3d
    778 (5th Cir. 2011)..............................................................................................28

*Stephens v. Uranium Energy Corp.*,
    No. CV H-15-1862, 2016 WL 3855860 (S.D. Tex. July 15, 2016)........................26

*Town N. Bank, N.A. v. Shay Fin. Services, Inc.*,
    No. 3:11-CV-3125-L, 2014 WL 4851558 (N.D. Tex. Sept. 30, 2014)..................14

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)............................................................................................25

*United States v. Ballard*,
    663 F.2d 534 (5th Cir. 1981) ..............................................................................13

*United States v. Campbell*,
    64 F.3d 967 (5th Cir. 1995) ................................................................................27

*United States v. Causey*,
    No. CRIM. H-04-025-SS, 2005 WL 2647976 (S.D. Tex. Oct. 17, 2005) ..................10, 19, 30

*United States v. Chestman*,
    947 F.2d 551 (2d. Cir. 1991)..........................................................................14, 15

*United States v. Crow*,
    164 F.3d 229 (5th Cir. 1999) ..............................................................................10

*United States v. Forkner*,
    584 F. Supp. 3d 180 (N.D. Tex. 2022) ..............................................................9, 22

*United States v. Gaspard*,
    744 F.2d 438 (5th Cir. 1984) ..............................................................................13

*United States v. Gonzalez*,
    792 F.3d 534 (5th Cir. 2015) ..............................................................................22

*United States v. Hamilton*,
    37 F.4th 246 (5th Cir. 2022) ..............................................................................27

*United States v. Harris*,
    821 F.3d 589 (5th Cir. 2016) ..............................................................................13

*United States v. Hendricks*,
116 F.3d 1476, 1997 WL 304169 (5th Cir. 1997) ..................................................27

*United States v. Hunt*,
No. 05 CR. 395 (DAB), 2006 WL 2613754 (S.D.N.Y. Sept. 6, 2006) ...................16

*United States v. Njoku*,
737 F.3d 55 (5th Cir. 2013) ..................................................................................27

*United States v. Ramsey*,
No. CR 19-268, 2022 WL 596378 (E.D. Pa. Feb. 28, 2022)..................................11

*United States v. Reyes*,
No. EP-10-CR-985-PRM, 2010 WL 2542030 (W.D. Tex. June 22, 2010)...........10

*United States v. Skelly*,
442 F.3d 94 (2d Cir. 2006)..............................................................................13, 15

*United States v. Skilling*,
554 F.3d 529 (5th Cir. 2009) ...............................................................................31

*United States v. Smith*,
742 F. Supp. 2d 855 (S.D.W. Va. 2010) ..............................................................10

*United States v. Thomas*,
367 F.3d 194 (4th Cir. 2004) ...............................................................................10

*United States v. White Eagle*,
721 F.3d 1108 (9th Cir. 2013) ..............................................................................27

*United States v. Willingham*,
310 F.3d 367 (5th Cir. 2002) ...............................................................................10

*US v. Fontenot*,
665 F.3d 640 (5th Cir. 2011) ...........................................................................4, 10

*Virginia Bankshares v. Sandberg*,
501 U.S. 1083 (1991).........................................................................10, 19, 21, 30

*Welk v. Simpkins*,
402 F. App'x 15 (5th Cir. 2010) ...........................................................................14

*Wooley v. Maynard*,
430 U.S. 705 (1977).............................................................................................32

**Statutes**

18 U.S.C. § 1341 ...................................................................................................13

18 U.S.C. § 1343 ......................................................................................................13

18 U.S.C. § 1348 ................................................................2, 3, 11, 12, 13, 26, 27, 30

18 U.S.C. § 1349 .........................................................................................2, 27, 28

**Other Authorities**

Adam Hayes, *Long Position: Definition, Types, Example, Pros and Cons*,
  Investopedia (Oct. 6, 2021), available at
  https://www.investopedia.com/terms/l/long.asp ......................................................23

Cory Mitchell, *Understanding Swing Trading*, Investopedia (Mar. 2, 2023),
  available at https://www.investopedia.com/terms/s/swingtrading.asp#toc-
  understanding-swing-trading ...............................................................................24

Eugene Volokh, *Freedom of Speech and Information Privacy: The Troubling
  Implications of a Right to Stop People From Speaking About You*, 52 STAN. L.
  REV. 1049, 1081–82 (2000) ..................................................................................29

FED. R. CRIM. P. 12(b)(3)(B) ......................................................................................9

First Amendment to the United States Constitution .........................................1, 12, 28, 29, 30, 33

Investor.gov, *Pump and Dump Schemes*,
  available at https://www.investor.gov/introduction-investing/investing-
  basics/glossary/pump-and-dump-schemes (last viewed May 11, 2023)...................................2

Investor.gov, *Stock Purchases and Sales: Long and Short*, available at
  https://www.investor.gov/introduction-investing/investing-basics/how-stock-
  markets-work/stock-purchases-and-sales-long-and .................................................22

James Chen, *Day Trader: Definition, Techniques, Strategies, and Risks* (June 13,
  2022), available at https://www.investopedia.com/terms/d/daytrader.asp ...........................24

WAYBACK MACHINE,
  https://web.archive.org/web/20210210151153/https://twitter.com/Hugh_Henn
  e/status/1359520283527426055 ...........................................................................5

WAYBACK MACHINE,
  https://web.archive.org/web/20210519202800/https://twitter.com/Hugh_Henn
  e/status/1395021772114776066 ...........................................................................8

WAYBACK MACHINE,
  https://web.archive.org/web/20210520030753/https://twitter.com/Hugh_Henn
  e/status/1395014241422397452 .......................................................................6, 31

## I.        INTRODUCTION

In an unprecedented criminal prosecution, the government charged Mr. Hennessey, a retail day trader, with securities fraud because he posted truthful statements about stocks on social media and did not disclose his alleged motivation for posting or disclose when he allegedly intended to sell those stocks. In the very tweets the government alleges were fraudulent, however, Mr. Hennessey truthfully disclosed that he owned the stock himself and that he was a trader who could be buying or selling the stock at any time. The government has not alleged, and indeed it cannot allege, that Mr. Hennessey had any inside information, that he had a fiduciary or fiduciary-type duty, or that he ever made a false statement about when he intended to sell a stock.

The government's entire case hinges on a theory that Mr. Hennessey committed securities fraud because he posted that he owned a stock and his reasons for purchasing the stock—that is, positive information about the stock—but did not at the same time tell the world when he intended to sell the stock. While the government's prosecution is novel, its sole theory of falsity based on undisclosed motivation has been soundly rejected by the Supreme Court. The charges against Mr. Hennessey have no legal support, and therefore, the superseding indictment must be dismissed.

The government's prosecution of Mr. Hennessey for his truthful social media posts also infringes Mr. Hennessey's constitutional rights under the Free Speech Clause of the First Amendment. The government cannot identify any compelling justification to force Mr. Hennessey—and by extension, every retail trader around the country—to disclose to the world when he intends to sell a stock simply on the basis that he mentioned the stock on social media.

