IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § § § § | |
| **v.** § § § § | No. 4:22-CR-00612-S |
| **EDWARD CONSTANTINESCU,** *et al.* § § § | |

## DEFENDANT EDWARD CONSTANTINESCU'S
## MOTION TO COMPEL DISCLOSURE OF BRADY MATERIAL

Defendant Edward Constantinescu ("Constantinescu") respectfully requests an order requiring the government to disclose Form 1099-Bs for each Defendant and each Co-Conspirator from every brokerage used to trade securities during the relevant time-period of the Indictment. This *Brady* material so substantially undermines the conspiracy charged against all Defendants that its immediate fulsome disclosure is necessary to either elucidate the already-occurred existence of or prevent the realization of a significant constitutional violation. For over six months now, the government has failed to produce financial records equivalent to a glove with somebody's blood other than the defendants' on it. The Court should order their immediate production.

### RELEVANT FACTS

The Indictment charges Constantinescu with (1) one count of conspiracy to commit securities fraud (18 U.S.C. § 1349), along with seven other defendants; (2) five counts of securities fraud (18 U.S.C §§ 1348 & 2), in connection with 5 identified securities; and (3) one count of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C.

§ 1957).[1] Paragraph one alleges "the defendants profited at least approximately $114 million from their scheme." And, with respect to the alleged conspiracy, the Indictment identifies two individuals as co-conspirators: "Co-Conspirator-1" and "Co-Conspirator-2." Indictment, ¶¶ 17, 49, 56,

Following the government's filing of the Original Indictment, it was ordered on December 16, 2022, "to comply with the prosecutor's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny," and was notified of the potential consequences of violating its disclosure obligations including but not limited to "sanctions such as delaying trial or other proceedings, excluding evidence, giving adverse jury instructions, granting a new trial, dismissing the case, or finding the Government in contempt." [ECF 42]. On February 16, 2023, Constantinescu submitted a letter to the government requesting particulars concerning the allegations in the Indictment. Through that letter, Constantinescu asked the government to clarify its allegations with respect to, among others, the Defendants' alleged conspiracy. Then, on March 1, 2023, Constantinescu submitted a letter to the government requesting prompt production of all *Brady* material and identifying general and specific categories of information covered by *Brady*, including: "Any and all Documents or Information tending to exculpate Mr. Constantinescu, and/or statements in sum and substance that Mr. Constantinescu did not engage in a conspiracy." Eight days later, on March 8, 2023, after a requested update from counsel for Constantinescu, the government stated: "With respect to the *Brady* requests, we understand our discovery obligations, have complied with them, and will continue to do so. With respect to the rest of your requests, we otherwise decline to disclose the requested information at this time."

---

[1] Constantinescu currently has two outstanding motions to dismiss. His Motion to Dismiss Count 21 was argued on March 14, 2023 and the Court has taken it under advisement. His Joint Motion to Dismiss covering Counts 1, 2, 14, 15, 18, and 20 was filed on May 10, 2023.

At the end of March, the government shared a spreadsheet listing stock tickers and time frames not mentioned in the Indictment that purportedly represent 402 discreet "pump and dumps" Constantinescu allegedly conspired to commit on Twitter in violation of 18 U.S.C. § 1349. The government also promised that by June 5, 2023 it would produce expert reports detailing its profits calculations and identifying all "false and misleading statements" relevant to the underlying profit calculation for the conspiracy charge, [ECF 234 at 4, citing Ex. 2], but has not done so yet. To date, the government's production includes thousands of pages of trade records reflecting purported trading activity for each Defendant but does not include Form 1099-Bs for Constantinescu or any of the Defendants/Co-Conspirators.[2]

## ARGUMENT

### A. Legal Standard

The Fifth Amendment requires the prosecution to disclose to the defense all evidence in its possession, custody, or control that is favorable to the accused. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (requiring disclosure of exculpatory evidence "material either to guilt or punishment"). Although it is sometimes said that *Brady* "is not a pretrial remedy," *United States v. Garrett*, 238 F.3d F.3d 293, 303 (5th Cir. 1996) (Fish, J., concurring), it is well established that "the *Brady* rule requires the prosecution to disclose material exculpatory evidence prior to trial, whether or not the defense specifically requested the evidence," *United States v. O'Keefe*, No. 95-106, 1996 U.S. Dist. LEXIS 12268, at *69-70 (E.D. La. Aug. 15, 1996). The "question before trial is not whether the government thinks that disclosure of the information or evidence it is

---

[2] The production does appear to include a couple of Form 1099-Bs for Constantinescu from other brokerages, but is certainly missing his and the other Defendants/Co-Conspirators' TD Ameritrade Form 1099-Bs. Because the Defendants' alleged trading activity was done through multiple platforms, Constantinescu requests production of all Form 1099-Bs for each Defendant and Co-Conspirator from each brokerage used by the Defendants/Co-Conspirators to trade securities during the relevant time period.

considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed. . . . Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005).

