**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU**, *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

**United States' Response in Opposition to Defendant Hennessey's Second Motion to Dismiss**

## Table of Contents

**Relevant Background**…………………………………………………………………2

**Legal Standard**………………………………………………………………………5

**Argument**……………………………………………………………………………6

    I.      Defendants' charged fraud does not require a fiduciary duty, or any other preexisting duty to disclose, to be actionable as securities fraud……………………………………………………………..……6

    II.    The Superseding Indictment alleges that Defendant spoke falsely and fraudulently on the subject of his stock trading and Defendant's dispute over the Superseding Indictments' allegations demonstrate these are disputed factual issues that must go to a jury……………………………………………………………………...9

    III.   Whether the at-issue statements were materially false or misleading is an issue for the jury………………………………………………………………………..15

    IV.   Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here……………………………………………….19

    V.    The Superseding Indictment adequately alleges both a conspiracy to commit securities fraud and substantive securities fraud. …………………………………19

    VI.   The First Amendment does not shield the charged fraud…...…………………21

**Conclusion**…………………………………………………………………………23

## Table of Authorities

**Cases**

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ...............................................15

*Chiarella v. United States*, 445 U.S. 222 (1980) ..................................................8

*Costello v. United States*, 350 U.S. 359 (1956) ...................................................5

*Donaldson v. Read Magazine, Inc.*, 333 U.S. 178 (1948) ...............................21

*Edenfield v. Fane*, 507 U.S. 761 (1993) .............................................................22

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ........................................................19

*Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657 (5th Cir. 2004) ...............13

*Ill., ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) .......................21, 22

*In re:BP p.l.c. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779 (S.D. Tex. May 31, 2016)..13

*Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) ...................................................................................................13

*Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004) ........................16

*McFadden v. United States*, 576 U.S. 186 (2015) ............................................19

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) ...................................................................................................13, 14

*SEC v. Mapp*, 240 F. Supp. 3d 569 (E.D. Tex. 2017) .......................................8

*United States v. Alvarez*, 567 U.S. 709 (2012) .................................................21

*United States v. Autouori*, 212 F.3d 105 (2d Cir. 2000) ..................................7

*United States v. Bailey*, 444 U.S. 394 (1980) .....................................................5

*United States v. Bases*, 18-cr-48, 2022 WL 3586142 (N.D. Ill. Aug. 22, 2022) .....................16

*United States v. Biesiadecki*, 933 F.2d 539 (7th Cir. 1991) .............................8

*United States v. Causey*, 2005 WL 2647976 (S.D. Tex. Oct. 17, 2005) ..................... 15, 17, 18

*United States v. Chanu*, 40 F.4th 528 (7th Cir. 2022) .....................................16

*United States v. Cheng*, No. 4:20-cr-455, 2022 WL 112026 (S.D. Tex. Jan. 12, 2022) .... *passim*

*United States v. Colton*, 231 F.3d 890 (4th Cir. 2000) .....................................7

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ...............................5

*United States v. Foster*, 229 F.3d 1196 (5th Cir. 2000) ...................................15

*United States v. Franco*, 632 F.3d 880 (5th Cir. 2011) .....................................5

*United States v. Goldblatt*, 813 F.2d 619 (3d Cir. 1987) ..................................7

iii

*United States v. Grant*, 683 F.3d 639 (5th Cir. 2009)........................................................20

*United States v. Herman*, 997 F.3d 251 (5th Cir. 2021).......................................................15

*United States v. Hogue*, 132 F.3d 1087 (5th Cir. 1998) .........................................................6

*United States v. Jensen*, 41 F.3d 946 (5th Cir. 1994)...........................................................20

*United States v. Kay*, 359 F.3d 738 (5th Cir. 2004) ...............................................................6

*United States v. Keplinger*, 776 F.2d 678 (7th Cir. 1985) ...................................................6, 7

*United States v. Matthews*, 31 Fed. App'x 838, 2002 WL 261421 (5th Cir. 2002)........ 7, 20, 21

*United States v. Morris*, 80 F.3d 1151 (7th Cir. 1996)............................................................7

*United States v. Nai Fook Li*, 206 F.3d 56 (1st Cir. 2000) ......................................................5

*United States v. Neder*, 527 U.S. 1 (1999) .....................................................................15, 16

*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000)........................................................20

*United States v. Rafoi*, No. 21-20658, 2023 WL 1811921 (5th Cir. Feb. 8, 2023)....................5

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007)...........................................................5

*United States v. Sabo*, 4:23-cr-206 (S.D. Tex. May 25, 2023)..................................................2

*United States v. Smith*, 555 F. Supp. 3d 563 (N.D. Ill. 2021) ..................................................7

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ..........................................................6

*United States v. Swenson*, 25 F.4th 309 (5th Cir. 2022)..........................................................6

*United States v. Townley*, 665 F.2d 579 (5th Cir. 1982) ......................................................7, 9

*United States v. Vorley*, 420 F. Supp. 3d 784 (N.D. Ill. 2019)..................................................7

*United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016) .........................................................7

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ........................................13, 14, 18

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)...........................................22

## Statutes

18 U.S.C. § 1348 ...........................................................................................*passim*

18 U.S.C. § 1349 ......................................................................................................2

18 U.S.C. § 1957 ......................................................................................................2

## Other Authorities

Adam Hayes, *Long Position: Definition, Types, Example, Pros and Cons*, INVESTOPEDIA.COM,
Oct. 6, 2021, https://www.investopedia.com/terms/l/long.asp ...........................................10

Christina Majaski, *Day Trading vs. Swing Trading: What's the Difference?*,
INVESTOPEDIA.COM, May 8, 2023, https://www.investopedia.com/articles/active-
trading/052815/pros-cons-day-trading-vs-swing-trading.asp...............................................11

Cory Mitchell, *Swing Trading: Definition and the Pros and Cons for Investors*,
INVESTOPEDIA.COM, Mar. 2, 2023,
https://www.investopedia.com/terms/s/swingtrading.asp#toc-understanding-swing-trading.11

Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases)
§ 1.40, "Materiality," (2019 ed.)............................................................................. 15, 17

Nicholas Reimann, *Twitter Boosts Character Limit to 4,000 for Twitter Blue Subscribers*,
FORBES, Feb. 8, 2023, ..................................................................................................18

SEC, *Stock Purchase and Sales: Long and Short*, https://www.investor.gov/introduction-
investing/investing-basics/how-stock-markets-work/stock-purchases-and-sales-long-and... 10

W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 109,
p. 755 (5th ed. 1984).................................................................................................13

In Defendant's Second Motion to Dismiss (ECF No. 265), Defendant lists six reasons why he believes the Superseding Indictment should be dismissed. The Court should reject each one.

