UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 4:22-cr-612 |
| | § | |
| CONSTANTINESCU, *et al.* | § | The Honorable Andrew S. Hanen |
| | § | |
| Defendants. | § | |

**United States' Response in Opposition to Defendant Rybarczyk's Motion to Dismiss**

## Table of Contents

**Relevant Background**……………………………………………………………..………2

**Legal Standard**…………………………………………………………………………8

**Argument**...……………………………………………………………………………9

I.      Defendants' charged fraud does not require a fiduciary duty, or any other preexisting duty to disclose, to be actionable as securities fraud…………………...9

II.     Whether the at-issue statements were *materially* false or misleading is an issue for the jury………………………………………………………………………11

III.    Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here………………………………………………..16

IV.     The First Amendment does not shield the charged fraud…………………………20

V.      The Superseding Indictment alleged fraud in connection with the purchase or sale of any security…………………………………………………………………..…22

VI.     The Superseding Indictment sufficiently alleges securities fraud for all substantive counts……………………………………………………………………………23

VII.    The Superseding Indictment adequately alleges a securities fraud conspiracy in which Defendant played a central part…………………………………………..24

**Conclusion**...……………………………………………………………………………26

## Table of Authorities

### Cases

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ...................................................................... 12

*Chiarella v. United States*, 445 U.S. 222 (1980) .................................................................. 10

*Costello v. United States*, 350 U.S. 359 (1956) ...................................................................... 8

*Donaldson v. Read Magazine, Inc.*, 333 U.S. 178 (1948) ...................................................... 20

*Durland v. United States*, 161 U.S. 306 (1896) ..................................................................... 18

*Edenfield v. Fane*, 507 U.S. 761 (1993) ................................................................................. 21

*Gonzales v. Carhart*, 550 U.S. 124 (2007) ............................................................................ 17

*Kapps v. Torch Offshore, Inc.*, 379 F.3d 207 (5th Cir. 2004) ................................................ 12

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ................................................ 16

*Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003) ........................................ 20, 21

*McFadden v. United States*, 576 U.S. 186 (2015) .................................................................. 17

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006) ............................ 23

*SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092 (D.D.C. Sept. 14, 1998) ............................ 18

*United States v. Alvarez*, 567 U.S. 709 (2012) .................................................................. 20, 21

*United States v. Autouori*, 212 F.3d 105 (2d Cir. 2000) ....................................................... 10

*United States v. Bailey*, 444 U.S. 394 (1980); ........................................................................ 8

*United States v. Bases*, 18-cr-48, 2022 WL 3586142 (N.D. Ill. Aug. 22, 2022) .......... 13, 17, 18

*United States v. Biesiadecki*, 933 F.2d 539 (7th Cir. 1991) ................................................... 10

*United States v. Bogucki*, 18-cr-00021, 2019 WL 1024959 (N.D. Cal. Mar. 4, 2019) ............ 15

*United States v. Causey*, 04-cr-025, 2005 WL 2647976 (S.D. Tex. Oct. 17, 2005) ................ 12

*United States v. Chanu*, 40 F.4th 528 (7th Cir. 2022) ...................................................... 12, 13

*United States v. Cheng*, No. 4:20-cr-455, 2022 WL 112026 (S.D. Tex. Jan. 12, 2022) .... *passim*

*United States v. Ciminelli*, 598 U.S. -- (2023) ...................................................................... 14

*United States v. Coffman*, 94 F.3d 330 (7th Cir. 1996) ......................................................... 15

*United States v. Colton*, 231 F.3d 890 (4th Cir. 2000) ............................................................ 9

*United States v. Coscia*, 100 F. Supp. 3d 653 (N.D. Ill. 2015) .............................................. 17

*United States v. Davis*, No. 13-cr-923, 2017 WL 3328240 (S.D.N.Y. Aug. 3, 2017) .............. 14

*United States v. De La Pava*, 268 F.3d 157 (2d Cir. 2001) ...................................................... 8

*United States v. Enger*, 427 F.3d 840 (10th Cir. 2005) ......................................................... 18

*United States v. Foster*, 229 F.3d 1196 (5th Cir. 2000) ........................................................ 11

*United States v. Franco*, 632 F.3d 880 (5th Cir. 2011) ..................................................... 8, 24

*United States v. Goldblatt*, 813 F.2d 619 (3d Cir. 1987) ...................................................... 10

*United States v. Grant*, 683 F.3d 639 (5th Cir. 2009) .......................................................... 25

*United States v. Herman*, 997 F.3d 251 (5th Cir. 2021) ....................................................... 11

*United States v. Hogue*, 132 F.3d 1087 (5th Cir. 1998) .......................................................... 9

*United States v. Jensen*, 41 F.3d 946 (5th Cir. 1994) ............................................................ 25

*United States v. Kay*, 359 F.3d 738 (5th Cir. 2004) .......................................................... 8, 24

*United States v. Keplinger*, 776 F.2d 678 (7th Cir. 1985) ...................................................... 9

*United States v. Mathews*, 31 Fed. App'x 838, 2002 WL 261421 (5th Cir. 2002) ......... 9, 10, 25

*United States v. Morris*, 80 F.3d 1151 (7th Cir. 1996) ........................................................... 9

*United States v. Motz*, 652 F. Supp. 2d 284 (E.D.N.Y. 2009) ......................................... 17, 24

*United States v. Nai Fook Li*, 206 F.3d 56 (1st Cir. 2000) ..................................................... 8

*United States v. Neder*, 527 U.S. 1 (1999) ..................................................................... 11, 12

*United States v. Nouri*, 711 F.3d 129 (2d Cir. 2013) ............................................................ 22

*United States v. O'Hagan*, 521 U.S. 642 (1997) ................................................................... 23

*United States v. Phillips*, 219 F.3d 404 (5th Cir. 2000) ........................................................ 25

*United States v. Rafoi*, No. 21-20658, 2023 WL 1811921 (5th Cir. Feb. 8, 2023) .................... 8

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) ........................................................... 8

*United States v. Smith*, 555 F. Supp. 3d 563 (N.D. Ill. 2021) ...................................... 9, 17, 18

*United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) ........................ 18

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013 ............................................................ 8

*United States v. Swenson*, 25 F.4th 309 (5th Cir. 2022) .......................................................... 9

*United States v. Townley*, 665 F.2d 579 (5th Cir. 1982) ................................................... 10, 11

*United States v. Vorley*, 420 F. Supp. 3d 784 (N.D. Ill. 2019) .............................................. 10

*United States v. Walkers*, 191 F.3d 326 (2d Cir. 1999) ......................................................... 14

*United States v. Weimert*, 819 F.3d 351 (7th Cir. 2016) ......................................................... 9

*United States v. Williams*, 553 U.S. 285 (2008) ................................................................... 21

*Wooden v. United States*, 142 S. Ct. 1063 (2022) ................................................................. 17

*Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985) ......................................... 21

*Zweig v. Hearst Corp.*, 594 F.2d 1261 (9th Cir. 1979) .......................................................... 19

## Statutes

15 U.S.C. § 78 ................................................................................................................. 17

18 U.S.C. § 1348 ...................................................................................................... *passim*

18 U.S.C. § 1349 ............................................................................................................... 2

18 U.S.C. § 1957 ............................................................................................................... 2

## Other Authorities

148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002) ................................................................................................... 18, 19

Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases) § 1.40, "Materiality" (2019 ed.) .................................................................................. 12, 13

Defendant Rybarczyk's brief is a case study on impermissibly looking beyond the four-corners of the indictment on a motion to dismiss. Much of its factual content is so wildly irrelevant that the prosecution team learned of it for the first time upon reading the brief, which should be telling for this Court.[1] While relying on facts far beyond the scope of the Superseding Indictment (and even this case), as well as impermissibly contesting line-by-line the allegations within the charging document, Defendant makes seven points. The Court should reject each one.

