IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

### DEFENDANT EDWARD CONSTANTINESCU'S SECOND MOTION TO COMPEL *BRADY* MATERIAL AND TO IMPOSE SANCTIONS, INCLUDING A CONTINUANCE, AND REQUEST FOR A HEARING[1]

### INTRODUCTION

In direct contravention of this Court's April 27, 2023 Order directing the government to produce all *Brady* and *Giglio* material by July 7, 2023 [ECF 254], the government continues to withhold significant exculpatory and impeachment material in its possession. Although this case resulted from a *joint investigation* between the Securities and Exchange Commission (the SEC), the Department of Justice, the US Attorney's Office for the Southern District of Texas, and the Federal Bureau of Investigation, the government continues to conceal exculpatory records and documents in the possession of the SEC. The government should be ordered to immediately turn them over and should be sanctioned, including by granting a continuance, to ensure adequate preparation for trial. Constantinescu requests a hearing to fully address this issue.

---

[1] Defendants Perry "PJ" Matlock, Gary Deel, Stefan Hrvatin, and Tom Cooperman join the motion.

1

The Court is no stranger to Constantinescu's successes as an aggressive stock trader. Indeed, according to a now-unsealed affidavit in support of a seizure warrant,[2] Constantinescu made $51 million (of the purported $80 million he made trading from 2020–2022) from January to March 2021 alone. Amazingly, of that $51 million, he made $39 million in January and February trading the stock of just four companies: AMC Entertainment Holdings, Inc. (AMC) ($9,476,658), Express Inc. (EXPR) ($3,449,093), Naked Brand Group LTD (NAKD) ($9,175,412), and Sundial Growers Inc. (SNDL) ($17,162,991). Constantinescu's trading of these four stocks in January and February 2021 purportedly gave rise to probable cause for the seizure warrant and three of these "Meme Stocks" (NAKD, SNDL, and EXPR) purportedly form the predicate for charges against Constantinescu for conspiracy to commit securities fraud.

But the SEC has previously determined that too many variables converged to determine the cause of the changes in the price and volume of these and other "Meme Stocks."[3] As the SEC concluded (in reference to GameStop (GME) and other "Meme Stocks") in an internal October 2021 report, the "underlying motivation of such buy volume [at that time] cannot be determined."[4] The report came in response to a March 9, 2021 hearing held before Congress's Committee on Banking, Housing, and Urban Affairs concerning price and volume "volatility" of so-called "Meme Stocks."[5] Material supplied for the record at the hearing included a Letter Submitted by the SEC, through which the then-acting SEC Chair made the following comments concerning "Meme Stocks," which by definition includes NAKD, SNDL, and EXPR:

---

[2] **Ex. A.** (Excerpt from Affidavit in Support of an Application for Seizure Warrants, at ¶ 21).
[3] *See* **Ex. B** (*Staff Report on Equity and Options Market Structure Conditions in Early 2021*, sec.gov, Oct. 14, 2021, https://www.sec.gov/files/staff-report-equity-options-market-struction-conditions-early-2021.pdf ("SEC Meme Stock Report")).
[4] **Ex. B.** at 26.
[5] **Ex. C.** (Hearing before the U.S. Senate Committee on Banking, Housing, and Urban Affairs, 117th Congress, 1st Session on Examining the Practices that Encouraged the Volatile Market Activity in Stocks, How it Affects our Economy in the Long Term, and Who Benefits and Who Loses from this "Tech-Induced" Stock Market Volatility, Mar. 9, 2021).

> To the extent that our review of the facts in this situation reveals regulatory gaps in the SEC's enforcement regime, we would welcome a conversation regarding potential action to fill those gaps. It should be noted, however, that some of the activities associated with recent market events may not squarely fall within our current authority to prevent and police market manipulation.[6]

Current SEC Chair Gary Gensler echoed this sentiment during his May 6, 2021 testimony before the U.S. House Committee on Financial services, where he highlighted "seven factors" responsible for price and volume "volatility" of these "Meme Stocks," including (1) gamification and user experience, (2) payment for order flow, (3) equity market structure, (4) short selling and market transparency, (5) social media, (6) market "plumbing" (clearance and settlement), and (7) system wide risks.[7]

