

FACT SHEET
# Proposed Rule to Enhance Order Competition

The Securities and Exchange Commission proposed a rule to enhance competition for the execution of marketable orders of individual investors. The rule would require certain orders of individual investors to be exposed to competition in fair and open auctions before they could be executed internally by any trading center that restricts order-by-order competition.

The rule would apply to "segmented orders," which would be orders for stocks listed on U.S. securities exchanges (NMS stocks) made for an account:

- Of a natural person or an account held in legal form on behalf of a natural person or group of related family members; and
- In which the average daily number of trades executed in NMS stocks was less than 40 in each of the six preceding calendar months.

Exceptions would be provided for:

- Segmented orders received and executed when no qualified auction was being operated for such orders;
- Segmented orders with market values of at least $200,000;
- Segmented orders executed at prices that are equal to or more favorable for the orders than the midpoint of the national best bid and offer (NBBO) when the orders were received;
- Segmented orders with customer-selected limit prices that are equal to or more favorable for the orders than the midpoint of the NBBO when the orders were received; and
- The fractional share portion of a segmented order received and executed when no qualified auction was being operated for such order that would accept the fractional share portion.

## Why This Matters

Individual investors primarily use marketable orders when they instruct their broker to buy or sell an NMS stock. These orders seek to trade immediately at the best available prices in the market. Currently, retail brokers route more than 90 percent of marketable orders of individual investors to a small group of off-exchange dealers, known as wholesalers. Wholesalers typically execute these orders internally without providing any opportunity for other market participants, including institutional investors, to compete to provide more favorable prices for these orders.

The routing of individual investors' marketable orders to wholesalers occurs because the orders impose lower costs on liquidity providers than the order flow routed to national

FACT SHEET | **Proposed Rule to Enhance Order Competition**

securities exchanges. These costs are known as "adverse selection costs" and reflect the extent to which prices move against the liquidity provider after executing an order. While the lower adverse selection order flow of individual investors allows wholesalers to execute their orders with price improvement, Commission analysis of trading data indicates that the level of price improvement offered by wholesalers does not fully reflect the much lower cost. The amount of this "competitive shortfall" is estimated to be 1.08 basis points per dollar traded by wholesalers, with an estimated total annual amount of $1.5 billion.

The proposal is designed to benefit individual investors by promoting competition and transparency to enhance the opportunity for their orders to receive more favorable prices than they receive in the current market structure, and to benefit investors generally, including institutional investors, by giving them opportunities to trade directly with individual investor orders that are mostly inaccessible to them in the current market structure.

## How This Rule Would Apply

The proposal would apply to "restricted competition trading centers," which would be trading venues other than any national securities exchange and those alternative trading systems that meet proposed requirements for an "open competition trading center." Open competition trading centers would be those national securities exchanges or alternative trading systems that meet proposed requirements for transparency, access, and volume.

Absent an exception, a restricted competition trading center would be prohibited from executing internally a segmented order for an NMS stock unless the order first was exposed to competition in a qualified auction operated by an open competition trading center. The proposal would establish requirements for qualified auctions, including:

- Auction messages would be widely disseminated in consolidated market data;
- The duration of auctions would be between 100 milliseconds and 300 milliseconds;
- The minimum pricing increment would be no less than $0.001 for segmented orders and auction responses with prices of $1.00 or more per share;
- No fee could be charged for submission of a segmented order. Any permissible fees and rebates would be capped at $0.0005 per share for segmented orders and auction responses with prices of $1.00 or more per share; and
- Execution priority requirements would, among other things, prohibit giving priority to the fastest auction response or to the auction response submitted by the broker-dealer that routed the segmented order to the auction.

If a segmented order does not receive an execution in the qualified auction at a specified limit price or better, then a restricted competition trading center may, as soon as reasonably possible, execute the order internally at a price that is equal to or more favorable for the segmented order than the specified limit price.

*Additional Information:*

The public comment period will remain open until March 31, 2023, or until 60 days after the date of publication of the proposing release in the Federal Register, whichever is later.