UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA § | | |
| § | | |
| v. § | Case No. 4:22-cr-612 | |
| § | | |
| CONSTANTINESCU, *et al.* § | The Honorable Andrew S. Hanen | |
| § | | |
| § | | |
| Defendants. § | | |

**United States' Motion
for Revocation and an Arrest Warrant as to Defendant Constantinescu**

The United States, by and through its undersigned counsel, moves the Court to issue an arrest warrant for Defendant Constantinescu for attempting to obstruct justice by pressuring a witness to provide false statements in this case, which have been put before the Court in a purported *Brady* motion (ECF No. 328). Defendant's repeated flagrant disregard of this Court's orders is escalating with no signs of abatement and threatens to undermine the integrity of these proceedings. As such, there are no conditions of release that are suitable for Defendant Constantinescu, and the United States respectfully requests that the Court issue a warrant for his arrest and revoke his bond through trial.

**I.      Background**

As the Court is aware, Defendant previously sought to circumvent his pre-trial conditions of release that were aimed at preventing inappropriate conduct with potential witnesses and victims in this case. (*See* ECF No. 237.) When those efforts escalated into online harassment and intimidation of a potential witness, the Court ordered Defendant Constantinescu to refrain from all social media use and attempts to contact witnesses. In doing so, the Court admonished Defendant, stating:

| | |
|---|---|
| **Court:** | . . . [I]f I hear of something happening again, I'm going to put you in jail. Do you understand? |
| **Defendant:** | Yes, sir. Yes, Your Honor. |

(Apr. 12, 2023 Hr'g Tr. at 6:24–7:2.)

Undeterred, Defendant is now attempting to obstruct justice by pressuring his ex-wife to provide false statements in a bid to help himself in this case. As the Court is aware, Defendant filed his third motion to compel on July 13, 2023 (ECF No. 328; "Motion"). In the Motion, Defendant Constantinescu claims that an FBI agent in this case, in the course of speaking with Defendant's ex-wife, purportedly did not memorialize information favorable to Defendant Constantinescu. He specifically claimed: "According to Constantinescu's wife, Financial Case Agent's report omits exculpatory statements that Constantinescu's wife made to Financial Case Agent during the interview; namely, that Constantinescu was always trying to help people and would not have been engaged in fraud." (ECF No. 328 at 4–5.) This purported omission from the FD-302 of Defendant's wife related to a single conversation between the case agent and the wife. The FD-302 was produced by the United States to Defendant as discovery in this case. (*See* Ex. 1.) Defendant claims in the Motion that the case agent did not include the above-referenced line about Defendant's purported conduct in the FD-302 and claims the omission is exculpatory. (*See* ECF No. 328 at 4–5.)

On July 19, 2023, Defendant's wife called the case agent who had previously interviewed her, but the agent did not take the call, as reflected in the FD-302 attached as Exhibit 2. On July 20, 2023, the agent called Defendant's wife back, and she stated she wanted to provide additional information. (*See* Ex. 2.)

2

Defendant's wife explained that Defendant previously sent her a copy of the first FD-302 memorializing her initial conversation with the agent.[1] (*See* Ex. 2 at 1.) She explained that, prior to sending the FD-302, Defendant asked her to review the FD-302 and tell him if it was correct, which she agreed to do. (*Id.*) She also explained that Defendant asked her to meet with Defendant's attorney, who would be in town the week of July 27 and 28, 2023. (*Id.*) She explained that Defendant told her that Defendant wanted her "to tell Attorney Ford that he [Constantine] just wanted to help people and did not engage in the fraud scheme." (*Id.*) Defendant's wife told Defendant she did not want to meet with the attorney and was not going to do it. (*Id.*)

Defendant's wife explained to the agent that she believed the FD-302 of their original conversation was correct in all respects except for one unrelated part—that it said Defendant began trading in large-cap stocks when it was actually small-cap stocks. (*Id.*) Critically, Defendant's wife explained that "[s]he had not told the Writer during the original interview that Constantine had not engaged in the fraud, as Constantine wanted her to tell Attorney Ford." (*Id.*) She continued:

> [She] stated she felt intimidated by all of this because Constantine badly wanted her to meet with Attorney Ford. She felt pressure to meet with him. [She] had not had any meetings with Attorney Ford and disagreed with the insinuation that she had met him and supposedly told him Constantine would not participate in the fraud. [She] believed Attorney Ford received the information from Constantine and/or had lied in the motion.

(*Id.*)

On the following day, July 21, 2023, Defendant's wife again voluntarily called the agent to provide additional information. (*See* Ex. 3 at 1.) She stated that Defendant had stopped by her residence earlier that day to look for a check. (*See id.*) She reported that, while he was doing so, Defendant asked her about her prior meeting with the agent, and again reiterated his request for

---

[1] A subsequent conversation with the agent made clear that Defendant sent his wife the FD-302 of the original conversation by text message on or about June 27, 2023. (*See* Ex. 3.)

