# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU**, *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

## United States' Response in Opposition to Defendant Constantinescu's Motion to Compel

The United States, by and through undersigned counsel, respectfully submits this brief in opposition to Defendant Hennessey's Emergency Motion to Sever (ECF No. 365) ("Motion") and Defendant Rybarczyk's Response seeking a continuance (ECF No. 373) ("Response").

Severance is unwarranted and would result in significant waste of judicial and public resources, necessitating at least two trials with highly duplicative evidence. Defendant Hennessey is charged—and should be tried—with his codefendants and alleged partners in crime.

Nor is a continuance appropriate. Little has changed in this case since the Court denied Defendant Rybarczyk's last motion to continue. The fact that one Defendant can be ready for trial on October 23, 2023 (and apparently has been ready for trial for multiple months) is powerful, objective evidence that the other Defendants can be ready for trial as well. The Court should deny the Motion, see the Response for what it is (a delay tactic), and affirm the current trial date for the second time in as many months.

I.   **The Court should deny the Motion because he cannot show a compelling prejudice and severance would waste judicial resources.**

Severance motions are disfavored. Granting such a motion "requires a clear showing of the most compelling prejudice which the trial court cannot protect." *United States v. Eastwood*, 489 F.2d 818, 822 (5th Cir. 1973) (internal citations and quotations omitted); *see also* Fed. R. Crim. P. 14. Denying severance motions lies in the sound discretion of the trial court. *See, e.g.*, *United States v. McClaren*, 998 F.3d 203, 214–15 (5th Cir. 2021) ("[Defendants] have not met the heavy burden necessary to show that the district court abused its discretion.").

Defendant's request does not come close to meeting the demanding standard of demonstrating "the most compelling prejudice," and there are significant considerations to the contrary. *See, e.g.*, *Eastwood*, 489 F.2d at 822. As the Supreme Court of the United States has explained in affirming the denial of a severance motion:

> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotation and citation omitted).

Severing Defendant Hennessey's trial from his codefendants would result in significant waste of judicial and prosecutorial resources, which the Court should avoid by denying the Motion. *See, e.g.*, *United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998) ("The utility of a joint trial is particularly compelling here, as the defendants were charged with a single conspiracy so that the government could be expected to recite a single factual history, put on a single array of evidence, and call a single group of witnesses." (internal quotation and citation omitted)). Defendant was a central participant in the charged conspiracy and related offenses. Separate trials

would require duplicative testimony from many witnesses, and substantially duplicative documentary evidence. *See, e.g.*, *id.*

Defendant Hennessey's specious attempt to minimize his role in the alleged conspiracy and distance himself from his codefendants is belied by the alleged facts. Defendant was a central participant in the conspiracy that spanned approximately two years. His efforts to quantitatively compare the modicum of proof against him vis-à-vis his codefendants, Mot. at 5, plainly ignores the quality of the evidence against him. This evidence will take the form of witness testimony and exhibits, which will be entirely duplicated at two trials. It is this evidence—not abstract arguments about percentage of profits and at-issue posts, *id.*—that will prove the conspiracy charged in this case, a fact that is wholly ignored by Defendant Hennessey in the Motion.

By way of further example, Government Exhibit ("GX") 10B, attached here as Exhibit 1, concerns an execution of the pump-and-dump scheme in the stock SURF, charged as Count 10 of the Superseding Indictment. Defendant Hennessey was a ringleader of this execution of the alleged scheme, which intimately involved multiple co-Defendants. For example, on or about Friday, May 14, 2021, Defendants Hennessey, Cooperman, and Deel had the following text message exchange:

| Defendant Cooperman: | Bro I'm in bed waiting for you so tell me what I'm fuckin grabbing for Monday hahaha |
|---|---|
| Defendant Hennessey: | I TOLD YOU LAST NIGHT MF! . . . We just gotta keep it under 8 today |
| Defendant Cooperman: | SURF? We sending a 7$ stock!??? |
| Defendant Hennessey: | Yes Trust me There's no float There [sic] getting bought out |

|                        | . . .                                                        |
|------------------------|--------------------------------------------------------------|
|                        | I'll have 2 mil in by end of day                             |
| Defendant Cooperman:   | DD mania Monday?                                             |
| Defendant Deel:        | Just woke up What price you boys got                         |
|                        | . . .                                                        |
| Defendant Hennessey:   | 7 44<br>I told u she's THIN<br>we just need to keep her under 8 today |
| Defendant Deel:        | We slowly add this all day then                             |
|                        | . . .                                                        |
| Defendant Cooperman:   | WE SENDIN SURF TO THE MFING MOON BITCHES!!!                  |
|                        | . . .                                                        |
| Defendant Hennessey:   | I'll lay the dd out at lunch [on Monday] haha<br>. . .<br>I might even drop some of it on Sunday night<br>Then drop the full kraken at open |

