**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**EDWARD CONSTANTINESCU,**<br>**PERRY "PJ" MATLOCK,**<br>**JOHN RYBARCZYK,**<br>**GARY DEEL,**<br>**STEFAN HRVATIN,**<br>**TOM COOPERMAN,**<br>**MITCHELL HENNESSEY,**<br>**DANIEL KNIGHT.** | **No. 4:22-CR-00612-S** |

**DEFENDANT EDWARD CONSTANTINESCU'S TRUNCATED BRIEF
IN SUPPORT OF HIS THIRD MOTION TO COMPEL *BRADY* MATERIAL**

Edward Constantinescu respectfully submits this truncated brief in further support of his third motion to compel *Brady* material.  *See* ECF Nos. 328 and 345.  Constantinescu seeks a ruling that two buckets of information are *Brady* material that the government must search for and disclose:  (1) information pertaining to a fellow FBI agent's receipt of $100,000 of money that the government has suggested elsewhere in sworn statements were illicit trading profits; and (2) disclosure of the number, and substance, of phone conversations between Assistant U.S. Attorney Thomas H. Carter, III and Constantinescu's wife's divorce attorney about Constantinescu's finances and available assets.  This information is *Brady* material because it reflects the government's inconsistent treatment of Constantinescu's assets—sometimes claiming that they are the result of criminal activity and other times not.  The government's inconsistent positions about Constantinescu's funds and assets constitute *Brady* material because it can be used to impeach the government's testifying witnesses at trial who intend to testify that Constantinescu's purchase of a home with his trading profits was money laundering.  Additionally, both (1) the government's

failure to investigate (or even notice) the $100,000 payment to the FBI agent, while instead focusing its single-minded quest against Constantinescu, and (2) the government's series of conversations with Constantinescu's wife's divorce lawyer, impeach the credibility of the government's investigation, which is squarely within the scope of *Brady* material.

### *$100,000 of Constantinescu's Trading Profits That the Government Ignored or Overlooked*

On or about September 29, 2021 (in the middle of the purported "conspiracy" charged in Count One of the Superseding Indictment), Constantinescu gave his brother-in-law who was an FBI Special Agent in the Houston Field Office[1] ("Special Agent Brother") approximately $100,000 of Constantinescu's trading profits from a bank account that the FBI has sworn in an affidavit was predominantly comprised of criminal funds.  This $100,000 transfer to Special Agent Brother was clearly reflected in Constantinescu's bank records; Special Agent Brother's name appeared on the bank statement itself.  Special Agent Brother claims that he disclosed the $100,000 payment to the FBI in a financial disclosure form that the government has not produced.

According to reports produced in discovery, testifying witness Special Agent Jeremy Hale knew that Special Agent Brother was an FBI agent and related to Constantinescu's wife. Notwithstanding, it appears from the government's original response brief that the FBI did not investigate the $100,000 payment prior to bringing charges against Constantinescu and did not disclose to the Court in its seizure-warrant affidavit that a fellow FBI agent had accepted $100,000 of trading profits that the government was claiming as illegally derived funds.  Information about Constantinescu giving $100,000 of his trading profits to an FBI agent family member from an

---

[1] During the September 7, 2023 hearing, the government insisted that Special Agent Brother works in a different office.  Sept. 7, 2023 Hearing Tr. at 60.  A June 13, 2022 report authored by the lead case agent states that Special Agent Brother was assigned to the Houston Field Office, the same office as the testifying FBI witnesses in this case.

account the FBI has sworn under oath is "dirty," is *Brady* material to impeach at least two of the government's testifying witnesses and to attack the case team's investigation.

The government has charged Constantinescu with money laundering.  *See* Superseding Indictment, Count 21.  The government will be required to prove that money in a brokerage account that included millions of dollars from non-disputed trades was actually "criminally derived property" that came solely from fraud in the sale of securities.  *See* ECF No. 403.

The government intends to have Ariana Rodriguez—an FBI financial analyst—testify about her opinions about Constantinescu's assets and flow of money, including that money from the brokerage account was transferred to a bank account, which was then purportedly used to buy a house that the government has encumbered and claims is "money laundering."  Ms. Rodriguez's disclosure claims that she reviewed the bank account from which the $100,000 money transfer was initiated.

