UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Case No. 4:22-cr-612 |
| CONSTANTINESCU, *et al.* | § § | The Honorable Andrew S. Hanen |
| Defendant. | § § | |

**United States' Response in Opposition to Defendant Rybarczyk's Motion to Exclude**

The United States, by and through its undersigned counsel, respectfully responds to Defendant Rybarczyk's Motion to Exclude (ECF No. 408), joined by the remaining co-Defendants (ECF No. 412). The Court should deny the Motion because the United States is voluntarily streamlining its case, which it must be allowed to present at trial to meet its burden, the highest in the law.

At the September 7, 2023 hearing, the Court again sensibly raised the issue of presenting this trial in a concise fashion and urged the United States to trim its trial proof. The United States has acted in accordance with that guidance and has narrowed the initial list of 397 trading episodes down to 54 trial episodes, which it must be allowed to present if necessary.[1] By significantly trimming its trial case, the United States has taken the reasonable step both to narrow the issues and streamline its case. The corpus of 54 episodes is more than reasonable for a 7-Defendant trial—it amounts to roughly 5 to 10 episodes per Defendant with an approximate average of about 8 episodes per defendant. There cannot be a reasonable dispute that such curtailment is both reasonable and in the interests of judicial economy. Defendant Rybarczyk's counsel himself recognized at the last hearing that similar amounts of episodes per Defendant are in no way

---

[1] The full list of at-issue trial episodes is attached here as Exhibit 1.

irregular for a securities fraud case. And Defendants now have even more time to prepare. Further, the United States may not end up offering each and every episode at trial. But the United States carries the heaviest burden in the law and must be allowed sufficient leeway to meet that burden in a case that Defendants routinely tout as highly complex.

Of these 54 episodes, 19 are, of course, the substantive securities fraud counts in the Superseding Indictment. Beyond those, the remaining 35 episodes supply essential evidence of the conspiracy and scheme that prove up different facets of the alleged criminal activity that will be critical to the jury's determination. For example, some episodes show private coordination among Defendants through messages before their public posts; some show certain Defendants conspiring with other Defendants; some correspond to contemporaneously recorded audio/video evidence; some show repeated *modus operandi* (selling minutes or seconds after social-media posts) and lack of accident or mistake; some show different types or categories of false statements that are at issue, as Defendants repeatedly engaged in the same behavior with particular kinds of statements in a manner that demonstrates their falsity. These episodes therefore prove different elements of the charges and are highly relevant, if not critical, evidence for the jury's understanding of the scheme and conspiracy.

Even more, these episodes provide critical context for and evidence of Defendants' fraudulent intent, which Defendants plan to contest at trial, providing further support for the admission of these episodes. *See, e.g.*, *United States v. Martinez*, No. 21-10383, 2022 WL 2315877, at *1 (5th Cir. 2022) ("To prevent the government from invoking 'intent' as a basis for extrinsic act evidence, the defendant 'must affirmatively remove the issue of intent, not just promise not actively to contest the issue.'" (quoting *United States v. Grimes*, 244 F.3d 375, 384 (5th Cir. 2001)). Defendants' at-issue conduct was not uncommon, but instead repeated over and

over again over time and in similar ways with their co-Defendants. Such pattern conduct is critical to establish intent in this case. In fact, Defendants have already tried to disprove their intent by arguing that the at-issue episodes are anomalous or isolated incidents.[2]

The legal basis for these trial episodes is undeniable. As laid out in the United States' Notice of Intent to Admit Evidence Under Rule 404(b) (ECF No. 319), filed on July 5, 2023 and yet unchallenged, these episodes are both intrinsic to, or inextricably intertwined with, the charged fraudulent scheme. *See, e.g.*, *United States v. Crawley*, 533 F.3d 349, 353–54 (5th Cir. 2008) ("As a threshold matter, Rule 404(b) is only implicated when the offered evidence is extrinsic; evidence intrinsic to the charged offense does not implicate the rule. 'Other acts' evidence is intrinsic when it is inextricably intertwined with the charged offense, when both acts are part of the same criminal episode, or when the 'other act' was a necessary preliminary step toward the completion of the charged crime." (internal citations omitted)). The at-issue episodes are inextricably intertwined and part of the same criminal episode charged in the Superseding Indictment: they all occurred during the time period of the charged conspiracy and scheme and involved the same manner and means. *See, e.g.*, *United States v. Freeman*, 434 F.3d 369, 374 (5th Cir. 2005) ("The uncharged offense arose out of the same series of transactions, because the funds were co-mingled and used to make lulling payments to investors from both schemes.").

