**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **Case No. 4:22-cr-612** |
| | § | |
| **CONSTANTINESCU,** *et al.* | § | **The Honorable Andrew S. Hanen** |
| | § | |
| **Defendants.** | § | |

## United States' Second Response in Opposition to Defendant Constantinescu's Third Motion to Compel

The United States, by and through its undersigned counsel, responds to Defendant's Third Motion to Compel (ECF No. 328) and related brief (ECF No. 423). The Court should deny the Motion because Defendant's requests do not concern material exculpatory information, *i.e.*, *Brady* material.

*First*, the circumstances surrounding Special Agent B's apparent receipt of money from Defendant cannot be exculpatory because they are unrelated to whether Defendant committed securities fraud as alleged in the Superseding Indictment. Nor do facts beyond those already produced impeach the credibility of any testifying witness in this case. The United States has already produced the FBI-FD302 (Report of Interview) with Special Agent B on this issue. (*See* Ex. 1.)

*Second*, regarding Defendant's ex-wife's divorce lawyer's contacts with a prosecutor, the United States has already produced all emails sent by the prosecutor to the divorce lawyer, and in this response attempts to address Defendant's remaining requests to render this irrelevant issue moot and clear it from the Court's docket. This is not *Brady* material. Rather, these requests seek not material exculpatory (or, indeed, even relevant admissible) information, but appear to be aimed

at nothing other than impermissible jury nullification and/or designed to waste the prosecution team's (and, incidentally, the Court's) time.

## I.      The Court should deny the Motion because the unspecified "information" Defendant seeks regarding Special Agent B is not *Brady* material.

Any information beyond what the United States has already produced about Special Agent B cannot be *Brady* material because it (1) does not concern the Defendant's at-issue conduct and, thus, logically cannot exculpate that conduct, and (2) does not relate to any testifying witness' involvement in this case (or it would be part of the case file). As such, the Court should deny the Motion.

At most, Defendant attempts to create "*Brady*" information about the transfer to Special Agent B by arguing about the United States' supposed inconsistent treatment of Defendant's assets. This argument is a non sequitur. The United States took legitimate steps to seize Defendant's exiting assets in his possession. That the United States did not take further action and attempt to claw back monies from any third parties (action that the United States has not contemplated or attempted at this stage of the proceeding for *any* third party) in no way undermines the affirmative steps that the United States did take or its allegations in this case. Put another way, that the United States sought to restrain Defendant from disposing of his own assets is not undermined by not taking categorically different additional steps related to third parties. Indeed, Defendant would have a plausible argument if the United States sought to, for example, claw-back funds paid to his girlfriend or other third parties but not those to Special Agent B. But such is not the case. In fact, when the Court stayed the seizure warrants, the United States stopped further pursuit of Defendant's own assets at this juncture, let alone begin a campaign to claw-back assets from third parties. It is only by cobbling together a string of logical inconsistencies that Defendant can even attempt to shoehorn the requested information into purported "*Brady*" material. But the

Court should reject those fallacies.

Putting aside that issue, Defendant persists in his mistaken views on what could constitute *material exculpatory* information, *i.e.*, *Brady* material. Defendant paints with the broadest of brushes in claiming any bias Special Agent B may have (if any) should somehow be imputed to the prosecution team. But Defendant's specious claims of bias in this investigation are belied by basic facts. Special Agent B had no role in either the investigation or charging of this case.

As background, Special Agent B does not physically work in the FBI's Houston Field Office, but is assigned to an office in Bryan–College Station. In that capacity, Special Agent B works primarily on national security issues. As explained below, Special Agent B had zero role in the investigation of this case.

As reflected in the FBI's case-opening document, this case originated with the Fraud Section in Washington, DC, and "was referred to FBI Houston by DOJ Fraud Section . . . ." (*See* Ex. 2 at 3.) Thus, the case origination itself could not be further removed from Special Agent B. Defendant had this information but chose instead to make specious insinuations in his Motion without any basis in fact.

