**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| | § | |
| | § | |
| **v.** | § | **No. 4:22-CR-00612-S** |
| | § | |
| | § | |
| | § | |
| **EDWARD CONSTANTINESCU,** *et al.* | § | |
| | § | |

**DEFENDANT CONSTANTINESCU'S RESPONSE TO THE
UNITED STATES' OCTOBER 13, 2023 NOTICE REGARDING ITS REFUSAL TO
ABIDE BY THIS COURT'S ORDER REQUIRING IT TO REVIEW AND PRODUCE
*BRADY* MATERIAL IN THE SEC'S POSSESSION**

Edward Constantinescu, by and through his undersigned counsel, responds to the United States' Notice in Response to the Court's September 12, 2023 Order ("Notice") [Dkt. 446], filed October 13, 2023. Unfortunately, the Notice confirms that the government continues to refuse to discharge its *Brady* obligations in this case, even after the Court's recent rulings. Rather than reviewing Securities and Exchange Commission (SEC) records and producing exculpatory evidence, including materials related to the SEC's Meme Stock Report, it announces its intent to produce the SEC's complete "investigative file" compiled pursuant to its joint investigation with the DOJ (a document dump unlikely to include the exculpatory internal SEC records and communications related to its 2021 Meme Stock investigation, testimony, and report). To be clear, at least $60 million but likely more than $70 million of the $80 million in "profits" attributed to Constantinescu in Count 1 of the Superseding Indictment derived from his trading of Meme Stocks—stocks which the SEC testified to Congress experienced price and volume fluctuations due to *multiple factors* without any suggestion that the defendants had "artificially inflated" the price of Meme Stocks such as GME, AMC, NAKD, SNDL, JAGX, KOSS, and others during 2021.

1

Accordingly, Constantinescu respectfully requests that the Court enter the attached proposed order clarifying the type of information the government must request from the SEC and the Financial Industry Regulatory Authority (FINRA) to be reviewed for *Brady* material.  In the alternative, Constantinescu respectfully requests that the Court hold a hearing on this issue.

On September 7, 2023, the Court held a pretrial conference to address various outstanding motions and issues. At the hearing, the Court ordered the government to produce exculpatory information within the possession of the SEC and FINRA, noting:

> if it's exculpatory, I'm ordering you to produce it. . . .  [If it] has to do with any of the stocks in the indictment or it has to do with any of these extraneous stocks that you think you're going to offer into evidence. . . . [Y]ou're going to have to explain Brady to [the SEC], to the extent they don't already know what Brady material is…  And so if there's exculpatory evidence, you know, you're going to have to get it from the SEC and give it to the defendants.

Sept. 7, 2023 Tr. 58:1–18.[1]

On September 12, 2023, the Court memorialized a number of its rulings from the pretrial conference in a written Order. [ECF No. 414]. The Court reiterated that the government must disclose "exculpatory records concerning *the stocks that are the basis of the charges* and the stocks included in all of the extraneous trades that the Government is seeking to admit into evidence," including "all exculpating SEC and FINRA records."  *Id.* at 1 (emphasis added).

On September 20, 2023, the week following the Court's Order, the undersigned sent the government a letter reiterating its *Brady* obligations and outlining specific items likely in the possession of the SEC and FINRA that should be reviewed for *Brady* material, consistent with the Court's rulings at the September 7 conference and in its September 12 Order ("September 20 *Brady* Letter"). A copy of that letter is attached as Exhibit A hereto. For example, the undersigned

---

[1] The Court later made clear that its ruling applied to FINRA as well.  *See* Tr. 64:25.

reminded the government that evidence is exculpatory if it is "material either to guilt or to punishment." *United States v. Sipe*, 388 F.3d 471, 477–78 (5th Cir. 2004) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

Instead of responding to our September 20 *Brady* Letter, the government ignored it, continuing to attempt to avoid its *Brady* obligations. To that end, the government has taken the position that "causation"—or whether Defendants caused movements in stock prices—is not relevant to its case. The government takes this position after returning two indictments presented to the grand jury littered with accusations that Defendants "artificially inflated" the prices of certain stocks so that they could then sell out of the stocks at those inflated prices, that is, that they orchestrated "pump and dumps." The government even issued a press release claiming that the defendants "profited approximately $114 million from their scheme" to "artificially inflate[] prices."[2] The government cannot avoid *Brady* obligations by feigning that it has *completely* abandoned the theory underlying its charges.

