EXHIBIT S

DISTRICT OF COLUMBIA
COURT OF APPEALS

———————————

No. 18-SS-958

———————————

IN RE FACEBOOK,

Appellant.

———————————

APPEAL FROM THE SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
CRIMINAL DIVISION

———————————

BRIEF FOR THE UNITED STATES

———————————

## COUNTERSTATEMENT OF THE CASE

This appeal arises from *ex parte* proceedings in a criminal prosecution that occurred before the Honorable Juliet J. McKenna. After hearing an *ex parte* proffer from appellee, Judge McKenna authorized appellee to serve subpoenas *duces tecum* on Facebook, Inc. ("Facebook") seeking "any and all information" from January 1, 2015, to the present, relating to any Facebook accounts associated with the name of a government witness or a specific phone number and two Instagram accounts, including "all photos, messenger calls, messages, wall posts,

friends, likes and status updates," as well as information relating to the "physical address," "GPS location," and "IP address" of the account holder(s) (Appx. 39, 43, 45).[1] These subpoenas were issued pursuant to Superior Court Rule of Criminal Procedure 17(c) in connection with a now-ongoing trial. The trial court issued the subpoenas on an *ex parte* basis, finding that the government was not entitled to learn the details of the defendant's defense.

Facebook moved to quash the subpoenas on the grounds that "(1) the federal Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq.*, does not permit criminal defendants to use a subpoena or court order to compel a service provider to disclose the contents of communications; (2) [the subpoenas] do not satisfy Rule 17 because any relevant records and content are otherwise procurable in ways that do not violate federal law; and (3) [the subpoenas] do not satisfy Rule 17 because Defendant is engaged in a fishing expedition" (Appx. 20). Facebook proffered that, although there was one "Facebook account associated with the specified

---

[1] "Appx." refers to the Appendix of Exhibits Required by Rule 4(c)(2)(B)(iv) filed by Facebook. A redacted copy of this appendix was provided to the United States on September 27, 2018.

phone number, it was created in 2017 – two years after the commission of the crime at issue in this trial" (Appx. 31). In addition, "a search for [the name of the specified government witness] on Facebook yields dozens of results" (*id.*).

On September 6, 2018, Judge McKenna issued a written order denying Facebook's motion to quash, finding that, although providers such as Facebook "are generally not permitted to disclose a record or other information regarding a subscriber, or the contents of a subscriber's electronic or wire communications," "to read the SCA as prohibiting disclosure of such communications, in response to a court authorized subpoena, would violate the defendant's Fifth and Sixth Amendment rights" (Appx. 52-54) (citing *Marbury v. Madison*, 5 U.S. 137 (1803), for the proposition that "[i]t has long been held that congressional statutes cannot abridge fundamental constitutional rights"). Judge McKenna further found that the requested records were not "procurable in other ways" because "the records requested may implicate [one of the account holders] in a criminal conspiracy, [and thus] the records may conflict with [the account holder's] Fifth Amendment privilege[ ] against self-incrimination" and because the identity of at least one of the account

3

holders was not known to the defense (Appx. 55). Finally, Judge McKenna explained that "the Court is satisfied that this is not a 'fishing expedition' by the defense. [One of the account holders] has been identified as a witness the government intends to call at trial" and "[b]ased upon prior *ex parte* representations by defense counsel, the information regarding [the requested] Facebook and Instagram accounts is material to [the] defense in this case" (Appx. 56).

Facebook subsequently "produced reasonably responsive, non-content, transactional information, including basic subscriber information, IP addresses, message headers, and device information" (Appx. 59). However, because Facebook "will not violate the SCA," it refused to provide the content of communications (*id.*). Accordingly, Facebook requested an order of civil contempt from the trial court so that it could appeal the trial court's order (Appx. 58). Pending appellate review, Facebook stated that it would "continue to preserve any information in its possession that is responsive" (Appx. 59).

After the trial court issued an order holding Facebook in civil contempt and assessing sanctions of $10,000 per day for failing to comply with the subpoenas (Appx. 70), Facebook noted the instant appeal on

September 12, 2018 (Appx. 72). Facebook filed a motion for summary reversal on September 17, 2018. Appellee filed an opposition on September 21, 2018, and Facebook filed a reply on September 25, 2018.

On September 24, 2018, this Court issued an Order "certify[ying] to the Attorney General of the United States that appellee in this emergency appeal has filed a motion that 'questions the constitutionality' of the Stored Communications Act" pursuant to D.C. App. R. 44(a); ordering the parties to provide redacted versions of the cross-motions for summary disposition to the United States Attorney's Office by 5:00 p.m. on Tuesday, September 25, 2018; and ordering that the United States has until 5:00 p.m. on Tuesday, October 2, 2018, within which to file a brief in this case. An oral argument is scheduled before this Court at 10:00 a.m. on Tuesday, October 9, 2018.

## SUMMARY OF ARGUMENT

The SCA prohibits Facebook from disclosing the contents of electronic communications in response to appellee's subpoenas absent consent. The plain language of Section 2702(a) sets forth a general prohibition against the disclosure of "the contents of a communication" by a service provider to "any person or entity," and none of the exceptions to this prohibition permit disclosure in response to a criminal defendant's subpoena absent consent of the sender, recipient, or account holder. Although Section 2702 is broadly titled "[v]oluntary disclosure of customer communications or records," it is not limited to voluntary disclosures. The plain language of Section 2702(a)'s general prohibition against disclosure of the contents of communications is consistent with the legislative history and purpose of the SCA.

Because Section 2702(a) is not ambiguous, there is no basis for this Court to apply the canon of constitutional avoidance and adopt a reading of the SCA that allows service providers to disclose the content of communications in response to a criminal defendant's subpoena. Moreover, the SCA's general prohibition against disclosure does not raise serious constitutional concerns because a criminal defendant's

constitutional rights to due process, compulsory process, and confrontation are not unlimited, and criminal defendants have alternate means of obtaining the content of communications from the sender or recipients of the communications, or from the account holder.

## ARGUMENT

I. **The SCA Prohibits Service Providers From Disclosing the Contents of Electronic Communications In Response to a Defendant's Trial Subpoena Absent Consent.**

### A.   The Stored Communications Act

The Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, was enacted in 1986 as part of the Electronic Communications Privacy Act ("ECPA"). *See* Pub. L. No. 99-508, 100 Stat. 1860 (Oct. 21, 1986). The Act sets forth statutory provisions, codified at 18 U.S.C. §§ 2701-2713, to protect the privacy of stored email and other stored electronic communications. *See generally* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1218-22 (2004). The SCA governs how stored wire and electronic communications may and may not be lawfully disclosed by an "electronic communications service" or a "remote computing service,"

7

collectively referred to *infra* as "service providers." *See* 18 U.S.C. §§ 2701-2713.[2]

Section 2702 of the SCA restricts service providers that provide service to the public from disclosing communications and other records except in specified circumstances.[3] Captioned "Voluntary disclosure of customer communications or records," Section 2702 begins with general prohibitions on provider disclosure. First, it states that a service provider to the public "*shall not* knowingly divulge to any person or entity the *contents*" of specified communications. 18 U.S.C. §§ 2702(a)(1) and (2) (emphasis added). Second, it states that a service provider to the public "shall not knowingly divulge [*non-content information*]" to "any governmental entity." 18 U.S.C. § 2702(a)(3) ("a [service] provider . . .

