# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR A CONTINUANCE AND TO HOLD THE GOVERNMENT IN CONTEMPT FOR FAILING TO COMPLY WITH ITS *BRADY* OBLIGATIONS[1]**

The government's opposition brief confirms that it continues to misinterpret the Court's orders—still it insists that it should be excused from complying with those orders (1) because Constantinescu's "true intent" is delay and obfuscation, (2) because it turned over tens of millions of pages of irrelevant, duplicative, and useless files it claims represent the SEC's "investigative file," and (3) because it deems irrelevant the fact that Constantinescu made nearly all of his money charged in Count 1 by trading Meme Stocks and gained over 80% of his Twitter followers as a result of making more than $50 million in January and February 2021 tweeting memes about Meme Stocks such as AMC and EXPR. (Opp. at 1–2, 7 [ECF No. 502]).

The government is mistaken: Constantinescu's true intent is to assert his constitutional right to *Brady* material. In any event, Constantinescu's intent is irrelevant. The only question

---

[1] This reply is joined by Perry "PJ" Matlock and Stefan Hvartin (who joined Constantinescu's motion).

before the Court on Constantinescu's Motion is whether the government has discharged its obligations under *Brady* and complied with the Court's orders. It has not.[2]

Since the September 7 hearing, the government hears what it wants to hear, not what it is being ordered to do. Nowhere has the Court concluded that the government's purported decision to narrow its bloated case obviates its *Brady* obligations, notwithstanding the government's selective quotations from the September 7 hearing transcript. (*Compare* Mot. at 6, *with* Opp. at 5 (omitting Court's instruction that, "the key here, though, is that if-- if it's exculpatory, they get it"). The government has alleged a sprawling conspiracy in Count 1, which requires it to identify and produce all *Brady* material "concerning the stocks that are the basis of the charges," specifically the conspiracy charge whereby Constantinescu and his co-defendants allegedly profited $114 million. Sept. 12 Order [ECF No. 414].

And even on the government's own mistaken interpretation of the Court's instructions, it has failed to search for and produce *Brady* material. For example, the government is fond of stressing in filings that its case will be limited to 54 "Trial Episodes," but its recent exhibit list confirms it will seek to introduce evidence concerning several stocks not listed among the handpicked "Trial Episodes" and for which it has admittedly not searched for *Brady* material.[3] The government also continues to ignore the scope of *Brady*, including that it encompasses

---

[2] The government contends Constantinescu has "raised no issues . . . since October 2023." (Opp. at 1). This is incorrect. As recounted in the initial Motion, Constantinescu sent a follow-up letter to the government on October 20, 2023, after having received no response to his September 20, 2023 letter. On October 25, 2023, Constantinescu contacted the government by email, and on October 26, 2023, the government indicated it had received the October 20 letter, forwarded it to the SEC, and would respond in due course. Several additional follow-up communications by Constantinescu's team since then, including requests for the communications sent by the government to the SEC and FINRA, have either been ignored or elicited from the government only that it would let counsel for Constantinescu know if it received anything further from the SEC.

[3] Constantinescu continues to assert his objection that the government's presentation should be limited to the 19 substantive counts in the Superseding Indictment, not 35 additional uncharged "Trial Episodes."

material that can be used for impeachment purposes and that it does not have to be admissible to be *Brady* material. These fundamental misunderstandings necessitate a continuance and support a finding of contempt.

**ARGUMENT**

I. **The government's assertion that it does not seek to introduce evidence related to Constantinescu trading meme stocks is contradicted by its own exhibit list.**

The government misrepresents the scope of the Congressional Meme Stock hearings as well as the evidence it intends to introduce at trial regarding meme stocks. Contrary to the government's assertion, the Congressional hearings and subsequent SEC Meme Stock report is not limited to GameStop (GME) (Opp. at 7), but rather starts with the sentence: "GameStop Corporation (GME), AMC Entertainment Holdings, Inc. (AMC), and other 'meme stocks' became extraordinarily popular on social media leading into January 2021." (ECF No. 322-16 Ex. L at 3, Senate Report: "Game Stopped: How The Meme Stock Market Event Exposed Troubling Business Practices, Inadequate Risk Management, And the Need for Legislative And Regulatory Reform"). Constantinescu's internet fame largely resulted from his "call" of AMC—that provides the "why" underlying the allegation in paragraph 2 of the Superseding Indictment that Constantinescu had more than 500,000 Twitter followers. And the SEC likely has materials in its possession referring to CEI (Count 14) and DATS (Count 15) as "meme stocks."

