IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | |
|---|---|
| v. | No. 4:22-CR-00612-S |
| **EDWARD CONSTANTINESCU,** **PERRY "PJ" MATLOCK,** **JOHN RYBARCZYK,** **GARY DEEL,** **STEFAN HRVATIN,** **TOM COOPERMAN,** **MITCHELL HENNESSEY,** **DANIEL KNIGHT.** | |

**DEFENDANT EDWARD CONSTANTINESCU'S
MOTION *IN LIMINE* TO EXCLUDE EXTRANEOUS MATERIAL
UNDER RULE 403 AND RULE 404(B)**

Defendant Edward Constantinescu, joined by defendants Matlock, Rybarczyk, Deel, Hrvatin, Cooperman, and Hennessey, respectfully moves *in limine* to exclude Government Exhibits 21-55 and exhibits referencing other uncharged stocks under Rules 403 and 404(b). Permitting the government to introduce these exhibits at trial would unnecessarily extend an already lengthy trial by more than twice as long as necessary to introduce and rebut the government's unduly prejudicial and irrelevant evidence. In support of this motion, Constantinescu submits the following:

*Relevant Background of the Government's Case*

1. Seven defendants are proceeding to trial on allegations that they posted information free to the public about stocks for companies they found interesting. The seven defendants are charged with one conspiracy count and are each charged with different substantive counts, collectively totaling 19 substantive counts.

1

2. Last year, the government filed a notice that it intended to admit certain evidence under Rule 404(b) (the "Notice"). The Notice stated that the government intended to introduce "Defendants' conduct underlying [certain] tickers and time periods," which included 397 stock trading episodes. These 397 episodes included the stocks that are reflected in Government Exhibits 21-55 (the "Extra Stock Exhibits") and other stocks mixed throughout Government Exhibits 56-377 (the "Conspiracy Exhibits"). The government represented in its filing that the trading of all 397 stocks was "inextricably intertwined" with the 19 charged episodes and the conspiracy count. The Notice listed several types of evidence that the government sought to introduce, including "Defendants' trading and social media records, private text and direct message conversations, audio recordings, and witness testimony of percipient witnesses and co-conspirators." Notice at ECF 319 at 2-3. The Notice also stated that the 397 stock trading periods were admissible under Rule 404(b). The Notice did not attempt to explain how or why any of the 397 stock trading periods were appropriately admitted for a non-propensity purpose, but instead summarily tracked the language of Federal Rule of Evidence 404(b).

3. On September 12, 2023, this Court ruled that the government was required to seek and produce *Brady* material from the SEC (and FINRA) related to defendants and their trading of stock, including materials related to Constantinescu's profits of tens of millions of dollars from trading meme stocks in 2020–22. In response, the government did not change its twenty indicted counts to narrow the scope of the Court's ruling. The government nonetheless took the position that it would not seek *Brady* material regarding some of the "inextricably intertwined" stocks because it said it would not introduce evidence of those stocks at trial. To date, the government has not sought or produced *Brady* material for those stock transactions, notwithstanding that the government has not changed its Indictment in any way.

4. On January 19, 2024, the government first produced its trial exhibits, including the Extra Stock Exhibits and the Conspiracy Exhibits. These exhibits include, among other things, charts that appear to be created by DOJ personnel, hearsay posts from random people on Twitter, and excerpts of messages between one or more defendants and other people who have never been alleged to be a part of this purported criminal conspiracy who are not identified and do not appear on the government's witness list. The government has not identified in its Extra Stock Exhibits or its Conspiracy Exhibits which exhibits it believes are properly introduced under Rule 404(b) (as opposed to evidence that is directly relevant to its charged conduct) or what non-propensity purpose for which any of those exhibits may be properly admitted.

*The Government Should Be Precluded From Arguing That These Exhibits are Intrinsic in Light of Its Position on Its Brady Obligations*

5. The government should be precluded from taking the position that any of the 397 stocks that are not the 19 stocks listed in the charged counts are intrinsic because the government has made clear that it has not extended its *Brady* obligations to the stocks that it previously told this Court were inextricably intertwined (that is, could not be removed from) the 20 charged counts. The government's about-face in its position that these stocks should now be considered in isolation, and that the government does not intend to seek or produce *Brady* material for stocks during the charged conspiracy time period, is inconsistent with its prior representation that these stocks are all intertwined.

