IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD CONSTANTINESCU,<br>PERRY "PJ" MATLOCK,<br>JOHN RYBARCZYK,<br>GARY DEEL,<br>STEFAN HRVATIN,<br>TOM COOPERMAN,<br>MITCHELL HENNESSEY,<br>DANIEL KNIGHT. | No. 4:22-CR-00612-S |

**DEFENDANT EDWARD CONSTANTINESCU'S MOTION *IN LIMINE* TO EXCLUDE IRRELEVANT, HIGHLY PREJUDICIAL, MISLEADING, AND/OR CONFUSING EXHIBITS UNDER RULES 401 AND 403**

Defendant Edward Constantinescu moves *in limine* and respectfully requests that the Court order the government not to mention, refer to, or attempt to elicit in any manner, evidence that should be excluded under Rule 401 and 403 of the Federal Rules of Evidence. Several of the government's proposed exhibits have no probative value under Rule 401, and for several exhibits that may have some probative value, that value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.

**ARGUMENT**

1. **The Court should exclude GX 176, a video Constantinescu filmed while riding a scooter and uploaded to Twitter on April 19, 2022 ("the scooter video"), because it has minimal probative value and significant danger of causing unfair prejudice to Constantinescu.**

In the scooter video, Constantinescu jokes to the camera in part: "if you're not cruising on a fat bike, not making a $100,000, I don't know what . . . you're doing with your life.

1

Evaluate it, change some things around, maybe get rid of your wife, your kids, or whatever's holding you back."[1] Constantinescu continues: "A lot of people are looking at me and they're like, damn, that dude is so cool. And do I blame them? No, because I am pretty f*cking cool."

There is no reference in the scooter video to any stock or explicit reference to stock trading, no mention of any other Defendant, and no request that viewers follow him on social media. The only stock trading alleged as to Constantinescu that purportedly occurred around the time of the scooter video is in BBI between April 13, 2022 and April 22, 2022. But again, neither this stock—nor any other stock—is mentioned in the video. The exhibit should be excluded under Rule 401 because it does not make "more or less probable" any "fact . . . of consequence in determining the action." *See* Fed. R. Evid. 401.

More significant, any probative value the scooter video may possess is substantially outweighed by the danger that it will unfairly inflame the jury's prejudice against Constantinescu by making him look arrogant for jokingly making comments that many jurors would find personally distasteful, including that leaving one's wife and making $100,000 a day likely leads to a better life.

Playing the video is likely to elicit from a jury a nonevidentiary, emotionally charged response that is not a proper basis on which to find liability. *See Wright v. C.R. Bard, Inc.*, No. 3:19-CV-2176-S, 2021 WL 11458271, at *1 (N.D. Tex. May 24, 2021) ("[T]he Court finds that the probative value of the Emails is substantially outweighed by the high danger of unfair prejudice—notably, the risk of inflaming and invoking a purely emotional response from the jury." (citations omitted)); Fed. R. Evid. 403, adv. comm. n. ("'Unfair prejudice' within its

---

[1] The "marked" GX 176 provided by the government includes the incorrect audio for the scooter video. The correct audio appears to be included in the separate file titled "GX 176.D.mp4."

context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). In light of the minimal probative value, if any, of the scooter video, the high risk of unfair prejudice counsels in favor of exclusion at trial.

2. **The Court should exclude various inflammatory pictures and comments concerning the Defendants because they have minimal probative value and pose a significant risk of unfair prejudice, confusing the issues, and/or misleading the jury.**

Several of the government's exhibits should be excluded for danger of unfair prejudice, confusing the issues, and/or misleading the jury. For example, aspects of GX 1 are ostensibly relevant to show the Defendants know one another, but the pictures included to demonstrate that association (which can be readily shown by other evidence) include irrelevant, highly prejudicial material that is also likely to mislead or confuse:





Three of the above pictures refer to the "SEC": "The sec finally got me," "Sec's most wanted," and "When the SEC finally arrests this MF . . ." And a fourth refers to "2 of America's most wanted . . ." Several of these pictures are duplicated as separate standalone exhibits. *See* GX 166 ("2 of america's most wanted"); GX 175 ("sec finally got me"); GX 178 ("sec's most wanted").

*First*, these posts are jokes, but out of context they are highly prejudicial and likely to unfairly inflame the jury's passions. Constantinescu cultivated a social-media following based in part on popular-culture references, successful meme-stock trading, comradery with other "retail investors" not backed by massive banks or other financial institutions, and by poking fun at what many view in this country as big government incompetence and overreach, including the SEC's well-documented abusive and unlawful practices. *See, e.g.*, Law360, *SEC to Drop Box Suit for Now, Amid Sanctions Threat* (Jan. 30, 2024), https://www.law360.com/articles/1791879/sec-to-drop-debt-box-suit-for-now-amid-sanctions-threat (last visited Feb. 9, 2024).

