UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | NO. 4:22-cr-00612-3 |
| § | |
| JOHN RYBARCZYK § | |

**RYBARCZYK'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO COMPEL THE NAMES OF CERTAIN INDIVIDUALS AT FINRA**

TO THE HONORABLE ANDREW HANEN, UNITED STATES DISTRICT JUDGE:

Defendant, JOHN RYBARCZYK ("Rybarczyk"), replies to the *United States' Response in Opposition to Defendants Motion to Compel* (ECF No. 559) as follows:

### I. INTRODUCTION

The Government, ordered to produce *Brady* materials from FINRA,[1] now impedes Rybarczyk's ability to use this exculpatory evidence (records and the absence of records) by suppressing the name of a witness through which Rybarczyk can offer it. *See* Fed. R. Evid. 803(6), (7), (8), and (10). The Government argues it need not disclose the name because the records are inadmissible. That objection is *premature.* Only after the unidentified witness's testimony would an objection be appropriate. *See Id.* at 803(6)(E) et al. Rybarczyk's ability to lay the predicate for admissibility should not be handicapped by Government suppression of the witness's name. The Government has designated a different FINRA employee as a prosecution expert witness to testify on matters which will likely give the jury a *misleading* impression about FINRA's surveillance and investigations of the "trial episodes." The Government should not be allowed to use FINRA

---

[1] ECF No. 414.

1

as both a sword and a shield. The Court should order the disclosure of the relevant names and rule on admissibility at the time of trial.

## II. ARGUMENT

In challenging the admissibility of the FINRA SONAR records, the Government selectively attacks the hearsay exceptions relied upon by Rybarczyk. The Government ignores the "Records of a Regularly Conducted Activity" and "Absence of a Record of Regularly Conducted Activity" hearsay exceptions at 803(6) and (7), instead focusing on 803(8). The *Response* (ECF No. 559) omits any discussion of the touchstone of all hearsay exceptions, trustworthiness. The Government never alleges that the SONAR reports (or their absence) are not trustworthy. Neither that word nor reliability or their variations are anywhere in the seven-page response. *See* ECF No. 559. Indeed, it is likely because of the records trustworthiness that the Government wishes to exclude them, even while planning to introduce other testimony from a FINRA employee. As an alternative, the Government asks to admit other FINRA reports, which unlike the SONAR system records, are *not* subject to any hearsay exception and would violate Defendants' 6th Amendment Confrontation Clause rights. That is not how the rules of evidence work.

**A.    FINRA'S SONAR Reports (or their Absence) Are Admissible as Records of Regularly Conducted Activity under Rules 803(6) and (7)**

FINRA's SONAR system is the red-light camera of the stock market. As described in Rybarczyk's motion, "SONAR monitors "every transaction that takes place in both equities and options markets," and looks for everything "from suspiciously well-timed trades ahead of a corporate announcement to huge jumps in trading activity on penny stocks." *See Motion* ECF No. 534 at p. 2 and Ex. B and C. Rybarczyk anticipates offering FINRA records (or their absence) under Rules 803(6), (7), (8) or (10). To do so, Rybarczyk needs the name of the custodian to lay the foundation for their admissibility. The Government refuses to provide it and Rybarczyk has no

2

other way to discover it. It is chutzpah to claim that the records do not qualify under those exceptions while simultaneously denying Rybarczyk access to the witness who can testify that they do.

If the witness were named, Rybarczyk anticipates that he would be able to offer sufficient proof through their testimony that the SONAR records or their absence satisfy the elements of the hearsay exceptions at 803(6) and (7). Indeed, given that the SONAR records are the direct output of a FINRA technology that evaluates *every* market trade *every* day, there can be little doubt that these records are contemporaneous records made in the course of FINRA's regular business activity as a market regulator. After the custodian testifies, the Government can make its objections. *See* Fed. R. Evid. 803(6)(E), (7)(C), and (8)(B). The basis for any such objection would be that the predicate has not been laid or the records are not trustworthy. The first type of objection is premature and the second has not been made.

The "'primary emphasis of rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced.'" *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (quoting *United States v. Veytia-Bravo*, 603 F.2d 1187, 1189 (5th Cir.1979)). The Government has *not* attacked the reliability or trustworthiness of the FINRA SONAR reports. It is difficult to imagine how the prosecution can do so prior to the testimony of a sponsoring witness (they name of which it refuses to provide) or without undermining the credibility of its own FINRA witness, Peter Melley. Even then, any objection should go to the weight rather than the admissibility of these records. These records (or their absence) are also admissible *against* the government under the hearsay exceptions at Rules 803 (8) and (10).