## II.   <u>BACKGROUND</u>

In December 2022, Mr. Hennessey was indicted in the Southern District of Texas on one count of conspiracy to commit securities fraud, 18 U.S.C. § 1349, and two counts of securities fraud, 18 U.S.C. §§ 1348 & 2. *See* ECF 1. On February 8, 2023, the government filed a superseding indictment, adding three additional counts of securities fraud against Mr. Hennessey without any new factual allegations. *See* ECF 134.

The superseding indictment alleges that Mr. Hennessey participated in a conspiracy to commit securities fraud from January 2020 through June 2022. *Id.* at ⁋ 117. According to the superseding indictment, "the defendants used their social media influence to pump and dump[1] securities for their own financial gain," *id.* at ⁋ 12, "by posting false, positive information about the security on Twitter and Atlas Trading Discord." *Id.* at ⁋⁋ 1, 13. That "false, positive information," the superseding indictment alleges, came in the form of four "types" of "false and misleading messages":

    a.  Messages representing that a defendant intended to hold the security, including for a "swing" or a longer-term trade, as opposed to a short-term trade or day trade;

    b.  Messages representing that a defendant "joined" another defendant in purchasing the security or was "adding" to a position in the security;

    c.  Messages concerning a purported price target for the security that was significantly higher than the price at which the security was currently trading, and that was higher than the defendants actually valued the security; and

---

[1] The superseding indictment does not allege that the price of any stock decreased after the defendants sold their shares. *Cf.* Investor.gov, *Pump and Dump Schemes*, available at https://www.investor.gov/introduction-investing/investing-basics/glossary/pump-and-dump-schemes (last viewed May 11, 2023) ("In a pump and dump scheme, fraudsters typically spread false or misleading information to create a buying frenzy that will 'pump' up the price of a stock and then 'dump' shares of the stock by selling their own shares at the inflated price. Once the fraudsters dump their shares and stop hyping the stock, the stock price typically falls and investors lose money.").

       d.   Messages concerning "due diligence" about the security and purported catalysts that would increase the security's price over time.

*Id.* The government alleges that "[t]hese messages were false and misleading, and omitted material information, *because the defendants concealed their intent* to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages." *Id.* at ¶ 14 (emphasis added).

In total, the superseding indictment alleges five counts of securities fraud in violation of 18 U.S.C. §§ 1348 & 2 against Mr. Hennessey.

| Count | Defendants | On or about Date and Time | Issuer |
|-------|------------|---------------------------|--------|
| 5 | HENNESSEY, MATLOCK, DEEL | February 2021 | Torchlight Energy Resources, Inc. (TRCH) |
| 8 | HENNESSEY | March 2021 | Regulus Therapeutics, Inc. (RGLS) |
| 9 | HENNESSEY | June 2021 | Regulus Therapeutics, Inc. (RGLS) |
| 10 | HENNESSEY, MATLOCK, COOPERMAN, DEEL | May 2021 | Surface Oncology, Inc. (SURF) |
| 11 | DEEL, MATLOCK, HENNESSEY | May 2021 | Alzamend Neuro, Inc. (ALZN) |

While the superseding indictment contains five counts involving four separate securities, the superseding indictment identifies only four allegedly false posts by Mr. Hennessey about only two of the securities: TRCH and SURF. *See* ECF 134 at ¶¶ 34, 57, 61. There are no allegations that Mr. Hennessey posted anything whatsoever in connection with Counts 8, 9, and 11—about

RGLS or ALZN. *See id.* And the superseding indictment does not allege that Mr. Hennessey knew that any co-defendant or alleged co-conspirator made any false statement. *See id.* Nor does it allege that Mr. Hennessey knew when anyone else intended to sell stock. *See id.*

While the superseding indictment relies on four posts by Mr. Hennessey, it only quotes portions of those posts, and does not include all of the text or present the tweets in their entirety.

## A.    TRCH – Count 5

The superseding indictment alleges that Mr. Hennessey posted two messages regarding TRCH:

> [1.]    On or about February 10, 2021, at approximately 10:11:04 EST, HENNESSEY posted on Atlas Trading Discord that he was "Long TRCH for merger."
>
> [2.]    At approximately 10:11:08 EST, HENNESSEY falsely claimed in a tweet: "New swing $TRCH[.]  They HAD to do an offering to get to the level of cash they needed[.]  NOW the merger is full steam ahead baby . . ."

*Id.* at ¶ 34.

In addition to the text quoted in the superseding indictment, the 10:11:08 EST tweet, which is shown below, included a copy of the investor presentation as well as the following statement:[2]

> Hugh_Henne (Not Hef)
> @Hugh_Henne

---

[2] Mr. Hennessey's tweets are referred to in the indictment and central to the allegations in the indictment, so the Court may consider the tweets in their entirety on a motion to dismiss. *See US v. Fontenot*, 665 F.3d 640, 643 (5th Cir. 2011) (considering on motion to dismiss "the superseding indictment and the language on the loan application" that formed the basis of the allegations); *see also Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500 (5th Cir. 2000) ("The court may also consider documents that a defendant attaches to a motion to dismiss, if the documents are "referred to in the plaintiffs complaint and are central to [the] claim"); *Pettibone v. Biden*, No. 3:20-CV-01464-YY, 2022 WL 19521759, at *3 (D. Or. Sept. 22, 2022) (finding that the court could consider Twitter posts to "indicate what was in the public realm at the time . . . ." (citation omitted)), *report and recommendation adopted*, No. 3:20-CV-1464-YY, 2023 WL 2969267 (D. Or. Apr. 17, 2023); *Rock the Vote v. Trump*, No. 20-CV-06021-WHO, 2020 WL 6342927, at *4 n.2 (N.D. Cal. Oct. 29, 2020) (same).

NOT HUGH HEFNER… NJ – Trader – 22 ~ All tweets are my ideas and opinions not advice. I am not and NEVER will be your financial advisor. Learn. To. Trade.[3]



The superseding indictment further alleges that Mr. Hennessey sold his TRCH shares "by approximately 12:39:00 EST." ECF 134 at ⁋ 39.[4]

### B.    SURF – Count 10

The superseding indictment also alleges that Mr. Hennessey posted two statements on Twitter regarding SURF:

[1.]    On or about May 19, 2021, at approximately 9:51:27 EST, HENNESSEY claimed in a tweet and in a post on Atlas Trading Discord: "I am long $SURF – have been stalking this company and would be shocked if acquisition deal was not done by EOY . . . ." HENNESSEY also cited to positive information about SURF for the "short term." In the following minutes, HENNESSEY continued to tweet and post in Atlas Discord Trading positive information about SURF.

[2.]    On or about May 19, 2021, at approximately 10:04:00 EST . . . HENNESSEY falsely claimed in a tweet that he "[w]on't need to post about her much. $Surf already tons of dd out there[.] Unless new DD comes out. Only way I'll be out of this one is if bad catalyst. Long and strong babyyy . . . ."

ECF 134 at ⁋⁋ 57, 61. Again, the superseding indictment only quotes a portion of Mr. Hennessey's tweets, which are shown below. The first tweet at 9:51 a.m. also included a SURF press release and contained the following statement:

Hugh_Henne (Not Hef)
@Hugh-Henne

NOT HUGH HEFNER-20ish~ All tweets are MY ideas and opinions not advice. I actively trade positions & could be buying or selling any stock mentioned at any time.[5]

---

[4] While various factual allegations in the superseding indictment are incorrect, it is not the purpose of this motion to address those factual inaccuracies.