District courts are not only entitled, but also well positioned to question "the government's representations as to what documents in its possession" constitute *Brady* material. *United States v. Lloyd*, 992 F.2d 348, 352 (D.C. Cir. 1993). If, for example, the government's discovery positions "appear[] likely to [be] based on a misconception as to how" certain evidence "might be material" under *Brady*, a district court is entitled to order that the evidence be "turned over to the defense." *Id*. In addition, the United States Supreme Court has made the government's burden under *Brady* clear: "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). Finally, Federal Rule of Civil Procedure 16(a)(1)(E) provides: "Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . documents. . . if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense . . ." Fed. R. Crim. P. 16

**B. Form 1099-B**

A tax Form 1099-B (Proceeds from Broker and Barter Exchange Transactions) is used by securities brokerages to record customers' gains and losses during a tax year.[3] Information on each Form 1099-B includes: (i) the issuer's information, (ii) the taxpayer's information, (iii) a description of each investment, (iv) the purchase date and price, and (v) the resulting gain or loss.[4]

---

[3] Adam Barone, *Form 1099-B: Proceeds From Broker and Barter Exchange Transactions Definition*, Investopedia.com, Feb. 2, 2023, https://www.investopedia.com/terms/f/form-1099-b.asp.
[4] *Id*.

The forms effectively include summaries concerning the taxpayer's trading activity in a particular company. Here is an example of one such summary excerpted from a Form 1099-B that Constantinescu personally downloaded from TD Ameritrade (which was not produced by the government):

| 1a- Description of property/CUSIP/Symbol | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1c- Date sold or disposed | Quantity | 1d- Proceeds & 6- Reported (G)ross or (N)et | 1b- Date acquired | 1e- Cost or other basis | 1f- Accrued mkt disc (D) & 1g- Wash sale loss disallowed (W) | Gain or loss(-) & 7- Loss not allowed (X) also not reported (Z) | Additional information |
| CONNEXUS CORP COM / CUSIP: 207146101 / Symbol: CNXS | | | | | | | |
| 01/07/21 | 10,000.000 | -2.14 | 01/01/21 | 1.00 | ... | -3.14 | Zero proceeds / negative sale |
| CONTEXTLOGIC INC COM CL A / CUSIP: 21077C107 / Symbol: WISH | | | | | | | |
| 06/10/21 | 70,000.000 | 791,514.01 | Various | 838,747.97 | ... | -47,233.96 | Total of 25 transactions |
| 07/02/21 | 30,000.000 | 351,742.50 | Various | 358,028.41 | ... | -6,285.91 | Total of 5 transactions |
| 08/02/21 | 10,000.000 | 102,540.82 | Various | 119,200.00 | ... | -16,659.18 | Total of 2 transactions |
| 08/03/21 | 200,000.000 | 2,047,297.83 | Various | 2,347,221.99 | ... | -299,924.16 | Total of 40 transactions |
| 08/12/21 | 88,458.000 | 844,220.10 | Various | 1,026,559.02 | ... | -182,338.92 | Total of 14 transactions |
| 08/13/21 | 1,100,000.000 | 7,601,272.24 | Various | 11,653,022.70 | ... | -4,051,750.46 | Total of 115 transactions |
| 12/01/21 | 1.000 | 3.76 | 12/01/21 | 3.74 | ... | 0.02 | Sale |
| | Security total: | 11,738,591.26 | | 16,342,783.83 | ... | -4,604,192.57 | |

Unlike the thousands of pages of trade records dumped on Constantinescu by the government, a Form 1099-B includes "cost or other basis," making it easy to accurately determine how much was made or lost on each particular trading day. The form also conveniently identifies the total gain or loss for trading in a company for the full tax year. As shown in the example above, Constantinescu lost approximately $4.6 million in ContextLogic Inc. (WISH) in 2021. The information included in the Form 1099-Bs simply displays the Defendants' pertinent trading activity in a coherent format.

By contrast, this critical information cannot be readily ascertained from the thousands of pages of trade records with extensive entries, standing alone. In this respect, the trade records produced by the government are virtually incomprehensible. And, because Constantinescu is alleged to have engaged in a conspiracy in a manner inherently tied to his own and others' trading activity, production of every Defendant and Co-Conspirator's 1099-Bs is necessary in order for the government to satisfy its *Brady* disclosure obligations.

## CONCLUSION

For these reasons, Defendant Constantinescu respectfully requests that this Court grant this Motion to Compel Disclosure of Brady Material and order the government to produce to every Form 1099-B for each Defendant and Co-Conspirator from every brokerage used to trade securities during the relevant time period.

Dated: June 6, 2023

Respectfully submitted,

*/s/ Matthew A. Ford*
Matthew A. Ford
Texas Bar No. 24119390
Cara J. Filippelli
Texas Bar No. 24126183
Ford O'Brien Landy LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (212) 858-0040
Facsimile: (212) 256-1047
mford@fordobrien.com
cfilippelli@fordobrien.com

*Attorneys for Defendant
Edward Constantinescu*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2023, a true and correct copy of the foregoing document was served electronically on all counsel of record via the Court's CM/ECF.

*/s/ Matthew A. Ford*
Matthew A. Ford