*First*, fiduciary duties are irrelevant to this case. Defendant chose to speak publicly about his stock trading, while also trading in the stocks he discussed. By those very acts, Defendant created the duty not to commit securities fraud by speaking in the false and misleading half-truths that are the basic core of fraud and that are adequately alleged in the Superseding Indictment.

*Second*, the Superseding Indictment plainly alleges Defendant made false, misleading, and fraudulent statements on the subject of his stock trading, including about how long he would hold particular stocks before selling. By debating the meaning of terms such as "long" and "swing" in arguing the contrary and with reference to purported facts outside the four corner of the Superseding Indictment, Defendant underscores core factual disputes that must go to a jury.

*Third*, by similarly arguing fact-laden questions of materiality, Defendant only highlights how the issue of materiality must go to the jury.

*Fourth*, Section 1348 is not vague as applied to Defendants' conduct. Section 1348's clear scienter requirement disposes of this argument.

*Fifth*, the Superseding Indictment adequately alleges both a securities fraud scheme and a conspiracy to commit the same in which Defendant was a central participant.

*Sixth*, the First Amendment does not shield fraud, as the Supreme Court has held.

The United States of America, by and through undersigned counsel, respectfully submits this brief in opposition to Defendant's Motion. After preliminaries, the United States explains why the Court should reject each of Defendant's six points and deny the Motion.[1]

---

[1] To the extent the arguments in the Motion apply to other Defendants in this case, either by explicit adoption or implication, the United States intends for its responses to apply to all other relevant Defendants as well. (*See, e.g.*, ECF Nos. 266, 268, 271.) Further, in an effort to maximize judicial economy by not restating all facts or arguments in full, the United States intends for all of its responses to Defendants'

**Relevant Background**

The Superseding Indictment (ECF No. 134), returned by the Grand Jury on February 8, 2023, charges Defendants with a conspiracy to commit securities fraud (Count 1, 18 U.S.C. § 1349), nineteen substantive counts of securities fraud (Counts 2–20, 18 U.S.C. § 1348), and one count of money laundering (Count 21, 18 U.S.C. § 1957). Defendant Hennessey himself is charged with the conspiracy (Count 1), and five substantive counts of securities fraud (Counts 5, 8, 9, 10, & 11).

The United States incorporates by reference its extended exposition of the Superseding Indictment in multiple other filings.[2] (*See, e.g.*, ECF Nos. 174 and 295.) As to Defendant Hennessey specifically, paragraph 8 provides brief background about Defendant, including information about his Twitter account with over 225,000 followers, his Discord account used as a member of Atlas Trading Discord, and the podcast he hosted with Defendant Knight, Pennies: Going in Raw, which Defendants advertised as the "#1 Stock Market Podcast." (Superseding Indictment ("SI") ¶ 8.)

As the Court is familiar, paragraphs 10 through 19 provide more details of the charged scheme, including general descriptions and allegations of the scheme's operation, as well as specific discussions concerning the scheme. (*Id.* ¶¶ 10–19.) Paragraph 17 describes a conversation between Defendant Matlock and "CC-1," now known to the Court as Defendant Francis Sabo, who recently pleaded guilty to the securities fraud conspiracy alleged in this case. *See United States v. Sabo*, 4:23-cr-206 (S.D. Tex. May 25, 2024) (ECF No. 20). In the quoted conversation,

---

various motions to dismiss to be read together, to the extent that facts or argument presented in one response are relevant to another.

[2] The United States presumes the Court, by now, is familiar with the allegations of the Superseding Indictment. As such, the United States highlights only pertinent portions here and incorporates the full document by reference.

"CC-1" described how the scheme worked, mentioning Defendant Hennessey by name and describing his involvement. (SI ¶ 17.)

The ensuing paragraphs 21 through 115 provide copious details from examples of the scheme's execution in ten different stocks. The Superseding Indictment alleges Defendant was involved in four of those described examples of the scheme's execution. (*Id.* ¶¶ 32–42, 54–71, 101–102.) Two of those examples feature details about Defendant's social media activity in furtherance of the scheme for the stock tickers TRCH and SURF. (*Id.* ¶¶ 32–42, 54–62.)

For example, the Superseding Indictment explains that on or about February 10, 2021, after previously purchasing shares of TRCH, at 10:11:04 EST, Defendant posted on Atlas Trading Discord that he was "Long TRCH for merger." (*Id.* ¶¶ 33–34.) The Superseding Indictment further alleges that, at approximately 10:11:08 EST, Defendant falsely claimed in a tweet: "New swing $TRCH[.] They HAD to do an offering to get to the level of cash they needed[.] NOW the merger is full steam ahead baby . . . ." (*Id.* ¶ 34.) The Superseding Indictment also alleges, "[a] 'swing' is a term used to describe a position in a security that is held over the medium or long term, as opposed to a day trade." (*Id.*) After describing other Defendants' participation in the scheme (including Defendant Matlock's reference to Defendant Hennessy trading TRCH), the Superseding Indictment alleges that between approximately 10:13:39 EST and 10:22:00 EST, mere minutes after Defendant's posts that he was "Long" and would "swing" TRCH, Defendant and his co-Defendants began dumping their shares while continuing to post positively about TRCH. (*Id.* ¶¶ 37–38.) The Superseding Indictment explains:

> Despite claiming on or about February 10, 2021, at approximately 10:11:00 EST that he was "long" TRCH and trading it for a "swing," HENNESSEY had sold his entire position of approximately 196,000 TRCH shares on or about February 10, 2021, by approximately 12:39:00 EST at an approximate price of $2.60 per share and for an approximate profit of $166,274,40.