*First*, fiduciary duties are irrelevant to this case. Defendant chose to speak publicly about his stock trading while also trading in the stocks he discussed. By those very acts, Defendant created the duty not to commit securities fraud by speaking in the false and misleading half-truths that are the basic core of fraud and that are adequately alleged in the Superseding Indictment.

*Second*, by arguing fact-laden questions of materiality, Defendant only highlights how the issue of materiality must go to the jury.

*Third*, Section 1348 is not vague either facially or as applied to Defendants' conduct. Section 1348's clear scienter requirement disposes of these arguments.

*Fourth*, the First Amendment does not shield fraud, as the Supreme Court has held.

*Fifth*, the Superseding Indictment more than adequately alleges the fraud occurred "in connection with the purchase or sale" of a security, which is a liberal standard.

*Sixth*, the Superseding Indictment adequately alleges securities fraud and provides far more detail than constitutionally required, including for Counts 16 and 17, such that those allegations should go to a jury.

---

[1] In responding to Defendant's Motion, the United States will not waste the Court's time by addressing many of the irrelevant factual assertions and related arguments. This case has absolutely nothing to do with much of what Defendant wrote and, in particular, his unfounded speculations on the provenance of this prosecution are without any basis in fact. The United States will move *in limine* to preclude much of what Defendant raises in his motion to dismiss under Federal Rules of Evidence 401 and 403.

*Seventh*, the Superseding Indictment more than adequately alleges Defendant was part of the charged conspiracy.

The United States of America, by and through undersigned counsel, respectfully submits this brief in opposition to Defendant's Motion to Dismiss (ECF No. 267).[2] After preliminaries, the United States explains why the Court should reject each of Defendant's seven points and deny the Motion.[3]

## **Relevant Background**

The Superseding Indictment (ECF No. 134), returned by the Grand Jury on February 8, 2023, charges Defendants with a conspiracy to commit securities fraud (Count 1, 18 U.S.C. § 1349), nineteen substantive counts of securities fraud (Counts 2–20, 18 U.S.C. § 1348), and one count of money laundering (Count 21, 18 U.S.C. § 1957). Defendant Rybarczyk himself is charged with the conspiracy (Count 1), and five substantive counts of securities fraud (Counts 3, 7, 12, 13, 16, & 17).

The United States incorporates by reference its extended exposition of the Superseding Indictment in multiple other filings. (*See, e.g.*, ECF Nos. 174 and 295.) As to Defendant Rybarczyk specifically, paragraph 4 provides brief background about Defendant, including information about his Twitter account with over 275,000 followers, and his Discord account used as a member of

---

[2] Note that Defendant filed two prior versions of this Motion that appear to contain attorney work product, and which remain on the docket. (*See* ECF Nos. 263, 264.) Upon discovering each error within minutes of their respective filings, the United States ceased reading those documents and notified defense counsel of the errors. In the event that the two motions remain on the docket, the United States intends for its response to apply to all Defendant's motions to dismiss.

[3] To the extent the arguments in the Motion apply to other Defendants in this case, either by explicit adoption or implication, the United States intends for its responses to apply to all other relevant Defendants as well. (*See, e.g.*, ECF Nos. 266, 268, 271.) Further, in an effort to maximize judicial economy by not restating all facts or arguments in full, the United States intends for all of its responses to Defendants' various motions to dismiss to be read together, to the extent that facts or argument presented in one response are relevant to another.

Atlas Trading Discord. (Superseding Indictment, ("SI") ¶ 4.) The Superseding Indictment alleges that Defendant encouraged investors to join Atlas Trading Discord, messaged or posted "alerts" in Atlas Trading Discord and Twitter about securities that the Defendants traded as part of the scheme, and later started a similar trading chatroom on Discord named Sapphire Trading. (*Id.*)

The Superseding Indictment's ensuing paragraphs 21 through 115 provide copious details from examples of the scheme's execution in ten different stocks. The Superseding Indictment alleges Defendant was involved in eight of those described examples of the scheme's execution. (*Id.* ¶¶ 21–53, 72–115.) Five of those examples feature details about Defendant's social media activity in furtherance of the scheme for the stock tickers SXTC, GTT, UPC, ABVC, and CEI. (*Id.* ¶¶ 21–53, 63–100.)

For example, the Superseding Indictment alleges with respect to SXTC that on or about September 11, 2020 (Friday), Defendant Deel informed Defendant Rybarczyk on direct message on Discord how he "added SXTC today" and planned to "post" about the stock on the following trading day (Monday). (*Id.* ¶ 22) Defendant Rybarczyk responded in part, "Thanks bro . . . I'll add." (*Id.*) On or about September 11, 2020, Defendant allegedly purchased approximately 400,000 shares of SXTC at an average price of $0.247 per share. (*Id.* ¶ 23)

On or about September 14, 2020 (Monday), Defendant Deel allegedly forwarded to Defendant Rybarczyk a draft of the tweet that he planned to publish to his followers on Twitter. (*Id.* ¶ 24.) Defendant Rybarczyk allegedly advised Defendant Deel to include the number of shares Defendant Deel was purportedly purchasing "[j]ust to make it more appealing [to DEEL's Twitter followers] and if they see you're adding 100,000-200,000 shares they'll likely be enticed to add with size." (*Id.*) Defendant Rybarczyk also advised Defendant Deel to add price targets to his post and explained that Defendant would "retweet [Deel's Twitter post] on the first dip" of SXTC. (*Id.*)

The Superseding Indictment alleges the pump-and-dump of SXTC then ensued. (*Id.* ¶¶ 25–31.) As to Defendant Rybarczyk, on or about September 14, 2020 at approximately 9:33:00 EST, Defendant allegedly posted on Atlas Trading Discord how he similarly "Added sxtc too . . . very bottomed penny." (*Id.* ¶ 28) At approximately 8:34:46 EST, Defendant Rybarczyk allegedly falsely claimed in a Twitter post that he was "[a]dding SXTC at these levels with you" and included in his tweet the above-referenced tweet of Defendant Deel that Defendant helped draft to "entice" others to purchase shares of SXTC. (*Id.* ¶ 28.) At approximately 9:35:00 EST, Defendant Rybarczyk also started selling his shares of SXTC, while continuing to post false and misleading information about SXTC, selling all 400,000 shares by 10:29:00 EST at an approximate price of $0.285 per share for an approximate profit of $15,079.12. (*Id.* ¶¶ 28–29.)