The takeaway was clear: the SEC understood, at that time, that (1) whatever was causing "Meme Stock" price and volume "volatility" exceeded the SEC's regulatory authority and (2) a convergence of multiple factors caused the price and volume "volatility" of these "Meme Stocks." To address these findings, the SEC over the past two years has begun (a) revising the securities regulations (without congressional involvement), including as relate to dark pools[8] and short-selling,[9] (b) bringing lawsuits against market actors for *actual* 15 U.S.C.§ 78i market

---

[6] **Ex. C.** at 124–25.
[7] **Ex. D.** at 2 (Testimony Before the House Committee on Financial Services, Chair Gary Gensler, sec.gov., May 6, 2021, https://www.sec.gov/news/testimony/gensler-testimony-20210505, last visited July 6, 2023).
[8] **Ex. E**. ("Market Structure and the Retail Investor:" Remarks Before the Piper Sandler Global Exchange Conference, Chair Gary Gensler, sec.gov, Jun. 8, 2022, https://www.sec.gov/news/speech/gensler-remarks-piper-sandler-global-exchange-conference-060822, last accessed Jul. 6, 2023) ("Right now, there isn't a level playing field among different parts of the market: wholesalers, dark pools, and lit exchanges. Further, the markets have become increasingly hidden from view. In 2009, off-exchange trading accounted for a quarter of U.S. equity volume. Last year, during the meme stock events, that share swelled to a peak of 47 percent. What's more, 90-plus percent of retail marketable orders are routed to a small, concentrated group of wholesalers that pay for this retail market order flow.").
[9] **Ex. F.** (Statement on Adopting Rules Regarding the Settlement Cycle, Chair Gary Gensler, sec.gov, Feb. 15, 2023, https://www.sec.gov/news/statement/gensler-statement-settlement-cycle-021523, last accessed Jul. 6, 2023).

manipulation,[10] naked short-selling,[11] and improper trade restrictions by broker-dealers and clearing firms,[12] and (c) restricting speech to "protect" markets.[13] In the process, the SEC undoubtedly compiled substantial records, data, and information and engaged in frequent communications that undermine the notion that price and volume "volatility" of AMC, NAKD, SNDL, EXPR, and other "Meme Stocks" in the Superseding Indictment were caused by "pump and dumps" "orchestrated" by Constantinescu. He made and lost money the same way everybody else did in 2021: by trading stocks with upward trending volume and price caused by a convergence of factors.

The government was required to turn this information over when Constantinescu asked for it and again when the Court ordered it to do so (twice so far). Its delay is inexcusable, sanctionable, and done in bad faith. Any SEC records related to any of the purported 402 "pump and dumps" giving rise to the § 1349 claim must be produced. Constantinescu seeks sanctions in the form of an order compelling their production and a continuance of all current case deadlines, including trial, as well as a hearing to determine the extent of the government's suppression of this *Brady* material.

---

[10] *See SEC v. Gu*, 21-cv-17578 (D.N.J. Sept. 27, 2021) (involving alleged market manipulation through wash trading of "meme stocks").

[11] *See SEC v. Mintz and Sabby Management LLC*, No. 2:23-cv-3201 (D.N.J. Jun. 12, 2023) (fraudulent scheme involving alleged abusive "naked" short selling).

[12] *In re TradeZero*, SEC Admin. Proceeding No. 3-20870, https://www.sec.gov/litigation/admin/2022/33-11066.pdf, last access Jul. 6, 2023 (concerning broker-dealer allegedly restricting trade of retail investors at direction of clearing company).

[13] Gensler did not mince words concerning his intent to restrict speech to protect markets when he stated during testimony before the House Committee that "I am more concerned about bad actors potentially taking advantage of influential platforms." The current-SEC continues to push an astonishingly aggressive, anti-free speech agenda, urging that "social views" should not impact stock values, which should instead be reflected through "traditional stock value, such as a company's performance." (https://www.investor.gov/additional-resources/spotlight/directors-take/say-no-go-fomo) (last visited July 6, 2023). The proof of the pudding is in the eating: seven months into this prosecution the government has yet to identify a single objectively false statement by Constantinescu, instead directing the Court to memes with speculations about stocks' future price that he posted on twitter.