3

her to meet with Attorney Ford. (*See id.*) She stated that Defendant "told her she had to meet with [Ford] because this was the 'nail in the coffin' for the case." (*Id.*) She explained that she told Defendant the original FD-302 was correct except for the single point about large-cap stocks, and that she never said that Defendant was not capable of committing fraud. (*Id.*) She told Defendant "that they should not have communication with each other going forward." (*Id.*)

Separately, an additional violation of Defendant's pre-trial release conditions recently observed by the case team also merits the Court's attention. Defendant's bank statements show that, on or about January 23, 2023, Defendant transferred approximately $28,000 in three transfers to an individual the United States understands to be his current girlfriend. (*See* Ex. 4.) This is an obvious violation of Defendant's pre-trial release conditions (which prohibit transfers of over $10,000 ($5,000 at that time) without notification of the United States) and is consistent with the pattern of moving assets in contravention of those conditions described several times by his wife. (*See* Ex. 1 at 3; Ex. 2 at 2.) The bank statements also show additional transfers of funds in excess of the ordered limit.

The continued accrual of violations demonstrates Defendant's consistent disregard for his terms of pre-trial release, the integrity of these proceedings, and this Court.

## II. Legal Standard

"The attorney for the Government may initiate a proceeding for revocation of an order of release by filing a motion with the district court. A judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release . . . ." 18 U.S.C. § 3148(b). This may be done "in a case that involves . . . a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness . . . ." 18 U.S.C. § 3142(f)(2)(B).

"The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds that there is (1) (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and (2) finds that (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b).

The Fifth Circuit "reviews the factual basis for the order revoking release under the clearly erroneous standard," and "[t]he district court's detention order must be sustained if it is supported by the proceedings below." *United States v. Aron*, 904 F.2d 221, 223 (1990); *see also United States v. Minor*, 204 Fed. App'x 453, 454 (5th Cir. 2006) (holding evidence sufficient to support district court's finding defendant was unlikely to abide by any condition or combination of conditions of pretrial release where defendant violated conditions by unauthorizedly being out of range of his electronic monitoring equipment); *United States v. Mackie*, 46 F.3d 66, at *2 (5th Cir. 1995) (affirming district court's revocation order based on finding of probable cause defendant committed felony while on release).[2]

---

[2] "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to (1) influence, delay, or prevent the testimony of any person in an official proceeding; [or] (2) cause or induce any person to—(A) withhold testimony . . . shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1512(b).

### III. The Court should revoke Defendant's bail and order detention through trial given his efforts to obstruct justice and interfere with the proceedings in this case.

Defendant Constantinescu has shown by repeated actions there are no conditions beyond detention that can provide the necessary assurances.

When last brought before this Court to address his efforts at obstruction and witness tampering, Defendant indicated that he understood the Court's admonition his interference with these proceedings must not happen again. Nonetheless, Defendant has now attempted to pressure an individual to provide false testimony in this case and put that information before the Court in a pitch to help himself. Apart from attempting to obstruct justice, the Defendant, by including false testimony in the Motion, is seeking to conduct a fraud on the Court. (*See* Ex. 3 at 1 ("[Defendant] told her she had to meet with [Attorney Ford] because [the false testimony that he sought to have his wife aver to] was the 'nail in the coffin' for the case")).

There is no combination of conditions that will assure Defendant does not pose a danger to any other person or the community, and Defendant is unlikely to abide by any condition or combination of conditions. *See, e.g.*, *United States v. Aron*, 904 F.2d 221, 224–25 (5th Cir. 1990) (holding that district court's finding that defendant willfully and intentionally violated conditions or release by attempting to intimidate a witness was sufficient to support court's conclusion defendant would again violate orders of court). Accordingly, the Court should revoke Defendant's pre-trial release. *See id.*

Defendant's efforts to have his ex-wife provide false statements to support his purported *Brady* motion call into question the veracity of his counsel's representations to this Court. At the threshold, counsel's claim in the third motion to compel about Defendant's wife's statements is completely at odds with her representations to the case agent as recorded in the FD-302. (*Compare* ECF No. 238 at 4–5 *with* Exs. 1–3.) The United States has no information at this time about what

6

role, if any, Defendant's counsel has played in the underlying conduct. The fact that Defendant was pressuring his ex-wife to meet with Defendant's counsel on or about July 27 and July 28 ostensibly to discuss the false testimony is troubling. The United States defers to the Court's judgment.

## Conclusion

Given Defendant's continued willful and intentional violations of his pre-trial conditions and sustained efforts to secure false testimony from a potential witnesses in this matter, the Court must revoke Defendant's bail to protect the community and maintain the integrity of these proceedings. Attempting to secure such testimony and foisting that testimony before the Court in a bid to secure judicial relief in a purported *Brady* motion cannot be permitted in this District or any other.

Dated: July 28, 2023                    Respectfully submitted,

 

                                                GLENN S. LEON
                                                Chief, Fraud Section
                                                Criminal Division, Department of Justice

By:    */s/ John J. Liolos*
           Scott Armstrong, Assistant Chief
           John J. Liolos, Trial Attorney
           Fraud Section, Criminal Division
           United States Department of Justice
           1400 New York Ave. NW
           Washington, DC 20005
           Tel.: (202) 768-2246

        ALAMDAR S. HAMDANI
        United States Attorney
        Southern District of Texas

By:   */s/ Thomas Carter*
       Thomas H. Carter
       Assistant United States Attorney
       State Bar No.: TX24048387
       1000 Louisiana Street, 25th Floor
       Houston, Texas 77002
       Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2023, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

*/s/ John J. Liolos*
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section