(Ex. 1 at 3–6.) As GX 10B shows, Defendants Hennessey, Deel, Cooperman, Knight, and Matlock established positions in SURF on or about May 14, 2021. (*See id.*)

Similarly, on or about May 18, 2021, Defendant Matlock wrote in a private Discord message to Defendant Sabo: "get a couple SURF . . . took small . . . hugh gonna post I'm gonna wait a while then post . . . Not posting until tomorrow now just because not enough time and he didn't get everything ready[.]" (*See id.* at 14–15.)

On or about the next day, May 19, 2021, at approximately 9:51:27 EST, Defendant Hennessey claimed in a tweet and post on Atlas Trading Discord: "I am long $SURF – have been

stalking this company and would be shocked if acquisition deal was not done by E[nd] O[f]Y[ear] . . . ." (*Id.* at 17–18.) Defendants Matlock, Deel, and Cooperman also began allegedly posting falsely about their trading in SURF, with some referencing Defendant Hennessey. (*See id.* at 19–20.) At approximately 10:04:00 EST, approximately thirteen minutes after allegedly falsely claiming that he was "long" SURF, Defendant Hennessey began selling shares of SURF. (*Id.* at 20–23.) While selling his shares, Defendant Hennessey continued allegedly to post falsely, writing: "[w]on't need to post about her much. $Surf already tons of dd out there[.] Unless new DD comes out. Only way I'll be out of this one is if bad catalyst. Long and strong baby . . . ." (*Id.* at 22.) By approximately 10:44:00 EST, Hennessey had sold approximately 76,500 shares of SURF at a significant profit, as alleged in Count 10 of the Superseding Indictment and depicted in GX 10B. (*See id.* at 23.)

This is but one example of Defendant Hennessey's inextricable involvement in the alleged scheme with his charged co-conspirators that demonstrates the significant waste of judicial resources that would result from trying this case twice with substantially duplicative evidence. Indeed, even if Defendant Hennessey's involvement was "significantly less than other defendants, the court [would] not abuse its discretion in denying the motion to sever." *McClaren*, 998 F.3d at 215. Thus, the Court should deny the Motion.

II.    **The Court should deny the renewed continuance requests.**

Little, if anything, has changed in this case since the Court denied Defendant Rybarczyk's last motion to continue in July. (*See* ECF No. 342.) The United States has neither broadened the scope of the allegations nor produced voluminous additional discovery. Without any appreciable change in circumstances to justify a continuance of a trial date that has been on the books for over four months at this point, Defendants resort to inflammatory tactics about a purported inability to defend this case. Those baseless claims ring hollow given that Defendants will have enjoyed significantly more time to prepare a defense—with the benefit of the United States' organized discovery and disclosures—than it took the United States to investigate and charge this case in the approximately five months from May to December 2022. Thus, the Court should deny the requested continuance.

Defendants' arguments about the volume of exhibits in this case are hyperbole. Approximately half the noticed exhibits are the episodes of at-issue trading sequences, which the United States first specified on March 31, 2023 and then produced in detail as part of its reports on June 15, 2023. Defendants have had the underlying trade data and social media records comprising the exhibits since January 2023, and the United States has made no secret this entire litigation it considers those records the pillars of this case. Defendants cannot credibly claim they were somehow surprised by these exhibits. Nor can they claim that they have not been on precise notice of the exact contours of this conduct since, at the latest, June 15. It was up to Defendants to best utilize the many months since.[1]

---

[1] Similarly, footnote 2 of Defendant Rybarczyk's filing speculates about hypothetical savings in trial time from Defendants coordinating openings, cross-examinations, and other trial strategies. (*See* ECF No. 373 at 3 n.2.) But it does not explain why Defendants have not been working on this in good faith all summer and why the Court should believe Defendants would do any differently with even more time to do so. On the merits, there is no universe—absent uncontrolled, meandering examinations of witnesses which

The argument that Defendants have to be prepared to meet the United States' 397 episodes is also a straw man. The United States has no intention to walk the jury through each and every episode (or anywhere close to that number). Doing so would waste the Court's time and the jury's time. To be clear, the United States does intend to put before the jury the episodes at the beginning of its exhibit list (GX 1 – 45). It reserves the right to put before the jury additional episodes based on the trial evidence and arguments made and consistent with its 404(b) notice (ECF No. 319), which went unchallenged by Defendants. Even more, Defendants should not be given more time to prepare to defend against a case that is not charged and to argue facts and circumstances that are both irrelevant and inadmissible. *See, e.g.*, Resp. at 6 (claiming in ability to introduce evidence as to "other market forces" which may provide an explanation for defendants' charged offenses). The Court should not indulge frolics into irrelevant areas like those raised in the motions to dismiss, especially at the expense of the current trial date.