The government has not disclosed Ms. Rodriguez's analysis of Constantinescu's brokerage account from which it charged criminally derived property was allegedly generated, but has disclosed that Ms. Rodriguez helped prepare the seizure-warrant affidavit that attempted to seize Constantinescu's vehicles and bank accounts.  The "financial analysis" in the seizure-warrant affidavit that Ms. Rodriguez helped prepare includes sweeping, unsupported conclusions that nearly all of Constantinescu's money in the brokerage account and bank account was criminally derived, including the following:

    i.    From around January 2020 through April 2022, Constantinescu profited in excess of $79 million in "identified fraudulent funds";

    ii.    Between January 2020 through February 2022, Constantinescu transferred over $24 million from his brokerage account to his bank account.  The source of funds in the brokerage account "were determined to be made up of profits earned through excessive securities trading activities while participating in the fraud scheme"; and

iii.   From March 29, 2020 through June 30, 2022, approximately 98% of money that was transferred to the bank account was from Constantinescu's brokerage account that was identified as being sourced by profits earned through the fraud scheme.

The affidavit listed several asset purchases and analysis of certain transfers over $10,000 from the bank account, but conveniently omitted reference to the fact that Special Agent Brother accepted $100,000 from the account in September 2021.

Ms. Rodriguez's failure to investigate or disclose a fellow FBI agent's receipt of $100,000 of money obtained during the charged conspiracy time period casts considerable doubt on the credibility of Ms. Rodriguez's "financial analysis" that the government intends to use to prove Count 21 of the Superseding Indictment. Information that Ms. Rodriguez missed a $100,000 money transfer (or was aware of the money transfer and chose not to highlight it for the Court when attempting to seize Constantinescu's assets), notwithstanding Special Agent Brother's financial disclosure form on file with the FBI, is fair cross-examination material to impeach her credibility at trial.

It is also fair grounds to cross-examine Special Agent Jeremy Hale, the lead case agent on this case. The Fifth Circuit has reversed a trial conviction because withheld *Brady* evidence "carried within it the potential . . . for the . . . discrediting of the police methods employed in assembling the case." *See Lindsey v. King*, 769 F.2d 1034, 1042 (5th Cir. 1985). Information that can attack the reliability of the investigation or "sully the credibility" of investigating law enforcement officers can be *Brady* material. *See Kyles v. Whitley*, 514 U.S. 419, 445-51 (1995) (evaluating suppressed evidence and noting that such evidence could have been used to "undermine the ostensible integrity of the investigation"). Indeed, "[a] common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the

defendant, and [courts] may consider such use in assessing a possible *Brady* violation." *Id.* at 446 (quoting *Bowen v. Maynard*, 799 F.2d 593, 613 (10th Cir. 1986)).

Discovery produced to date reflects that Agent Hale and Ms. Rodriguez worked together to develop the charges against Constantinescu and try to seize his assets.  The FBI investigative team was aware of Special Agent Brother's relationship with Constantinescu while the team was purportedly reviewing Constantinescu's bank records reflecting the $100,000 payment.  Agent Hale's failure to investigate and follow the money leading to one of his fellow agents is the sort of credibility attack on his investigation that should be permitted to be presented to the jury in evaluating Agent Hale's testimony.  Put another way:  the jury should be permitted to know that while Agent Hale was interested in pinning charges on, and taking assets from, Constantinescu, he was not interested when those same assets went to an FBI agent.  It at the very least should be searched for and disclosed as *Brady* material.