In the alternative, the at-issue episodes constitute evidence admissible under Federal Rule of Evidence 404(b) probative of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See, e.g.*, Fed. R. Evid. 404(b); *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017) ("Extrinsic evidence has high probative value when intent is the key issue at trial."); *United States v. Robichaux*, 995 F.2d 565, 568 (5th Cir. 1993)

---

[2] The Court should be prepared to preclude such evidence and argument *in limine* as discussed further below at 7–11.

("Because intent is subjective, it is often difficult to prove. This was the rationale behind allowing evidence of other crimes to show intent under 404(b)."). These episodes are admissible under either approach, as they are part-and-parcel of the charged scheme and conspiracy of which they are highly probative.

To be clear, the United States will not dwell on the ins and outs of each of the 54 episodes. With the field now sufficiently narrowed, the United States anticipates an expedited presentation of certain episodes at trial. Counsel for the United States will not waste time. Doing so is not in its interest and runs contrary to its experience.

### I.  Factual Example: SNOA, May 3, 2021.

As an example for the Court, Government Exhibit ("GX") 36B is attached to this brief as Exhibit 2. It presents an example of the alleged scheme's execution with Defendants both coordinating in private text messages prior to executing the alleged scheme, as well as using news about the at-issue stock (SNOA) in furtherance of that scheme. For example, on or about May 3, 2021, Defendants Deel, Matlock, Cooperman, and Rybarczyk had the following alleged text-message exchange:

**Deel:** guys I am looking at a potential but I have no shares in it yet but check this out . . . SNOA found this on their website with no PR yet. Chart looks cheap and I would imagine a PR is due . . . I checked tos and I don't see they announced this anywhere yet.

**Matlock:** last thing I see of them: SNOA Sonomoa Pharmaceuticals and EMC Pharma Announce and Exclusive Partnership to Expand Commercial Channels of the Microcyn®–based Rx Dermatology and Eye Care Products Nationwide

**Deel:** last thing I saw too and look

**Matlock:** checking Bloomberg too

| | |
|---|---|
| **Deel:** | nan . . . that PR is announced on the website too so that's what leads me to believe this next one is coming |
| **Rybarczyk:** | We can buy slow |
| **Deel:** | yeah this float is low af |
| **Rybarczyk:** | That one rips face A[fter] H[ours] |
| **Deel:** | okay then let's slowly add and we can rip in AH |

(Ex. 2 at 2–3.) The Exhibit goes on to demonstrate Defendants texting about coordinating their purchases of SNOA, while around the same time their trading records in fact show Defendants purchasing SNOA. (*See id.* at 4–11.)

The Exhibit continues on to show Defendants allegedly discussing "sending" SNOA—seeking to cause price appreciation—by alerting it to their followers after they have purchased their shares. For example, the text chain includes the following private exchange:

| | |
|---|---|
| **Deel:** | I am gonna send SNOA in AH twitter |
| **Rybarczyk:** | Ok . . . I'll follow |
| **Cooperman:** | same |
| **Deel:** | I have small but it's thin enough to bank with small shares . . . tomorrow anything I find I am gonna post in this chat first. I like keeping the circle small and like for us to all be on the same team . . . **5:58 I will do it** . . . snoa |
| **Cooperman:** | hell ya . . . this is the dream team |
| **Matlock:** | we gon moon this bitch |

(*Id.* at 7–8 (emphasis added).) As the Court is now aware, Defendant Matlock's reference to "moon[ing]" SNOA indicates his intent and desire to cause SNOA to increase rapidly in price.

5

Shortly after allegedly stating "5:58 I will do it," at approximately 5:57:33 p.m., Defendant Deel allegedly posted falsely about SNOA on Twitter,[3] writing:

> $SNOA disinfectant &amp; sanitizer received APPROVAL to be entered into Australian Register for use against COVID-19. BIG news with no PR yet. **Adding shares here and waiting for this PR. This one could be a mover tomorrow!** Covid news set $PRPO off today. **Looking for a gap up** . . .

(*Id.* at 12 (emphasis added).) The falsity of this post is laid bare in the Exhibit by the fact that Defendant Deel had added all his shares of SNOA prior to posting publicly and then, approximately one minute after his post at approximately 5:58:42 p.m., he began exclusively selling his shares of SNOA. (*See id.*) Defendant Deel continued exclusively selling shares and, while selling, continued to post falsely about his trading in the stock. For example, he posted, "with the PR SNOA first target is 15 then 20 over that," while exclusively selling shares in the $11 range. (*Id.* at 13.) After exclusively selling and posting similarly, Defendant Deel closed his SNOA position entirely at approximately 6:38:41 p.m., approximately 40 minutes after his first public post about SNOA in the episode. (*See id.* at 14.)