When the lead case agent opened the case on May 18, 2022, the case agent had neither met, and to this date has not even spoken to, Special Agent B nor had any knowledge of Special Agent B's relationship to Defendant. On June 13, 2022, the case agent requested that this investigation's case file be placed on "prohibited status," as reflected in the serial dated June 13, 2022, attached as Exhibit 3. Designating the case as "prohibited status" meant that Special Agent B did not have any ability to see if this case even existed, let alone the substance of the file.

To be clear, the case agent had no reason to suspect Special Agent B of any wrongdoing and had no understanding of Special Agent B's relationship with his sister or Defendant, whether

3

positive or otherwise. By placing this case in prohibited status, the case agent sought to protect against even the possibility of Special Agent B inadvertently learning of this investigation. In this way, the lead case agent took this reasonable step to ensure the covert nature of the investigation by walling off anyone with potential ties to Defendant. After this case was charged by indictment on December 7, 2012 (*see* ECF No. 1), Special Agent B was informed about this case by his supervisor on or about the morning of the Defendants' arrests. Special Agent B was so informed on or about December 13, 2022 as a professional courtesy given his relationship to Defendant's wife. Prior to the Defendants' arrests, the case team has no reason to believe that Special Agent B knew of the investigation at all and, as noted above, took affirmative steps to preclude such knowledge.

Given Special Agent B's complete lack of involvement in the investigation of this case, there is no factual foundation to argue that the Houston Field Office, writ large, has "bias" towards Defendant. (*See* ECF No. 328 at 2.) It therefore follows that there is no similar basis to "attack the credibility of the investigation that led to these charges against [Defendants]." (*Id.*) Putting aside the lack of factual foundation, Defendant's attempts to string together impeachment material for an office writ large fails as a matter of law, because it is the testifying witnesses who are relevant here. *See, e.g.*, *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999) (explaining that *Brady* and *Giglio* apply to "any evidence that would tend to show a prosecution **witness's** bias, [or] could be used to impeach **him**" (emphasis added)). By ignoring both the facts and the law, Defendant has now lodged another meritless fishing expedition for purported *Brady* information, which the Court should not entertain. *See United States v. Edwards*, 442 F.3d 258, 268 n.10 (5th Cir. 2006) ("Due to the speculative and conclusory nature of the [defendants'] allegations with respect to both the suppression and materiality *Brady* prongs, such a hearing would serve as nothing more than a

4

fishing expedition.").

As to the facts surrounding the transfer of funds to Special Agent B, an agent on this case interviewed Special Agent B after Defendant texted Special Agent B the February 21, 2023 message referenced in the Motion. (*See* ECF No. 423 at 5.) The United States produced both the cited text message and the report of interview to Defendant as part of its discovery obligations in this case. (*See* Ex. 1.) Defendant is therefore seeking to pervert the United States' *compliance* with its discovery obligations to manufacture discovery "violations" out of whole cloth.

The nature and circumstances of that transfer have no relevance to this case, given Special Agent B's lack of involvement in the case. Even assuming that this money is from "trading profits" as Defendant Constantinescu suspiciously claimed more than three months after his indictment and approximately two weeks after the return of the Superseding Indictment (ECF No. 134, Feb. 8, 2023), there is no reason to believe this information is *Brady* material. The transfer has nothing to do with the underlying facts of the case, whether Defendant committed the charged offenses, or any of the testifying witnesses.

As to the merits of the transaction, Defendant ties himself in knots trying to besmirch the integrity of the case team but does not flesh out the only possible logical conclusions of his argument, none of which resolve in his favor. If the transfer did not involve tainted funds, then there is zero relevance to the transfer at all, and it does not undermine the United States' efforts to seize Defendant Constantinescu's other assets in this case. If Defendant will concede that the transfer involved tainted funds, the only conceivable relevance in this trial would be impeachment material as to Special Agent B. Of note, this argument would also require accepting other foundational predicates, namely that Special Agent B had knowledge of the tainted source of the funds or otherwise acted in a manner that would undermine his credibility. On both points, the

United States does not accept these premises. Nonetheless, even assuming such is the case for present argument, that hypothetical relevance falls flat given that Special Agent B is not a witness in this case and will not be called as such by the United States. *See, e.g.*, *Freeman*, 164 F.3d at 248 ("The district court determined that so long as neither [person] testified, the issue of their potential bias or misconduct was not relevant."); *United States v. Mesa*, 660 F.2d 1070, 1076–77 (5th Cir. 1981) (holding failure to disclose government witness was under investigation did not require reversal because impeachment value of such evidence insufficient to result in acquittal).