The government claims it is narrowing its trial presentation to 54 episodes, and thus has requested the SEC and FINRA search for information relevant to only those instances. But the government has repeatedly represented to the Court during oral argument and in its filings that other episodes are relevant to the charges against the defendants and otherwise declined to rule out that it would rely on some unidentified collection of 397 trading episodes that allegedly underpin its headline-grabbing allegation that the defendants conspired to commit "pump and dump" schemes totaling "$114 million."  (Sup. Ind. ¶ 1).

For example, at a hearing before the Court on March 14, 2023, the government represented that it would be providing "the list that we will be presenting at trial, and that is the list that feeds

---

[2] *See* https://www.justice.gov/opa/pr/eight-men-indicted-114-million-securities-fraud-scheme-orchestrated-through-social-media (last visited Oct. 16, 2023).

into the $114 million allegation in Count One." Mar. 14, 2023 Tr. 13:25–14:2. This list includes the 397 episodes. Last month, the government represented to the Court that other episodes on which it might rely "explain the methodology that fed into [the government expert] Ms. [Maria] Garibotti's ultimate profit amount," Sept. 7, 2023 Tr. 73:11–12, and also go "squarely to motive, to explain why [the defendants] were doing this, and it goes to their intent," *id.* at 73:19–20.[3] If the SEC or FINRA has exculpatory evidence contradicting the allegations in the Superseding Indictment or undermining the notion that the defendants are responsible for any movements in price related to the $114 million "profit" alleged in connection with Count One—that is, "exculpatory records concerning the stocks that are the basis of the charges," Order at 1—the government must turn it over.[4]

Moreover, any such information as to Constantinescu is also relevant to whether the government can prove its money-laundering charge in Count Twenty-One because, "where an account contains clean funds sufficient to cover a withdrawal, the Government can not prove beyond a reasonable doubt that the withdrawal contained dirty money." *See United States v. Loe*, 248 F.3d 449, 467 (5th Cir. 2001) (reversing money-laundering convictions) (citation omitted).

The government is silent on the fact that its obligations under *Brady* extend not just to exculpatory evidence regarding guilt, but also to exculpatory evidence *regarding punishment*. *See Sipe*, 388 F.3d at 477–78. The government's representations that it seeks to narrow its trial evidence to 54 episodes says nothing about whether the government would, as the defendants expect, turn around and attempt to utilize all other of the 397 episodes or some subset during the

---

[3] Similarly, the government has disclosed that Peter Melley, who works at FINRA, intends to opine that "[o]n certain trading days when the Defendants posted publicly about the at-issue stocks, those stocks have increased trading volume compared to other days the stocks traded when Defendants were not posting about the stocks." *See* June 15, 2023 Expert Disclosure.

[4] Tellingly, and as Constantinescu has observed previously, the SEC has calculated a different "loss" figure than the government's expert in this criminal case.

sentencing phase as part of its arguments on "loss" under the Sentencing Guidelines, were any of the defendants found guilty at trial.[5] Indeed, the government has already made such arguments in requests for bail conditions and to obtain search warrants and seizure warrants. *See* December 16, 2022 Bail Presentment, Tr. pg.16–17 (asserting that Constantinescu was "the ringleader in terms of loss amount"). Unless the government is willing to concede that only episodes introduced at trial would be relevant at sentencing, it cannot—consistent with *Brady*—later use the other episodes to increase the punishment it seeks but refuse to even search for exculpatory evidence concerning those episodes.

Constantinescu respectfully requests that the Court enter the attached proposed order directing the specific information the government must request from the SEC and FINRA, using the September 20, 2023 *Brady* letter as a guide. Or, in the alternative, Constantinescu requests a hearing before the Court on the government's obligations under *Brady*.

---

[5] Given the government's about-face on causation ("artificially inflated prices") and the $114 million profit calculation (the overwhelming majority attributable to Constantinescu's trading Meme Stocks), this also bears on whether the plea agreement signed by Constantinescu's co-defendant Daniel Knight is valid or was procured by fraud.

Dated: October 16, 2023

Respectfully submitted,

Matthew A. Ford
Texas Bar No. 24119390
Ford O'Brien Landy LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Tel.: (212) 858-0040
mford@fordobrien.com

Jamie Hoxie Solano
(admitted *pro hac vice*)
Stephen R. Halpin III
(S.D. Tex. Bar No.: NY5944749)
Ford O'Brien Landy LLP
275 Madison Ave, 24th Fl
New York, New York 10016
Tel.: (212) 858-0040
jsolano@fordobrien.com
shalpin@fordorbien.com

*Attorneys for Defendant*
*Edward Constantinescu*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 16, 2023, a true and correct copy of the foregoing document has been forward via electronic mail to the government.

  */s/ Matthew A. Ford*
Matthew A. Ford