---

[2] An "electronic communication service" "provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). A "remote computing service" provides "computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2).

[3] Services are provided "to the public" if they are available to any member of the general population who accepts the terms of service and pays any required fees. For example, Facebook and Gmail are provided to the public, but a private company that provides email to its employees is not a service provider to the public. *See, e.g., Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1043 (N.D. Ill. 1998).

8

shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)) to any governmental entity").[4]

Section 2702 then sets forth a series of "[e]xceptions for disclosure of communications" whereby a service provider "may divulge the *contents of a communication.*" 18 U.S.C. § 2702(b) (emphasis added). Specifically, a service provider "may divulge the contents of a communication": "(1) to an addressee or intended recipient of such communication or an agent of

---

[4] A "governmental entity" "means a department or agency of the United States or any State or political subdivision thereof" and is distinct from a "court of competent jurisdiction," which is defined separately 18 U.S.C. §§ 2711(3) and (4). Appellee does not contend that it is a "governmental entity." *See United States v. Wenk,* No. 17-cr-85, 2017 WL 9989882, at *1 (E.D. Va. Nov. 29, 2017) ("It is clear that courts do not qualify as 'governmental entities'" under the SCA); *United States v. Amawi,* 552 F. Supp. 2d 679 (N.D. Ohio 2008) ("the judiciary and its components, including the Federal Public Defender, cannot obtain a court order under § 2703(d)").

We refer to what is described in the SCA as "a record or other information pertaining to a subscriber [ ] or to a customer . . . (not including the contents of communications . . .)," generally as non-content information. 18 U.S.C. § 2702(a)(3). This non-content information includes, as is relevant to the instant appeal, "basic subscriber information, IP addresses, message headers, and device information" (Facebook Mot. at 8-9).

such addressee or intended recipient"; "(2) as otherwise authorized in section 2517, 2511(2)(a), or 2703 of this title";[5] "(3) with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service"; "(4) to a person employed or authorized or whose facilities are used to forward such communication to its destination"; (5) as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service"; "(6) to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 2258A"; (7) to a law enforcement agency (A) if the contents (i) were inadvertently obtained by the service provider; and (ii) appear to pertain to the commission of a crime"; "(8) to a governmental entity, if the provider, in good faith, believes that an

---

[5] As discussed *infra*, Section 2703 provides three mechanisms by which a service provider can be *required* to disclose certain information to the *government* about wire or electronic communications. 18 U.S.C. § 2703.

Section 2517 addresses "[a]uthorization for disclosure and use of intercepted wire, oral, or electronic communications," and Section 2511(2)(a) provides the circumstances where "[i]t shall not be unlawful . . . for an operator of a switchboard or an officer, employee, or agent of a provider of wire or electronic communication service . . . to intercept, disclose, or use that communication."

emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency"; or "(9) to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies section 2523." 18 U.S.C. §§ 2702(b)(1)-(9).

Section 2702 next sets forth a separate series of "[e]xceptions for disclosure of *customer records*" whereby a service provider "may divulge *a record or other information pertaining to a subscriber to or customer* of such service (*not including the contents of communications* covered by subsection (a)(1) or (a)(2))." 18 U.S.C. § 2702(c) (emphasis added). Specifically, a service provider "may divulge a record or other information" "(1) as otherwise authorized in section 2703"; "(2) with the lawful consent of the customer or subscriber"; "(3) as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service"; "(4) to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency"; "(5) to the

National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 2258A"; "(6) to any person other than a governmental entity"; or "(7) to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies section 2523." 18 U.S.C. §§ 2702(c)(1)-(7).

Section 2703 of the SCA, captioned "Required disclosure of customer communications or records," regulates how a governmental entity[6] can require a service provider to disclose information to the government. *See* 18 U.S.C. § 2703. Section 2703 provides three separate mechanisms for the government to acquire such information: a subpoena, a court order, or a warrant. *Id.* As explained below, the mechanism used by the government affects the type of information it can obtain: certain compelled disclosures require a more demanding showing.[7]

---

[6] *See supra* note 4.

[7] In addition, the mechanism used to compel disclosure of information from a service provider must comply with the Fourth Amendment, if implicated. For example, although the SCA allows use of a court order to compel disclosure of historical cell-site records, the Supreme Court held that a warrant must be used to compel disclosure of seven or more days of such records. *Carpenter v. United States*, 138 S. Ct. 2206, 2217 n.3, 2221 (2018).

12

First, the government may issue an "administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena" to acquire basic subscriber information such as the subscriber's name and identifying information. 18 U.S.C. § 2703(c)(2). Under the SCA, a subpoena may also be used for contents in electronic storage with a provider for more than 180 days, or for other contents stored by a remote computing service. 18 U.S.C. §§ 2703(a), (b)(1)(B).[8]

Second, the government may obtain a court order, sometimes called a 2703(d) order, requiring disclosure of any records legally obtainable by subpoena and additional non-content information "pertaining to a subscriber." 18 U.S.C. §§ 2703(b)(1)(B)(ii) and (c)(1). For example, the government must obtain a 2703(d) order to obtain historical logs of email addressing information (*i.e.*, "header" information). The government may obtain a 2703(d) order only if it "offers specific and articulable facts

---

[8] When the government obtains contents with a subpoena, it must provide prior notice to the subscriber or comply with procedures that allow notice to be delayed. 18 U.S.C. §§ 2703(b)(1)(B) and 2705(a).

Although the SCA allows use of a subpoena to compel disclosure of the contents of communications that are more than 180 days old, the Sixth Circuit held that a warrant is required under the Fourth Amendment to compel disclosure of email contents from a commercial service provider. *See United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010).

13

showing that there are reasonable grounds to believe that" the records sought are "relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

Third, the SCA authorizes the government to "require the disclosure" by a service provider of electronic communications and other records by means of a "warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction." 18 U.S.C. §§ 2703(a) and (b). Unlike with subpoenas and 2703(d) orders, the government may obtain the contents of communications stored by an electronic communication service for fewer than 181 days, 18 U.S.C. § 2703(a), and may demand the same records covered by a 2703(d) order without providing prior notice to a subscriber. 18 U.S.C. § 2703(b)(1)(A). To obtain a Section 2703 warrant, the government must satisfy a neutral judicial officer that there is probable cause to believe that the records to be disclosed contain evidence of a crime, and must describe those records with particularity. Fed. R. Crim. P. 41(d).