More importantly, the Congressional Report expressly defines Meme Stock by naming three stocks, GME, AMC, and NAKD (a ticker listed in the Superseding Indictment), and specifically references EXPR *thirteen different times* throughout the Report as a Meme Stock in relation to its trading in January and February 2021. And while the government claims it will limit its evidence to 54 "Trial Episodes" (Opp. at 6–7), the exhibits in its exhibit list relate to 60

additional tickers outside those 54 "Trial Episodes," including exhibits referencing AMC and EXPR.

Take, for example, government exhibit 75,[4] which purports to reflect a conversation between two of the Defendants in which they discuss Constantinescu's trading of Meme Stock EXPR on January 25, 2021:

| Timestamp | Username | Message |
|---|---|---|
| 01/25/2021 04:28:47 PM | @MrZackMorris | I sold expr around 4 but I regret it |
| 01/25/2021 04:28:58 PM | @MrZackMorris | It has more juice |
| 01/25/2021 04:29:08 PM | @MrZackMorris | But I don't buy back |
| 01/25/2021 04:29:27 PM | 1243184378219573249 | I rarely ever buy back. |
| 01/25/2021 04:29:41 PM | @LadeBackk | Samesies |
| 01/25/2021 04:29:46 PM | @LadeBackk | Good shit dude |
| 01/25/2021 04:29:47 PM | @MrZackMorris | Why risk it |
| 01/25/2021 04:29:49 PM | @LadeBackk | Congrats zack |
| 01/25/2021 04:30:01 PM | @LadeBackk | Not worth it |
| 01/25/2021 04:30:09 PM | @MrZackMorris | Thanks man |
| 01/25/2021 04:30:10 PM | @LadeBackk | Why rob the same bank twice |
| 01/25/2021 04:30:15 PM | @LadeBackk | 😊 |

DOJ-TWITTER-0000000001_Reprocessed

GOVERNMENT EXHIBIT 75 4:22-cr-612

By the government's own admission, it has not asked the SEC or FINRA to search for any *Brady* material related to EXPR because EXPR is not included on the government's list of purported "Trial Episodes." And in its opposition the government asserts: "The United States . . . is not putting at issue any trading outside the stocks or time periods in the Trial Episodes." (Opp. at 7). But its exhibits (received January 19, 2024) include evidence about stocks in the Congressional and SEC Meme Stock reports. The materials in the possession of the SEC concluding that EXPR experienced price and volume volatility as a result of several complex factors not as a result of

---

[4] Constantinescu has highlighted the first text line of the exhibit to emphasize the explicit reference to "expr," a Meme Stock which the government did not list in its 54 "Trial Episodes" yet seeks to make part of its case at trial.

securities fraud by Constantinescu will help the jury make determinations about his lack of criminal intent and the materiality of any statements he made.

>   II.  **That Constantinescu earned nearly all of the money at issue in Count 1, which alleges a $114 million conspiracy, trading meme stocks and gained nearly all of his twitter followers the same way, is relevant to the element of intent.**

To avoid its *Brady* obligations, the government's opposition suggests the Court may strike its fabricated, baseless headline-grabbing $114 million profit calculation. (*See* Opp. at 8 (acknowledging that "the law is clear" that the $114 million allegation may be considered "surplusage" that "may generally be disregarded")). The government also concedes (as it has done in multiple filings after Constantinescu's initial SEC *Brady* motion) that it will not attempt to show Defendants committed "pump and dumps" or otherwise argue that they caused the price or volume movement of any stocks.