6. Additionally, the government has not made the requisite showing that any of the Extra Stock Exhibits or its Conspiracy Exhibits are intertwined with any of the charged stock conduct—merely labeling it as such is insufficient.

*The Government Has Not Proven That the Extra Stock Exhibits or the Conspiracy Exhibits Reflect "Bad Acts" Nor Does the Notice Articulate Any Proper 404(b) Purpose for Admission*

7. The Extra Stock Exhibits and the additional stocks referenced in the Conspiracy Exhibits are plain propensity evidence designed to confuse and mislead the jury. The Fifth Circuit has made clear that "Rule 404(b) is designed to guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007) (quoting *United States v. Ridlehuber,* 11 F.3d 516, 521 (5th Cir.1993)). "'This danger is particularly great where ... the extrinsic activity was not the subject of a conviction; the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.'" *Id.*

8. Much of the government's proffered trial evidence beyond the charged 19 stocks includes discussion or trading activity about *stock trading* in general, but the government has completely failed to make the requisite showing, as it must, that any of this evidence pertained to *illegal* stock trading, that is, a bad act. Under Rule 104(b) and *United States v. Gutierrez-Mendez*, none of this evidence may be admitted because no proper purpose has been established. "Under Rule 104(b), evidence is admissible only if there is evidence sufficient to support a finding that the alleged conduct actually occurred." *United States v. Gutierrez-Mendez*, 752 F.3d 418, 424 (5th Cir. 2014) (finding error where the government introduced evidence purportedly under Rule 404(b) but failed to establish that the purported bad act even occurred); *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist.").

9. The government's attempted inclusion of the Extra Stock Exhibits and the Conspiracy Exhibits will require the government to establish prior to their admission, for each of

the extra episodes, that each defendant actually did engage in a "bad act." It is unclear how and when the government intends to make this showing, as those facts are absent from the government's exhibits and will take considerable time given the government's attempt to include 35 additional stock episodes as "additional bad acts" in order to actually prove the charged 19 stock periods.

10. For example, Government Exhibit 47A, one of the Extra Stock Exhibits, is a 26-page created document involving KAVL, a stock that does not appear in the Indictment. Both Constantinescu and Matlock are listed in this exhibit with other defendants as if they all conspired together to conduct illegal activity. This makes no sense; Constantinescu did not post a single tweet or discord message about this stock during the time period, and the exhibit does not reflect that Constantinescu otherwise communicated with anyone about this stock, let alone entered an agreement with others to commit securities fraud. Matlock posted one message about this stock (in a list with several other stocks), *which is not alleged to be false or misleading at all*, and he did not trade any shares of this stock during the time period. In other words, this exhibit is *misleading* because it suggests that Constantinescu and Matlock are a part of a larger conspiracy *based on purely benign, legal conduct*, trading a stock through *bona fide* free market transactions at prevailing market rates without ever even talking about it. Despite their inclusion, it does not show a bad act and does not make any of the charged counts against Constantinescu or Matlock any more likely than not. It appears that its inclusion, like three quarters of the stocks that do not appear in the Indictment (Constantinescu tweeted about only 14 of 54), serves solely to inflate the profit alleged and create an illusion of conspiracy where none existed.

11. Moreover, several of the Extra Stock Exhibits involve only a single defendant trading that particular stock—a stock for which he is not actually charged. This type of evidence is not probative of anything other than propensity, which is plainly inappropriate.

12. The government has not established that it can prove that its Extra Stock Exhibits reflect "bad acts" by the defendants, and it has not properly provided notice for each proposed exhibit of a valid, non-propensity purpose for each exhibit's admission. If these exhibits were to be admitted at trial, the government's failure to properly designate (i) which exhibits are extrinsic and (ii) what proper purpose each serves would render the trial record completely incomprehensible. The jury must be instructed that they are only to consider 404(b) evidence for limited, prescribed purposes. The government's failure to identity any of this makes it virtually certain that the jury cannot be properly instructed on how they should consider this evidence.