In that context, the post of Constantinescu on a beach with an ATV surrounded by armed members of the Mexican border patrol, flashing a smile and thumbs up with the caption "The sec

finally got me" is joke. The same is true of a smile and shirtless thumbs up by a pool with the caption "Sec's most wanted." (The picture of Defendant Cooperman in a cage posted by Defendant Deel with the caption "When the SEC finally arrests this MF . . ." falls into the same category.) These are the kinds of posts that any objective follower of Constantinescu on social media would recognize as jokes, but for the jury the risk of unfair prejudice substantially outweighs any probative value. *See* Tr. of Conf. at 10–11, *United States v. Hayes*, No. 1:20-cr-00500 (S.D.N.Y. Jan. 27, 2022) (excluding statement by defendant where he "spoke in a plainly jocular fashion about the small cost of bribing an official in the Seychelles") [ECF No. 251]; *see also United States v. Ferguson*, 246 F.R.D. 107, 121 (D. Conn. 2007) (excluding "sarcastic . . . comments . . . . too general to be probative of any particular fact at issue in this case, and [whose] admission at trial would risk unduly prejudicing [defendant] Milton").

Similarly, the caption "2 of America's most wanted" accompanying hand gestures does not reflect consciousness of guilt but is an allusion to a rap song that, although popular and well known in some corners of society, would be unfamiliar to many jurors. *See* 2Pac ft. Snoop Dogg – 2 Of Amerikaz Most Wanted (Official Music Video), https://www.youtube.com/watch?app=desktop&v=5V7u672xw4g (last accessed Feb. 9, 2024). Rap songs, videos, and lyrics are routinely excluded under Rule 403 given the inherently hyperbolic nature of many of the themes associated with such music. *See, e.g.*, *United States v. Williams*, 663 F. Supp. 3d 1085, 1133 (D. Ariz. 2023) (collecting cases and observing that "[a]ll courts recognize that a significant concern with the admission of gangsta rap music at trial is that the lyrics present a serious risk of inflaming the jurors and influencing them to convict a defendant on impermissible grounds").

*Second*, the SEC is not a formal party to this criminal action and has no independent criminal enforcement power, facts that are likely not known to prospective jurors. Throughout this case the government has insisted that the United States is separate from the SEC, even going so far as to refuse to comply with the Court's orders requiring the government to request and obtain *Brady* material from the SEC pursuant to a joint investigation.

But now the government wants to inject references to the SEC into its case in chief, indeed in its very first exhibit. The above references to the SEC have minimal, if any, probative value. (Two of the posts—from May 1, 2022, and June 27, 2022—are outside the relevant time period alleged in the Superseding Indictment). Jurors may associate the SEC in a broad sense with the regulation of the stock market, and they would likely be confused by references to the SEC when it is not a party to the action and it would be inappropriate to inform jurors that a separate SEC action has been filed and remains pending. *See Torbov v. Cenlar FSB*, 744 F. App'x 503, 504 (9th Cir. 2018) (unpublished) (affirming exclusion of "documents related to out-of-state proceedings against a non-party foreclosure agent because the 'probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury. . . ." (quoting Fed. R. Evid. 403)).

Similar to the above examples—which the government would like the jury to believe reflect consciousness of criminal activity but really are nothing more jokes—the Court should exclude GX 75 because it is highly prejudicial and/or likely to mislead or confuse:



In particular, the comment by Defendant Hrvatin "Why rob the same bank twice" is highly prejudicial and inflammatory as presented in GX 75. Hrvatin is referring to Constantinescu making $3 million on the meme stock EXPR.

The comment is a known colloquialism, but nevertheless has the potential to inflame or otherwise confuse the jury. This would be especially true if, as Constantinescu anticipates, the government attempted to use this reference to "rob" a "bank" in connection with a recording by Defendant and government witness Dan Knight where Knight references "robbing f*cking idiots of their money." There is nothing about the government's allegations of securities fraud conducted online through social media and in transactions on the open market that resembles "robbery." Whatever the probative value of Hrvatin commenting "Why rob the same bank twice" in reference to Constantinescu making money on a meme stock, it is substantially outweighed by the danger of confusing and prejudicially inflaming the jury. *Cf. Lagan v. Windle*, No. 2:19-CV-

7

00050, 2020 WL 2494457, at *2 (M.D. Tenn. May 13, 2020) (calling someone an "'Irish gangster' and 'thief' [constitutes] the classic type of 'loose, figurative or hyperbolic' language protected by the First Amendment").