**B.    The Public Report Hearsay Exceptions at Rules 803(8) and (10) Inure Solely to Defendants' Benefit, Not the Prosecution's – To Hold Otherwise Would Violate the Confrontation Clause of the 6th Amendment**

3

Although the SONAR records are admissible as records of regulatory conducted activity, the Government, in its response, takes issue instead with the public records hearsay exception, and argues that the "Public Records" hearsay exception does not apply to the highly exculpatory SONAR reports, and that if it does, it allows the admission of other FINRA reports that the Government believes are inculpatory. This is wrong on both counts. *Firstly*, the exception clearly supports admission of the records on Rybarczyk's behalf on an alternative basis. *Secondly*, the prosecution ignores the text of Rule 803(8)(A)(ii) which prohibits the use of reports by the Government against the accused. Their admission would also violate the Confrontation Clause. Revealingly, the Government nowhere argues in its *Response* that the SONAR reports "indicate a lack of trustworthiness" as required by 803(8)(B).

"The policy underlying Rule 803(8)(C) is to exclude investigative reports that are untrustworthy." *United States v. O'Keefe,* 426 F.3d 274, 279 (5th Cir. 2005)(interpreting previous version of the rule). The Government has not alleged that the SONAR reports are untrustworthy. Instead, it attacks the reports' conclusions as hearsay. This is ridiculous as the "hearsay exception" at 803(8)(C) by its nature applies to hearsay. No less that the Supreme Court has held that "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." " *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). The Fifth Circuit has held similar reports in similar circumstances in the past admissible, even where the prosecution made a Rule 403 objection similar to the Government's in this case. *See United States v. Gluk,* 831 F.3d 608, 615-616 (5th Cir. 2016)[2] citing *Smith v. Universal Services,*

---

[2] *Gluk* largely forecloses the Government's relevance argument. In that case, the *Defendants* (not the Government) sought to offer SEC documents into evidence to show that the SEC concluded two others at their company were

4

*Inc.*, 454 F.2d 154 (5th Cir. 1972).  However, the hearsay exception at 803(8) is a one-way street. As the rule clearly states, it inures solely to the benefit of the defendant and does *not* allow the admission of certain reports against the accused as the Government now proposes.

Rule 803(8) applies the public reports exception to statements or records when admitted "(iii) "**against the government in a criminal case**," that are "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8) (emphasis added).  In other words, reports can be offered against the Government, *but not by the Government* against Defendants if created in a legally authorized investigation.  It is beyond dispute that the SONAR records were created as part of a legally authorized investigation, given that the SONAR system was created to investigate every market trade that takes place every day.

Conversely, while the the SONAR reports are admissible, the FINRA "Referral Reports"—lengthy investigative reports that cobble together records from various sources and purport to link market activity to various individuals—are inadmissible for these and other reasons. As the *Noria* case cited by the Government's explained, "[t]he public-records exception 'is designed to permit the admission into evidence of public records prepared for purposes independent of specific litigation.'" *United States v. Noria,* 945 F.3d 847, 852 (5th Cir. 2019) quoting *United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985) (citing *United States v. Stone*, 604 F.2d 922, 925 (5th Cir. 1979)).  The factors "likely to cloud the perception of an official" cited by the government relate to litigation preparation, not a routine duty.  *Noria* at 852.

---

responsible but the Government raised a Rule 403 objection.  As the 5th Circuit related "[t]he government worried that the "jury may have [incorrectly] believed that the SEC [was] better positioned to make factual findings"; that is to say that the jury may have been intimidated into blindly adopting the SEC's conclusions when the jury's fair judgment should be the sole determinant of guilt or innocence."  The Court disagreed, reasoning, "the jury is perfectly capable of weighing the evidence contained in the SEC documents against other evidence to the contrary and making an independent decision. Weighing evidence against other evidence is a core function of the jury, and we find no reason to be concerned that a properly instructed jury would improperly defer to the SEC's findings."  *Id.* at 615-616.

The "Referral Reports" at Exhibits 1 and 2 to the Government's *Response* reflect on their face they were created for the purpose of SEC litigation.  Therefore, they are not within the Rule 803(6) hearsay exception for records of regularly conducted activity. Nor are they admissible under the public records exception because this exception applies only to records utilized "against the government" (*see* 803(8)(A)(iii)) and it expressly excludes, in criminal cases, records of matters observed by law enforcement personnel. *See* 803(8)(A)(ii) ("a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel.").

Even more importantly, the admission of the FINRA referral documents without live testimony from the investigators would violate the Defendants' 6th Amendment "Confrontation Clause" rights.  It is remarkable that of the 55 "trial episodes," the government could muster no more than a few FINRA referral reports that are inconclusive at best.  This paltry sum demonstrates the relevance of the admission of the absence of records under both 803(7)(addressed above) and the absence of public reports under 803(10).