[5] WAYBACK MACHINE, https://web.archive.org/web/20210520030753/https://twitter.com/Hugh_Henne/status/13950142 41422397452 (last visited May 9, 2023).

MITCHELL HENNESSEY'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT – PAGE 6



And the second tweet at 10:21 a.m. also contained the same statement that Mr. Hennessey "could be buying or selling" SURF "at any time."[6]



---

[6] WAYBACK MACHINE,
https://web.archive.org/web/20210519202800/https://twitter.com/Hugh_Henne/status/139502
1772114776066 (last visited May 9, 2023).



The superseding indictment alleges that then, over a two-week period—May 19 to June 1—Mr. Hennessey sold shares of SURF. ECF 134 at ⁋ 61.

The superseding indictment does not allege that any of Mr. Hennessey's posts were factually false. *See* ECF 134. Nor does it allege that any of Mr. Hennessey's posts did not reflect Mr. Hennessey's true opinion. *See id.* Rather, the superseding indictment alleges only that Mr. Hennessey's posts "were false and misleading, and omitted material information, *because the defendants concealed their intent* to use these messages to induce other investors to purchase the securities so that defendants could sell their shares at a higher price at and around the time of the messages." ECF 134 at ⁋ 14.[7]

### III.   LEGAL STANDARD

An indictment that fails to state an offense or that is based on an unconstitutional statute must be dismissed. *See United States v. Forkner*, 584 F. Supp. 3d 180, 185–89 (N.D. Tex. 2022); FED. R. CRIM. P. 12(b)(3)(B). "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. . . . If a question of law is involved, then

---

[7] The Court ordered the government to identify by June 5, 2023, all statements that purportedly constitute "false and misleading" statements. ECF 254.

consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (citation omitted).

"In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *Id.* (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)). "Upon a finding that an indictment is defective, the district court must dismiss the indictment." *United States v. Smith*, 742 F. Supp. 2d 855, 857 (S.D.W. Va. 2010).

"An indictment is defective if it charges a violation of an unconstitutional statute." *Smith*, 742 F. Supp. 2d at 857 (citing *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004)); *United States v. Reyes*, No. EP-10-CR-985-PRM, 2010 WL 2542030, at *1 (W.D. Tex. June 22, 2010) ("A court must dismiss an indictment if it concludes that the statute criminalizing the defendant's alleged conduct is unconstitutional." (citing *United States v. Willingham*, 310 F.3d 367, 371 (5th Cir. 2002)). A statute must define a "criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

## IV.   ARGUMENT

The Court should dismiss the superseding indictment because it is based on a legally deficient theory of fraudulent nondisclosure absent any allegation that Mr. Hennessey had a legal obligation to disclose when he intended to sell stock.

It is well-settled that "[d]isbelief or undisclosed motivation, standing alone, is insufficient to sustain an action for fraud[.]" *United States v. Causey*, No. CRIM. H-04-025-SS, 2005 WL 2647976, at *15 (S.D. Tex. Oct. 17, 2005) (citing *Virginia Bankshares v. Sandberg*, 501 U.S. 1083, 1096 (1991)). Yet "undisclosed motivation" is the government's sole allegation of falsity, and that theory cannot as a matter of law support a charge of federal securities fraud.

It is also well-established that "[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. United States*, 445 U.S. 222, 235 (1980). Following *Chiarella*, absent a statutory or regulatory requirement,[8] a duty to disclose may arise in only two circumstances: (1) when disclosure is required by virtue of a fiduciary or fiduciary-type relationship; or (2) when disclosure is necessary to make statements that have been made not misleading.[9] Neither of these circumstances is sufficiently alleged here.

The Court therefore should dismiss the superseding indictment for six reasons.[10]

*First*, the superseding indictment does not allege that Mr. Hennessey had any fiduciary or fiduciary-like duty that required him to disclose when he intended to sell stock, nor does the superseding indictment allege facts that could give rise to such a duty.

*Second*, the superseding indictment does not allege that Mr. Hennessey spoke *at all* about when he intended to sell his stock, so no legal obligation to disclose his intentions on that "particular subject" could exist.

*Third*, the superseding indictment does not adequately allege that Mr. Hennessey's trading intentions could have been material because it does not allege that Mr. Hennessey held a sufficient

---

[8] The superseding indictment does not allege that Mr. Hennessey had any statutory or regulatory obligation to disclose when he intended to trade. *See* ECF 134. It does not allege that he was, or held himself out to be, a corporate insider or someone who possessed non-public information. Nor does it allege that he received any compensation of any kind from any company about which he posted.

[9] *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 1446, 2016 WL 4095973, at *8 (S.D. Tex. Aug. 2, 2016), *aff'd sub nom.  Giancarlo v. UBS Fin. Services, Inc.*, 725 F. App'x 278 (5th Cir. 2018); *New Jersey v. Sprint Corp.*, 314 F. Supp. 2d 1119, 1128 (D. Kan. 2004) (collecting cases).

[10] The superseding indictment alleges a novel theory of fraud predicated on a relatively untested statute that has yet to be interpreted by the Fifth Circuit, 18 U.S.C. § 1348. "As a result of [§ 1348's] relatively recent vintage . . ." there is "scant caselaw" construing § 1348. *United States v. Ramsey*, No. CR 19-268, 2022 WL 596378, at *8 (E.D. Pa. Feb. 28, 2022). Accordingly, Mr. Hennessey relies on cases outlining well-established securities law principles where necessary, just as the *Ramsey* Court did. *Id.*

**MITCHELL HENNESSEY'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT – PAGE 11**

volume of stock to impact the stock price, and it does allege that Mr. Hennessey disclosed that he himself is a trader and owned the stock he posted about.

*Fourth*, the superseding indictment charges Mr. Hennessey with a crime under § 1348 that a person of ordinary intelligence could not have possibly known was a crime, which violates Mr. Hennessey's basic due process rights under the void-for-vagueness doctrine.

*Fifth*, the conspiracy charge is defective because the superseding indictment does not allege a valid theory of fraud under § 1348, which is the only alleged object of the conspiracy.

*Sixth and finally*, the prosecution violates Mr. Hennessey's First Amendment rights under the Free Speech Clause because the government's theory of fraud attempts to criminalize truthful, constitutionally-protected speech.

## A.   Mr. Hennessey had no fiduciary or fiduciary-type duty to disclose when he intended to sell his stock.

The superseding indictment does not allege that Mr. Hennessey had any fiduciary or fiduciary-type duty to disclose when he intended to sell stock, but the government's theory of fraud relies on the Court finding such a duty.

### 1.   The government's theory relies on a fiduciary or fiduciary-type duty to disclose.

The theory of fraud alleged in the superseding indictment and further explained by the government at the April 12, 2023 hearing relies on a fiduciary or fiduciary-type duty that would require Mr. Hennessey to disclose when he intended to trade.