3

(*Id.* ¶ 39.)

The Superseding Indictment contains similar allegations regarding Defendant's involvement with the pump-and-dump of SURF. For example, it explains that, from approximately May 10, 2021 to approximately May 19, 2021, Defendant and several of his co-Defendants collectively purchased and held approximately 539,389 shares of SURF. (*Id.* ¶ 55.) The Superseding Indictment further alleges that, on or about May 18, 2021, Defendant Matlock privately messaged CC-1 (Defendant Sabo) explaining that he "got a couple surf," that "Hugh [HENNESSEY] gonna post," and that Defendant was "[n]ot posting until tomorrow [May 19, 2021] just because not enough time and he [HENNESSEY] didn't get everything ready." (*Id.* ¶ 56.)

The Superseding Indictment then alleges that, on or about May 19, 2021, at approximately 9:51:27 EST, Defendant claimed in a tweet and in a post on Atlas Trading Discord: "I am long $SURF – have been stalking this company and would be shocked if acquisition deal was not done by EOY . . . ." (*Id.* ¶ 57.) It is further alleged that Defendant continued to post positive information in the ensuing minutes. (*Id.*) The Superseding Indictment goes on to allege how Defendant's co-conspirator's posted about SURF in furtherance of the Scheme, including Defendant Matlock who stated that he was "Long SURF with [HENNESSEY]" shortly before beginning to sell his own shares. (*Id.* ¶¶ 58–60.) It is then alleged that, at approximately 10:04:00 EST and approximately thirteen minutes after falsely claiming that he was "long" SURF, Defendant started selling his SURF shares. (*Id.* ¶ 61.) "In between selling his shares of SURF, HENNESSEY falsely claimed in a tweed that he '[w]on't need to post about her much. $Surf already tons of dd out there[.] Unless new DD comes out. Only way I'll be out of this one is if bad catalyst. Long and strong babyyy . . . .'" (*Id.*) As alleged, by approximately 10:44:00 EST, or about 53 minutes after he began posting

that he was "long," Defendant had sold approximately 76,500 of his 86,500 shares of SURF, or about 88% of his position. (*Id.* ¶ 61.)

After describing other similar executions of the scheme in the surrounding paragraphs, the Superseding Indictment incorporates all those preceding paragraphs into the paragraphs charging Defendants with substantive counts of securities fraud and a conspiracy to commit the same. (*Id.* ¶¶ 116–121.)

## Legal Standard

It is beyond dispute that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (quoting *United States v. Nai Fook Li*, 206 F.3d 56, 61 (1st Cir. 2000) (en banc), *cert. denied*, 531 U.S. 956 (2000)).

An indictment is constitutionally sufficient if it (1) contains the offense elements, (2) fairly informs the defendant of the charge, and (3) enables him to plead an acquittal or conviction as a bar to future prosecutions of the same offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "Apart from meeting this minimum constitutional standard, the government need not describe all evidentiary details establishing the facts of the [allegations.]" *United States v. Rafoi*, No. 21-20658, 2023 WL 1811921, at *3 (5th Cir. Feb. 8, 2023) (reversing district court's grant of defendants' motion to dismiss because indictment adequately conformed to minimal constitutional standards). An indictment that tracks the language of the statute is generally adequate. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 414 (1980); *United States v. Franco*, 632 F.3d 880, 884–885 (5th Cir. 2011) (per curiam). Only in "very rare cases" must an indictment specify in detail "how a

5

particular element of a criminal charge will be met." *United States v. Stringer*, 730 F.3d 120, 125–26 (2d Cir. 2013).

In assessing a motion to dismiss, the Court is "required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotation and citation omitted). "[A] court only grants a motion to dismiss if, as a matter of law, the 'infirmity' is such that the indictment fails to allege facts that, if true, would constitute a prosecutorial offense." *United States v. Cheng*, No. 4:20-cr-455, 2022 WL 112026, at *5 (S.D. Tex. Jan. 12, 2022). "[A] court must deny a motion to dismiss if it relies on disputed facts." *Id.* (citing *Kay*, 359 F.3d at 742; *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

### Argument

### I. The charged fraud does not require a fiduciary duty, or any other preexisting duty to disclose, to be actionable as securities fraud.

Defendant Hennessey waxes at great length about an issue that is not relevant to this case: a fiduciary duty. (Br. at 10–18.) The Court should quickly dispose of this argument.

The law is clear that the "fraud statutes do not require a duty to disclose imposed by statute or regulation." *United States v. Mathews*, 31 Fed. App'x 838, 2002 WL 261421, at *9 (5th Cir. 2002).[3] Unlike Defendants, courts recognize that "[i]t requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud . . . without proof of a duty to disclose the information pursuant to a specific statute or regulation." *United States v. Keplinger*, 776 F.2d 678, 697–98 (7th Cir. 1985); *see also United States v. Swenson*,

---

[3] Defendant appears to recognize and concede that the other Title 18 fraud statutes and their case law are appropriate sources for interpreting Section 1348. (*See* Br. at 13 n.11.) It remains curious, then, why Defendant fails to seriously engage with this on-point law.

25 F.4th 309, 318 n.3 (5th Cir. 2022) (quoting and citing *Keplinger* for this proposition); *United States v. Colton*, 231 F.3d 890, 904 (4th Cir. 2000) ("[T]he government need not demonstrate that defendants who successfully and intentionally engaged in a fraudulent scheme to actively conceal material facts . . . had an independent duty to disclose such facts. Rather, evidence of such a scheme in and of itself suffices."); *United States v. Morris*, 80 F.3d 1151, 1161 (7th Cir. 1996) ("[T]he [fraud] statutes apply not only to false or fraudulent representations, but also to the omission or concealment of material information, even where no statute or regulation imposes a duty of disclosure."); *United States v. Smith*, 555 F. Supp. 3d 563, 576 (N.D. Ill. 2021) (explaining, in the context of Section 1348, that "[t]he 'concept of misrepresentation . . . can also include the omission or concealment of material information, *even absent an affirmative duty to disclose*, if the omission was intended to induce a false belief and action to the advantage of the scheme and the disadvantage of the victim.'" (quoting *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016) (emphasis added)); *United States v. Vorley*, 420 F. Supp. 3d 784, 801 (N.D. Ill. 2019) ("[T]he existence of a fiduciary, regulatory, or statutory duty to disclose material information is not required to make an omission actionable under the mail and wire fraud statutes."). That is so because "the scheme to defraud is a 'departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community.'" *Matthews*, 2002 WL 261421, at *9 (quoting *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987)).