Regarding GTT, the Superseding Indictment alleges that on or about March 1, 2021, at approximately 13:37:35 EST and after having purchased shares of GTT, Defendant falsely claimed in a tweet that "$GTT 24RSI +++ major multi billion $$$ catalyst," while omitting the material information that he intended to sell his own shares of GTT. (*Id.* ¶ 45.) At or about the time of Defendant's tweet, Defendant Knight allegedly stated in a recoded conversation in reference to Defendant's tweet: "Oh, there it is! Tweet, tweet, tweet. There's the tweet!" (*Id.*) Later in the same recording, Defendant Knight allegedly stated: "I don't think [Rybarczyk] will accept [the price of GTT] not going this much. I refuse to believe it. He's got more pumpers in him." (*Id.* ¶ 46.) At approximately 13:39:26 EST, Defendant Rybarczyk allegedly tweeted: "$GTT 110M market cap with 2B+ deal in place." From approximately 13:40:00 EST to approximately 14:45:00 EST, Defendants Rybarczyk, Deel, and Knight allegedly collectively sold 243,300 shares of GTT at an approximate average price of $1.86 for an approximate profit of $24,349.18. Later in the same

recorded conversation with Defendant Knight, Defendant Cooperman allegedly describe din part how Defendant Rybarczyk used social media to pump the price of securities:

> Like, what [Rybarczyk] does is he alerts it, and then, like, five minutes later all his little minions start, like, retweeting it, and saying "added with him," so it, like, builds the hype back up. It happens every single time. They have this sh*t down to a f*cking science. It's great.

(*Id.* ¶ 50.)

Similarly, on or about March 1, 2021, at approximately 16:07:46 EST, Defendant Matlock allegedly falsely claimed in Atlas Trading Discord that "I just added GTT with Ultra," a reference to the Discord account of Rybarczyk, and without disclosing his intent to immediately sell his shares, which he proceeded to do in the ensuing minutes. (*Id.* ¶ 51.) Also on or about March 1, 2021, at approximately 16:06:57 EST, Defendant Rybarczyk allegedly falsely claimed in a tweet a goal of "$GTT Short Squeeze to $3" when GTT was trading at approximately $2 per share. (*Id.* ¶ 52) At approximately 16:08:00 EST, Defendant allegedly sold 90,708 shares of GTT. (*Id.*) At approximately 16:09:17 EST, Defendant allegedly falsely claimed in a tweet that "$GTT won't end pretty on the short side. Book value $3.44," on or about when GTT was trading at approximately $1.98 per share. (*Id.*) Between 17:19:00 EST and 17:22:00 EST, Defendant sold an additional 50,000 shares of GTT. (*Id.*) After selling his shares throughout the day, Defendant allegedly tweeted: "$GTT Insane weekly; One of the most beat up technology names out there. Just playing the bounce here." (*Id.*)

Regarding UPC, on or about July 22, 2021, as of approximately 17:00:00 EST, Defendants Rybarczyk, Cooperman, and Deel allegedly collectively purchased and held 303,898 shares of UPC at an approximate price of $3.359 per share. At approximately 17:05:00 EST and while in the midst of selling UPC shares, Defendant Cooperman allegedly claimed in a post in Atlas Trading Discord that he purchased or "took" shares of UPC "because ultra [Rybarczyk] was

talking about it . . . ." (*Id.* ¶ 75.) On or about July 23, 2021, at approximately 7:19:19 EST, Defendant Rybarczyk allegedly falsely claimed in a tweet: "$UPC no BS here. Full position intact, I don't dump. I think we get a halt up at open . . . ." (*Id.* ¶ 79.) At approximately 7:34:00 EST, Defendant allegedly sold approximately 50,000 shares of UPC, and by approximately 9:39:00 EST, Defendant had allegedly sold all of his shares of UPC at an approximate price of $4.437 per share for an approximate profit of $193,923.02. (*Id.*)

Regarding ABVC, on or about August 11, 2021 by approximately 8:11:00 EST, Defendant had allegedly purchased and held approximately 303,289 shares of ABVC at an approximate price of $3.489 per share. (*Id.* ¶ 83.) At approximately 8:24:28 EST, Defendant allegedly tweeted: "$ABVC Soaked a ton between yesterday and a few fills when I got up. High conviction play $6+ first target. Keep on your WL for coming days." (*Id.* ¶ 84.) At approximately 9:30:03 EST, Defendant claimed in a tweet: "$ABVC LONG $6+++." (*Id.*)

Starting at approximately 9:35:00 EST, Defendant began selling his shares of ABVC. (*Id.* ¶ 85.) In between selling shares of ABVC, at approximately 9:40:29 EST, Defendant allegedly falsely claimed in a tweet that "$ABVC Still goes $6+." (*Id.* ¶ 86.) In between allegedly selling more shares of ABVC at approximately 10:05:02 EST, Defendant falsely claimed in a tweet: "$ABVC Not anywhere near done. Full position intact. 90% of swings all explode." (*Id.* ¶ 87.) In between continuing to allegedly sell more shares of ABVC at approximately 10:34:59 EST, Defendant falsely claimed in a tweet: "$ABVC Near entry now. Holding 300k full." (*Id.* ¶ 88.) By approximately 12:25:00 EST, Defendant allegedly closed his position in ABVC after selling approximately 303,289 shares of ABVC at an approximate price of $3.685 per share and for an approximate profit of $59,345.48. (*Id.* ¶ 89.) Despite allegedly profiting over $59,000 on the trade of ABVC and selling all of his shares while falsely maintain that he was holding his position,

Defendant allegedly falsely claimed in a tweet at approximately 16:49:17 EST that he was a "[b]ag holder"—at or about the time that the price of ABVC had declined—and falsely maintained that "I hold my word and don't dump on anyone." (*Id.* ¶ 90.)

Regarding CEI, the Superseding Indictment alleges a collective execution of the scheme in or around August 2021 to in or around October 2021 involving Defendants Rybarczyk, Matlock, Constantin, Deel, Hrvatin, and Cooperman. (*Id.* ¶¶ 92–100.) As an example of Defendant Rybarczyk's involvement, the Superseding Indictment alleges that in or around September 2021, certain of the defendants falsely claimed to be holding shares of CEI when they were not. For example, on or about September 9, 2021, at approximately 16:02:06 EST, Defendant tweeted: "$CEI That's a triple now @LadeBackk @MrZackMorris loving the action. Thanks for mentioning this idea. On the way to the $2 dolla bill next." (*Id.* ¶ 97(b).) Similarly, on or about September 26, 2021, at approximately 16:01:28 EST, Defendant allegedly falsely claimed in a tweet: "$CEI I'm still full on this too. I wouldn't be tweeting about it every other day if I wasn't." (*Id.* ¶ 97(c).)