**ARGUMENT**

I. **Legal Standard**

The government has an affirmative, constitutional duty to disclose exculpatory and impeachment evidence to the defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Due process requires timely disclosures so that evidence favorable to the defendant can be made useful at trial. *United States v. Licciardi*, 2016 WL 815509, at *4 (E.D. La. Mar. 2, 2016). "Brady requires disclosure of evidence favorable to the accused on the issue of guilt as well as evidence which serves to impeach the testimony of adverse witnesses." *United States v. Auten*, 632 F.2d 478, 482 (5th Cir. 1980). As the Fifth Circuit has emphasized, "there is an obligation on the part of the prosecution to produce certain evidence actually or constructively in its possession or accessible to it in the interests of inherent fairness." *Id.* at 481. Accordingly, "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Specifically, the USAO has "an obligation to produce *Brady* and *Giglio* material that is in the sole possession of the SEC" where the USAO and SEC "engaged in a joint investigation." *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014) ("The inquiry is not whether the United States Attorney's Office physically possess the discovery material; the inquiry is the extent to which there was a 'joint investigation' with another agency."); *see also United States v. Gupta*, 848 F. Supp. 2d 491, 493–95 (S.D.N.Y. 2012) (finding that the Government had an obligation to review SEC interview notes and memoranda for *Brady* material, where the SEC and USAO conducted a "joint investigation" by jointly conducting witness interviews); *see also United States v. Mahaffy*, 693 F.3d 113, (2d. Cir. 2012) (government's failure to disclose *Brady* material in the possession of the SEC, including deposition testimony transcripts from SEC administrative

proceedings, warranted vacatur of defendants' convictions for conspiracy to commit securities fraud pursuant to §§ 1348 and 1349).

II. **The government must produce records, documents, and correspondence related to the SEC's finding that the "underlying motivation of [] buy volume" of GME, NAKD, SNDL, EXPR, and other Meme Stocks "cannot be determined" as well as any stocks purportedly giving rise to the conspiracy charge**

   a. *The government is attempting to hold Constantinescu liable for "Meme Stock" price and volume "volatility" determined by the SEC to have been caused by a convergence of factors completely unrelated to him*

On June 15, 2023, the government served various experts reports on Constantinescu, which included so-called "episodes" purportedly giving rise to the securities fraud and conspiracy to commit securities fraud charges against him. Included in those "episodes" are various "Meme Stocks," including NAKD, EXPR, and SNDL during January and February of 2021.[14] A few weeks later, on July 5, 2023, the government filed a notice of intent, opposed by Constantinescu, "to offer at trial" "evidence [that] involves Defendants' conduct underlying the tickers and time periods, that the United States produced to Defendants on June 15, 2023." [ECF 319]. According to the government, "Each of the Episodes," including Constantinescu's trading of NAKD, EXPR, and SNDL during January and February of 2021, "occurred during the charged conspiracy period and constitutes conduct and transactions that parallel the charged conduct, pumping and dumping securities . . . ." [ECF 391 at 2].

Prior to receiving this information, Constantinescu submitted a letter to the government on March 1, 2023 requesting specific *Brady* material.[15] The letter commenced:

> Dear Mr. Carter:
>
> On behalf of Edward Constantinescu, we respectfully write to request prompt production of any and all materials, including documents and information in the possession, custody, and control

---

[14] **Ex. G.** (Excerpts from M. Garibotti Expert Report at 1, 13–14, 16, 18).
[15] **Ex. H.** (Constantinescu's letter to the government requesting Brady material, dated March 1, 2023).

6

> of the government, including the United States Department of Justice and the United States Attorney's Office for the Southern District of Texas, the Federal Bureau of Investigation ("FBI") **the Securities and Exchange Commission ("SEC")**, and the Financial Industry Regulation Authority ("FINRA"), pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 473 U.S. 667 (1985), the Fifth and Sixth Amendments to the Constitution of the United States, and all other applicable law (collectively, "*Brady* Material").
>
> As the government well knows, "a defendant's due process rights are violated when the prosecution suppresses evidence that is exculpatory." *United States v. Cessa*, 861 F.3d 121, 128 (5th Cir. 2017) (citing *Brady*, 373 U.S. at 87). Evidence is exculpatory if it is "material either to guilt or punishment." *United States v. Sipe*, 388 F.3d 471, 477–78 (5th Cir. 2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

(emphasis added). Having already been ordered to "comply with the prosecutor's disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963)" by Court Order dated December 16, 2022 [ECF 42], there is no question the government was aware of its obligation to produce exculpatory evidence in the possession of the SEC—with whom the United States Attorney's Office had conducted a joint investigation into the facts underlying the Superseding Indictment.[16]