The balance of the remaining approximately 400 exhibits—across 7 Defendants—is both a reasonable amount and easily digestible. The category of non-episode exhibits are the Defendants' own words, often to each other. These exhibits are sourced primarily from the Defendant's own Discord or Twitter accounts. This is not a case where Defendants have to parse various third-party productions to find potentially relevant communications. The evidence against them is quite simply their own statements from their own accounts and their own trades. Outside of the episode exhibits and Defendants own words, the remaining exhibits primarily relate to the trading-records of victim witnesses and are appropriately cabined just to the at-issue episodes.

At base, the United States has taken unprecedented steps to boil this case down to a digestible set of information and provide it in neat packages on a silver platter for Defendants.

---

would waste all the parties' time—in which this case should take "months." Given Defendants' touted sophistication, the United States does not credit this prediction.

Defendants have robust defense teams who are obviously working together. There are no fewer than 20 attorneys that have noticed appearances in this case for Defendants, and there are likely many more working on their behalf. Defendants cannot credibly claim that they cannot be ready for trial approximately sixty days from now when they will have had fully baked exhibits in hand for approximately 75 days.

Defendants claims about a purported lack of preparedness may ring true if the United States did not take the steps that it did. Those steps, at this juncture, have to count and cut sharply against moving the trial date in this case. Indeed, for the United States to have produced its entire case to Defendants on time only for the Defendants to ignore the Court's Scheduling Order and enjoy the luxury of relatively limitless time in response would significantly undercut the adversarial process.

Left unsaid in the Defendant's motion for continuance is the public's interest in resolving this case. *See, e.g.*, 18 U.S.C. § 3161(h)(7)(A). The developments in this case are published routinely on several social-media accounts. Each post about this case attracts significant attention from all sides. Numerous members of the public consistently ask about the status of the case and when the case is going to trial. Moving trial would undermine the significant public interest in seeing the evidence in open court and allowing the jury promptly to consider whether the Defendants in fact committed the crimes charged.

 Even if the Court were inclined to move the trial in this case, picking a new trial date would needlessly kick this case into perpetuity. The lead agent who will testify in this case has another trial set for December 2023, so this case cannot be tried this year. Undersigned counsel has another trial set in the Southern District of Florida in late January 2024. Thus, moving this trial would necessarily require a continuance of at least five to six months. Injecting such a delay in into this case could be justified if the United States had not provided detailed and early voluntary

production of its discovery and exhibits. But blessing a half-year delay given the steps that the United States has taken would instead be injecting delay for delay's sake and unfairly undermine the adversarial process.

Ultimately, there never will be a perfect trial date for a seven-defendant case; competing interests and schedules will always exist. Nonetheless, the current setting has been communicated since April 27, 2023, and was reinforced on July 24, 2023. (ECF Nos. 254, 342.)

Since indictment, the United States has worked hard to meet its obligations to keep this case on track. For their part, Defendants have complained almost every step of the way, drowned the Court in hundreds of pages of duplicative and legally deficient motions, litigated *ad nauseum* basic conditions of release, and blown the Court's deadlines without excuse or apology. Indeed, if past is prologue, any continuance is likely to be a case study in Parkinson's law: Defendants' frivolous filings seemingly will multiply to fill the time allotted. In balancing the equities, Defendants have little on which to stand.

It is time for a trial on the merits. The United States stands ready. Defendant Hennessey is ready and apparently has been so for months. There is no excuse for other Defendants not to be. The United States respectfully urges the Court should reject an invitation to delay for delay's sake and re-affirm (hopefully for the last time) the October 23, 2023 trial date.

### Conclusion

The Court should deny Defendants' motions for severance and/or a continuance because neither are warranted.

Dated: August 28, 2023                    Respectfully submitted,


                                          GLENN S. LEON
                                          Chief, Fraud Section
                                          Criminal Division, Department of Justice

9

By:     */s/ John J. Liolos*
        Scott Armstrong, Assistant Chief
        John J. Liolos, Trial Attorney
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Ave. NW
        Washington, DC 20005
        Tel.: (202) 768-2246


        ALAMDAR S. HAMDANI
        United States Attorney
        Southern District of Texas

By:     */s/ Thomas Carter*
        Thomas H. Carter
        Assistant United States Attorney
        State Bar No.: TX24048387
        1000 Louisiana Street, 25th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2023, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

/s/ John J. Liolos
John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section