The government has also refused to search for and disclose communications between Special Agent Brother and the testifying witnesses in this case about Constantinescu.  These communications are *Brady* material because, to the extent those communications are negative, they reflect that these testifying witnesses have a reason to give biased testimony against Constantinescu at trial.  If, for example, Special Agent Brother told one of the FBI's testifying witnesses something to the effect of "go get him, he's a terrible guy," that communication could be properly used by the defense to show the jury that a fellow FBI agent has expressed motivation for the testifying agents to secure a conviction against Constantinescu not on the basis of evidence, but instead because of personal animosity.  These communications reflect a reason for the FBI testifying witnesses to be biased, which is squarely within *Brady* material.  *Accord United States v. Stevens*, 2011 WL 4344016, at *21 (W.D. La. Sept. 14, 2011) ("The undisclosed information

also demonstrates that Hakim had a reason to be biased, and the jury was improperly denied the opportunity to consider that bias.").  In addition, Special Agent Brother told this FBI investigation team that he asked Constantinescu to invest and trade on Special Agent Brother's behalf.  To the extent Special Agent Brother relayed positive communications about Constantinescu, these could also be exculpatory.

***Information Regarding Conversations Between AUSA Carter and Divorce Attorney***

The government has conceded that AUSA Carter exchanged several emails and engaged in phone conversations with an attorney who represents Constantinescu's wife in their divorce proceeding.  At the hearing, Assistant Chief Scott Thompson incorrectly told the Court that the relevant emails were attached to the government's opposition brief.  Sept. 7, 2023 Hearing Tr. at 90.  Attached to that brief was one email chain reflecting communications on April 19th and April 20th.  After the hearing, another government attorney agreed to produce all of the email communications between AUSA Carter and the wife's divorce attorney.  That production reflects that AUSA Carter and the divorce attorney exchanged emails about Constantinescu and this case on the following dates:  April 11, 2023, April 19, 2023, April 20, 2023, May 10, 2023, May 12, 2023, May 22, 2023, May 23, 2023, June 1, 2023, June 2, 2023, June 5, 2023, and June 12, 2023.

The emails reflect coordination between AUSA Carter and Constantinescu's wife's divorce lawyer.  The emails also make clear that AUSA Carter and the divorce attorney had phone calls to address longer points of discussion, including what appears to be a discussion regarding Constantinescu's finances.  We respectfully request that the government disclose the date of each phone conversation AUSA Carter had with the wife's divorce attorney.  And, to the extent AUSA Carter's phone conversations with the wife's divorce attorney included representations about the availability of Constantinescu's assets or his financial position that are inconsistent with the FBI's

financial analysis in this case or inconsistent with the government's briefing to continue to encumber the property listed in Count 21 of the Superseding Indictment, the government should memorialize the substance of any such conversation in a letter to disclose as *Brady* material.

The number of conversations that AUSA Carter had with the wife's divorce attorney is *Brady* material because it can be used to attack the credibility of the prosecution.  The government has alleged that nearly all of Constantinescu's money was the result of fraud and will be arguing the same in connection with Count 21 of the Superseding Indictment.  The government, on the other hand, had conversations with Constantinescu's wife's divorce attorney and petitioned this Court so a third party could receive $10,000 a month of Constantinescu's money.  If AUSA Carter exchanged 20 phone calls with Constantinescu's wife's divorce attorney through the course of this prosecution, the volume of the number of communications can be properly used to impeach the prosecution's credibility.  The government interfering with a defendant's pending divorce and working with the defendant's ex-wife's divorce attorney to dissipate assets the defendant needs to pay his lawyers is unusual, possibly vindictive, and raises questions about the integrity of the prosecution.  In short, it is *Brady* material that should be disclosed to the defense.

Accordingly, Constantinescu respectfully requests that the Court order the government to do a diligent review and disclose responsive *Brady* material consistent with this motion.   A proposed order is enclosed for the Court's convenience.

Dated: September 15, 2023

Respectfully submitted,

Matthew A. Ford
Texas Bar No. 24119390
mford@fordobrien.com
Jamie Hoxie Solano
*Admitted Pro Hac Vice*
jsolano@fordobrien.com
Stephen R. Halpin III
S.D. Tex. Bar No.: NY5944749
shalpin@fordobrien.com
FORD O'BRIEN LANDY, LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (512)-503-6388
Facsimile: (212) 256-1047

*Attorneys for Defendant*
*Edward Constantinescu*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2023, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

*/s/ Jamie Hoxie Solano*
Jamie H. Solano