As the Exhibit also shows, at and around the time of Defendant Deel's posts and trades, Defendants Matlock and Cooperman began allegedly to post falsely about their trading in SNOA while similarly selling shares. (*See id.* at 12–13.) The Exhibit also shows Defendants Rybarczyk and Knight selling shares of SNOA in and around these posts by their co-Defendants.

These alleged facts speak for themselves. As the Court can see, this and the other at-issue episodes like it constitute critical evidence of the charged conspiracy and scheme that the United States must be allowed to introduce at trial.

---

[3] During the pendency of this litigation, Twitter, Inc. changed its name to X Corp. All references to "Twitter" here and throughout the United States' papers in this case are intended to refer to both entities.

> **II. The Court should be prepared to preclude *in limine* irrelevant and inadmissible evidence Defendants have mentioned throughout this litigation that is doubly irrelevant in the context of the United States' streamlined case.**

As noted, the United States is reducing the scope of its potential trial evidence in response to the Court in order to streamline trial presentation and focus the issues in dispute. But, in so doing, law and equity demand the defense be similarly limited to cases and cross-examinations that are relevant and admissible only as to the United States' 54 at-issue trial episodes. The defense throughout these proceedings have made many troubling comments as to both the scope of their planned trial presentation and about numerous different types of information of dubious relevance and even more dubious admissibility.

For example, Defendants' continued references to general market news about the at-issue stocks raise significant cause for concern. Should Defendants seek to raise relevant, admissible news about the at-issue companies during the at-issue periods where there is a foundation in the admissible record demonstrating that *Defendants* were *aware of that news* and it *impacted their conduct* during the at-issue episodes (such as in the SNOA example here), that may be permissible. But it is wholly another story to attempt to introduce into evidence general news about these companies without any foundational tether of relevance to this case. Without any evidence that a Defendant or victim-witness saw the at-issue information, it is completely irrelevant to the Defendants' at-issue conduct and should be precluded. Put another way, the Court should not allow Defendants to dump into evidence reams of news articles, press releases, and other information without any foundation that such information was ever seen by a Defendant at the time. Such efforts are not admissible and would surely transform the United States' streamlined trial proof into a morass of irrelevant sideshows. *See* Fed. R. Evid. 401, 402, 403.

Further, the charged conduct does not require any proof of actual manipulation of a stock's price—this case is about fraud and Defendants' fraudulent intent. The United States will introduce

7

evidence Defendants *believed* they had the power to induce others to buy (*e.g.*, "I'm gonna send SNOA in AH twitter," "we gon moon this . . .") and that others in fact did buy based on Defendants' allegedly false social-media posts (victim-witness testimony), as Defendants recognized at the time and intended. That fraudulent conduct is what is charged. (*See, e.g.*, SI, ¶ 1.) These two facts prove fraudulent intent and materiality—elements of the charged crime—especially when coupled with the fact that Defendants traded opposite of their at-issue statements to their followers who relied on them. The charged conduct is fraud that Defendants executed to deprive their followers of money or property—the charged conduct does not require any proof of actual manipulation of a stock price.

As such, Defendant's arguments about the backward-looking *causation in fact* of the price movement is irrelevant for at least two reasons. First, such evidence of other market participants and other market news or information is wholly irrelevant where it has no factual connection to Defendants' own conduct. That other market participants may have purchased the stock because of some other news article or for a reason wholly unrelated to Defendants' conduct is not probative of whether *Defendants* in fact had fraudulent intent and executed a scheme to defraud.

The United States does not allege and will not contend that Defendants were the sole cause of market movement in the at-issue stocks in the at-issue time periods, nor does the law require such allegations. That the price of a security may have increased or decreased in part because of unrelated market activity (it almost certainly did in most or every instance) does nothing to prove or disprove Defendants' fraudulent intent and scheme. At best, the actual movement of the price of the stock goes to the ultimate success of the scheme, which is not relevant under the law, as this Court appeared to indicate at the last hearing. S*ee, e.g.*, *United States v. Greenlaw*, 76 F.4th 304, 325 (5th Cir. 2023) ("[T]he success of the [securities fraud] scheme is immaterial.").