## II.  Defendant's requests for information regarding his ex-wife's divorce lawyer's contacts with a prosecutor are rendered moot by this filing and are otherwise irrelevant.

As context on the "merits," Defendant's wife's divorce attorney reached out, on his own, to a prosecutor to obtain information about this case and its potential impact on the divorce proceedings. The prosecutor and divorce attorney spoke by phone several times and exchanged several emails. As demonstrated in the emails, the main thrust of the attorney's inquiries turned on his efforts to understand the veracity of Defendant's purported representations to the divorce court that Defendant's pre-trial conditions in this case prevented him from paying court-ordered spousal support. The United States filed the referenced motion regarding Defendant's pre-trial release conditions to ensure that Defendant could not use this case to avoid his financial obligations in that proceeding, and to avoid the administrative burden of this Court having to approve a monthly $10,000 spousal support payment. (*See* ECF Nos. 270, 274.) These efforts have nothing to do with the merits of this case and cannot possibly constitute *Brady*, *Giglio*, or other impeachment material as they simply have nothing to do with either Defendant's at-issue conduct or a testifying witness.

The United States has already produced to Defendant all emails sent by the prosecutor to Defendant's ex-wife's divorce attorney. Defendant's remaining request appears to be:

that the government disclose the date of each phone conversation

> AUSA Carter had with the wife's divorce attorney. And, to the
> extent AUSA Carter's phone conversations with the wife's divorce
> attorney included representations about the availability of
> Constantinescu's assets or his financial position that are inconsistent
> with the FBI's financial analysis in this case or inconsistent with the
> government's briefing to continue to encumber the property listed
> in Count 21 of the Superseding Indictment, the government should
> memorialize the substance of any such conversation in a letter to
> disclose as *Brady* material.

(ECF No. 423 at 6–7.)

Solely to render this issue moot and avoid continuing to waste the Court's time with it, the United States confirms Defendant's ex-wife's divorce lawyer and AUSA Carter had approximately 5 or 6 calls (certainly fewer than ten), in the same approximate time frame as the emails exchanged (*i.e.*, approximately March to June 2023). The United States further confirms that nothing in the calls was inconsistent with the United States' allegations in this case and there is nothing to memorialize in response to the above-quoted request. Although none of this information is material and exculpatory (or even relevant or admissible), this issue should now be moot and the Court should deny the Motion.[1]

## <u>Conclusion</u>

The Court should deny Defendant's Motion because it seeks information that cannot logically be exculpatory or impeachment material and, thus, does not implicate *Brady*, or is moot or otherwise irrelevant to this case.

---

[1] To the extent Defendant again disregards rules of briefing and includes new demands in a reply not previously raised in his multiple prior briefs on this topic, the Court may and should disregard them.

Dated: September 25, 2023         Respectfully submitted,


GLENN S. LEON
Chief, Fraud Section
Criminal Division, Department of Justice

By:    */s/John J. Liolos*
Scott Armstrong, Assistant Chief
John J. Liolos, Trial Attorney
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Ave. NW
Washington, DC 20005
Tel.: (202) 768-2246


ALAMDAR S. HAMDANI
United States Attorney
Southern District of Texas

By:    */s/ Thomas Carter*
Thomas H. Carter
Assistant United States Attorney
State Bar No.: TX24048387
1000 Louisiana Street, 25th Floor
Houston, Texas 77002
Tel.: (713) 567-9470

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2023, I will cause the foregoing brief to be electronically filed with the Clerk of the Court using the CM/ECF system, which will provide copies to counsel for all parties.

<div align="center" style="margin-left:40%;">

*/s/ John J. Liolos*

John J. Liolos, Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section

</div>