The SCA provides that any person "aggrieved" by a violation of the statute may recover actual and statutory damages from the person or

entity that committed the violation. 18 U.S.C. §§ 2707(a)-(c). Section 2707(e) provides a defense for service providers who relied in good faith on "a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization . . . ."[9]

## B.   Standard of Review and Applicable Legal Principles

This Court reviews questions of statutory interpretation *de novo*. *Peterson v. United States*, 997 A.2d 682, 683 (D.C. 2010). In interpreting a statute, this Court looks to the statute's plain language to determine if it is "clear and unambiguous." *Id.* at 684 (internal quotation marks omitted). "[I]f it is clear and unambiguous and will not produce an absurd result, [this Court] will look no further." *Pixley v. United States*, 692 A.2d 438, 440 (D.C. 1997). If the statute's words are ambiguous, then the Court may turn to the statute's legislative history to determine its meaning. *See Hood v. United States*, 28 A.3d 553, 559 (D.C. 2011).

---

[9] Contrary to appellee's suggestion (at 12 n.11), Section 2707(e) does not include trial subpoenas or defense subpoenas in this list.

## C.   Discussion

The plain language of Section 2702(a) sets forth a broad prohibition against the disclosure of "the contents of a communication" by a service provider: a service provider "*shall not* knowingly divulge to any person or entity the contents of [a] communication." 18 U.S.C. §§ 2702(a)(1) and (2) (emphasis added). Every court to address this provision has held that the SCA presents a "general prohibition on disclosure" of the contents of communications. *See, e.g.*, *Facebook, Inc. v. Superior Court*, 4 Cal. 5th 1245, 1249 (2018) (the SCA "declar[es] that as a general matter [service providers] may not disclose stored electronic communications except under specified circumstances"); *State v. Bray*, 363 Or. 226, 229-30 (2018) ("In simplified terms and subject to exceptions, section 2702 of the SCA prohibits providers . . . from knowingly divulging to any person or entity the contents of any communication carried or maintained in that service."); *Sines v. Kessler*, No. 18-mc-80080, 2018 WL 3730434, at *10 (N.D. Cal. Aug. 6, 2018) ("The SCA prohibits any 'person or entity providing an electronic communication service to the public' from 'knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service' without the

16

lawful consent of the sender or recipient of the communication. There are no exceptions for civil subpoenas, which are subject to SCA prohibitions." (quoting 18 U.S.C. § 2702(a), (b), and citing *In re Super Vitaminas, S.A.*, No. 17-mc-80125, 2017 WL 5571037, at *3 (N.C. Cal. Nov. 20, 2017))); *United States v. Wenk*, 319 F. Supp. 3d 828, 829 (E.D. Va. 2017) ("The SCA prohibits service providers from knowingly divulging electronic communications stored under their control, subject to several exceptions."). Accordingly, absent an applicable exception, the SCA does not allow non-governmental entities, including criminal defendants, to obtain the contents of communications from a service provider pursuant to a subpoena. *See generally* 18 U.S.C. §§ 2702(b)(1)-(8) (enumerating eight exceptions to Section 2702(a)).[10]

Because the plain language of Section 2702(a) prohibits disclosure of the "contents of a communication" to anyone, 18 U.S.C. §§ 2702(a)(1), (2), this Court should look "no further." *Pixley*, 692 A.2d at 440 (a court first looks to statute's plain language to determine if it is "clear and

---

[10] Courts throughout the country have found that subpoenas from criminal defendants seeking disclosure of the contents of communications from Facebook and similar service providers are unlawful under the SCA. For a collection of opinions and orders, see Facebook's Appendix at 22-23.

17

unambiguous," if it is "and will not produce an absurd result, [the court] will look no further").

Appellee, however, contends (at 7-8) that Section 2702 "addresses voluntary disclosures, and not compelled ones" such that the prohibition on disclosure "does not encompass court-ordered disclosures to criminal defendants pursuant to Rule 17(c)" subpoenas. Appellee does not point to any word or phrase in Section 2702 that is ambiguous. Rather, appellee's argument relies on the title of Section 2702 – "Voluntary disclosure of customer communications or records" – in arguing that the text of the statute means something other than what it states.[11] But, "the title of a

---

[11] This title was added in 2001 as part of the USA PATRIOT Act, Pub. L. No. 107-56, § 212, 115 Stat. 284. Prior to 2001, the title of Section 2702 was "Disclosure of contents." The title of Section 2703 was also changed from "Requirements for governmental access" to "Required disclosure of customer communications or records." *Id.*

The 2001 amendments moved part of what was contained in Section 2703 to Section 2702. For example, Section 2702 added subsection 2702(a)(3) – the prohibition against disclosure of non-content information to any governmental entity – and subsection 2702(c) – the "[e]xceptions for disclosure of customer records." Prior to the 2001 amendments, Section 2703(c)(1)(A) included language permitting a service provider to disclose non-content information "to any person other than a governmental entity" (*i.e.,* what is now one of the exceptions in Section 2702(c)).

The 2001 amendments *did not* alter the requirement that a service provider "*shall not* knowingly divulge to *any person or entity* the contents

statute cannot limit the plain meaning of the text. For interpretive purposes, it is of use only when it sheds light on some ambiguous word of phrase." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (citation, brackets, ellipsis, and some alterations omitted); *accord Cherry v. District of Columbia*, 164 A.3d 922, 928 (D.C. 2017) (recognizing that this Court has "cautioned" that "'[t]he significance of the title of [a] statute should not be exaggerated'") (quoting *Freundel v. United States*, 146 A.3d 375, 381 (D.C. 2016)); *see also Carter v. United States*, 530 U.S. 255, 267 (2000). The text of Section 2702 is not ambiguous. The requirement that a service provider *"shall not* knowingly divulge to *any person or entity* the contents of a [stored] communication," 18 U.S.C. §§ 2702(a)(1)-(2), could not be clearer. There is thus no basis to consider Section 2702's title, let alone rely on it to read ambiguity into an otherwise unambiguous statutory prohibition.

Moreover, as we explain below, although Section 2702 is broadly titled "[v]oluntary disclosure of customer communications or records," it

---

of a [stored] communication" in 18 U.S.C. §§ 2702(a)(1)-(2). Accordingly, the fact that Congress changed the title of Section in 2702 in 2001, 15 years after the SCA was enacted, cannot alter the plain meaning of the statutory language.

clearly is not limited only to voluntary disclosures as it addresses circumstances when a service provider is *required* to disclose pursuant to a subpoena or court order.