But even if the $114 million amount is struck from the Superseding Indictment and the government does not argue causation, that does not absolve the government of its *Brady* obligations to obtain exculpatory materials in the possession of the SEC related to Meme Stocks. Constantinescu's actions and intent are tied to his trading of Meme Stocks and tweeting memes. For example, the government seeks to introduce demonstratives and elicit expert testimony that the following tweet was "false" and "defrauded" "his followers" when he tweeted about ACST a few hours after he purchased shares:



When evaluating whether this constitutes "securities fraud"—and specifically Constantinescu's intent and the materiality of the tweet—the jury is entitled to hear evidence in the SEC's (and FINRA's) possession that meme tweets like this were part of a broader social, cultural, economic, and political landscape where multiple factors converged causing retail investors to buy and sell these stocks (as opposed to this tweet of Zack Morris kissing Lisa Turtle liked by 25 people on twitter).

### III. The government's requests of the SEC and FINRA have been inadequate.

The government's request for the SEC's investigative file and FINRA's investigative conclusions about a limited subset of stock tickers does not satisfy the September 12 *Brady* Order. (Opp. at 1–2). Consider the following example. While the government failed to seek and obtain *all Brady* material in FINRA's possession, it did request and obtain dozens of investigation outcome summaries *directly* undermining the government's allegations in the

Superseding Indictment. Thus, for example, in direct contrast to the Superseding Indictment's allegations that Constantinescu committed a pump and dump of Meme Stock CNTX, FINRA concluded: "No unusual price/volume activity during review period. CNTX just had its IPO."

[FINRA summary report for CNTX (Context Therapeutics Inc. Common Stock), showing break date 11/02/2021, closure reason including "Limited Market Reaction, No unusual price/volume activity prior to news, Previous news, Other (see break comments)", current owner Kirwan, Jacqueline – Insider Trading. Break Comments: "No further review. On 11/2/21, CNTX closed up $0.39, or just 7%, at $5.98 after the company announced the appointment of a new CFO and CLO. The press release mentioned their role in a previous merger and SONAR incorrectly marked this break as a merger event. Reviewed price/volume information and relevant news. No unusual price/volume activity during review period. CNTX just had its IPO on 10/29/21. No OTC LOPR positions were reported during the review period." Followed by price and volume graph data table.]

Yet as the government concedes, it did not search for *Brady* material. Rather its only efforts "involved the United States collecting and producing the SEC Investigative Team's Investigative File." (Opp. at 2). That's not what the Court ordered. The Court ordered the government to review materials in the possession of the SEC for exculpatory and impeachment materials, which include materials underlying the conspiracy charge, evidence relevant to the intent element, and evidence relevant to materiality.[5]

---

[5] While Constantinescu pointed out two categories of materials likely to contain exculpatory evidence in the SEC's possession, those were two examples of many described in correspondence with the government. The Court should disregard the government's representation that Constantinescu is only seeking two categories of information, (Opp. at 2), and reject the government's efforts to shift its burden onto Constantinescu to identify specific *Brady* material. Even though it is not Constantinescu's obligation to identify *Brady* material, he has strong reason to believe the SEC possesses additional exculpatory material not just as relates to Bernot but other individuals who have been in contact or have been contacted by the SEC. As to Bernot, for example, the government has produced email communications involving Bernot's attorneys and the DOJ, but it does not appear to have produced all such communications between his attorneys and the SEC.

## CONCLUSION

For these reasons set forth herein as well as those the opening brief, Constantinescu respectfully requests that the Court grant a continuance and hold the government in contempt for failing to produce *Brady* material in its possession.

Dated: January 30, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

By: _____
Matthew A. Ford
Texas Bar No. 24119390
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Tel.: (512) 503-6388
Fax: (212) 256-1047
mford@fordobrien.com

Jamie Hoxie Solano
Admitted *pro hac vice*
Stephen R. Halpin III
S.D. Tex. Bar No. NY5944749
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 858-0040
Fax: (212) 256-1047
jsolano@fordobrien.com
shalpin@fordobrien.com

*Attorneys for Defendant*
*Edward Constantinescu*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.


Dated: January 30, 2024

                                                      /s/ Matthew A. Ford
                                                      Matthew A. Ford