*Any Probative Value in the Extra Stock Exhibits and Extra Stocks in the Conspiracy Exhibits is Outweighed by Undue Prejudice in Their Admission*

13. There is no proper probative value to the Extra Stock Exhibits beyond an improper propensity purpose. The government has already conceded that it does not need any of this evidence to prove its conspiracy charge—it has boasted that it could prove its conspiracy charge with "[a] single communication." Gov. Filing at ECF 502. (Of course, no such communication exists, which is why the government is trying to confuse the jury by introducing 54 stock episodes to cobble together an illusory conspiracy).

14. The likelihood of undue prejudice from introducing this extraneous evidence is overwhelming. The government has marked these exhibits in the exact same way as the evidence for its substantive counts. The subject matter of this data is complex and there is an extremely high likelihood that the jury will be confused that evidence of completely legal trading activity and posting on social media is actually a "bad act" upon which they should convict the

defendants. The jury is already going to be asked to keep track of 19 different stock transactions at different times involving various configurations of seven different defendants, and where Constantinescu, for example, only ever tweeted about five of the 19. To suggest to the jury that they need to also consider *more unrelated stocks* that Constantinescu never traded nor talked about is asking far too much.

15. Further, because the government is attempting to swallow their case with evidence of these extraneous acts—introducing three times *more* than what they hope to establish to sustain their charges—there is an almost certainty that the jury will be confused and misled. Indeed, the government here seems to be itself confused. A securities fraud charge under 18 U.S.C. § 1348 (and a derivative conspiracy charge under § 1349) requires the scheme to defraud or to obtain money and property be "in connection with" the purchase or sale of a *specific registered security*. 18 U.S.C. § 1348 ("in connection with the purchase or sale of . . . any security of an issuer with a class of securities registered under section 12…or that is required to file reports under section 15(d).").

*Whether Intrinsic or Extrinsic, the Extra Stock Evidence Should Be Excluded Outright Under Rule 403 Because It is Cumulative, a Waste of Time, and Will Delay an Already Long Trial*

16. This Court should exclude the Extra Stock Exhibits under Rule 403 because any relevance they may have is dwarfed by the evidence's cumulative nature, its potential to confuse and mislead the jury, and unnecessary delay. If the government is permitted to introduce the uncharged Extra Stock Exhibits, it will be introducing to the jury that certain groups of defendants, or even just one defendant, engaged in conduct involving different stocks for 54 different time periods. Some of these exhibits the government intends to introduce are incredibly lengthy—for example, a single exhibit comprised of 70+ pages, much of which is often misleading and/or incorrect. While the government has tried to say that it does not intend to

actually go through this proof with the jury (essentially conceding that it hopes it is only considered as propensity evidence), the defendants *must* be given the opportunity to rebut the government's proof if it is entered into evidence. Even if all seven defendants were able to address one purported stock episode per trial day (something that is highly unlikely in a securities fraud case even when a single defendant is involved), that would take close to *three months of trial days merely to address these created charts*. And, as discussed above, there is no question that permitting the government to flood the jury's mind with uncharged conduct will mislead and confuse them when, months later, they are asked to determine whether the government has proven the *charged* conduct. Accordingly, the Court should exclude the Extra Stock Exhibits in their entirety under Rule 403.

Dated: February 9, 2024

Respectfully submitted,

*/s/ Jamie H. Solano*
Matthew A. Ford
Texas Bar No. 24119390
mford@fordobrien.com
Jamie Hoxie Solano
Admitted Pro Hac Vice
jsolano@fordobrien.com
Stephen Halpin
shalpin@fordobrien.com
S.D. Tex. Bar No. NY5944749
FORD O'BRIEN LANDY, LLP
3700 Ranch Road 620 South, Suite B
Austin, Texas 78738
Telephone: (512) 503-6388
Facsimile: (212) 256-1047

Attorneys for Defendant
Edward Constantinescu

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

*/s/ Jamie H. Solano*
Jamie H. Solano