> **3. The Court should exclude references to Constantinescu's wealth and how much money he made while trading stocks.**

Tweets by Constantinescu displaying his wealth (watches, cars, screenshots of Profit/Loss over one million dollars) are unduly prejudicial and offer minimal probative value. *See, e.g.*, GX 161: Edward Constantinescu: Tweet (5/22/2021); GX 162: Edward Constantinescu: Tweet (5/27/2021); GX 163: Edward Constantinescu: Tweet (6/2/2021); GX 169: Edward Constantinescu: Tweet (10/15/2021); GX 171: Edward Constantinescu: Tweet (12/9/2021); GX 172: Edward Constantinescu: Tweet (12/30/2021).

As with other exhibits discussed above, this evidence is designed to elicit a negative emotional response from the jury that has little to do with the underlying charges the government must prove and instead seeks to pit jurors against Constantinescu based on the notion that people who arrogantly brag about having nice things deserve to be punished. Such evidence is improper and should be excluded. *See SEC v. Goldstone*, No. CIV 12-0257 JB/GBW, 2016 WL 3654273, at *12, *17 (D.N.M. June 13, 2016) (refusing to admit evidence of "wealth" and excluding certain "income-related evidence" in securities-fraud action); *see also United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 239 (1940) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."). After all, the government abandoned at least $60 million of its $114 million profits allegation in a concession that Constantinescu made that money lawfully trading meme stocks.

### 4. The Court should exclude references to trading activity in stocks and time periods outside the Superseding Indictment and that the government previously conceded it would not introduce into evidence.

For example, the messages depicted in GX 89, GX 90, and GX 91 purport to show private messages exchanged between Constantinescu and Mr. Rybarczyk on the platform Discord regarding trading in stocks SGBX, CTIB, and ACAM, respectively. None of these stocks is listed in the Superseding Indictment, whether among the 19 stocks referenced therein or the five stocks found in the substantive charges brought against Constantinescu. These exhibits are irrelevant under Rule 401.

Furthermore, although the outer bounds of the government's trial presentation should be drawn at the 19 stocks in the Superseding Indictment and Defendants vigorously dispute that the government should be permitted to introduce evidence of additional "episodes," it is also worth noting that none of these three stocks in GX 89, GX 90, and GX 91 is listed among the broader 54 "Trial Episodes" to which the government has claimed to have narrowed its case. *See* United States' List of Trial Episodes [ECF No. 424-1]. According to the government's own prior representations, trading in these stocks is thus irrelevant. *See* United States' Resp. in Opp. to Def. Rybarczyk's Mot. to Exclude at 10 ("The trading at issue is only that alleged to be fraudulent, *i.e.*, the trading in the stocks in the time periods of the 54 at-issue trial episodes.") [ECF No. 424]; United States' Resp. in Opp. to Def. Constantinescu's Mot. to Continue at 2 n.2 ("[T]he Trial Episodes are the 54 alleged executions of Defendants' scheme the United States plans to present at trial.") [ECF No. 502]; *id.* at 2 (characterizing Defendants' requests for *Brady* material for all 397 stocks that form the basis of the charges against Defendants as "information about trading in stock tickers and/or time periods that is irrelevant to the Trial Episodes—the only stock trading at issue for trial").

Finally, by its own admission, the government has not sought to identify or produce *Brady* material regarding the stocks and/or time periods reflected in exhibits such as GX 89, GX 90, GX 91, GX 335, and GX 336. *See generally* United States' Reply to Def. Constantinescu's Resp. to the Sept. 12, 2023 Notice at 1–4 (explaining that requests to the SEC and FINRA for *Brady* material were limited to the 54 "Trial Episodes"). This is another that such evidence should be excluded.

## CONCLUSION

For all the foregoing reasons, Constantinescu's respectfully requests that the Court exclude from trial irrelevant, highly prejudicial proposed exhibits from the government that are likely to mislead, confuse, and/or otherwise inflame the jury.

Dated: February 9, 2024

Respectfully submitted,

FORD O'BRIEN LANDY LLP

By:  */s/ Matthew A. Ford*
    Matthew A. Ford
    Texas Bar No. 24119390
    3700 Ranch Road 620 South, Suite B
    Austin, Texas 78738
    Tel.: (512) 503-6388
    Fax: (212) 256-1047
    mford@fordobrien.com

Jamie Hoxie Solano
Admitted *pro hac vice*
Stephen R. Halpin III
S.D. Tex. Bar No. NY5944749
275 Madison Avenue, 24th Floor
New York, NY 10016
Tel.: (212) 858-0040
Fax: (212) 256-1047
jsolano@fordobrien.com
shalpin@fordobrien.com

*Attorneys for Defendant
Edward Constantinescu*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

Dated: February 9, 2024

*/s/ Matthew A. Ford*
Matthew A. Ford