Finally, the hearsay exception at Rule 803(10) allows the introduction of the absence of public reports.  Rybarczyk seeks to secure and introduce testimony or a certification of the lack of SONAR reports about most, if not quite all, the "trial episodes." This will demonstrate that FINRA's super-computers, designed to monitor every trade, did not detect anomalous trading for the vast majority of the trading episodes. The Government has *no legitimate basis* under hearsay rules to object to the introduction of the absence of reports.  Even the textual limitations of the use of public records at 803(8) are omitted from 803(10).  If the  relevance of the absence of the reports was not otherwise apparent, the admission of the FINRA SONAR reports (or their absence) is, in part, necessary, to rebut the noticed testimony of FINRA employee, Peter Melley.

**C.     The Government Has Designated a FINRA Employee as an Expert Witness to Bolster the Prosecution with the Imprimatur of FINRA's Investigative Prowess & Expertise**

The Government has noticed its intent to call FINRA employee Peter Mr. Melley as an expert witness, citing his "25 years assisting criminal investigations and prosecutions involving securities-related crimes" and citing his personal comparison of trading data and social media as evidence of guilt – without disclosing FINRA's automated or other systems failed to detect fraud in many of the trial episodes. This is unduly prejudicial as it will unfairly mislead the jury about the outcome of FINRA's systems and investigations in this case.

On June 15, 2023, the Government noticed its intent to call Peter Melley of FINRA as an expert witness. *See* ECF No. 533 at Ex. A (emphasis added). The designation describes him as follows:

> Mr. Melley is Director of the Criminal Prosecution Assistance Group ("CPAG") at the Financial Industry Regulatory Authority ("FINRA"), where he has worked for approximately 25 years assisting criminal investigations and prosecutions involving securities-related crimes. Prior to joining CPAG in 1998, Mr. Melley worked for approximately two years as an Examiner in the Enforcement Department at the National Association of Securities Dealers ("NASD"), which was FINRA's predecessor. In that role, he conducted investigation into the trading and sales practices of FINRA member firms to determine if they followed FINRA rules, SEC regulations, and U.S. securities laws.

The Government, among other matters, states that Mr. Melley, will testify as follows:

> FINRA is the self-regulatory organization for the securities industry, created under the auspices of the SEC. FINRA's main mission is to protect investors and ensure the integrity of the marketplace. **FINRA conducts surveillance across different securities and product platforms, including the New York Stock Exchange ("NYSE") and NASDAQ stock markets.** FINRA also regulates the activities of its members, which include member brokerage firms and registered employees of those firms, and promulgates rules accordingly. FINRA often makes referrals to the SEC and DOJ.
>
> CPAG is a unit of FINRA that assists in criminal investigations and prosecutions involving securities fraud. That assistance may include analyzing various stock and trading records, summarizing that and other information in charts, and, if necessary, testifying to that analysis. CPAG testimony may also include information on

7

general market and trading knowledge, terms, and topics on market integrity and fraudulent or manipulative schemes that disrupt that integrity.

Mr. Melley also reviewed certain of Defendants' social media and trading records and compared those records with the volume and price information obtained for certain of the at-issue stocks. On certain trading days where Defendants posted publicly about the at issue stocks, those stocks have increased trading volume compared to other days the stocks traded when Defendants were not posting about the stocks.

In addition, the United States anticipates that Mr. Melley will provide summary testimony regarding trading in the "at-issue stocks," including their publicly reported trading prices and volumes, their blue sheet data, Defendants' relevant trading and brokerage records, Defendants' relevant social media activity, and certain of the United States disclosures to the defense in this case, all of which have been produced in discovery.

As shown above, the Government intends to tout FINRA's "surveillance" through Melley and also about Defendants trading, and the "'at-issue stocks,' including their publicly reported trading prices and volumes, their blue sheet data…" Melley is not the custodian of SONAR and unlikely to be qualified to testify with any expertise about how it operates or operated in this case. As a result, the records most likely cannot be introduced through Melley. Rybarczyk requires the opportunity to introduce the records through a different witness to both confront and cross-examine Melley but to rebut Melley's testimony, present a defense, and receive effective assistance of counsel pursuant to the 6th Amendment.

## Conclusion

Defendant, JOHN RYBARCZYK, requests that his motion be granted and the Court Order the Government to disclose the name of the individual who conducted the SONAR searches and the custodian of records in sufficient time for their appearance at trial to be secured and other relief that the Court deems appropriate.

Respectfully submitted,

**HILDER & ASSOCIATES, P.C.**

8

/S/ *Q. Tate Williams*
Q. Tate Williams
Texas Bar No.: 24013760
Philip H. Hilder
Texas Bar No. 09620050
Stephanie K. McGuire
Texas Bar No. 11100520
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com


Eric Samuel Rosen
Constantine Economides
Dynamis LLP
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel: (617) 802-9157
erosen@dynamisllp.com

ATTORNEYS FOR RYBARCZYK


## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, a true and correct copy of the above and foregoing was served on all counsel of record via ECF.

/s/ *Q. Tate Williams*
Q. Tate Williams