*First*, the superseding indictment alleges that "the defendants held themselves out to investors on Twitter, Discord, and elsewhere as skilled stock traders" and "used their credibility" and "social media influence" to "maximize their own trading profits . . . often at the expense of their Twitter followers and members of Atlas Trading Discord." ECF 134 at ¶ 12. The superseding indictment falls short of explicitly alleging a fiduciary duty, yet the government's theory of fraud

relies on some type of relationship based in "trust and confidence" that could give rise to a duty to disclose. But no such relationship existed. Therefore, the government has not, and cannot, allege sufficient facts to establish such a relationship.

*Second*, the government made clear that its theory of fraud requires the Court to find a fiduciary-type relationship when arguing at the April 12, 2023 hearing why Mr. Constantinescu's tweets about DatChat, Inc. (DATS) were allegedly fraudulent. The government argued that Mr. Constantinescu "conceals, as we state in Paragraph 14 of the indictment, that he just sold 91 percent of his shares and pocketed $5 million. He does not make a peep about that to all of *his followers who are trusting him and relying on what he's telling them*." ECF 252 at 21:14–24.

### 2.     Unilateral expectations or reliance are insufficient to create a fiduciary or fiduciary-type duty.

"Nondisclosure can constitute proof of a scheme to defraud *only* where the defendant is under a duty to disclose." *United States v. Harris*, 821 F.3d 589, 600 (5th Cir. 2016) (citations omitted) (emphasis added).[11] The creation of a fiduciary duty is not to be taken lightly. *See Chiarella*, 445 U.S. at 232–35; *United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006) ("Before the rigors of the criminal law may be imposed, the [defendant] in question should reasonably be on notice that he has entered into a relationship with his customer that gives him heightened responsibilities."). Quite the opposite, a duty to disclose can only arise if the individual charged with securities fraud was a "corporate agent," "fiduciary," or "person in whom the [listeners] had placed their trust and confidence." *Dirks v. SEC*, 463 U.S. 646, 657–58 (1983) (citing *Chiarella*,

---

[11] Like a prosecution for securities fraud under § 1348, a prosecution for mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343) also requires proof of a duty to disclose where the alleged scheme to defraud is based on a theory of nondisclosure. *See Harris*, 821 F.3d at 600 (first citing *United States v. Gaspard*, 744 F.2d 438, 440 (5th Cir. 1984), then citing *United States v. Ballard*, 663 F.2d 534, 540–41 & n.16 (5th Cir. 1981)).

445 U.S. at 232); *see also In re Enron Corp. Sec. Derivative & ERISA Litig.*, 610 F. Supp. 2d 600, 647–48 (S.D. Tex. 2009) ("After *Chiarella* that relationship is the threshold and dispositive element, and it must be fiduciary or confidential—to give rise to a duty to disclose. . . . The mere expectation or reliance of a party upon disclosure where there is no confidential relationship is insufficient, indeed irrelevant, to the creation of a duty."). Such a relationship "generally arises over a long period of time when parties have worked together toward a mutual goal," such that one party "is justified in relying on the other to act in his best interest." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 238 F. Supp. 3d 799, 821 (S.D. Tex. 2017). The mere fact that person A "trusts" person B in the colloquial sense is not enough to impose a fiduciary duty. *See Rutherford v. Exxon Co., U.S.A.*, 855 F.2d 1141, 1146 (5th Cir. 1988).

A fiduciary relationship requires "de facto control and dominance," "discretionary authority and dependency," and a relationship where "confidence is reposed on one side and there is resulting superiority and influence on the other." *SEC v. Mapp*, 240 F. Supp. 3d 569, 581–82 (E.D. Tex. 2017) (quoting *United States v. Chestman*, 947 F.2d 551, 568 (2d. Cir. 1991)). "Mere subjective trust" and "personal relationships" alone are "insufficient to establish a fiduciary duty that creates a duty to disclose." *Id.* at 582 (first citing *Welk v. Simpkins*, 402 F. App'x 15, 20 (5th Cir. 2010), then citing *Town N. Bank, N.A. v. Shay Fin. Services, Inc.*, No. 3:11-CV-3125-L, 2014 WL 4851558, at *17 (N.D. Tex. Sept. 30, 2014)). Additionally, a fiduciary relationship "must be 'mutual and understood as such by both parties.'" *Id.* (quoting *Alexander v. Martin*, No. 2:08-CV-400, 2010 WL 3715165 (E.D. Tex. Aug. 20, 2010)); *see also In re Enron Corp.*, 610 F. Supp. 2d 600, 649 (S.D. Tex. 2009) (holding that "unilateral expectations . . . do not give rise to . . . a duty to disclose").

The same standard holds true for any duty to disclose based on a "relation of confidence and trust," as such relationship must be the "functional equivalent of a fiduciary relationship" where there are characteristics of "de facto control and dominance." *Chestman*, 947 F.2d at 568; *Skelly*, 442 F.3d at 98–99; *Mapp*, 240 F. Supp. 3d at 582.

Whether a fiduciary duty exists is a question of law properly decided on a motion to dismiss. *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 1446, 2016 WL 4095973, at *8 (S.D. Tex. Aug. 2, 2016); *Mapp*, 240 F. Supp. 3d at 582.

### 3. The superseding indictment does not allege that Mr. Hennessey had a fiduciary or fiduciary-type duty, nor does it allege facts sufficient to establish such a duty.

The superseding indictment does not allege that Mr. Hennessey, or any defendant for that matter, had any fiduciary or fiduciary-type duty to disclose when he intended to sell stock, nor does it allege facts that could give rise to such a duty.

The superseding indictment does not allege that Mr. Hennessey:

- had any fiduciary, business, transactional, or personal relationship, much less one based in confidence and trust, with anyone; or

- received any compensation of any kind from any individual who may have viewed his social media posts.

Nevertheless, the government asserts that Mr. Hennessey had a duty to disclose when he intended to sell stock to anyone who may have viewed one of his social media posts. But the government's theory fails as a matter of law, as courts within this Circuit have already rejected similar attempts to create a fiduciary or fiduciary-type duty where none existed. *See Mapp*, 240 F. Supp. 3d at 582.

In *Mapp*, the SEC accused Texas Attorney General Ken Paxton of committing securities fraud by promoting Servergy's stock to an investment group of his friends, business associates, clients, and a former roommate "without disclosing to [those] potential investors that he was being paid to do so." *Id.* at 575–78. Paxton filed a motion to dismiss, arguing that he had no duty to

disclose his compensation. The court agreed, finding that despite the personal and long-term relationships that Paxton had with his investor group, the SEC failed to allege that Paxton ever asserted control or dominance over investment group members and thus, did not allege that Paxton had a fiduciary relationship. *Id.* at 582.

Similarly, the court found that the SEC did not allege sufficient facts to demonstrate a relation of "confidence and trust" that could create a duty to disclose because, among other things, Paxton did not have any family relationships with the other investors, he did not control aspects of the investors' lives, nor did he try and use his position to influence the investors' business and/or personal affairs. *Id.* (citing *Alexander*, 2010 WL 3715165, at *12).