In this particular case, the duty to disclose arose when Defendants chose to speak on the subject of their stock trades. *See, e.g.*, *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982), *cert. denied*, 456 U.S. 1010 (1982) ("[I]t is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."); *see also United States v. Autouori*, 212 F.3d 105, 119 (2d Cir. 2000) ("A

duty to disclose can also arise in a situation where a defendant makes partial or ambiguous statements that require further disclosure in order to avoid being misleading."). This is not a case of "mere omissions," but "affirmative misrepresentations." *See, e.g.*, *United States v. Biesiadecki*, 933 F.2d 539, 543 (7th Cir. 1991).

Like his co-Defendants, Defendant wastes page after page with irrelevant expositions on inapplicable law regarding fiduciary duties attempting to distract this Court from the actual issues before it. The Court should simply ignore these points. Indeed, citations to cases like *Chiarella v. United States*, a case concerned with "mere possession of nonpublic market information," have no application here. *See Chiarella v. United States*, 445 U.S. 222, 235 (1980). These irrelevant digressions are truly surprising because the defense itself explains that "a defendant's omission can only give rise to securities fraud if the 'defendant elects to disclose some material facts, but fails to speak the whole truth. . . . [A] duty to speak the full truth on a particular subject arises when a defendant undertakes to say anything on that particular subject.'" (Def.'s Br. (ECF No. 265, "Br.") at 18–19 (quoting *SEC v. Mapp*, 240 F. Supp. 3d 569, 584 (E.D. Tex. 2017) (internal citations omitted) (emphasis omitted)).) Defendant's obvious awareness of the relevant law—but blatant failure to engage with it in any serious way—should tell the Court all it needs to know about the sincerity and veracity of Defendant's arguments.

Indeed, the securities fraud alleged does not "rel[y] on a fiduciary or fiduciary-type duty to disclose" as the Defendant wrongly posits.[4] (Br. at 12.) Rather, at the point Defendants chose to speak about their stock trading, they assumed the duty to speak fully and truly, not falsely or

---

[4] Notably the Defendant does so by improperly looking beyond the four corners of the Superseding Indictment to quote the United States' statements in a prior hearing and draw erroneous conclusions about their meaning and import. (*See* Br. at 13.) Those mistaken understandings need not be corrected here given that the Court should decide the Motion on the allegations of the Superseding Indictment. Defendant's references serve only to demonstrate the errors of his Motion.

fraudulently with fraudulent intent. *See, e.g.*, *Townley*, 665 F.2d at 585. It is precisely this plain theory of fraud that the Superseding Indictment alleges. As alleged, they did not speak fully and truly, but falsely and fraudulently with requisite intent. The Superseding Indictment pleads that plain as day. Deciding this issue is for the jury. *See, e.g.*, *Cheng*, 2022 WL 112026, at *5.

## II. The Superseding Indictment alleges that Defendant spoke falsely and fraudulently on the subject of his stock trading and Defendant's dispute over the Superseding Indictments' allegations demonstrate these are disputed factual issues that must go to a jury.

Defendant Hennessey seeks to have the Court engage in purported facts that are found nowhere in the Superseding Indictment. The Court should not take the bait. To the extent his attempts to dispute the allegations in the Superseding Indictment have any weight, it is to underscore the questions that must be decided by the jury.

The Superseding Indictment alleges in myriad manner that Defendant spoke on the subject of his stock trading and, in particular, when he intended to sell certain stocks. As the Court is well aware, the Superseding Indictment alleges at length and at various levels of generality the fraudulent scheme the Defendants' perpetrated by false and misleading statements and fraudulent pretenses. The Superseding Indictment also includes specific allegations of Defendant's false and misleading statements and fraudulent pretenses—involving the terms "long" and "swing"—set forth in the context of the general allegations of the fraudulent scheme. It is precisely the contention of the Superseding Indictment that Defendant's statements fraudulently implied that Defendant intended to hold the stocks for a medium-to-long-term period, but then proceeding to sell off those positions within minutes or hours on the same day. In so doing, as alleged, Defendant made false and misleading statements and advanced fraudulent pretenses in furtherance of Defendants' securities fraud scheme. Defendant's dispute with those allegations—specifically, the definitions

9

and usage of particular terms  "long" and "swing"—serves only to highlight that these are factual issues a jury must decide. *See, e.g.*, *Cheng*, 2022 WL 112026, at *5.

In the Motion, Defendant advances definitions of these terms that are incomplete at best. Defendant's proffered definition of the term "long" is contrived, tortured, and misleading. Indeed, both sources Defendant cites for definitions indicate the term "long" involves a temporal dimension—the term conveys that shares are to be held for a period of time, not sold in short order. For example, in citing to Investopedia.com to proffer a definition of "long," Defendant omitted the following text from the cited page: "In reality, long is an investing term that can have multiple meanings depending on in what context it is used. **The most common meaning of long refers to the length of time an investment is held.**"[5] Similarly, the SEC text Defendant quoted makes clear that "[i]nvestors maintain 'long' security positions in the expectation that the stock will rise in value **in the future**."[6] (*See* Br. at 22 (emphasis added).) These definitions themselves indicate usage of the term is an issue of fact for the jury in this case.