On March 31, 2023, the United States produced to the defense, voluntarily and to maintain the October 23, 2023 trial date, the stock tickers and time periods of trading that may be at issue for trial.[4] By the June 15, 2023 expert disclosure date, the United States will specifically identify— among Defendants' social media records that the United States had produced in January 2023— the full set of Defendants' social media posts that the United States contends are false or fraudulent in furtherance of the scheme and may be at issue as such for trial.

---

[4] Note that the United States reserved the right to make any necessary edits to this voluntary disclosure that may come to light during the expert process by the expert disclosure deadline, which is June 15, 2023. (*See* Scheduling Order, ECF No. 254; Response, ECF No. 234, Exs. 1–2.)

## Legal Standard

It is beyond dispute that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956). "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001) (quoting *United States v. Nai Fook Li*, 206 F.3d 56, 61 (1st Cir. 2000) (en banc), *cert. denied*, 531 U.S. 956 (2000)).

An indictment is constitutionally sufficient if it (1) contains the offense elements, (2) fairly informs the defendant of the charge, and (3) enables him to plead an acquittal or conviction as a bar to future prosecutions of the same offense. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "Apart from meeting this minimum constitutional standard, the government need not describe all evidentiary details establishing the facts of the [allegations.]" *United States v. Rafoi*, No. 21-20658, 2023 WL 1811921, at *3 (5th Cir. Feb. 8, 2023) (reversing district court's grant of defendants' motion to dismiss because indictment adequately conformed to minimal constitutional standards). An indictment that tracks the language of the statute is generally adequate. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 414 (1980); *United States v. Franco*, 632 F.3d 880, 884–885 (5th Cir. 2011) (per curiam). Only in "very rare cases" must an indictment specify in detail "how a particular element of a criminal charge will be met." *United States v. Stringer*, 730 F.3d 120, 125–26 (2d Cir. 2013).

In assessing a motion to dismiss, the Court is "required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotation and citation omitted). "[A] court only grants a motion to dismiss if, as a matter of law, the 'infirmity' is such that the indictment fails to allege facts that, if true, would constitute a prosecutorial offense." *United States v. Cheng*, No. 4:20-cr-

455, 2022 WL 112026, at *5 (S.D. Tex. Jan. 12, 2022). "[A] court must deny a motion to dismiss if it relies on disputed facts." *Id.* (citing *Kay*, 359 F.3d at 742; *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998)).

**Argument**

I. **The charged fraud does not require a fiduciary duty, or any other preexisting duty to disclose, to be actionable as securities fraud.**

The law is clear that the "fraud statutes do not require a duty to disclose imposed by statute or regulation." *United States v. Mathews*, 31 Fed. App'x 838, 2002 WL 261421, at *9 (5th Cir. 2002). Unlike Defendants, courts recognize that "[i]t requires no extended discussion of authority to demonstrate that omissions or concealment of material information can constitute fraud . . . without proof of a duty to disclose the information pursuant to a specific statute or regulation." *United States v. Keplinger*, 776 F.2d 678, 697–98 (7th Cir. 1985); s*ee also United States v. Swenson*, 25 F.4th 309, 318 n.3 (5th Cir. 2022) (quoting and citing *Keplinger* for this proposition); *United States v. Colton*, 231 F.3d 890, 904 (4th Cir. 2000) ("[T]he government need not demonstrate that defendants who successfully and intentionally engaged in a fraudulent scheme to actively conceal material facts . . . had an independent duty to disclose such facts. Rather, evidence of such a scheme in and of itself suffices."); *United States v. Morris*, 80 F.3d 1151, 1161 (7th Cir. 1996) ("[T]he [fraud] statutes apply not only to false or fraudulent representations, but also to the omission or concealment of material information, even where no statute or regulation imposes a duty of disclosure."); *United States v. Smith*, 555 F. Supp. 3d 563, 576 (N.D. Ill. 2021) (explaining, in the context of Section 1348, that "[t]he 'concept of misrepresentation . . . can also include the omission or concealment of material information, *even absent an affirmative duty to disclose*, if the omission was intended to induce a false belief and action to the advantage of the scheme and the disadvantage of the victim.'" (quoting *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016) (emphasis

9

added)); *United States v. Vorley*, 420 F. Supp. 3d 784, 801 (N.D. Ill. 2019) ("[T]he existence of a fiduciary, regulatory, or statutory duty to disclose material information is not required to make an omission actionable under the mail and wire fraud statutes."). That is so because "the scheme to defraud is a 'departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community.'" *Matthews*, 2002 WL 261421, at *9 (quoting *United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir. 1987)).

In this particular case, the duty to disclose arose when Defendants chose to speak on the subject of their stock trades. *See, e.g.*, *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982), *cert. denied*, 456 U.S. 1010 (1982) ("[I]t is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."); *see also United States v. Autouori*, 212 F.3d 105, 119 (2d Cir. 2000) ("A duty to disclose can also arise in a situation where a defendant makes partial or ambiguous statements that require further disclosure in order to avoid being misleading."). This is not a case of "mere omissions," but "affirmative misrepresentations." *See, e.g.*, *United States v. Biesiadecki*, 933 F.2d 539, 543 (7th Cir. 1991).

Like his co-Defendants, Defendant wastes page after page with irrelevant expositions on inapplicable laws and regulations (and irrelevant factual narratives) regarding fiduciary duties and duties of disclosure attempting to distract this Court from the actual issues before it. (*See* Def.'s Br. (ECF No. 267 ("Br.")) at 22–34.) The Court should simply ignore these points. Indeed, citations to cases like *Chiarella v. United States*, a case concerned with "mere possession of nonpublic market information," have no application here. *See Chiarella v. United States*, 445 U.S. 222, 235 (1980). These irrelevant digressions are particularly surprising given that Defendant demonstrates in his papers more facility with the applicable fraud laws than many of his co-Defendants. (*See, e.g.*, Br.

at 20–22.) Defendant's obvious awareness of the relevant law—but blatant failure to engage with it in any serious way—should tell the Court all it needs to know about the sincerity and veracity of Defendant's arguments.

Indeed, the securities fraud alleged does not require a fiduciary or other pre-existing duty, as the Defendant wrongly posits. (*See* Br. at 25.) Rather, at the point Defendants chose to speak about their stock trading, they assumed the duty to speak fully and truly, not falsely or fraudulently with fraudulent intent. *See, e.g.*, *Townley*, 665 F.2d at 585. It is precisely this plain theory of fraud that the Superseding Indictment alleges. As alleged, they did not speak fully and truly, but falsely and fraudulently with requisite intent. The Superseding Indictment pleads that plain as day. It is up to a jury to decide what is true. *See, e.g.*, *Cheng*, 2022 WL 112026, at *5.