On April 6, 2023, the SEC posted on its website an October 14, 2021 "Staff Report on Equity and Options Market Structure Conditions in Early 2021" (the "SEC Meme Stock Report") purporting to explain the facts that caused "GameStop Corp. [GME] and multiple other stocks [to] experience[] a dramatic increase in their share price in January 2021 as bullish sentiments of individuals filled social media."[17]

---

[16] **Ex. I.** (*SEC Charges Eight Social Media Influencers in $100 Million Stock Manipulation Scheme Promoted on Discord and Twitter*, Release No. 25591, Dec. 14, 2022, https://www.sec.gov/litigation/litreleases/2022/lr25591.htm, last accessed Jul. 6, 2023).
[17] **Ex. B.**, *supra* note 2.

The webpage, providing a hyperlink to the Meme Stock Report, includes a two-minute video introduction by SEC Chair Gensler in which he explains to viewers that "GameStop is just one of many so-called Meme Stocks that exhibited significant price volatility, trading volume, and attention in the markets this past January."[18] The video goes on to suggest the SEC is investigating four "causes" for Meme Stock "price volatility, trading volume, and attention in the markets," which he lists as (1) brokerage firms restricting trading, (2) trading in dark pools and through wholesalers, (3) predictive data analytics ("digital engagement practices"), and (4) short selling and market dynamics.

Four days later on April 27, 2023, the Court issued an Amended Scheduling Order imposing a July 7, 2023 deadline on the government to produce "*Brady* material and *Giglio* material." [ECF 254]. The government has repeatedly ignored this mandate, instead taking the indefensible position that because another agency, the SEC, possesses this report and materials related to it and not the individual assistant United States' Attorneys prosecuting this case, it is excused from producing these materials to Constantinescu and his co-defendants. [ECF 310].

      b. *SEC statements and action related to "hundreds of" Meme Stock "events" during 2021 undermine the government's argument that Constantinescu profited on NAKD, SNDL, and EXPR as a result of a "pump and dump" scheme*

The exculpatory nature of this information cannot be overstated. A June 2022 report by the Majority Staff of the Committee on financial services for the United States House of Representatives, defined Meme Stocks as:

> stocks that experience increased trading volume activity by retail investors because of heightened social media discourse (*i.e.*, on Reddit, Twitter, and TikTok) surrounding the stock. Examples of meme stocks from the Meme Stock Market Event include

---

[18] **Ex. J.** (SEC Staff Release GameStop Report, Apr. 6, 2023, https://www.sec.gov/page/sec-staff-release-gamestop-report, last accessed Jul. 6, 2023).

8

GameStop (GME), AMC Entertainment Holdings Inc. (AMC), and **Naked Brand Group Ltd. (NAKD)**.[19]

(emphasis added). That report also repeatedly references Sundial Growers (SNDL) and Express (EXPR).[20] That is, baked directly into the government's definition of "Meme Stock" are four stocks (AMC, SNDL, EXPR, and NAKD) on which Constantinescu made $39 million of the $80 million the government ascribes to him—three of which the government now claims experienced price and volume "volatility" due to a conspiracy "orchestrated" by Constantinescu rather than the convergence of factors recognized by the SEC. In fact, SEC Chair Gensler *participated in* the Congressional Hearing giving rise to this report, which included providing detailed testimony regarding the causes of *the price and volume changes for these stocks*. According to the SEC Meme Stock Report, these are just a handful of the "more than 100 stocks that experienced large price moves or increased trading volume that significantly exceed broader market movements" during 2021, many—or possibly all of which—the government now seeks to punish Constantinescu for.[21]

Gensler's testimony, the subsequent SEC Meme Stock Report, and other statements and actions by the SEC, tend to exculpate Constantinescu. For instance, Gensler emphasized that mobile app "user experience," including "gamification, behavioral prompts, predictions analytics, and differential marketing," "encourage[d] investors to trade more."[22] Among other factors, Gensler also mentioned (1) that broker-dealers and clearing firms had unlawfully