To be sure, Defendants did in fact profit from the price movement as part of the alleged scheme, as they discussed with each other at the time. The fact that Defendants did in fact profit from their scheme and discussed that profit shows their motive and intent to participate in the scheme. Defendants believed that they could profit (and indeed did) from their conduct. That is why they participated with their co-Defendants and others in the charged offenses. The relevance of the price movement as a matter of descriptive fact—not as part of a causal explanation—is that Defendants sought to capture gains for themselves at the expense of their followers. Defendants *believed* they could induce others to buy around the same time they were selling in their stated hopes that they would "moon" the stock, *i.e.*, the price would rise. Such conduct demonstrates both (1) fraudulent intent and (2) the falsity of the relevant social-media posts. Causation in fact of the price movement from other sources is not probative of either relevant point. Such evidence is doubly irrelevant if there is no foundation that Defendants (or other victim-witnesses) ever saw or were even aware of the information.

Similarly irrelevant are Defendants' trading and/or profit from outside of the at-issue stock tickers and time periods, which are implicated in Defendants' request for 1099s among other comments. Evidence that a defendant did not commit fraud in *all* trading instances is irrelevant to negate criminal intent in the episodes at issue. Such information is classic "other good conduct" evidence that is plainly inadmissible for numerous reasons under the law and Rules of Evidence. Whether someone legitimately took money out of the bank 19 times has absolutely no relevance to the 20th time when that person robbed the bank teller. *See United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (holding that the fact that defendant "did not overcharge in every instance . . . is not relevant to whether she, in fact, overcharged as alleged in the indictment."); *see also*

*United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); *see also* Fed. R. Evid. 405(b).

The trading at issue is only that alleged to be fraudulent, *i.e.*, the trading in the stocks in the time periods of the 54 at-issue trial episodes. The profit at issue, if any, is just simple arithmetic applied to the trading in those windows, the records of which are already supplied in the United States' trial exhibits. All other trading or profit is simply not probative of a fact at issue and should be precluded. And of course, as to the profit, whether or not the scheme was successful is not a defense. *See, e.g.*, *Greenlaw*, 76 F.4th at 325. The United States will move *in limine* to preclude such irrelevant evidence and argument, which the Court should be prepared to exclude because it is inadmissible under the law, would be unduly confusing to the jury, and would inappropriately lard up the trial presentation.

Similarly, in light of the United States streamlining its case, Defendants must not be allowed to argue or introduce evidence that the number of episodes the United States presents at trial, or the gains or losses associated with those episodes, is *de minimis* for at least three reasons:

(1) it is legally irrelevant to the question whether a scheme to defraud occurred at all that the scheme happened once or many times, or was profitable or not,[4] *see, e.g.*, *Greenlaw*, 76 F.4th at 325;

(2) because numerical frequency and profitability are irrelevant to the question of whether the Defendants' engaged in a scheme to defraud, such argument invites only impermissible jury nullification;[5] and

(3) it is fundamentally unfair for Defendants, who have fought vigorously to limit the number of trading episodes the United States may introduce in its case-in-

---

[4] This question is obviously distinct from permissible purposes for introducing the frequency of a scheme's execution, like motive, opportunity, absence of mistake, *modus operandi*, etc. *See, e.g.*, Fed. R. Evid. 404(b).

[5] *See, e.g.*, *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court—in the words of the standard oath to jurors in the federal courts, to 'render a true verdict *according to the law and the evidence*.' We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.").

chief, to turn around at trial and use that shield as a sword to argue that the number of such episodes or profit associated with them is *de minimis*.

The United States will move *in limine* to preclude such evidence and argument, which the Court should do.

## Conclusion

The Court should deny Defendants' Motion because the United States voluntarily narrows its case to facilitate concise trial presentation, but must still be afforded the opportunity to present evidence sufficient to meet its burden, the heaviest in the law.

Dated: September 15, 2023              Respectfully submitted,

                                              GLENN S. LEON
                                              Chief, Fraud Section
                                              Criminal Division, Department of Justice

                  By:    */s/ John J. Liolos*
                            Scott Armstrong, Assistant Chief
                            John J. Liolos, Trial Attorney
                            Fraud Section, Criminal Division
                            United States Department of Justice
                            1400 New York Ave. NW
                            Washington, DC 20005
                            Tel.: (202) 768-2246

        ALAMDAR S. HAMDANI
        United States Attorney
        Southern District of Texas

By:   */s/ Thomas Carter*
        Thomas H. Carter
        Assistant United States Attorney
        State Bar No.: TX24048387
        1000 Louisiana Street, 25th Floor
        Houston, Texas 77002
        Tel.: (713) 567-9470

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2023, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

                                                */s/ John J. Liolos*
                                                John J. Liolos
                                                U.S. Department of Justice
                                                Criminal Division, Fraud Section