The "[p]rohibitions" set forth in Section 2702(a)(1) and (2) apply broadly to prohibit disclosure of the contents of communications to "any person or entity." The exceptions to this broad prohibition against disclosure do not apply solely to voluntary disclosures – *i.e.*, circumstances where a service provider has discretion to determine whether it will or will not make a voluntary disclosure. Rather, numerous exceptions apply to mandatory disclosures. For example, Section 2702(b) provides an exception for disclosure "as otherwise authorized in" Section 2703. 18 U.S.C. § 2702(b)(2). As noted above, Section 2703 sets forth the mechanisms by which the government can *require* disclosure of the contents of communications pursuant to a warrant. 18 U.S.C. § 2703. In addition, Section 2702(b) provides an exception that permits disclosure to the National Center for Missing and Exploited Children ("NCMEC") in connection with a report submitted thereto under 18 U.S.C. § 2258A. 18 U.S.C. § 2702(b)(6). Section 2258A, in turn, *requires*, in certain specified circumstances, a service provider to disclose information to

NCMEC. 18 U.S.C. § 2258A(a)(1) (requiring that a service provider "*shall*, as soon as reasonably possible" provide certain information) (emphasis added). Thus, Section 2702's reach is not limited to only voluntary disclosures by service providers.[12] Rather, read as a whole, Section 2702 prohibits the disclosure of the "contents of any communication" unless an exception permitting voluntary disclosure *or* one requiring mandatory disclosure applies.[13]

---

[12] This Court should avoid concluding that Section 2702 applies only to voluntary disclosures as appellee suggests because such a reading of the statute would fail to give effect to the exceptions for required disclosures authorized by Section 2703 and Section 2258A. *See generally Zhou v. Jennifer Mall Rest., Inc.*, 699 A.2d 348, 353 (D.C. 1997) ("We interpret statutory provisions so as to give effect to all the statutory language."); *see also United States v. Alaska*, 521 U.S. 1, 59 (1997) ("The Court will avoid an interpretation of a statute that renders some words altogether redundant."); *In re Z.B.*, 131 A.3d 351, 355 (D.C. 2016) ("The courts are to construe statutes in a manner which assumes that [the legislature] has acted logically and rationally.").

[13] Appellee notes (at 9) that Section "2702(d) specifically describes two of the enumerated exceptions in § 2702(b) and (c) as 'voluntary disclosures.'" The two exceptions – "voluntary disclosures under subsection (b)(8)" and "voluntary disclosures under subsection (c)(4)" – do not include the exceptions for required disclosures pursuant to Section 2703, 18 §§ U.S.C. 2702(b)(2) and (c)(1), or mandatory disclosures to the NCMEC pursuant to Section 2258A, 18 U.S.C. §§ 2702(b)(6) and (c)(5). Moreover, the fact that Section 2702(d) refers to certain specified exceptions as "voluntary disclosures," reinforces the conclusion that not all of the exceptions are voluntary disclosures.

Although this Court need "look no further," *Pixley*, 692 A.2d at 440, the plain language of the SCA is consistent with its purpose and history. *See* H.R. Rep. No. 99-647, at 64 (1986) (Section 2702 is a "general prohibition[] on the disclosure of contents" and a "provision [that] is aimed at proscribing the disclosure of stored . . . communications" subject only to the specified "exceptions to this general rule"); *id.* at 65 (the SCA "generally prohibits the provider . . . from knowingly divulging the contents of any communication . . . to any person other than the addressee or intended recipient"). As Facebook notes (at Reply 7-8), "Congress was not only concerned with government access to electronic communications, but *any* third-party access."

To be sure, Congress had a specific concern with protecting individual's electronic communications from governmental surveillance.[14] This concern is addressed by the specific provisions

---

[14] *See, e.g.*, S. Rep. No. 99-541, at 2 (1986) (the SCA seeks to strike "a fair balance between the privacy expectations of American citizens and the legitimate needs of law enforcement agencies" by "ensur[ing] the continued vitality of the fourth amendment"); H.R. Rep. No. 99-647, at 18-19 (noting that "the enormous power of the government makes the potential consequences of its snooping far more ominous than those of . . . a private individual or firm").

22

limiting the circumstances under which a service provider may disclose content or other information to the government. *See, e.g.*, 18 U.S.C. § 2703 (requiring a subpoena, court order, or warrant, depending on the type of information sought). It does not follow from Congress's desire to limit the government's access to electronic communications, however, that Congress intended to allow unlimited disclosure to criminal defendants or other non-governmental individuals or entities. Rather, Congress struck the following careful balance between individual privacy rights and disclosure: with respect to *non-content information* such as subscriber information, service providers may voluntarily disclose "to any person other than a governmental entity," 18 U.S.C. § 2702(c)(6), while a governmental entity must generally obtain disclosure pursuant to a subpoena or court order. 18 U.S.C. § 2703(c).[15] Congress afforded much greater protection to the content of communications, however. Section 2702(b) does not include an exception that permits a service provider to disclose the contents of communications "to any person other than a

---

[15] The exception permitting disclosure "to any person other than a governmental entity" shows that Congress knew how to word the statute to permit non-governmental entities to obtain certain types of information.

governmental entity." *Compare* 18 U.S.C. §§ 2702(b)(1)-(9) *with* 18 U.S.C. § 2702(c)(6). Rather, the SCA permits the disclosure of the *contents* of communications to anyone who obtains the "lawful consent of the originator or addressee . . . or the subscriber," 18 U.S.C. § 2702(b)(3), and to the government pursuant to a warrant. 18 U.S.C. §§ 2703(a) and (b).[16]

Thus, contrary to appellee's suggestion (at 11), the SCA provides a "mechanism" for non-governmental litigants to obtain the disclosure of both the records and content of electronic communications. A non-governmental litigant can subpoena *non-content* information from the service provider under the provision permitting voluntary disclosure "to any person other than a governmental entity." 18 U.S.C. § 2702(c)(6). The non-governmental litigant who wishes to obtain *content* of communications may either (1) issue a subpoena to the account holder for the content of communications, or (2) obtain consent and issue a subpoena to the service provider under the provision permitting

---

[16] As Facebook notes (at 10), this appeal does not raise the question of whether the fact a communication or post is configured such that it is viewable by the public satisfies the "consent" exception in Section 2702(b)(3) because "the parties agreed that the subpoenaed records were not public" (Appx. 50).

disclosure of the contents of communications "with the lawful consent of the originator or an addressee or intended recipient . . . or the subscriber." 18 U.S.C. § 2702(b)(3).[17]