The superseding indictment fails to allege that Mr. Hennessey had a fiduciary or fiduciary-type relationship with anyone, nor does it allege facts that could establish such a duty. While the superseding indictment asserts that Mr. Hennessey used his "credibility" and "social media influence" for his own financial gain, it contains no allegation that he had a relationship of "confidence and trust," much less "de facto control and dominance," with anyone. The superseding indictment does not allege that Mr. Hennessey was a member of any exclusive investment group, that he represented anyone's interest in a formal or informal capacity, or that he was roommates or friends with anyone viewing his social media posts—facts alleged in *Mapp* that were still not enough to create a fiduciary or fiduciary-type duty to disclose. *See Mapp*, 240 F. Supp. 3d at 575–78.[12]

---

[12] *Mapp* is not an outlier. Multiple courts, including this Court, have rejected claims that a defendant had a duty to disclose even in cases where the parties had financial relationships: *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 711 (S.D. Tex. 2004) (finding no "similar relation of trust and confidence" between investors and over 100 brokerage firms, investment banks, and financial institutions that shorted the investors' stock); *United States v. Hunt*, No. 05 CR. 395 (DAB), 2006 WL 2613754, at *6 (S.D.N.Y. Sept. 6, 2006) (finding that a trading floor "specialist" does not "exercise discretionary authority on behalf of the trading

Nor does the superseding indictment allege that Mr. Hennessey had any paid subscribers, directly communicated with any stock purchaser, or received any compensation from any company about which he posted—facts previously found to create a duty for a writer to disclose to his paid subscribers his ownership of stocks about which he wrote, but that are not present here. *See, e.g.*, *SEC v. Park*, 99 F. Supp. 2d 889, 899–900 (N.D. Ill. 2000) (finding that Park charged a fee to subscribers and "may have assumed a duty to disclose" to those subscribers that he owned the stock and received compensation from the companies whose stock he recommended to his subscribers); *SEC v. Huttoe*, No. CIV.A. 96-2543, 1998 WL 34078092, at *6 (D.D.C. Sept. 14, 1998) (finding writer for a paid-subscription newsletter had a duty to disclose that he received free stock from companies in exchange for writing articles recommending that his paid subscribers purchase that company's stock).

Indeed, in the very tweets upon which the superseding indictment relies, Mr. Hennessey stated that he was not a financial advisor and that his tweets were not advice. In the February 10, 2021 tweet regarding TRCH, Mr Hennessey stated:

> All tweets are my ideas and opinions not advice. I am not and NEVER will be your financial advisor. Learn. To. Trade.

ECF 134 at ⁋ 34. And in the May 19, 2021 tweets regarding SURF, Mr. Hennessey stated:

> All tweets are MY ideas and opinions not advice. I actively trade positions & could be buying or selling any stock mentioned at any time.

*Id.* at ⁋⁋ 57, 61.

---

public," and therefore did not "owe a fiduciary duty to the public"); *Alexandra Glob. Master Fund, Ltd. v. Ikon Office Sols., Inc.*, No. 06 CIV. 5383, 2007 WL 2077153, at *8 (S.D.N.Y. July 20, 2007) (finding that a corporation that repurchased its 5% convertible note from a former holder owed the holder no fiduciary duty, or analogous duty based in "trust and confidence," to disclose its plan to "launch a new private placement").

The superseding indictment fails to allege that Mr. Hennessey had a relationship of "confidence and trust," much less "de facto control and dominance," with anyone that could establish a duty to disclose when he intended to sell stock. Thus, Mr. Hennessey had no duty to disclose when he intended to sell stock, and the securities fraud charges (Counts 5, 8, 9, 10, and 11) and conspiracy charge (Count 1) based on this theory of fraud should therefore be dismissed.

**B.    Mr. Hennessey made no statements regarding when he intended to sell his stock, so he had no obligation to disclose information on that particular subject.**

The superseding indictment does not allege that Mr. Hennessey ever posted about when he intended to sell stock, so no obligation could have arisen requiring him to speak on that particular subject. Mr. Hennessey's alleged statements were not misleading because they stated that he had purchased a stock—i.e., he was "long"—and referred to the type of trade he was attempting—i.e., a "swing"—not when he intended to sell stock. Thus, none of his alleged statements could constitute materially misleading misstatements that could create a duty for him to disclose when he intended to sell stock. Further, Mr. Hennessey's statements could not have been materially misleading because, according to the allegations in the superseding indictment and the tweets upon which the superseding indictment relies, Mr. Hennessey disclosed that he himself had an interest in each stock and that he was a trader who could be buying or selling the stock at any time.

**1.    A duty to disclose only arises if a defendant discloses material facts on a particular subject but fails to speak the whole truth on that particular subject.**

If a defendant does not have an independent duty to disclose, then a defendant's omission can only give rise to securities fraud liability if the "defendant elects to disclose some *material* facts, but fails to speak the whole truth." *Mapp*, 240 F. Supp. 3d at 584 (citing *First Va. Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir. 1977) (emphasis added)).

"[A] duty to speak the full truth *on a particular subject* arises when a defendant undertakes to say anything *on that particular subject*." *Id.* (citing *McNamara v. Bre–X Minerals Ltd.*, 57 F. Supp. 2d 396, 416 (E.D. Tex. 1999) (emphasis in original)); *see id.* ("To survive a motion to dismiss under this theory, the Commission would have to identify a statement made by Paxton regarding his compensation that was materially misleading." (citing *SEC v. Curshen*, 372 F. App'x 872, 880 (10th Cir. 2010)).

Furthermore, "[d]isbelief or undisclosed motivation, standing alone, is insufficient to sustain an action for fraud absent proof by objective evidence that *the statement at issue* expressly or impliedly asserted something false or misleading *about its subject matter*." *Causey*, 2005 WL 2647976, at *6 (citing *Virginia Bankshares*, 501 U.S. at 1096 (emphasis added)).

> ### 2. The superseding indictment does not allege that Mr. Hennessey ever spoke on the particular subject of when he intended to sell stock.

The "particular subject" that the superseding indictment alleges Mr. Hennessey was required to post about was when he intended to sell stock. But the government does not allege that Mr. Hennessey ever spoke about when he intended to sell stock. Therefore, as a matter of law, Mr. Hennessey had no duty to speak on that particular subject.

**Count 5 – TRCH.** In Count 5, the government alleges that the following statements were fraudulent:

- February 10, 2023 at 10:11:04 EST: "Long TRCH for merger."

- February 10, 2023 at 10:11:08 EST: "New swing $TRCH[.] They HAD to do an offering to get to the level of cash they needed[.] NOW the merger is full steam ahead baby . . . ." ECF 134 at ⁋ 34.

**Count 10 – SURF.** In Count 10, the government alleges that the following statements were fraudulent:

- May 19, 2021 at 9:51 EST: "I am long $SURF – have been stalking this company and would be shocked if acquisition deal was not done by EOY . . ." *Id.* at ¶ 57.

- May 19, 2021 at 10:04 EST: "[w]on't need to post about her much.  $Surf already tons of dd out there[.]  Unless new DD comes out.  Only way I'll be out of this one is if bad catalyst.  Long and strong babyyy . . . ." *Id.* at ¶ 61.

In addition to the specific statements alleged in Counts 5 and 10, the superseding indictment alleges that the defendants made four "types" of purportedly "false and misleading" statements:

a.  Messages representing that a defendant intended to hold the security, including for a "swing" or a longer-term trade, as opposed to a short-term trade or day trade;

b.  Messages representing that a defendant "joined" another defendant in purchasing the security or was "adding" to a position in the security;

c.  Messages concerning a purported price target for the security that was significantly higher than the price at which the security was currently trading, and that was higher than the defendants actually valued the security; and

d.  Messages concerning "due diligence" about the security and purported catalysts that would increase the security's price over time.