Similarly, Defendant's own definition of "swing" is misleading and incomplete. Looking again to the same source Defendant does, Investopedia.com, the site makes clear the distinction between "day trading" and "swing trading" at the heart of the Superseding Indictment's allegations, writing: "The primary difference in the trading strategies is that day traders trade many stocks during a day, while **swing traders trade many stocks over a longer time frame, typically**

---

[5] Adam Hayes, *Long Position: Definition, Types, Example, Pros and Cons*, Investopedia.com, Oct. 6, 2021, https://www.investopedia.com/terms/l/long.asp (last accessed May 30, 2023) (emphasis added).

[6] SEC, *Stock Purchase and Sales: Long and Short*, https://www.investor.gov/introduction-investing/investing-basics/how-stock-markets-work/stock-purchases-and-sales-long-and (last accessed on May 30, 2023).

**two days to a few weeks**."[7] Similarly, the very page Defendant quoted also reads: "[S]ome [swing] trades may last longer than a couple of months, yet the trader may still consider them swing trades. Swing trades can also occur during a trading session, though this is a rare outcome that is brought about by extremely volatile conditions."[8] Curiously, Defendant's citation to Investopedia.com omitted this highly relevant information. Regardless, this argument over the proper definition demonstrates conclusively this is a jury issue.

And when those terms are put in the context of Defendant's particular statements at issue, it becomes even clearer that Defendant did in fact speak misleadingly and fraudulently about his trading intentions as alleged. For example, when Defendant tweeted "Long TRCH for merger," a fair reading of that tweet is that he was "going long" or holding TRCH until the company's upcoming merger, or at least long enough for the merger information to significantly impact the stock price. (*See* SI ¶¶ 33–34.) Indeed, at the very least it is misleading to suggest one is "Long TRCH for merger," but to omit that "actually I'll start selling TRCH within minutes." And the additional context of the alleged repeated scheme further supports this reading. Given that Defendant disputes this understanding, this is obviously an issue for the jury to decide.

The other quoted statement regarding TRCH is amenable to a similar reading. Defendant stated: "New swing $TRCH . . . NOW the merger is full steam ahead baby . . . ." (SI ¶ 34.) A reasonable reading of this post is that Defendant planned to "swing" TRCH into the future toward or past the anticipated merger. Indeed, in the very screenshot of the tweet Defendant uses in his

---

[7] Christina Majaski, *Day Trading vs. Swing Trading: What's the Difference?*, INVESTOPEDIA.COM, May 8, 2023, https://www.investopedia.com/articles/active-trading/052815/pros-cons-day-trading-vs-swing-trading.asp (last accessed May 30, 2023) (emphasis added).

[8] Cory Mitchell, *Swing Trading: Definition and the Pros and Cons for Investors*, INVESTOPEDIA.COM, Mar. 2, 2023, https://www.investopedia.com/terms/s/swingtrading.asp#toc-understanding-swing-trading (last accessed May 30, 2023).

brief, a Twitter user is seen asking Defendant in response to his tweet, "Are you holding through the dividend payout?" (Br. at 5.) It appears this user had the impression from Defendant's tweet that he would not begin selling his shares only minutes later. It also seems an important omission for Defendant not to say, "actually, I'll begin selling my TRCH shares in several minutes." Again, this dispute is an issue for the jury.

Defendant's quoted statements regarding SURF similarly may be understood as statements of his present intention and are disputed issues of fact for a jury. For example, Defendant stating "I am long $SURF . . . would be shocked if acquisition deal was not done by E[nd] O[f] Y[ear] . . . ." (SI ¶ 57.) Again, a fair reading of this statement is that the Defendant was "long" and would be so for longer than the next few minutes or hours. That is a reasonable reading simply by the reference to being "long" considered in the context of all the other allegations of the scheme in the Superseding Indictment. But it is particularly so here given the tweet's own reference to an acquisition to be done by end of year. (*See id.*) Further down in the tweet, it also gave the impression Defendant expected a "[c]atalyst within 3 weeks." (*See* Br. at 31.) With all that context, it is at the very least misleading not to include, "but I'll actually start selling my shares in minutes," before he began selling approximately 13 minutes later. (*See* SI ¶ 61.) One may similarly read Defendant's subsequent post stating "[o]nly way I'll be out of this one is if bad catalyst. Long and strong babyyy . . . ." (*Id.*) It seems an important omission not to indicate that, in fact, Defendant *was already in the midst of getting "out"* by selling his shares when he posted that. (*See id.*) Defendant disputes these allegations, so a jury should decide.

Defendant's statements quoted in the Superseding Indictment are false statements of fact, not opinion, as they concern his trading plans at the time he made them. To the extent any may be read as opinions, or other opinion statements of Defendant are at issue for trial, as the United States

12

has already explained at length in response to Defendant Constantinescu, Defendants' repeated notion that predictions or opinions cannot be actionable as securities fraud is plainly wrong. (*See* ECF No. 295 at 16–19.) As the Court wrote in *Omnicare* regarding "expressions of opinion[,] . . . every such statement explicitly affirms one fact: that the speaker actually holds the stated belief." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185 (2015) (citing W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 109, p. 755 (5th ed. 1984) ("[A]n expression of opinion is always a statement of . . . the fact of the belief, the existing state of mind, of the one who asserts it.")). Both the Fifth Circuit and this Court have easily adopted this reasoning. *See, e.g.*, *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 670 (5th Cir. 2004) ("A statement of belief is only open to objection where the evidence shows that the speaker did not in fact hold that belief and the statement made asserted something false or misleading about the subject matter." (citing *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095–96 (1991))); *Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *9 (S.D. Tex. July 6, 2016) ("Statements of pure opinion are only false if the speaker did not sincerely hold such opinion at the time of the statement." (citing *Omnicare*, 575 U.S. at 185–86)); *In re: BP p.l.c.. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779, at *9 (S.D. Tex. May 31, 2016) ("[A] speaker may be held liable for a statement of opinion if the plaintiff can prove 'that the speaker did not hold the belief she professed. This proposition is relatively uncontroversial and was already widely accepted by federal courts, including the Fifth Circuit." (quoting *Omnicare*, at 185–86)). Thus, the Court should reject Defendants' arguments to the contrary and allow the jury to decide what is true, as the Court already appears to recognize. (*See* Apr. 12, 2023 Hr'g Tr. ("Tr.") at Tr. at 55:21–56:11.) [9]