## II. Whether the at-issue statements were *materially* false or misleading is an issue for the jury.

"In general, a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decisionmaking body to which it was addressed." *United States v. Neder*, 527 U.S. 1, 24–25 (1999) (internal quotations and citations omitted); *see also United States v. Herman*, 997 F.3d 251, 269–70 (5th Cir. 2021) (quoting *Neder*'s definition of materiality); *United States v. Foster*, 229 F.3d 1196, 1197 (5th Cir. 2000) (same). The Fifth Circuit Pattern Jury Instructions provide a helpful definition:

> [A] representation [statement] [pretense] [promise] is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed. The Government can prove materiality in either of two ways. First, a representation [statement] [pretense] [promise] is "material" if a reasonable person would attach importance to its existence or nonexistence in determining his [her] choice of action in the transaction in question. Second, a statement could be material, even though only an unreasonable person would rely on it, if the person who made the statement knew or had reason to know his [her] victim was likely to rely on it.

Fifth Circuit Committee on Pattern Jury Instructions, Pattern Jury Instructions (Criminal Cases) § 1.40, "Materiality" (2019 ed.).[5]

As this Court has clearly stated, "[m]ateriality is a mixed question of law and fact usually reserved for the trier of fact." *United States v. Causey*, 2005 WL 2647976, at *3 (S.D. Tex. Oct. 17, 2005). The Court should only rule on materiality as a matter of law "if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Id.* (quoting *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 216 (5th Cir. 2004)). This is not such a case—here, the question of materiality must go to the jury.

The Superseding Indictment plainly alleges materiality. (*See, e.g.*, SI ¶ 14.) Defendants' social media following was the "decisionmaking body to which" the statements at issue here were addressed. *See, e.g.*, *Neder*, 527 U.S. at 24–25. As alleged, Defendants designed their social media statements to induce their followers to participate as unwitting victims in the pump-and-dump scheme. *Compare* (SI ¶¶ 14, 18, 24) *with United States v. Chanu*, 40 F.4th 528, 542 (7th Cir. 2022) (finding materiality established where defendants made false representations "with the aim (and effect) of influencing other actors in the trading space").

In trading cases like this, hearing from alleged victim-witnesses at trial is a common, but not exclusive, method of demonstrating the charged fraudulent misrepresentations were, in fact,

---

[5] In the context of Title 15 securities fraud, Courts have also described materiality as asking whether "'there is a substantial likelihood that a reasonable shareholder would consider [the statement] important' in making an investment decision." *United States v. Causey*, 04-cr-025, 2005 WL 2647976, at *3 (S.D. Tex. Oct. 17, 2005) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 238 (1988)). "An omission is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the 'total mix' of information made available.'" *Id.* (quoting *Basic*, 485 U.S. at 238). Although the Court should look to the Title 18 materiality standard for fraud charged under Title 18, the Superseding Indictment adequately alleges materiality under either standard for all the reasons discussed.

material to the victim-witness' trading decisions. *See, e.g.*, *Chanu*, 40 F.4th at 542; *United States v. Bases*, 18-cr-48, 2022 WL 3586142, at \*6–7 (N.D. Ill. Aug. 22, 2022). Thus, this jury should hear from members of that "decisionmaking body" to decide whether the statements at issue were in fact "capable of influencing" the members of that body or important to them in making investment decisions. *See id.* The United States expects such testimony at trial in this case.

The allegations in the Superseding Indictment even demonstrate that Defendants *themselves* believed their statements to be material, as they expressed awareness that their posts would have market impact. (*E.g.*, SI ¶ 18 ("You post when there is a dip and say you joined then . . . Works better because well [sic] save more plays that way . . ."); ¶ 24 ("Rybarczyk advised Deel to include the number of shares Deel was purportedly purchasing '[j]ust to make it more appealing [to Deel's Twitter followers] and if they see you're adding 100,000–200,000 shares they'll likely be enticed to add with size.'"). These statements allege Defendants knew or had reason to know their victims were likely to rely on their representations, which may prove materiality even if victims are unreasonable in that reliance. *See* Pattern J. Instrs. § 1.40. Defendant cited to the Pattern Jury Instructions that make this clear, but failed to properly apply them to the clear allegations in the Superseding Indictment. (*See* Br. at 35.)

And Defendant even *concedes* materiality at this juncture, writing: "the Court must assume that had the victims known that the Defendants were selling shares at the time of their tweets, they would not have purchased the stock." (Br. at 38.) That is precisely what is at issue in this case.

Defendants' numerous fact-based arguments about materiality only serve to underscore this is an issue of disputed fact to be resolved be a jury. Impacting the market price is only one of many ways to satisfy the materiality requirement. (*See* Br. at 36.) Another is making false statements to a public audience in furtherance of a fraudulent scheme, as alleged here. Thus, the

13

Court must not decide this issue as a matter of law because it involves significant questions of fact for a jury's determination. *See, e.g., Causey*, 2005 WL 2647976, at *3.

Defendant's cited cases do not change that conclusion. Defendant's notion that there can be no fraud because alleged victims received the "benefit of their bargain" is incorrect. First, the main case Defendant cites for that proposition, *United States v. Davis*, considered a "right to control" theory of wire fraud, which has since been eliminated as a viable theory by the Supreme Court. *United States v. Davis*, No. 13-cr-923, 2017 WL 3328240, at *9 (S.D.N.Y. Aug. 3, 2017); *see also United States v. Ciminelli*, 598 U.S. --, 143 S. Ct. 1121 (2023). Second, *Davis* itself makes clear that even when considering that principle under other theories of fraud, this is such a case to which the general pronouncement does not apply. As the court explained:

> [W]e have repeatedly rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain. **But we have upheld convictions for mail and wire fraud where the deceit affected the victim's economic calculus or the benefits and burdens of the agreement. The requisite harm is also shown where defendants' misrepresentations pertained to the quality of services bargained for**, such as where defendant attorneys "consistently misrepresented to their clients the nature and quality of the legal services they were providing . . . for a hefty fee."

*Davis*, 2017 WL 3328240, at *9 (quoting *United States v. Walkers*, 191 F.3d 326, 335–36 (2d Cir. 1999)). This is such a case where Defendants, as alleged, consistently misrepresented to their followers the nature and quality of the stocks they were touting, as evidenced by the fact that the Defendants did not follow their own public statements. Further, given that the Defendants went to lengths to hold themselves out as sophisticated, profitable stock traders, it is alleged that the deceit affected the victim's economic calculus in purchasing the stocks they recommended. *See id.* Whether it was so is a question for the jury.

14

*United State v. Bogucki* does not alter this analysis. 18-cr-00021, 2019 WL 1024959 (N.D. Cal. Mar. 4, 2019). In the context of post-trial motions in that case, the Northern District of California held the United States did not present evidence from which a reasonable jury could conclude the trading representations at issue were material. The United States advanced two theories. First, the court held the evidence at trial did not establish the United States' first theory of liability based on a duty of trust and confidence, which is irrelevant here for all the reasons explained. A further critical distinction on this point is that the court found the trial testimony of an employee of the ostensible victim "understood the other party to be 'posturing,' rather than providing strictly true information" and that employee was himself "bluffing" in the negotiation. *Id.* at *2, 6. Here, it is alleged otherwise, and the United States expects the trial evidence to demonstrate that there was no such understanding among many of the alleged victims.