---

[19] **Ex. L.** at 119, App'x I (Game Stopped: How the Meme Stock Market Event Exposed Troubling Business Practice, Inadequate Risk Management, and the Need for Legislative and Regulatory Reform, U.S. House Committee on Financial Services, 117th Congress, 2d. Session, June 2022).
[20] *Id*. at 43, 71–73, 90–92.
[21] **Ex. B.**, *see, e.g.*, *supra* note 2 at 16, 73, note 169 at 43. The report also expressly names JAGX, KOSS, and other stocks, which the government now claims were not the result of a convergence of multiple factors set forth in the SEC Meme Stock Report but rather as the result of "pump and dumps" "orchestrated" by Constantinescu. *Id*. at 21–22, 34. The SEC's original position in October 2021 tracks popular sentiment, including contemporaneous articles, such as by Nasdaq's InvestorPlace, describing NAKD, SNDL, JAGX, KOSS, EXPR and others as meme stocks, even encouraging "[i]t may be fun to dabble in meme stocks." (*See* https://investorplace.com/2021/02/9-meme-stocks-social-media-wont-shut-up-about/). Undoubtedly, the SEC has a list of stocks it determined were "Meme Stocks" subject to the same convergence of factors.
[22] **Ex. D.**, *supra* note 6.

restricted retail trading on certain Meme Stocks, meaning losses could have been caused by the inability to sell or cover; (2) that as much as 47% of orders were being placed in the dark, mostly through dark pools with 90% of all retail trades being routed through wholesalers, meaning that the overwhelming majority of trades in these stocks took place *off-market* between non-retail institutional investors creating pricing outside standard market pricing mechanisms;[23] (3) that broker-dealers payment order flow encouraged wholesalers to purchase their order flow, meaning "[u]like public exchanges that must offer fair access to their publicly displayed quotes," wholesalers controlled routing execution of these orders; (4) that short-selling impacted pricing and volume of these stocks; and (5) that system-wide risks, including insufficient liquidity to meet margin calls, losses at individual firms, and concentration among market makers and broker-dealers, caused price and volume volatility.[24]

Each of these factors, as well as other exculpatory factors identified by SEC Chair Gensler, were investigated in depth by the SEC in the months leading to the SEC Meme Stock Report in October 2021 and after. This has led to proposed changes in regulations concerning dark pools, 17 C.F.R. § 242.301,[25] and settlement time-period for short sales[26] and SEC litigation against broker-dealers for unlawful trade restrictions, including against co-defendant Matlock's primary broker-dealer TradeZero, which the SEC accused of halting retail trade orders during rapid price changes of certain stocks.[27] The government must produce SEC records and

---

[23] *See* **Ex. E.**, *supra* note 7.
[24] *See* **Ex. D.**, *supra* note 6.
[25] *See* **Ex. M** (Securities and Exchange Commission Release No. 34-96495, File No. S7-31-22) (https://www.sec.gov/rules/proposed/2022/34-96495.pdf ); **Ex. N** (Securities and Exchange Commission Proposed Rule to Enhance Order Competition) (https://www.sec.gov/files/34-96495-fact-sheet.pdf) ("The rule would require certain orders of individual investors to be exposed to competition in fair and open auctions before they could be executed by any trading center that restricts order-by-order competition."); **Ex. O** (Press Release, SEC Proposes Amendments to Enhance Disclosure of Order Execution Information) (https://www.sec.gov/news/press-release/2022-223); *see also* 17 C.F.R. § 242.301 (Requirements for alternative trading systems).
[26] *See* **Ex. F.**, *supra* note 8.
[27] *See supra* note 11.

documents, which indisputably constitutes *Brady* material, including, but not limited to, lists of stocks determined to be "Meme Stocks" by the SEC and internal communications as well as those with FINRA and other third parties about them.

## CONCLUSION

For the reasons set forth above, Constantinescu respectfully requests the Court compel the production of all *Brady* material in the possession of the SEC, impose sanctions in the form of a continuance of the current trial date and all case deadlines, order a hearing, and impose any other sanctions or relief deemed just and proper.

Respectfully submitted,

FORD O'BRIEN LANDY LLP

_____
Matthew A. Ford
Texas Bar No. 24119390
mford@fordobrien.com

Ford O'Brien Landy, LLP
3700 Ranch Road 620 South,
Suite B Austin, Texas 78738
Telephone: (212) 858-0040
Facsimile: (212) 256-1047

*Attorneys for Defendant Edward Constantinescu*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 8, 2023, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

*/s/* Matthew A. Ford
Matthew A. Ford