It would be illogical to conclude that Congress intended to allow non-governmental litigants to obtain the content of communications simply by issuing a subpoena to the service provider, while at the same time requiring that the government obtain a warrant supported by

---

[17] Appellee contends (at 18) that "it would be cumbersome, time-consuming, and likely ineffective to try to obtain social media information directly from account holders whose identities are known to the defense." However, there is no support for appellee's contention because, despite Facebook providing subscriber information in response to appellee's subpoenas and the fact that at least one of the relevant account holders appeared at trial and testified "about his social media activity without invoking the Fifth Amendment" (Facebook Reply at 9 n.4 and 10 n.5), appellee apparently has made no efforts to subpoena the account holders or obtain consent from the account holders. As Facebook explains (Appendix at 29), "Facebook and Instagram accountholders can go directly to their accounts to download or print content, or they can use the online tools provided by each service to obtain content and records." *See* Instagram Help Center, "How do I access or review my data on Instagram?," *available at* https://help.instagram.com/181231772500920; Facebook Help Center, "Accessing Your Facebook Data," *available at* http://www.facebook.com/help/405183566203254; *see also* John G. Browning, *Digging for the Digital Dirt: Discovery and Use of Evidence from Social Media Sites*, 14 SMU Sci. & Tech. L. Rev. 465, 473 (2011) ("The most effective methods of obtaining discovery of the contents of a party's social networking profile are propounding specific, well-tailored discovery requests to the party himself . . . .")

probable cause. Such a conclusion would run counter to the Supreme Court's recognition of individuals' privacy interests in their own electronically stored data and information. *See Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (extending the Fourth Amendment to require that the government obtain a warrant to obtain location data from cell-phone providers because "[t]hese location records hold for many Americans the privacies of life" and can be accessed "at practically no expense" "[w]ith just the click of a button") (internal quotation and citation omitted); *Riley v. California*, 134 S. Ct. 2473, 2485, 2489-91, 2493 (2014) (holding that the Fourth Amendment requires that police obtain a warrant before searching an individual's cell phone and recognizing the "vast quantities of personal information" stored on phones and cloud storage). Moreover, as Facebook notes (at 14 and Reply 1), appellee's suggested reading of the SCA "would violate people's right to privacy and potentially jeopardize their safety" by allowing defendants to obtain access to the contents of the electronic communications of a victim, witness, or even an individual who shares the same name as victim or witness. Rather, the framework established by the SCA balances individual privacy interests with the need to obtain evidence from service

providers and comports with the long-established methods by which the government and criminal defendants may obtain evidence.

The fact that the SCA permits the government to obtain the contents of communications pursuant to a warrant, but does not provide similar access to other non-governmental entities including criminal defendants, is not surprising. Within the criminal justice system, other statutes and rules also provide for one-sided access to the government. For example, the search warrant provisions of Federal Rule of Criminal Procedure 41(b) and the wiretap application provisions of 18 U.S.C. § 2516(1) both provide a means for the government to obtain evidence without a mechanism for defendants to do so. Similarly, only the government, not the defendant, has the ability to utilize a grand jury to gather evidence related to the commission of a criminal offense. This framework is consistent with the presumption of innocence, which places the burden of proof beyond a reasonable doubt on the government and mandates that a defendant does not have to prove himself innocent.[18]

---

[18] Appellee argues (at 13-15) that this "interpretation of the SCA . . . implicitly curtains criminal defendants' Rule 17(c) subpoena power" and that such "[r]epeals by implication are not favored." To the extent that the SCA limited the type of information a defendant may obtain from a

## II.   A Contrary Reading of the SCA is Not Constitutionally Mandated.

Despite the plain language of the SCA, appellee contends (at 17-18) that this Court should adopt a reading of the SCA that "leaves in place criminal defendants' constitutionally grounded right to compel favorable and material evidence for use at trial" because the contrary interpretation advanced by Facebook and the United States would "raise serious questions about [the SCA's] validity under the Fifth and Sixth Amendments." This argument is without merit.

---

particular source, a criminal defendant's Rule 17(c) subpoena power was not "repealed." Moreover, as Facebook notes (at Reply 5), the Supreme Court rejected this argument in *Baldrige v. Shapiro*, 455 U.S. 345 (1982) (holding that the "unambiguous language of the confidentiality provisions" in a statute directing the Department of Commerce not to "permit anyone" to examine raw census data precluded discovery of that data via subpoena). *See also Cazorla v. Koch Foods of Mississippi, L.L.C.*, 838 F.3d 540, 551 (5th Cir. 2016) ("as a purely textual matter, it is unclear why a provision broadly barring *any* 'disclosure' would have to specify 'including in discovery' in order to have effect"); *In re England*, 375 F.3d 1169, 1177-78 (D.C. Cir. 2004) (holding that federal statute prohibiting disclosure "to any person" extended to all contexts, including judicial proceedings even when not specifically mentioned by the statute). Appellee's reliance (at 14) on *Freeman v. Seligson*, 405 F.2d 1326 (D.C. Cir. 1968), is misplaced. *Freeman* dealt with a statute that barred the "publish[ing]" of certain records, not a statute like the SCA that prohibited the disclosure of information or records (*see* Facebook Reply at 6).

28

As an initial matter, "the canon of constitutional avoidance 'is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts.'" *Mack v. United States*, 6 A.3d 1224, 1233-34 (D.C. 2010) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). "It is intended as 'a means of giving effect to congressional intent, not of subverting it.'" *Id.* (quoting *Clark v. Martinez*, 543 U.S. 371, 382 (2005)). As this Court has explained, "[w]e do not needlessly pit a statute against the Constitution." *Gay Rights Coalition of Georgetown Univ. Law Center v. Georgetown Univ.*, 536 A.2d 1, 16 (D.C. 1987) (en banc) (plurality opinion). Here, the SCA's broad prohibition against disclosure is not ambiguous. *See supra* Section I. The canon of constitutional avoidance thus plays no role in this Court's interpretation of the SCA. But, even assuming *arguendo* that there was more than one plausible interpretation of the SCA, the interpretation advanced by Facebook and the United States does not "provoke a confrontation with the Constitution." *Mack*, 6 A.3d at 1234.[19]

_____

[19] Appellee bears a heavy burden in persuading this Court that the SCA's broad prohibition against disclosure is unconstitutional – Acts of Congress receive a "strong presumption of constitutionality." *United States v. Watson*, 423 U.S. 411, 416 (1976); *see also Mistretta v. United*

"Whether rooted directly in the Due Process Clause . . ., or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotations and citations omitted). However, as both the Supreme Court and this Court have recognized, "the constitutional right to present a defense is not absolute and does not allow the defendant to introduce all evidence that may be helpful." *Blackson v. United States*, 979 A.2d 1, 10 n.9 (D.C. 2009) (citing *Crane*, 476 U.S. at 690); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'") (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1998)).