*Id.* at ¶ 13. The superseding indictment does not allege that any of these statements were affirmative false statements, but that they were rendered "false and misleading" in light of Mr. Hennessey's alleged intent to sell stock at or around the time of his posts. The government explained the alleged theory of fraud at the April 12, 2023 hearing:

[I]t's actually in Paragraph 14 of the indictment exactly what the theory of falsity is. . . . Paragraph 13 . . . describes all the various types of false statements that are false and misleading in this case and it lists out . . . four types of false and misleading statements.

[T]o understand why these statements are false and misleading, . . . [one] has to read Paragraph 14 of the indictment, the paragraph that

comes exactly after the paragraph that describes the types of false statements in this case.

And Paragraph 14 says[,] . . . "These messages were false and misleading, and omitted material information, because the defendants concealed their intent to use these messages to induce other investors to purchase the securities so that the defendants could sell their shares at a higher price at and around the time of the messages."

And it goes on and gives you even more detail about the theory of falsity. . . . "In this way, the defendants used social media to induce other investors to purchase and hold the same securities that the defendants were selling or dumping so that the defendants could maximize their own profits."

The theory of falsity is literally in the indictment[.]

ECF 252, 19:18–20:19.

The government stated unequivocally that the sole theory of falsity alleged in the superseding indictment is Mr. Hennessey's allegedly undisclosed motivation for posting—that is, "to induce other investors to purchase and hold the same securities . . . so that [he] could maximize [his] own profits." *See id.*; ECF 134 ¶¶ 13–14. This allegation is insufficient as a matter of law to sustain a criminal securities fraud prosecution. *See Virginia Bankshares*, 501 U.S. at 1096.

Further, the superseding indictment does not allege that Mr. Hennessey ever posted any statement whatsoever on the subject of when he intended to sell stock; thus, he could have no obligation to disclose on that particular subject.

> **3.**   **Mr. Hennessey's alleged statements refer to owning stock—"long"— and a type of trading—"swing"—not when he intended to sell stock.**

The closest the superseding indictment gets to alleging that Mr. Hennessey ever made any statement regarding when he intended to sell stock is in paragraph 13.a: "Messages representing that a defendant intended to hold the security, including for a 'swing' or a longer-term trade, as opposed to a short-term trade or day trade[.]" But the terms "long" and "swing" do not refer to

how long a trader intends to hold a stock or when a trader intends to sell. Rather, "long" means that one has actually purchased a stock, anticipating that the price will go up, as opposed to being "short" a stock where one borrows shares, anticipating that the price will go down. And "swing" refers to a *type* of trade that is typically based on a technical analysis and involves identifying where an asset's price is likely to move next, entering a position, and then capturing a chunk of the profit if that move materializes.

The superseding indictment does not define "long" and provides no support for its alleged definition of "swing," which is incomplete at best. Courts regularly consult outside sources to determine definitions of terms included in the indictment when deciding a motion to dismiss, and this Court should do the same. *See United States v. Gonzalez*, 792 F.3d 534, 537 (5th Cir. 2015) (considering definition of "component"); *Forkner*, 584 F. Supp. 3d at 186–89 (affirming dismissal of two counts in indictment after reviewing dictionary definitions of "part").

### a.      Definition of Long.

The superseding indictment does not define "long." *See* ECF 134.

According to the SEC, "buying long" simply means "[p]urchasing or owning shares of stock, with the expectation that the stock will rise in value." *See* Investor.gov, *Introduction to Investing*, available at https://www.investor.gov/introduction-investing/investing-basics/ glossary/buying-long the security (last visited 5/8/2023). In other words:

> Having a "long" position in a security means that you own the security. Investors maintain "long" security positions in the expectation that the stock will rise in value in the future. The opposite of a "long" position is a "short" position. A "short" position is generally the sale of a stock you do not own.

Investor.gov, *Stock Purchases and Sales: Long and Short*, available at https://www.investor.gov/introduction-investing/investing-basics/how-stock-markets-work/stock-purchases-and-sales-long-and (last visited May 8, 2023).

**MITCHELL HENNESSEY'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT – PAGE 22**

Investopedia provides an example of what it means for someone to say he is "long" in a stock:

> For example, let's say Jim expects Microsoft Corporation (MSFT) to increase in price and purchases 100 shares of it for his portfolio. Jim is therefore said to 'be long' 100 shares of MSFT.

Adam Hayes, *Long Position: Definition, Types, Example, Pros and Cons*, Investopedia (Oct. 6, 2021), available at https://www.investopedia.com/terms/l/long.asp (last visited May 7, 2023).

Thus, Mr. Hennessey's statements that he was "Long TRCH," ECF 134 at ⁋ 34, and "long $SURF," *id.* at ⁋ 57, simply meant that he had purchased TRCH and SURF. His statements did not include any reference to when Mr. Hennessey intended to sell those stocks.

### b.      Definition of Swing.

The superseding indictment alleges a definition of "swing" that is incomplete at best. The superseding indictment alleges that "[a] 'swing' is a term used to describe a position in a security that is held over the medium to long term, as opposed to a day trade." *Id.* at ⁋ 34. The government's suggested definition attempts to cast the term "swing" as a statement about timing, but it is not. "Swing" refers to a type of trade that is typically based on technical analysis and a prediction of an asset's future price.

Investopedia.com explains that "[t]ypically, swing trading involves holding a position either long or short for more than one trading session," but swing trades "can also occur during a trading session." It goes on to explain:

> The goal of swing trading is to capture a chunk of a potential price move. While some traders seek out volatile stocks with lots of movement, others may prefer more sedate stocks. In either case, *swing trading is the process of identifying where an asset's price is likely to move next, entering a position, and then capturing a chunk of the profit if that move materializes.*

Cory Mitchell, *Understanding Swing Trading*, Investopedia (Mar. 2, 2023), available at https://www.investopedia.com/terms/s/swingtrading.asp#toc-understanding-swing-trading (last visited May 7, 2023) (emphasis added).

c.   <b>Mr. Hennessey's alleged statements refer to types of trades and circumstance that would cause him to close out his entire position in SURF, not <i>when</i> he intended to sell stock.</b>

The government's theory appears to be that by using the terms "long" and "swing," Mr. Hennessey was stating that he "intended to hold the security, including for a 'swing' or a longer-term trade, as opposed to a short-term trade or day trade." ECF 134 at ¶ 13.a. But this theory is flatly contradicted by the plain meaning of those terms. Neither "swing" nor "long" refer to when a trader intends to sell.

Similarly, Mr. Hennessey's alleged statement "Unless new DD comes out. Only way I'll be out of this one is if bad catalyst," *id. at* ¶ 61, does not refer to *when* he intends to sell SURF stock, but rather, refers to the *circumstances* (new due diligence or a bad catalyst) that would cause him to *close out his entire position* in the stock. The superseding indictment also alleges that Mr. Hennessey held SURF stock for 13 days after this tweet. *Id.* So even under the government's flawed definition, the superseding indictment has alleged that Mr. Hennessey truthfully stated that he intended to "swing" trade SURF.