---

[9] The following exchange from the hearing demonstrates that understanding:

Defendant's treatment of the cases on this point of law is curious and undermines the sincerity of Defendant's argument. For example, Defendant cites *Virginia Bankshares* no fewer than five times, but fails to seriously engage with its clear ruling that opinions may be actionable as false statements of fact and the Superseding Indictment's numerous general and specific allegations of exactly that (which must be taken as true). *See Va. Bankshares*, 501 U.S. at 1091–92; (Br. at 30–31). Even more surprising, Defendant never once mentions the *Omnicare* case, which is the obvious progeny of *Virginia Bankshares*, states this holding more directly, and with which defense counsel must have been familiar given demonstrated understanding of this area of law. (*See supra* at 13 n.9.) At best, the complete avoidance of *Omnicare* is another failure to engage seriously with leading authorities on points of law Defendant himself raises. At worst, it is a deliberate choice not to bring to the Court's attention a highly relevant opinion of which the defense should be aware. Either way, it is another marker from which to judge the sincerity and veracity of Defendant's arguments, which the Court should reject.

---

| | |
|---|---|
| THE COURT: | If I have a zillion followers on Twitter and I say, "Man, this is the greatest thing since sliced bread," that's a statement I would think of opinion, but at the same time I'm saying that, I'm dumping my shares, is that actionable? |
| MS. CORDOVA: | Your Honor, I believe it would be in certain circumstances, . . . my understanding generally is that you have to prove both objective and subjective falsity in those instances, both that it is not as great as sliced bread and that you did not believe it was as great as sliced bread at the time. |
| THE COURT: | And both of those sound like jury issues to me. |

(Tr. at 55:21–56:11.)

14

### III.     Whether the at-issue statements were *materially* false or misleading is an issue for the jury.

"In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decisionmaking body to which it was addressed." *United States v. Neder*, 527 U.S. 1, 24–25 (1999) (internal quotations and citations omitted); *see also United States v. Herman*, 997 F.3d 251, 269–70 (5th Cir. 2021) (quoting *Neder*'s definition of materiality); *United States v. Foster*, 229 F.3d 1196, 1197 (5th Cir. 2000) (same). The Fifth Circuit Pattern Jury Instructions provide a helpful definition:

> [A] representation [statement] [pretense] [promise] is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed. The Government can prove materiality in either of two ways. First, a representation [statement] [pretense] [promise] is "material" if a reasonable person would attach importance to its existence or nonexistence in determining his [her] choice of action in the transaction in question. Second, a statement could be material, even though only an unreasonable person would rely on it, if the person who made the statement knew or had reason to know his [her] victim was likely to rely on it.

Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases) § 1.40, "Materiality" (2019 ed.).[10]

As this Court has clearly stated, "[m]ateriality is a mixed question of law and fact usually reserved for the trier of fact." *United States v. Causey*, 2005 WL 2647976, at *3 (S.D. Tex. Oct. 17, 2005). The Court should only rule on materiality as a matter of law "if the alleged

---

[10] In the context of Title 15 securities fraud, Courts have also described materiality as asking whether "'there is a substantial likelihood that a reasonable shareholder would consider [the statement] important' in making an investment decision." *United States v. Causey*, 2005 WL 2647976, at *3 (S.D. Tex. Oct. 17, 2005) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 238 (1988)). "An omission is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the 'total mix' of information made available.'" *Id.* (quoting *Basic*, 485 U.S. at 238). Although the Court should look to the Title 18 materiality standard for fraud charged under Title 18, the Superseding Indictment adequately alleges materiality under either standard for all the reasons discussed.

15

misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Id.* (quoting *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004)). This is not such a case—here, the question of materiality must go to the jury.

The Superseding Indictment plainly alleges materiality. (*See, e.g.*, SI ¶ 14.) Defendants' social media following was the "decisionmaking body to which" the statements at issue here were addressed. *See, e.g.*, *Neder*, 527 U.S. at 24–25. As alleged, Defendants designed their social media statements to induce their followers to participate as unwitting victims in the pump-and-dump scheme. *Compare* (SI ¶¶ 14, 18, 24) *with United States v. Chanu*, 40 F.4th 528, 542 (7th Cir. 2022) (finding materiality established where defendants made false representations "with the aim (and effect) of influencing other actors in the trading space").

In trading cases like this, hearing from alleged victim-witnesses at trial is a common, but not exclusive, method of demonstrating the charged fraudulent misrepresentations were, in fact, material to the victim-witness' trading decisions. *See, e.g.*, *Chanu*, 40 F.4th at 542; *United States v. Bases*, 18-cr-48, 2022 WL 3586142, at *6–7 (N.D. Ill. Aug. 22, 2022). Thus, this jury should hear from members of that "decisionmaking body" to decide whether the statements at issue were in fact "capable of influencing" the members of that body or important to them in making investment decisions. *See id.* The United States expects such testimony at trial in this case.

The allegations in the Superseding Indictment even demonstrate that Defendants *themselves* believed their statements to be material, as they expressed awareness that their posts would have market impact. (*E.g.*, *id.* ¶ 18 ("You post when there is a dip and say you joined then . . . Works better because well [*sic*] save more plays that way . . ."); ¶ 24 ("Rybarczyk advised Deel to include the number of shares Deel was purportedly purchasing '[j]ust to make it more

16

appealing [to Deel's Twitter followers] and if they see you're adding 100,000–200,000 shares they'll likely be enticed to add with size.'"). These statements allege Defendants knew or had reason to know their victims were likely to rely on their representations, which may prove materiality even if victims are unreasonable in that reliance. *See* Pattern J. Instrs. § 1.40.