That court also found trial evidence did not establish the United States' second theory of fraud liability, premised on misleading half-truths and omissions, because the five pieces of evidence the United States relied on for this point were not sufficient. *Id.* at *4–5. This case is obviously distinct, given that the Superseding Indictment itself alleges far more than five pieces of evidence to establish the fraud here as discussed at length. And far more than that will be adduced at trial. Thus, a case in which the United States had only five points of evidence *after trial* is entirely inapposite to this case and procedural posture.

As to the notion of commercial "puffery," that is not applicable to this fraud case. The allegations are not the sort of "self-interested posturing that routinely occurs in transactions involving the financial markets," (Br. at 39), but are allegations of fraud. *See, e.g.*, *United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996) (distinguishing fraud from "business conduct that is customary rather than exceptional and is relatively harmless" and is "so commonplace as to be

'normal,' [and] not likely to fool anyone"). There is a significant difference between touting a stock one holds and believes in, and touting a stock one holds in order to attract buyers to drive up the price and volume so one can sell to those buyers at a profit, all with the fraudulent intent to deprive those buyers of money or property. The latter is not "routine." It is classic fraud, and that is what is alleged.

As to the notion that opinions are not actionable, that is plainly wrong for all the reasons explained elsewhere. (*See* ECF No. 295 at 16–19.) Defendant even acknowledges that opinions are actionable when there is a "gross disparity between prediction and fact," but does not reach the necessary conclusion that when that disparity is alleged, as it is here, the question must go to a jury. (Br. at 42 (quoting *Lormand v. US Unwired, Inc.*, 565 F.3d 228 n.13 (5th Cir. 2009) (internal quotation omitted)); *Cheng*, 2022 WL 112026, at *5.

### III.   Section 1348 plainly prohibits schemes to defraud involving securities, the statute requires fraudulent intent, and such fraud schemes have long been prohibited, raising no Due Process issues here.

The United States has already thoroughly responded and demonstrated why this argument is unavailing and the Court should reject it.[6] (*See* ECF No. 295 at 24–34.)

The text of Section 1348 is clear in its scope and application. It prohibits schemes (1) to defraud in connection with any security; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any security.[7] *See* 18 U.S.C. § 1348. This is understandable to any ordinary person: the statute prohibits schemes to defraud involving securities.

---

[6] Only for the sake of lawyerly thoroughness, the United States again expressly incorporates that discussion here, to which the Court should look.

[7] This excerpt omits statutory language for ease and on the presumption that the Court is familiar with the text. Note, however, that the omitted language supplies further particularity, requiring the securities covered to be those "of an issuer with a class of securities registered under section 12 of the Securities

Critically, Section 1348 has "a scienter requirement" which "alleviate[s] vagueness concerns." *McFadden v. United States*, 576 U.S. 186, 197 (2015) (internal quotations and citation omitted). To obtain a conviction, the United States must prove (and has alleged) that Defendants had the specific intent to defraud—in other words, they knew *exactly* what they were doing when they were doing it. *Compare Gonzales v. Carhart*, 550 U.S. 124, 148 (2007) *with* (SI ¶ 40 ("We're robbing f*cking idiots of their money."), ¶ 18 ("we gotta look less obvious")).

The rule of lenity does not apply because the statute is not ambiguous. *See, e.g.*, *Wooden v. United States*, 142 S. Ct. 1063, 1075 (2022) (Kavanaugh, J., concurring) ("Importantly, the rule of lenity does not apply when a law merely contains some ambiguity or is difficult to decipher. As this Court has often said, the rule of lenity applies only when 'after seizing everything from which aid can be derived,' the statute is still grievously ambiguous." (internal quotations and citations omitted)); *Bases*, 2020 WL 2557342, at *12 (finding, with respect to Section 1348, that "because the statute is not ambiguous as applied to Defendants' conduct, the rule of lenity does not apply").

Despite the statute's relatively recent vintage, numerous courts have already easily denied vagueness challenges to Section 1348. *See, e.g.*, *United States v. Motz*, 652 F. Supp. 2d 284, 295 (E.D.N.Y. 2009); s*ee also Smith*, 555 F. Supp. 3d at 577–79; *Bases*, 2020 WL 2557342, at *11–13; *United States v. Coscia*, 100 F. Supp. 3d 653, 659–61 (N.D. Ill. 2015), *aff'd*, 866 F.3d 782 (7th Cir. 2017). Indeed, as one court recognized, "[a]ccording to the legislative history, the overarching purpose of the statute was to broaden the range of conduct proscribed by existing federal securities laws." *Motz*, 652 F. Supp. 2d at 294 (citing 148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002).

---

Exchange Act of 1934 (15 U.S.C. § 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78*o*(d)) . . . ." 18 U.S.C. § 1348.

Nor does any absence of authority interpreting Section 1348 under facts precisely such as these fail to provide Defendants notice that their fraudulent scheme was prohibited. That is simply not the law. *See, e.g.*, *Smith*, 555 F. Supp. 3d at 577–79; *Bases*, 2020 WL 2557342, at *11–13 ("Regardless of the novelty of the conduct, so long as it falls within the statute's plain language, as is the case here, there is fair notice . . . .").

As these courts have recognized, schemes to defraud are nothing new. In its most basic elements as a scheme to defraud, the conduct alleged in the Superseding Indictment has been proscribed for generations. *See, e.g.*, *Durland v. United States*, 161 U.S. 306, 313 (1896) ("It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. . . . In the light of this the [mail fraud] statute must be read, and, so read, it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. The significant fact is the intent and purpose.").

And pump-and-dump schemes themselves—saying one thing publicly about a stock and trading another way privately—have long been prohibited under numerous laws proscribing fraud. *See, e.g.*, *United States v. Steven Gallagher*, No. 1:22-cr-122 (S.D.N.Y. July 6, 2022) (ECF Nos. 1, 11, 28) (securities fraud guilty plea for social media-based pump and dump); *United States v. Enger*, 427 F.3d 840, 854 (10th Cir. 2005) (affirming securities fraud conviction where "[t]he record show[ed] that at the same time as Wenger had been advising readers to buy PanWorld stock, Wenger himself was selling his shares"); *SEC v. Huttoe*, 96-cv-2543, 1998 WL 34078092, at *7 (D.D.C. Sept. 14, 1998) (the "practice of selling when . . . recommending buying has long been understood to operate as a fraud or deceit upon investors"); *Zweig v. Hearst Corp.*, 594 F.2d 1261, 1265–66 (9th Cir. 1979) (finding that financial columnist's failure to reveal to readers his practice

of "scalping" the stocks of companies he wrote about was a material nondisclosure creating liability).