For example, "a defendant's right to cross-examination is not unlimited," *Coles v. United States*, 808 A.2d 485, 489 (D.C. 2002), as the

---

*States*, 488 U.S. 361, 384 (1989) (a court may invalidate an Act of Congress for only "the most compelling constitutional reasons").

Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish," *Hart v. United States*, 863 A.2d 866, 871 (D.C. 2004) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). Similarly, although the Compulsory Process Clause "guarantees a criminal defendant a fair and meaningful opportunity to present a complete defense," *McDonald v. United States*, 904 A.2d 377, 380 (D.C. 2006), "it is not unlimited," *Grady v. United States*, 180 A.3d 652, 657 (D.C. 2018). A defendant's right to produce relevant evidence may "bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973); *see also Taylor v. Illinois*, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under the rules of evidence."). To establish a violation of the right to compulsory process, a fair trial or due process, a defendant "must show a denial of fundamental fairness: 'In order to declare a denial of [fundamental fairness] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.'" *Richmond v. Embry*,

31

122 F.3d 866, 872 (10th Cir. 1997) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982)).

Applying these precepts, courts have upheld categorical prohibitions on a defendant's right to obtain or introduce certain types of evidence. *See, e.g., Scheffer*, 523 U.S. at 317 (upholding rule prohibiting defendant from introducing polygraph evidence, finding that the rule "serves several legitimate interests in the criminal trial process," "is neither arbitrary nor disproportionate in promoting these ends," and does not "implicate a sufficiently weighty interest of the defendant to raise a constitutional concern under our precedents"); *United States v. Stewart*, 433 F.3d 273, 310-11 (2d Cir. 2006) (upholding procedural and evidentiary rules that limit the introduction of expert testimony on the basis that the rules serve "'legitimate interests in the criminal trial process,' and the resulting restrictions on the presentation of evidence are neither arbitrary nor disproportionate to those purposes" (quoting *Rock*, 483 U.S. at 55); *Commonwealth v. Aultman*, 602 A.2d 1290, 1297 (Pa. 1992) (defendant was not entitled to disclosure of victim's records held by a rape crisis center where those records were protected by an absolute statutory privilege; "the existence of a statutory privilege is an

indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest"); *cf. Minder v. Georgia*, 183 U.S. 559, 562 (1902) (defendant was not deprived of "due process of law, on account of not having the benefit of the testimony of witnesses who are beyond the jurisdiction of the court, when the lawmaking power of the state is powerless to make any provision which would result in the compulsory attendance of the witnesses, and the use of depositions in such cases is directly contrary to the usages, customs, and principles of the common law").[20]

Like these limitations on a defendant's right to obtain or introduce evidence, the SCA's general prohibition against the disclosure of "the *contents* of a communication" by a service provider to "any person or entity" serves a "legitimate interest" – protecting the privacy of stored email and other stored electronic communications – and is "neither arbitrary nor disproportionate in promoting these ends." *Scheffer*, 523 U.S. at 317. This is because the SCA only prohibits unconsented-to

---

[20] The issue presented in *Minder* has since been addressed by a uniform act to secure the presence of witnesses adopted by the vast majority of states.

disclosure by a service provider, not by others with access to the communications, such as the originator or recipients. Service providers may disclose the content "with the lawful consent of" the originator, an addressee or recipient, or subscriber and of non-content to "any person other than a governmental entity." 18 U.S.C. §§ 2702(b)(3) and (c)(6). Accordingly, the SCA's prohibition against the disclosure of "the contents of a communication" by a service provider, 18 U.S.C. §§ 2702(a)(1) and (2), does not "implicate a sufficiently weighty interest of the defendant to raise a constitutional concern," *Scheffer*, 523 U.S. at 317.[21]

Important to this conclusion is a recognition that the SCA is not a categorical prohibition on a defendant's ability to obtain and introduce the content of electronic communications. Rather, it limits the methods a defendant can use to obtain evidence by prohibiting *one source* – the service provider – from disclosing the content of communications absent consent or another applicable exception. This type of limitation on the

---

[21] We note that when the government obtains the content of communications under Section 2703 pursuant to a warrant, the government's discovery obligations might require it to disclose some or all of that information to the defense. *See, e.g.*, Super. Ct. R. Crim. P. 16; *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963).

methods and sources a defendant can use to obtain evidence is routine. *See, e.g.*, 18 U.S.C. § 2510, *et seq.* (defendant may not obtain evidence of a conversation by wiretapping or otherwise unlawfully recording it, but no limitation on ability to obtain evidence from a party to the conversation); *United States v. Recognition Equip. Inc.*, 720 F. Supp. 13, 14 (D.D.C. 1989) (criminal defendant cannot obtain third-party tax returns from U.S. government unless they are in the U.S. attorney's possession).[22]

Indeed, where, as here, a defendant has an alternative means of obtaining evidence, courts routinely uphold privileges and non-disclosure provisions in the face of constitutional challenges. *See, e.g.*, *Anderson v. United States*, 607 A.2d 490, 497-99 (D.C. 1992) (upholding government's qualified privilege to withhold location of observation post against claim of denial of accused's right to confront and cross-examine prosecution witnesses where defendant did not show that there were "no alternative means of getting at the same point"); *United States v. Poindexter*, 727 F.

---

[22] Similarly, criminal unlawful entry and burglary statutes prohibit a defendant from entering a witness's home to gather evidence absent consent; rather a defendant must seek the evidence via consent or pursuant to a subpoena *duces tecum*.

Supp. 1501, 1509 (D.D.C. 1989) (upholding executive privilege because the President "need not produce these answers because they are available from another source"); *State v. Boiardo*, 414 A.2d 14, 21 (N.J. 1980) ("Legislature clearly contemplated . . . a balancing of the interests served by compulsory process in criminal cases against those served by the protection of a newsperson's confidential sources and information, once the strengths of the competing interests had been demonstrated through a showing of relevance, materiality and necessity to the defense, in addition to nonavailability through a less intrusive source"); *cf. United States v. Prantil*, 756 F.2d 759, 763 (9th Cir. 1985) ("We recognize that a defendant has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness.").

Thus, at a minimum, absent a showing that there are no alternative means of obtaining the content of the communications appellee seeks, there is no serious constitutional question presented here. Because appellee has not made any attempt to obtain the communications from the sender, recipient, or account holder, even after receiving subscriber information from Facebook and having the opportunity to question the

36

Facebook account holder (a government witness) at trial regarding his social media activity, appellee cannot show that there are no alternative means of obtaining the content he seeks (Facebook Mot. at 8-9; Facebook Reply at 10 n.5).[23]

---

[23] Super. Ct. Crim. R. 17(c) requires that a party seeking a subpoena *duces tecum* demonstrate: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable . . . by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production . . . and (4) that the application is made in good faith and is not intended as a 'fishing expedition.'" *Tyer v. United States*, 912 A.2d 1150, 1156 (D.C. 2006).