Thus, none of Mr. Hennessey's alleged statements refer at all to when he intended to sell stock.

Indeed, in the very tweets upon which the superseding indictment relies, Mr. Hennessey directly and explicitly states that he is not a financial advisor and that he himself is a trader[13] who

---

[13] "A day trader is a type of trader who executes a relatively large volume of short and long trades to capitalize on intraday market price action. The goal is to profit from very short-term price movements." James Chen, *Day Trader: Definition, Techniques, Strategies, and Risks*,

could be buying and selling stock at any time. Similarly, the superseding indictment alleges that Discord Atlas Trading was a "stock-trading chat room," ECF ¶ 2, and thus, it would have been apparent to anyone in that chat room that Mr. Hennessey was a trader and could be buying or selling stock at any time. Thus, the very posts upon which the superseding indictment relies directly contradict the government's theory that Mr. Hennessey's statements were false and misleading because they failed to disclose when he intended to sell stock.

The superseding indictment simply does not allege that Mr. Hennessey ever told anyone when he intended to sell, and thus, as a matter of law, Mr. Hennessey had no obligation to disclose when he intended to sell stock. Accordingly, the securities fraud charges (Counts 5, 8, 9, 10, and 11) and the conspiracy charge (Count 1) that rely on the government's theory of fraud by nondisclosure should be dismissed.

### C.   Mr. Hennessey's statements could not have been *materially* false or misleading.

Even if Mr. Hennessey did have a fiduciary or fiduciary-type relationship, or even if he had spoken on the particular subject of when he intended to trade, Mr. Hennessey still would not have been required to disclose when he intended to sell because his trading intentions could not be material. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231 (1988) ("A misstatement or omission is material if 'there [is] a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'"); *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 450 (1976).

The government does not allege that Mr. Hennessey ever held a sufficient volume of stock such that his trading activity could impact the price of the stock, so when he intended to trade could

---

Investopedia.com (June 13, 2022), available at https://www.investopedia.com/terms/d/daytrader.asp (last visited May 2, 2023).

not have been material to a reasonable investor. Indeed, the superseding indictment does not even allege that the defendants' alleged "dump" of any stock caused the value of the stock to decrease. *See* ECF 134.

Further, this Court has already found that even undisclosed facts cannot be considered material when those facts are inherently obvious to a reasonable investor. *See Stephens v. Uranium Energy Corp.*, No. CV H-15-1862, 2016 WL 3855860, at *23 (S.D. Tex. July 15, 2016) (finding that investors knew that a third party was receiving financial compensation to author the articles, thus, even if they did not know that the issuer of their stock was affiliated with the author, any reasonable investor who knew that the stock was being "touted" would give the "recommendation the proverbial grain [of] salt"); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 747, 762 (S.D. Tex. 2012) (finding that plaintiffs' claim that BP did not sufficiently disclose the volatile nature of deepwater drilling was insufficient to state a securities fraud claim because the likelihood of kicks or blowouts in deepwater drilling operations is exactly the type of risk inherent in an investment in the oil industry that investors are generally aware of). The superseding indictment alleges that Mr. Hennessey disclosed that he had an interest in the stock he mentioned and that he was a trader, and in the tweets upon which the superseding indictment relies, Mr. Hennessey stated he was not a financial advisor and could be trading any stock mentioned at any time.

Thus, Mr. Hennessey had no duty to disclose when he intended to sell stock because his posts could not have been materially misleading.

### D.     The prosecution of Mr. Hennessey under § 1348 is unconstitutional under the void-for-vagueness doctrine.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S.

at 357. Section 1348, as applied to Mr. Hennessey, violates this basic principle of due process because he was not provided fair warning that posting about stocks on social media as a retail day trader without disclosing when he intended to sell stock could constitute a federal crime. Therefore, Counts 1, 5, 8, 9, 10, and 11 should be dismissed.

> **E.    Count 1 of the superseding indictment must be dismissed because the government fails to allege an unlawful object of the conspiracy.**

"Section 1349 requires proof of a conspiracy to commit an offense of fraud and that such fraud is *the object* of the conspiracy." *United States v. Njoku*, 737 F.3d 55, 67 (5th Cir. 2013) (emphasis added). There is no conspiracy in violation of § 1349 if the alleged object of the conspiracy is not criminal. *See, e.g.*, *United States v. Hendricks*, 116 F.3d 1476, 1997 WL 304169, at *4 (5th Cir. 1997); *United States v. Campbell*, 64 F.3d 967, 975 (5th Cir. 1995); *see also United States v. White Eagle*, 721 F.3d 1108, 1114 (9th Cir. 2013) ("Because the alleged object of the conspiracy [] was not itself criminal, there can be no conspiracy."). The superseding indictment fails to allege an unlawful object of a conspiracy to commit securities fraud because Mr. Hennessey had no duty to disclose when he intended to sell stock, and undisclosed motive cannot form the basis of a securities fraud charge.

Additionally, the superseding indictment does not allege that Mr. Hennessey had knowledge of any allegedly fraudulent conduct. In fact, the superseding indictment does not allege that he knew that any codefendants' alleged statements were false, nor does it allege that Mr. Hennessey knew when his codefendants intended to sell stock. Thus, the alleged object of the conspiracy was not only lawful, but the superseding indictment fails to allege facts that could support that Mr. Hennessey had knowledge of any conspiracy, much less any intent to join a conspiracy. *See United States v. Hamilton*, 37 F.4th 246, 257 (5th Cir. 2022) (holding that the

government must prove the defendant's knowledge of the unlawful objective of the conspiracy under § 1349). Therefore, Count 1 of the superseding indictment should also be dismissed.

**F.     The prosecution violates Mr. Hennessey's First Amendment rights under the Free Speech Clause.**

The superseding indictment should be dismissed because the government's prosecution constitutes an unconstitutional restraint on Mr. Hennessey's protected speech. The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech[.]"  U.S CONST. amend. I.

A defendant whose protected speech is being unconstitutionally restricted through criminal prosecution may attack the relevant statute via a facial or as-applied challenge. "A facial challenge is an argument asking the court to hold that a particular law can never be validly enforced, whereas an as-applied challenge is an argument asking the court to hold that a law cannot be enforced in some particular set of circumstances." *Sonnier v. Crain*, 613 F.3d 436, 456 (5th Cir. 2010), *opinion withdrawn in part on reh'g*, 634 F.3d 778 (5th Cir. 2011). "The underlying First Amendment standard for an as-applied challenge is no different than the standard for a facial challenge." *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 798 (S.D. Tex. 2013) (citing *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010)).

Here, it is beyond dispute that Mr. Hennessey's tweets and posts constitute speech. *See Jackson v. Ladner*, 626 F. App'x 80, 88 (5th Cir. 2015) ("[I]t can hardly be disputed that Internet speech [is] protected by the First Amendment[.]"). Mr. Hennessey's speech is protected from government intrusion because his speech was not unprotected fraudulent speech, and the government cannot demonstrate that it is otherwise permitted to regulate his protected pure speech.