Defendants' numerous fact-based arguments about materiality only serve to underscore this is an issue of disputed fact to be resolved be a jury. Trading sufficient volume of a stock in order to impact the price is only one of many ways to satisfy the materiality requirement. (*See* Br. at 25–26.) Another is making false statements to a public audience in furtherance of a fraudulent scheme, as alleged here. It is not "inherently obvious to a reasonable investor" that a person holding himself out to the public as a legitimately successful stock trader—like Defendant with his social media presence and podcast—was not in fact wealthy from legitimate stock trading and would make false and misleading public statements in order to profit from an illegal pump-and-dump scheme. (*See* Br. at 26.) Thus, the Court must not decide this issues as a matter of law because it involves significant questions of fact for a jury's determination. *See, e.g.*, *Causey*, 2005 WL 2647976, at *3.

Defendant's repeated misleading reference to "disclaimer" language on his Twitter profile does not change this conclusion. Defendant misrepresents numerous times throughout his brief the notion that each of the at-issue tweets also included "disclaimer" language within the tweet itself. (*See, e.g.*, Br. at 4–9, 17, 24 ("[I]n the very tweets . . . Mr. Hennessey directly and explicitly states that he is not a financial advisor . . . .").) That is another false statement. The "disclaimer" language Defendant continually references was posted on the main page of Defendant's Twitter profile as a sort of caption for the page overall, not as language expressly incorporated into every tweet as Defendant repeatedly and misleadingly states. Indeed, the United States understands that, from

approximately 2017 to approximately 2023, Twitter posts were limited to 280 characters.[11] Thus, it actually was impossible for many of Defendants' at-issue tweets to contain both the text of the actual tweet as well as the full text of the caption "disclaimer" language, despite Defendant's false representations to the contrary.[12] Further, the views of at-issue tweets presented by Defendant in his brief where the caption "disclaimer" language was also visible appear to be from a computer view.[13] Other viewing options, such as on the mobile phone application, would not necessarily have afforded similar views of both the caption "disclaimer" and the at-issue tweets simultaneously.

Even if that "disclaimer" language were in each at-issue post (or accepting it as incorporated), the language itself is insufficient to render the at-issue statements immaterial as a matter of law. As this Court has made clear, "[c]autionary statements and warnings may render allegedly misleading statements immaterial, but only when they exhaust the misleading statement's capacity to influence the reasonable investor." *Causey*, 2005 WL 2647976, at *9 (citing *Va. Bankshares*, 501 U.S. at 1084). General statements about not being a financial advisor, or saying tweets are "ideas and opinions not advice," or even the generic claim that Defendant "could be buying or selling any stock mentioned at any time," hardly "exhaust" the misleading nature of the very specific statements at issue, like claiming to be starting a "swing" position when

---

[11] *See, e.g.*, Nicholas Reimann, *Twitter Boosts Character Limit to 4,000 for Twitter Blue Subscribers*, FORBES (Feb. 8, 2023) ("Twitter's only other character-length expansion came in 2017, when it doubled its initial 140-character limit to 280."), *available at* https://www.forbes.com/sites/nicholasreimann/2023/02/08/twitter-boosts-character-limit-to-4000-for-twitter-blue-subscribers/ (last accessed June 2, 2023).

[12] For example, the tweet depicted on page 7 of Defendant's brief appears to contain in excess of the 280 character limit when the characters of the tweet are added to the characters of the caption "disclaimer" language on the left. (*See* Br. at 7.)

[13] The United States is unable to verify Defendant's representations because the hyperlinks Defendant provided purportedly to link to the tweets at issue do not appear to work.

in truth and fact one plans to start selling minutes later. *See id.* At the very least, that is a question for the jury.

IV.     **Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here.**

The United States incorporates its discussion in its response to Defendant Constantinescu's motion to dismiss regarding why the Court should reject Defendants' vagueness arguments with respect to Section 1348, which applies equally here. (*See* ECF No. 295 at 24–38.)  Critically, Section 1348 has "a scienter requirement" which "alleviate[s] vagueness concerns." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (internal quotations and citation omitted). To obtain a conviction, the United States must prove (and has alleged) that Defendants had the specific intent to defraud—in other words, they knew *exactly* what they were doing when they were doing it. *Compare Gonzales v. Carhart*, 550 U.S. 124, 148 (2007) *with* (SI ¶ 40 ("We're robbing f*cking idiots of their money."), ¶ 18 ("we gotta look less obvious")). Indeed, if Defendant had no idea what he was doing was wrong, why bother with the "disclaimers" he's so keen to point out?

Defendant's three sentences on this "argument" demonstrate its (lack of) sincerity and do not merit further discussion. (*See* Br. at 26–27.) The Court should deny the Motion.

V.      **The Superseding Indictment adequately alleges both a conspiracy to commit securities fraud and substantive securities fraud.**

The Superseding Indictment alleges a conspiracy to commit securities fraud premised on the substantive securities fraud counts also alleged. Those substantive counts adequately allege securities fraud for reasons explained at length numerous times in numerous places and need not be repeated here. (*See, e.g.*, ECF Nos. 174 and 295.) Those allegations suffice to supply the requisite unlawful object of the securities fraud conspiracy alleged.

19

The Superseding Indictment also includes sufficient allegations of Defendants' involvement in the conspiracy such that a jury must decide what is so. Indeed, "[t]he agreement between conspirators may be silent and need not be formal or spoken. An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and knowledge may be inferred from the surrounding circumstances." *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2009) (internal citations omitted). "And, once the Government produces evidence of a conspiracy, only slight evidence is needed to connect a defendant to it." *Matthews*, 2002 WL 261421, at *7 (citing *United States v. Jensen*, 41 F.3d 946, 954–55 (5th Cir. 1994), *cert. denied*, 514 U.S. 1101 (1995)). "If found to be a member of a conspiracy, a defendant is liable for all substantive offenses committed in furtherance of it, even if he is unaware of those specific offenses." *Id.* (citing *United States v. Phillips*, 219 F.3d 4040, 417 (5th Cir. 2000); *Jensen*, 41 F.3d at 955).

The Superseding Indictment adequately alleges a securities fraud conspiracy in which Defendant played a central part. Indeed, the Superseding Indictment includes allegations regarding Defendant's podcast on which Defendant discussed his trading. (*See* SI ¶¶ 8–9, 12.) Notably, Defendant's podcast co-host, Defendant Knight, has pleaded guilty to the securities fraud conspiracy. (ECF No. 221.)

Additional evidence of the conspiracy is alleged in various forms. The allegations that every Defendant posted about and/or traded in the same stocks at the same time of at least one other Defendant is sufficient to infer involvement in the agreement—it demonstrates the common goal and purpose of the conspiracy. *Matthews*, 2002 WL 261421, at *7 ("The jury may infer from circumstantial evidence the existence of a conspiracy."). Particularly coupled with the express coordination communications alleged, such evidence is a basis to infer illicit coordination. *See id.*

20

For example, as previously discussed, the Superseding Indictment explains how Defendant Matlock told Defendant Sabo that he was loading SURF shares because Defendant Hennessey planned to post about SURF the following day, May 19, 2021. (SI ¶ 56.) The Superseding Indictment also alleges how Defendant Hennessey did, in fact, post about SURF on May 19, 2021 in furtherance of the pump-and-dump scheme. (*Id.* ¶¶ 56–61.) Such allegations alone are beyond sufficient to allege the charged conspiracy. *See Matthews*, 2002 WL 261421, at *7.

Even beyond that, the Superseding Indictment references how Defendants held themselves out together to the investing public, presenting images of success as evidence of credibility, like advertising their podcast as the "#1 Stock Market Podcast," and encouraging investors to join their group. (*See, e.g.*, SI ¶¶ 8, 10–12.) And so on and so forth. There simply is no question here whether the Superseding Indictment adequately alleges the charged conspiracy.

Defendants' arguments on this point are yet another attempt to make factual contentions wholly inappropriate in this procedural posture. The Superseding Indictment adequately alleges a securities fraud conspiracy in which Defendant was intimately involved. It is for the jury to say what is so. *See, e.g.*, *Cheng*, 2022 WL 112026, at *5.

## VI.     The First Amendment does not shield the charged fraud.

Fraud finds no shelter in the First Amendment. The Supreme Court of the United States is unequivocal in stating that "the First Amendment does not shield fraud." *Ill., ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). That is because fraud is one of "the few 'historic and traditional categories of expression long familiar to the bar'" in which content-based speech restrictions are permitted. *United States v. Alvarez*, 567 U.S. 709, 717 (2012). Indeed, "the government's power 'to protect people against fraud' has 'always been recognized in this country and is firmly established.'" *Madigan*, 538 U.S. at 612 (quoting *Donaldson v. Read Magazine, Inc.*, 333 U.S. 178, 190 (1948)).

Thus, the fraud alleged in this case is unprotected speech to which the First Amendment's defenses do not apply. *Id.* As the Court explained, "when nondisclosure is accompanied by intentionally misleading statements designed to deceive the listener, the First Amendment leaves room for a fraud claim." *Id.* This is precisely such a case. The Court further explained that in order for a defendant to be liable for fraud in the state civil law context, "the complainant must show that the defendant made a false representation of material fact knowing that the representation was false; further, the complainant must demonstrate that the defendant made the representation with the intent to mislead the listener, and succeeded in doing so." *Id.* at 620. That is precisely what the Superseding Indictment alleges and what the United States will show at trial. And in stating these pleading requirements for fraud, the Court made clear that "[w]hat the First Amendment and our case law emphatically do not require, however, is a blanket exemption from fraud liability for a [defendant] who intentionally misleads . . . ." *Id.* at 621.

The Court need take the analysis no further.[14] The Superseding Indictment, which clearly alleges fraud, must be accepted as true. It sufficiently alleges securities fraud for all the reasons discussed here and elsewhere. (ECF No. 295.) It is up to a jury to decide whether in fact fraud was committed. If so, the First Amendment does not apply. If not, the First Amendment does not apply. The First Amendment simply has nothing to do with this case, as this is clearly in the heartland of the United States' compelling, historically recognized interest in prohibiting fraud schemes.

---

[14] There also are arguments that Defendants' speech is commercial speech entitled to lesser protections than non-commercial speech, but the Court need not reach that question as Defendant invites it to do. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("[T]he State may ban commercial expression that is fraudulent or deceptive without further justification."); *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985) ("The States and Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading . . . ."). This case is about unprotected fraudulent speech, plain and simple. Thus, the Supreme Court makes clear the First Amendment is irrelevant. *See, e.g.*, *Madigan*, 538 U.S. at 606.

Even Defendant seems to recognize that fraudulent speech is unprotected in arguing that Defendant's "speech was not *unprotected fraudulent speech*." (Br. at 28 (emphasis added).) Curiously though, Defendant then proceeds to apply legal analysis to the speech as if it is not fraudulent speech, despite the Superseding Indictment's clear allegations to the contrary. That is another waste of paper. Defendant must not be taking the Superseding Indictment's allegations as true. If Defendant were, and given that Defendant recognizes that fraudulent speech is unprotected, Defendant would not bombard the Court with completely irrelevant First Amendment law and argument that has absolutely no application to this case whatsoever. The Court should simply ignore these points and deny the Motion.

**<u>Conclusion</u>**

Defendant's Motion is another attempt to serve up inchoate, irrelevant, and obscurantist arguments hoping something will stick. The Court should not be distracted from the issues before it. The Superseding Indictment plainly alleges an illegal securities fraud scheme and conspiracy. As such, the Court should deny Defendant's Motion and permit a jury to determine the truth.

Dated: June 9, 2023                    Respectfully submitted,

                                       GLENN S. LEON
                                       Chief, Fraud Section
                                       Criminal Division, Department of Justice

                        By:     */s/ John J. Liolos*
                                Scott Armstrong, Assistant Chief
                                John J. Liolos, Trial Attorney
                                Fraud Section, Criminal Division
                                United States Department of Justice
                                1400 New York Ave. NW
                                Washington, DC 20005
                                Tel.: (202) 768-2246

23

ALAMDAR HAMDANI
United States Attorney
Southern District of Texas

By:   */s/ Thomas Carter*
       Thomas H. Carter
       Assistant United States Attorney
       State Bar No.:  TX24048387
       1000 Louisiana Street, 25th Floor
       Houston, Texas 77002
       Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section