In direct contrast to Defendant's claim that "there is nothing in the legislative history of Section 1348 that suggests that it would cover the conduct alleged," Senator Leahy's description of the then-new statute makes clear its scope and application are broad enough to cover this case:

> Currently, unlike bank fraud or health care fraud, there is no generally accessible statute that deals with the specific problem of securities fraud. In these cases, federal investigators and prosecutors are forced either to resort to a patchwork of technical Title 15 offenses and regulations, which may criminalize particular violations of securities law, or to treat the cases as generic mail or wire fraud cases and to meet the technical elements of those statutes, with their five year maximum penalties.

> This bill, then, would create a new 25 year felony for securities fraud—a more general and less technical provision comparable to the bank fraud and health care fraud statutes in Title 18. It adds a provision to Chapter 63 of Title 18 at section 1348 which would criminalize the execution or attempted execution of any scheme or artifice to defraud persons in connection with securities of publicly traded companies or obtain their money or property. **The provision should not be read to require proof of technical elements from the securities laws, and is intended to provide needed enforcement flexibility in the context of publicly traded companies to protect shareholders and prospective shareholders against all the types scheme and frauds which inventive criminals may devise in the future.** The intent requirements are to be applied consistently with those found in 18 U.S.C. §§ 1341, 1343, 1344, 1347.

> By covering all "schemes and artifices to defraud" (*see* 18 U.S.C. §§ 1344, 1341, 1343, 1347), new § 1348 will be more accessible to investigators and prosecutors and will provide needed enforcement flexibility and, in the context of publicly traded companies, **protection against all types schemes [sic] and frauds which inventive criminals may devise in the future.**

148 Cong. Rec. S7420–21 (daily ed. July 26, 2002) (statement of Sen. Leahy), *available at* 2002 WL 1731002 (emphasis added). Far from the contrived emphasis on the fraud occurring "in

companies" that Defendant presents, the scope of Senator Leahy's pronouncements to the public is unmistakably broad enough to encompass a classic pump and dump scheme like the one alleged. *See id.* Thus, Defendant was on notice.

> **IV.     The First Amendment does not shield the charged fraud.**

Fraud finds no shelter in the First Amendment. The Supreme Court of the United States is unequivocal in stating that "the First Amendment does not shield fraud." *Ill., ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003). That is because fraud is one of "the few 'historic and traditional categories of expression long familiar to the bar" in which content-based speech restrictions are permitted. *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (internal citations and quotations omitted). Indeed, "the government's power 'to protect people against fraud' has 'always been recognized in this country and is firmly established.'" *Madigan*, 538 U.S. at 612 (quoting *Donaldson v. Read Magazine, Inc.*, 333 U.S. 178, 190 (1948)).

Thus, the fraud alleged in this case is unprotected speech to which the First Amendment's defenses do not apply. *Id.* As the Court explained, "when nondisclosure is accompanied by intentionally misleading statements designed to deceive the listener, the First Amendment leaves room for a fraud claim." *Id.* This is precisely such a case. The Court further explained that in order for a defendant to be liable for fraud in the state civil law context, "the complainant must show that the defendant made a false representation of material fact knowing that the representation was false; further, the complainant must demonstrate that the defendant made the representation with the intent to mislead the listener, and succeeded in doing so." *Id.* at 620. That is precisely what the Superseding Indictment alleges and what the United States will show at trial. And in stating these pleading requirements for fraud, the Court made clear that "[w]hat the First Amendment and our case law emphatically do not require, however, is a blanket exemption from fraud liability for a [defendant] who intentionally misleads . . . ." *Id.* at 621.

20

The Court need take the analysis no further.[8] The Superseding Indictment, which clearly alleges fraud, must be accepted as true. It sufficiently alleges securities fraud for all the reasons discussed here and elsewhere. (ECF No. 295.) It is up to a jury to decide whether in fact fraud was committed. If so, the First Amendment does not apply. If not, the First Amendment does not apply. The First Amendment simply has nothing to do with this case, as this is clearly in the heartland of the United States' compelling, historically recognized interest in prohibiting fraud schemes.

Nor is Section 1348 overbroad because, as Defendant points out, one cannot commit fraud without fraudulent intent. (Br. at 57.) In order to strike down a statute on the basis that it is overbroad, the statute's "overbreadth [must be] *substantial*, not only in an absolute sense, but also relative to [its] plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). Given that the statute requires fraudulent intent and that is its "plainly legitimate sweep," it is not overbroad. *See id.*; *see also Alvarez*, 567 U.S. at 723 ("Where false claims are made to effect a fraud or secure moneys or other valuable considerations, say offers of employment, it is well established that the Government may restrict speech without affronting the First Amendment.").

There is no sincere concern that substantial amounts of legitimate speech will be chilled by the statute or this prosecution given that fraudulent intent is required under Section 1348 and the First Amended does not shield fraud. Nor, as the Defendants continue to falsely claim, does the United States plan to prove this cases simply by the Defendants "not disclosing stock sales in close proximity to a tweet." (Br. at 57.) Rather, the allegations of the fraudulent scheme here include:

---

[8] There also are arguments that Defendants' speech is commercial speech entitled to lesser protections than non-commercial speech, but the Court need not reach that question as Defendant invites it to do. *See, e.g.*, *Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("[T]he State may ban commercial expression that is fraudulent or deceptive without further justification."); *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985) ("The States and Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading . . . ."). This case is about unprotected fraudulent speech, plain and simple. Thus, the Supreme Court makes clear the First Amendment is irrelevant. *See, e.g.*, *Madigan*, 538 U.S. at 606.

- Private communications coordinating the scheme, including Defendant Rybarczyk's own (*e.g.*, SI ¶¶ 18, 22, 24, 26, 56–61, 65–70, 103);

- Private communications that are contrary to Defendants' publicly declared sentiments (*compare id.* ¶ 109 *with id.* ¶ 110);

- Public messages attempting to cover up the scheme that differ from Defendants' private sentiments or trading activity (*e.g.*, *id.* ¶¶ 15, 17–18);

- Recorded conversations in which several Defendants discuss their scheme and demonstrate their fraudulent intent (*e.g.*, *id.* ¶¶ 45–50);

- All along with both the trading and social media records and the general allegations of the details of the scheme (*e.g.*, *id.* ¶¶ 1, 13–14, 20–121).

None of the hypotheticals presented by the defense present a fraudulent scheme, let alone one with this much evidence alleged at the outset. (*See* Br. at 56) These are significant allegations of a scheme and fraudulent intent, which are well within the legitimate sweep of the statute and demonstrate it is not overbroad both facially and as-applied.

**V.     The Superseding Indictment alleged fraud in connection with the purchase or sale of any security.**

Section 1348(2) requires that a "scheme or artifice . . . to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property *in connection with* the purchase or sale of any . . . security . . . ." 18 U.S.C. § 1348(2). That is precisely what the Superseding Indictment alleges. (*See, e.g.*, SI ¶¶ 12.)

The "in connection with" requirement is a phrase of art throughout securities and commodities law, as the defense points out. (*See* Br. at 57–58.) Indeed, the "Supreme Court has repeatedly held" that the "in connection with" requirement "is easily satisfied." *United States v. Nouri*, 711 F.3d 129, 143–44 (2d Cir. 2013) (collecting cases). In one such case, the Supreme Court emphasized the "broad interpretation of the term," explaining that a person need not be

"defrauded into purchasing or selling particular securities." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006). Rather, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." *Id.* (quoting *United States v. O'Hagan*, 521 U.S. 642, 651 (1997)). "The requisite showing, in other words, is 'deception in connection with the purchase or sale of any security, not deception of an identifiable purchaser or seller." *Id.* (quoting *O'Hagan*, 521 U.S. at 651). The allegations of the Superseding Indictment far exceed this liberal standard. (*See, e.g.*, SI ¶ 1.)

Defendant's numerous factual arguments on this point demonstrate that it, too, should go to a jury. Underscoring this fact is the Defendant's attempt to have it both ways: both in this argument and in the section on materiality, Defendant attempts to argue that "no actual investor would presumably rely on the tweets or Discord chats to make investment decisions." (*See* Br. at 58; *see also id.* at 42.) Yet, when discussing other arguments, the defense acknowledges Defendant's tweets may have market impact, asking whether "a trader who publicly Tweets about a stock [must] disclose his future sales *before* he chooses to sell, thereby taking a risk that *his disclosure will tank the stock* for everyone[?]" (*Id.* at 54. (emphasis added)) Which is it—could Defendant's tweets impact decisions of market participants such that they may constitute fraud in connection with a security or not? That is a question for the jury. *Cheng*, 2022 WL 112026, at *5.

## VI.   The Superseding Indictment sufficiently alleges securities fraud for all substantive counts.

In claiming Counts 16 and 17 do not sufficiently allege securities fraud, Defendant rehashes the trite and tired arguments the United States already renounced in response to Defendant Hennessy's first Motion to Dismiss. (*See* ECF No. 174.)[9] As the United States explained, the Superseding Indictment (1) sets forth the elements of the offense in the precise wording of the

---

[9] The United States incorporates that Response to address this argument.

23

statute and provides profuse particulars, both general and specific; (2) fairly informs the Defendant of the charges; and (3) is sufficient to bar future prosecution of the same offense. *See, e.g.*, *Kay* 359 F.3d at 742.

*First*, the Superseding Indictment contains the elements of the offense in the full statutory language along with substantial particulars. (*See, e.g.*, SI ¶¶ 1–115, 120–21.)

*Second*, the Superseding Indictment fairly informs the Defendant of the charges he faces. *See, e.g.*, *Franco*, 632 F.3d 880, 884 (5th Cir. 2011) (per curiam) ("Generally, an indictment that closely tracks the language under which it is brought is sufficient to give a defendant notice of the crimes with which he is charged."); *Motz*, 652 F. Supp. 2d at 296 (rejecting a challenge to the sufficiency of § 1348 securities fraud count where the indictment contained a general description of alleged harm to victims from which fraudulent intent could be inferred).

*Third*, the Superseding Indictment is sufficient to bar future prosecutions of the same offense. Specifically as to the Counts Defendant challenges, the Superseding Indictment allows him to avoid future prosecution for violations of 18 U.S.C. §§ 1348 & 2 and 1349 that is premised on his Twitter, Discord, and trading activity in September through October 2021 with respect to (i) NAKD, and (ii) EZFL. (*See* ECF No. 134 ¶ 121.) There is no reasonable concern of subsequent prosecutions for allegations at that level of specificity. Nothing more is constitutionally required. *See, e.g.*, *Kay* 359 F.3d at 742.

## VII.   The Superseding Indictment adequately alleges a securities fraud conspiracy in which Defendant played a central part.

The Superseding Indictment includes sufficient allegations of Defendants' involvement in the conspiracy such that a jury must decide what is so. Indeed, "[t]he agreement between conspirators may be silent and need not be formal or spoken. An agreement may be inferred from concert of action, voluntary participation may be inferred from a collection of circumstances, and

24

knowledge may be inferred from the surrounding circumstances." *United States v. Grant*, 683 F.3d 639, 643 (5th Cir. 2009) (internal citations omitted). "And, once the Government produces evidence of a conspiracy, only slight evidence is needed to connect a defendant to it." *Matthews*, 2002 WL 261421, at \*7 (citing *United States v. Jensen*, 41 F.3d 946, 954–55 (5th Cir. 1994), *cert. denied*, 514 U.S. 1101 (1995)). "If found to be a member of a conspiracy, a defendant is liable for all substantive offenses committed in furtherance of it, even if he is unaware of those specific offenses." *Id.* (citing *United States v. Phillips*, 219 F.3d 404, 417 (5th Cir. 2000); *Jensen*, 41 F.3d at 955).

The Superseding Indictment adequately alleges a securities fraud conspiracy in which Defendant played a central part. Indeed, the Superseding Indictment includes allegations regarding Defendant's specific, explicit coordination of the messages integral to one example of the execution of the scheme prior to posting and trading that message in furtherance of the scheme. (*See* SI ¶¶ 21–31.) Those allegations must be taken as true. *Cheng*, 2022 WL 112026, at \*5.

Additional evidence of the conspiracy is alleged in various forms. The allegations that every Defendant posted about and/or traded in the same stocks at the same time of at least one other Defendant is sufficient to infer involvement in the agreement—it demonstrates the common goal and purpose of the conspiracy. *Matthews*, 2002 WL 261421, at \*7 ("The jury may infer from circumstantial evidence the existence of a conspiracy."). Particularly coupled with the express coordination communications alleged, such evidence is a basis to infer illicit coordination. *See id.*

The Court should ignore Defendant's attempts to dismiss these allegations by (1) arguing facts beyond the four corners of the Superseding Indictment and (2) disputing the Superseding Indictment's allegations. (Br. at 60–61.) Those are plainly impermissible and the allegations must go to a jury. *See, e.g.*, *Cheng*, 2022 WL 112026, at \*5.

25

## Conclusion

For all the reasons described here and in its other papers, the Court should reject Defendants' arguments and allow a jury to determine the truth.

Dated: June 9, 2023                    Respectfully submitted,

                                        GLENN S. LEON
                                        Chief, Fraud Section
                                        Criminal Division, Department of Justice

                        By:     /s/ John J. Liolos
                                        Scott Armstrong, Assistant Chief
                                        John J. Liolos, Trial Attorney
                                        Fraud Section, Criminal Division
                                        United States Department of Justice
                                        1400 New York Ave. NW
                                        Washington, DC 20005
                                        Tel.: (202) 768-2246

                                        ALAMDAR HAMDANI
                                        United States Attorney
                                        Southern District of Texas

                        By:     /s/ Thomas Carter
                                        Thomas H. Carter
                                        Assistant United States Attorney
                                        State Bar No.: TX24048387
                                        1000 Louisiana Street, 25th Floor
                                        Houston, Texas 77002
                                        Tel.: (713) 567-9470

26

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, I will cause the foregoing motion to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section

27