Because the trial court based its conclusion that the requested subpoenas satisfied the requirements of Rule 17(c) on *ex parte* representations by appellee, neither Facebook nor the United States has the ability to fully assess the trial court's conclusions. However, based on the record as it stands, it is difficult to conceive of a proffer that would demonstrate that subpoenas that seek "any and all information" for a period of over three years from dozens of Facebook accounts associated with a particular name and two Instagram accounts meet this standard, especially where appellee has not made any attempt to limit the scope of the subpoenas after receiving subscriber information from Facebook. *See, e.g., In re Grand Jury Subpoena*, 828 F.3d 1083 (9th Cir. 2016) (holding that subpoena for the contents of former governor's email account was overly broad); *Margoles v. United States*, 402 F.2d 450 (7th Cir. 1968) (subpoena for any and all equipment logs relating to electronic eavesdropping equipment during one-and-a-half year period was too broad); *United States v. Wilmington Trust Corp.*, 321 F.R.D. 100 (D. Del. 2017) (subpoenas seeking broad array of internal Federal Reserve documents did not comport with limited purpose of rule governing subpoenas for production of documents – to allow defendants access to "identified evidence"). What is clear, however, is that appellee cannot show that the

Appellee's arguments (at 18-19) to the contrary are unpersuasive. In response to a subpoena *duces tecum*, Facebook and Instagram accountholders can go directly to their accounts to download or print content, or they can use the online tools provided by each service to obtain content. *See supra* note 14. If they were unable to access content responsive to the subpoena, the trial court could, in appropriate circumstances, require the account-holder to consent to disclosure of the content by the service provider. *See Flagg v. City of Detroit*, 252 F.R.D. 346 (E.D. Mich. 2008). If an account-holder refused to produce content in response to a subpoena, the defendant could seek to compel compliance or move the court to hold the account-holder in contempt of court. *See*

---

materials he seeks "are not otherwise procurable . . . by exercise of due diligence" because he has not made any attempt to obtain the communications from the sender, recipient, or account holder.

For these same reasons, appellee cannot show the SCA's prohibition on disclosure of the contents of communications by service providers "implicate[s] a sufficiently weighty interest of the defendant to raise a constitutional concern," *Scheffer*, 523 U.S. at 317. Courts often engage in a case-by-case balancing of the defendant's need for the privileged or statutorily proscribed information and the interest served by the privilege or statute. Here, the breadth of the defendant's request and the fact that the defendant did not seek the information either with more specificity or from the account holder itself suggests that any balance favors the legitimate interest in protecting individuals' privacy.

Super. Ct. R. Crim. P. 17(g) ("Failure by any person without adequate
excuse to obey a subpoena served upon that person may be deemed a
contempt of the court."). The trial court could also preclude a witness
from testifying or limit the witness's testimony if a witness refused to
comply with such a subpoena, *see United States v. Nobles*, 422 U.S. 225,
241 (1975); craft an instruction similar to the missing evidence
instruction given when the government fails to produce evidence, *see
generally Tyer v. United States*, 912 A.2d 1150, 1164-66 (D.C. 2006); or,
in appropriate cases, permit the defense to comment in closing argument
on the absence of the evidence, *see Greer v. United States*, 697 A.2d 1207,
1210 (D.C. 1997). The government, faced with these possibilities, could
also elect to obtain the content directly from the service-provider
pursuant to 18 U.S.C. § 2703. What a court should not do is order
Facebook or another service provider to violate federal law.[24]

---

[24] As Facebook notes (at Reply 9 n.4), appellee has not pressed on appeal
the argument raised below and relied on by the trial court that if
confronted with a subpoena, the subscriber might invoke the Fifth
Amendment. This is understandable given that this Court has a long-
recognized procedure for addressing the "tension between the accused's
Sixth Amendment right of compulsory process to obtain witnesses in aid
of a defense, and a witness' Fifth Amendment right against self-
incrimination. *See Carter v. United States*, 684 A.2d 331, 334-35, 341, 343

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the Superior Court should be reversed.

Respectfully submitted,

JESSIE K. LIU
United States Attorney

ELIZABETH TROSMAN
Assistant United States Attorney

_____/s/_____
LAUREN R. BATES
D.C. Bar #975461
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
Lauren.Bates@usdoj.gov
(202) 252-6829

---

(D.C. 1996) (en banc) (where "the testimony of a crucial defense witness" is "(a) material, (b) exculpatory, (c) not cumulative, and (d) unobtainable from any other source," and "the government does not submit to the court a reasonable basis for not affording use immunity to the crucial witness in order to procure the vital defense testimony, then the trial court would be justified in informing the government that it must make the choice between dismissal of the indictment or some other *commensurate remedy* which the court may fashion on Sixth Amendment and due process grounds, or affording use immunity to the crucial defense witness involved"). Thus, to the extent the trial court relied on the speculative possibility that the account holder "could" assert his Fifth Amendment privilege against self-incrimination in finding the information sought by appellee not "procurable in other ways," the trial court erred by not following the *Carter* procedures. 684 A.2d at 343 (Appx. at 55).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused the foregoing Brief for the United States to be served by email on counsel for appellant, Joshua Lipshutz, Michael Holecek, Thomas Cochrane, John Roche, and Hayley Berlin, and counsel for appellee, Samia Fam, Jaclyn Frankfurt, and Mikel-Meredith Weidman, on this 2nd day of October, 2018.

_____ /s/ _____
LAUREN R. BATES
Assistant United States Attorney

Case Name:        Facebook, Inc. v. Superior Court of San Diego
Case No:          S245203

## PROOF OF SERVICE

I, Thomas Cochrane, declare as follows:

I am a citizen of the United States and employed in San Francisco County, California; I am over the age of eighteen years, and not a party to the within action; my business address is 333 South Grand Ave., Los Angeles, CA 94105-0921.  On May 8, 2020, I served the within documents:

**PETITIONER'S RULE 8.520(d) SUPPLEMENTAL BRIEF REGARDING**
*FACEBOOK, INC. V. WINT* **(D.C. 2019) AND** *FACEBOOK, INC. V. SUPERIOR COURT* **("***HUNTER III***") (2020)**

On the parties stated below, by the following means of service:

### SEE ATTACHED SERVICE LIST

☑ **BY UNITED STATES MAIL**: I caused a true copy to be placed in a sealed envelope or package addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business in a sealed envelope with postage fully prepaid. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing set forth in this declaration.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 8, 2020 at Los Angeles, California.

*/s/ Thomas Cochrane*
_____
Thomas Cochrane

13

**SERVICE LIST** FOR *Facebook, Inc. v. Superior Court of San Diego*
**CALIFORNIA SUPREME COURT CASE NO. S245203**

| | |
|---|---|
| Superior Court of San Diego County: Respondent | Superior Court of San Diego County Central – Downtown Courthouse P.O. Box 122724 San Diego, CA 92112 |
| Court of Appeal, Fourth District, Div. 1 | Clerk of the Court Court of Appeal, Fourth District, Div. 1 750 B Street, Suite 300 San Diego, CA 92101 |
| Lance Touchstone: Real Party in Interest | Katherine Ilse Tesch Office of the Alternate Public Defender 450 B Street, Suite 1200 San Diego, CA 92101 |
| San Diego County District Attorney: Intervenor | Summer Stephan, District Attorney Mark Amador, Deputy District Attorney Linh Lam, Deputy District Attorney Karl Husoe, Deputy District Attorney 330 W. Broadway, Suite 860 San Diego, CA 92101 |
| Apple Inc., Google Inc., Oath Inc., Twitter Inc., and California Chamber of Commerce: Attorneys for Amici Curiae | Jeremy B. Rosen Stanley H. Chen Horvitz & Levy LLP 3601 West Olive Avenue, 8th Floor Burbank, California 91505-4681 |
| California Public Defenders Association and Public Defender of Ventura County: Attorneys for Amici Curiae | Todd Howeth, Public Defender Michael C. McMahon, Senior Deputy Office of the Ventura County Public Defender 800 S. Victoria Avenue, Suite 207 Ventura, CA 93009 |
| California Attorneys for Criminal Justice: Attorneys for Amici Curiae | Donald E. Landis The Law Office of Donald E. Landis, Jr. P.O. Box 221278 Carmel, CA 93922 |

14

| | |
|---|---|
| California Attorneys for Criminal Justice: Attorneys for Amici Curiae | Stephen Kerr Dunkle<br>Sanger Swysen & Dunkle<br>125 East De La Guerra Street, Suite 102<br>Santa Barbara, CA 93101 |
| California Attorneys for Criminal Justice: Attorneys for Amici Curiae | John T. Philipsborn<br>Law Offices of J.T. Philipsborn<br>Civic Center Building<br>507 Polk Street, Suite 350<br>San Francisco, CA 94102 |
| San Francisco Public Defender's Office: Attorneys for Amici Curiae | Jeff Adachi, Public Defender, City and County of San Francisco<br>Matt Gonzalez, Chief Attorney<br>Dorothy Bischoff, Deputy Public Defender<br>555 Seventh Street<br>San Francisco, CA 94103 |

15

Jorge E. Navarrete, Clerk and Executive Officer of the Court
Electronically FILED on 5/8/2020 by Tayuan Ma, Deputy Clerk

| STATE OF CALIFORNIA<br>Supreme Court of California | **_PROOF OF SERVICE_**<br><br>**STATE OF CALIFORNIA**<br>Supreme Court of California |
|---|---|

Case Name: **FACEBOOK v. S.C. (TOUCHSTONE)**

Case Number: **S245203**

Lower Court Case Number: **D072171**

1. At the time of service I was at least 18 years of age and not a party to this legal action.

2. My email address used to e-serve: **tcochrane@gibsondunn.com**

3. I served by email a copy of the following document(s) indicated below:

Title(s) of papers e-served:

| **Filing Type** | **Document Title** |
|---|---|
| BRIEF | Touchstone_Supp Br re Hunter |

Service Recipients:

| **Person Served** | **Email Address** | **Type** | **Date / Time** |
|---|---|---|---|
| John Philipsborn<br>Law Offices of J.T. Philipsborn<br>83944 | JPhilipsbo@aol.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Soolean Choy<br>Gibson, Dunn & Crutcher LLP<br>318750 | schoy@gibsondunn.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Donald Landis<br>The Law Office of Donald E. Landis, Jr.<br>149006 | don@donlandislaw.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Stephen Dunkle<br>Sanger Swysen & Dunkle<br>227136 | sdunkle@sangerswysen.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Eric Boorstin<br>Horvitz & Levy LLP<br>253724 | eboorstin@horvitzlevy.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| James Snell<br>Perkins Coie LLP<br>173070 | JSnell@perkinscoie.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Karl Husoe<br>Office of the District Attorney<br>261097 | karl.husoe@sdcda.org | e-Serve | 5/8/2020<br>2:53:41 PM |
| Michael Mcmahon<br>Office of the Ventura County Public Defender<br>71909 | michael.mcmahon@ventura.org | e-Serve | 5/8/2020<br>2:53:41 PM |
| Dorothy Bischoff<br>Office of the Public Defender<br>142129 | dorothy.bischoff@sfgov.org | e-Serve | 5/8/2020<br>2:53:41 PM |
| Joshua Lipshutz<br>Gibson, Dunn & Crutcher LLP | jslipshutz@gmail.com | e-Serve | 5/8/2020<br>2:53:41 PM |

| Todd Howeth<br>Todd W. Howeth, Ventura County Public Defender<br>110714 | todd.howeth@ventura.org | e-Serve | 5/8/2020<br>2:53:41 PM |
|---|---|---|---|
| Katherine Tesch<br>Office of the Alternate Public Defender<br>284107 | Kate.Tesch@sdcounty.ca.gov | e-Serve | 5/8/2020<br>2:53:41 PM |
| Donald Landis<br>The Law Office of Donald E. Landis, Jr.<br>149006 | admin@donlandislaw.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Michael Holecek<br>Gibson Dunn & Crutcher, LLP | mholecek@gibsondunn.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Christian Lee<br>Perkins Coie LLP<br>301671 | clee@perkinscoie.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Raeann Diamond<br>Horvitz & Levy LLP | rdiamond@horvitzlevy.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Stanley Chen<br>Horvitz & Levy LLP<br>302429 | schen@horvitzlevy.com | e-Serve | 5/8/2020<br>2:53:41 PM |
| Thomas Cochrane<br>Gibson, Dunn & Crutcher LLP<br>318635 | tcochrane@gibsondunn.com | e-Serve | 5/8/2020<br>2:53:41 PM |

This proof of service was automatically created, submitted and signed on my behalf through my agreements with TrueFiling and its contents are true to the best of my information, knowledge, and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

5/8/2020
Date

/s/Thomas Cochrane
Signature

Cochrane, Thomas (318635)
Last Name, First Name (PNum)

Gibson, Dunn & Crutcher LLP
Law Firm