1.     **Strict scrutiny applies because the government seeks to criminalize Mr. Hennessey's pure speech based on the content of his posts.**

Mr. Hennessey's tweets and posts concerned his thoughts and opinions on various stocks. Accordingly, the government's attempt to criminalize Mr. Hennessey's speech is based on an examination of "the content of the message that [was] conveyed." *Serv. Employees Intern. Union, Local 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010). The superseding indictment quotes four of Mr. Hennessey's posts and analyzes the content of those and other of his posts to allege that he committed a crime. The fact that Mr. Hennessey's speech concerned securities, or financial markets more generally, does not render his speech commercial speech. *See id.*; *see also Commodity Trend Serv. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 682 (7th Cir. 1998) (finding that publications that included "securities and commodities market charts, market commentary, and education publications concerning markets and trading" without "personalized financial planning services or trading advice tailored to the individual needs of any particular subscribers" was fully-protected pure speech under *Lowe v. SEC*, 472 U.S. 181, 205 (1985)); Eugene Volokh, *Freedom of Speech and Information Privacy: The Troubling Implications of a Right to Stop People From Speaking About You*, 52 STAN. L. REV. 1049, 1081–82 (2000).

Because Mr. Hennessey was engaged in protected pure speech, the government must establish that its content-based restriction is narrowly tailored to advance a compelling interest. *See R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 395–96 (1992). The government cannot meet this high bar because this prosecution suppresses a significant amount of speech that falls outside the government's interest in regulating fraudulent speech. *See Citizens United*, 558 U.S. at 361–62.

**2.    The government cannot articulate a compelling basis to criminalize Mr. Hennessey's truthful protected speech.**

Section 1348 is unconstitutional as applied to Mr. Hennessey because it is not narrowly tailored.

*First*, each of Mr. Hennessey's affirmative statements constitutes protected speech, and the government's theory of fraud based on nondisclosure fails as a matter of law. Thus, Mr. Hennessey's statements were not fraudulent and remain protected speech.

*Second*, the government cannot allege a viable interest, much less a compelling interest, to regulate Mr. Hennessey's truthful speech or to compel him to speak about when he intends to sell stock. The government's efforts to regulate Mr. Hennessey's speech through criminal prosecution violates the First Amendment, and the superseding indictment should therefore be dismissed.

The superseding indictment only identifies four alleged statements by Mr. Hennessey. ECF 134 at ¶¶ 34, 57, 61. The specific alleged statements by Mr. Hennessey fall into two categories: (1) statements of fact and (2) statements of opinion. The superseding indictment does not allege that any of these statements were affirmative misrepresentations, but only that they were rendered "false and misleading" by the nondisclosure that Mr. Hennessey intended to sell stock "at and around the time" he made the statements. *See* ECF 134 at ¶¶ 13–14.

Statements of opinion are only actionable as securities fraud in very narrow circumstances—which are not alleged here: (1) if the statement is material; (2) the speaker does not subjectively believe the statement; and (3) the statement is objectively false. *Virginia Bankshares*, 501 U.S. at 1091–92. "Disbelief or [an] undisclosed motivation, standing alone, is insufficient to sustain an action for fraud[.]" *Causey*, 2005 WL 2647976, at *6 (S.D. Tex. Oct. 17, 2005) (citing *Virginia Bankshares*, 501 U.S. at 1096). Furthermore, where a speaker outlines the facts supporting his conclusion, his statement is protected under the First Amendment because "the

reader understands that such supported opinions represent the writer's interpretation of the facts presented[.]" *See Moldea v. New York Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994).

As a threshold matter, the superseding indictment does not allege that any of Mr. Hennessey's statements were objectively false, so they simply cannot be actionable as securities fraud. Indeed, each of Mr. Hennessey's statements of opinion are based on either the TRCH investor deck or a SURF press release—both of which were included in the very tweets the government quotes. For SURF, Mr. Hennessey provided a list of five factors, in addition to SURF's press release, that formed the support for his opinion. Mr. Hennessey stated:

> For the short term this has
> -Beat down – cash heavy
> -Catalyst within 3 weeks
> -Chart just broke major down trend
> -Inst. loading (including ark)
> -At a valu discount

WAYBACK       MACHINE,       https://web.archive.org/web/20210520030753/https://twitter.com/ Hugh_Henne/status/1395014241422397452 (last visited May 9, 2023). Thus, not only does the superseding indictment not allege that Mr. Hennessey's stated opinions were objectively false, but the allegation relies on tweets in which Mr. Hennessey provided the facts supporting his opinions so that any reader would understand that Mr. Hennessey's opinions were based on his interpretation of the facts presented. *See Moldea*, 22 F.3d at 317.

Further, Mr. Hennessey's statements such as "full steam ahead baby" and "Long and strong babyyy" are non-actionable puffery and corporate cheerleading that are insufficient to establish securities fraud liability even in a civil case against corporate insiders. Puffery, or optimistic projection of future performance not worded as a guarantee, is non-actionable under federal securities laws. *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 748 (S.D. Tex. 2012); *see also United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009).

MITCHELL HENNESSEY'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT – PAGE 31

These statements of verified fact and opinion are protected speech, and the government has no compelling interest in regulating such speech through a criminal prosecution that infringes on Mr. Hennessey's First Amendments rights and threatens to chill the protected speech of retail traders across the nation.

### 3. The government's prosecution is an unconstitutional attempt to compel speech.

The government's prosecution not only attacks pure speech, it also seeks to compel speech by requiring a retail trader who posts about a stock to then post when that trader intends to sell that stock.

"Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988). "The right to speak and the right to refrain from speaking are complementary components of the broader concept of 'individual freedom of mind.'" *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Compelling speech is considered a "content-based regulation of speech," whether the speech concerns statements of opinion or fact, that is subject to strict scrutiny when the speech at issue is pure speech. *Riley*, 487 U.S. at 795–98 (citing *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 256 (1974)).

The government's strained effort to compel speech has no legal support and no logical end. The government seeks to impose a severe restriction on protected speech, forcing retail traders who wish to engage in protected speech about stocks to disclose their confidential, proprietary trading strategies or face criminal prosecution. This is unfair and unconstitutional.

## V.    CONCLUSION

For the reasons set forth above, Mitchell Hennessey respectfully moves the Court to dismiss the superseding indictment. The charges fail to allege a viable theory of fraud and constitute a significant infringement of Mr. Hennessey's constitutional right to free speech.

The government's sole theory of falsity is that Mr. Hennessey's truthful social media posts were rendered false and misleading because Mr. Hennessey did not disclose at the same time his alleged intention to sell stock at and around the time of his posts. But the superseding indictment fails to allege that Mr. Hennessey had any obligation whatsoever to disclose when he intended to sell stock.

The government's prosecution of Mr. Hennessey for his truthful social media posts is also a gross infringement of Mr. Hennessey's constitutional rights under the Free Speech Clause of the First Amendment. The government has offered no compelling justification to force Mr. Hennessey—and by extension, every retail trader around the country—to disclose to the world when he intends to sell a stock simply on the basis that he posted positive information about the stock on social media.

Accordingly, the superseding indictment against Mr. Hennessey should be dismissed.

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
Michael J. Murtha
State Bar No. 24116801
mmurtha@jw.com

1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

**ATTORNEYS FOR DEFENDANT
MITCHELL HENNESSEY**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I conferred with counsel for the government about the relief requested herein on May 11, 2023. The government is opposed to the requested relief.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2023, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova