UNITED STATES OF AMERICA

v.

EDWARD CONSTANTINESCU,
PERRY "PJ" MATLOCK,
JOHN RYBARCZYK,
GARY DEEL,
STEFAN HRVATIN,
TOM COOPERMAN,
MITCHELL HENNESSEY,
DANIEL KNIGHT.

No. 4:22-CR-00612-S

**DEFENDANTS' JOINT OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE
ATTEMPTING TO PREADMIT INADMISSIBLE EVIDENCE AND TO INTERFERE
WITH DEFENDANTS' RIGHT TO PRESENT A COMPLETE DEFENSE**

# TABLE OF CONTENTS

I.  The Government's Motion Seeks to Interfere with Defendants' Right to Present a Complete Defense ............................................................................................................1

II. The Government's Recitation of the Law and Issues Relevant at Trial is Incomplete and Incorrect ........................................................................................................................1

III. The Government's Requests to Bar Presentation of a Complete Defense Should Be Denied ...................................................................................................................................7

    A.  The Defendants Are Not Engaging in Jury Nullification.........................................7

    B.  Evidence of Specific Instances of Good Conduct (Including Evidence That the Defendants Profited From Similar Trading That is Not Alleged to Be Fraudulent) Is Highly Relevant Because Good Conduct Squarely Rebuts Criminal Intent........7

    C.  The Defendants Must Be Able to Cross-Examine Witnesses Testifying Against Them, Including on the Grounds That Their Actions Were Not Reasonable and That They Are Not True Victims of Any Crime......................................................9

    D.  The Defendants Must Be Permitted To Use FINRA's SONAR Reports That Prove Conclusively That No Pump and Dump Occurred .................................................11

    E.  The Government Misunderstands Hearsay, and the Defendants Must Be Permitted to Introduce Admissible Evidence Relevant to Their Intent and Materiality ........15

    F.  The Defendants Must Be Able to Present the Jury with the Total Mix of Information Available In the Market to Determine Materiality and the Defendants' Intent, Including Statements Made Alongside, and Precursors To, Their Messages ...............................................................................................................................16

        i.  Types of Statements ..................................................................................17

        ii. The Communications Should Not Be Excluded on Hearsay Grounds ........18

        iii. The Communications Are Relevant ..........................................................20

    G.  The Fifth Circuit Has Been Clear That Evidence That "Victims" Did Not Lose Money is Probative of an Intent to Defraud, and Evidence That the Defendants Lost Money is Probative of Their Lack of Intent to Defraud and Their Lack of Participation in a Conspiracy ...............................................................................24

    H.  The Government's Request to Preclude Defendants from Pointing Out Its Causation Deficiencies Should be Denied Because It is Relevant to Rebut Much of the Government's Case, Including Materiality and Intent.................................25

I.  The SEC's and Congress's Determinations Regarding Market Volatility During the Time of the Alleged Conspiracy are Relevant ................................................. 27

J.  The Defendants Must Be Permitted to Rebut the Government's Theory That the Defendants Intended to Defraud Social Media Followers Because Defendants' Intent is a Key Element the Government Must Prove ........................................... 28

K.  Defendants Do Not Intend to Argue Selective Prosecution ................................... 28

L.  The Defendants Must Be Permitted to Introduce Evidence and Argument about the Conduct of Uncharged Individuals Because It Squarely Rebuts Criminal Intent ..................................................................................................................... 29

M.  The Defendants Should Not Be Precluded From Arguing that the Defendants Lacked Criminal Intent and That Their Conduct is Not Criminal ......................... 31

N.  The Defendants Should Be Able to Cross-Examine Government Witnesses About Their Investigation (or Lack Thereof) ................................................................. 31

O.  The Government's Uncalled Witnesses Argument is Premature .......................... 32

P.  Defendants Must Be Permitted Wide Latitude in Cross-Examination of the Government's Cooperating Defendants ................................................................. 32

Q.  Cross-Examination on Witnesses Having Impaired Ability to Recollect Events and Other Relevant Drug Use is Appropriate Impeachment ................................ 33

R.  The Defendants Could Raise The Advice of Counsel Defense ............................ 33

S.  The Government Misunderstands What an Alibi Notice or Witness Entails, and The Defendants Are Not Barred From Rebutting the Government's Suggestion That The Defendants Were the Individuals Posting From the Accounts .............. 34

T.  The Government Misreads the Court's August 31, 2023 Order ........................... 35

IV.  The Government's Attempt to Preadmit its Inadmissible Exhibits Wholesale is Inappropriate ...................................................................................................... 36

V.  Defendants' Exhibits are Not Admissible Summary Charts and Having Garibotti Testify About Their Contents Violates the Confrontation Clause .......................... 37

A.  The Government's Exhibits are Not Properly Admitted Under Rule 1006 Because They Do More Than Summarize and Are Inaccurate, Misleading, and Confusing ............................................................................................................. 37

B.  Garibotti's Testimony is Not Appropriate Summary Testimony and Would Violate the Confrontation Clause ..................................................................................42

VI.   The Government Has Failed to Show Its Evidence of Stock Transactions Beyond the 19 Charged Stocks is Appropriate and Will Triple the Length of this Trial and Confuse the Jury ...........................................................................................44

**Cases:**

*Alki Partners, L.P. v. Vatas Holding GmbH,*

769 F. Supp. 2d 478 (S.D.N.Y. 2011) ...............................................................25–26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*

568 U.S. 455 (2013) ........................................................................................4

*Aperia Sols., Inc. v. Evance, Inc.,*

2021 WL 961672 (N.D. Tex. Mar. 15, 2021) .................................................8

*Basic Inc. v. Levinson,*

485 U.S. 224 (1988) ..........................................................................4, 6, 21, 27

*Beech Aircraft Corp. v. Rainey,*

488 U.S. 153 (1988) ........................................................................................15

*Ciminelli v. United States,*

598 U.S. 306 (2023) ........................................................................................3

*Crane v. Kentucky,*

476 U.S. 683 (1986) ........................................................................................9

*Crawford v. Washington,*

541 U.S. 36 (2004) ..........................................................................................42

*Grossman v. Novell, Inc.,*

120 F.3d 1112 (10th Cir. 1997) .....................................................................4

*Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.,*

847 F.2d (5th Cir. 1988) .............................................................................4, 22

*Johnson v. El Paso Healthcare Sys., Ltd.,*

2013 WL 12393903 (W.D. Tex. Feb. 26, 2013).............................................8

*Kunz v. DeFelice,*

538 F.3d 667 (7th Cir. 2008) .........................................................................33

*Lowe v. SEC,*

472 U.S. 181 (1985).........................................................................................36

*Mausner v. Marketbyte LLC,*

2013 WL 12073832 (S.D. Cal. Jan. 4, 2013).................................................25

*Melendez-Diaz v. Massachusetts,*

557 U.S. 305 (2009)............................................................................................42

*Micholle v. Ophthotech Corp.,*

2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019).........................................................22

*In re NAHC, Inc. Sec. Litig.,*

306 F.3d 1314 (3d Cir. 2002)..................................................................................6

*Neder v. United States,*

527 U.S. 1 (1999)...............................................................................................6, 11

*Roper v. United States,*

403 F.2d 796 (5th Cir. 1968) ...................................................................................34

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.,*

75 F.4th 232 (4th Cir. 2023) ....................................................................................22

*SEC v. Govil,*

86 F.4th 89 (2d Cir. 2023) .........................................................................................3

*SEC v. One or More Unknown Traders in Common Stock of Certain Issuers,*

853 F. Supp. 2d 79 (D.D.C. 2012)............................................................................26

*Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Labs.,*

2013 WL 12140998 (N.D. Iowa Aug. 13, 2013)........................................................33

*Smith v. Universal Services, Inc.,*

454 F.2d (5th Cir. 1972) ..........................................................................................15

*Sprint Corp. Sec. Litig.,*

232 F. Supp. 2d 1193 (D. Kan. 2002)........................................................................4

*Su v. East Penn. Manufacturing Co. Inc.,*

2023 WL 2796120 (E.D. Pa. Apr. 5, 2023) ...............................................................37

*TSC Indus., Inc. v. Northway, Inc.,*

426 U.S. 438 (1976).......................................................................................4, 21, 22

*United States v. Abrahem,*

678 F.3d 370 (5th Cir. 2012) ...................................................................................11

*United States v. Baker,*

923 F.3d 390 (5th Cir. 2019) .....................................................................................3

*United States v. Baver,*

2023 WL 4138319 (D. Utah June 22, 2023)...............................................................11

*United States v. Betts-Gaston,*
860 F.3d 525 (7th Cir. 2017) ...................................................................6

*United States v. Brandt,*
196 F.2d 653 (2d Cir. 1952)....................................................................23

*United States v. Chambers,*
922 F.2d 228 (5th Cir. 1991) ..................................................................34

*United States v. Collorafi,*
876 F.2d 303 (2d Cir.1989).....................................................................23

*United States v. Covarrubia,*
52 F.3d 1068 (5th Cir. 1995) ..................................................................41

*United States v. Diamond,*
430 F.2d 688 (5th Cir. 1970) ...................................................................2

*United States v. Dockray,*
943 F.2d 152 (1st Cir. 1991)......................................................................9

*United States v. Evans,*
892 F.3d 692 (5th Cir. 2018) .................................................3, 5, 6, 11

*United States v. Forkner,*
No. 4:21-cr-00268, Dkt. 175 (N.D. Tex. March 16, 2022)...................8, 11

*United States v. Foshee,*
578 F.2d 629 (5th Cir. 1978) ................................................................1,2

*United States v. Foshee,*
569, F.2d 401 (5th Cir. 1978) ..................................................................24

*United States v. Fullwood,*
342 F.3d 409 (5th Cir. 2003) ...................................................................42

*United States v. Ghilarducci,*
480 F.3d 542 (7th Cir. 2007) ...................................................................23

*United States v. Gluk,*
831 F.3d 608 (5th Cir. 2016) .............................................................13, 15

*United States v. Greenlaw,*
84 F.4th 325 (5th Cir. 2023) ............................................................ *passim*

*United States v. Gutierrez-Mendez,*
    752 F.3d 418 (5th Cir. 2014) ...................................................................45

*United States v. Hatfield,*
    724 F. Supp. 2d 321 (E.D.N.Y. 2010) ......................................................5

*United States v. Hernandez,*
    693 F.2d 996 (10th Cir.1982) .................................................................30

*United States v. Hill,*
    63 F.4th 335 (5th Cir. 2023) ...................................................................42

*United States v. Klein,*
    2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017) .........................................13

*United States v. Litvak,*
    808 F.3d 160 (2d Cir. 2015)..................................................1, 5, 23, 27

*United States v. Litvak,*
    889 F.3d 56 (2d Cir. 2018).........................................................1, 5, 21

*United States v. Lucas,*
    516 F.3d 316 (5th Cir. 2008) ...................................................................23

*United States v. Maynie,*
    257 F.3d 908 (8th Cir. 2001) ...................................................................33

*United States v. Miller,*
    953 F.3d 1095 (9th Cir. 2020) ..............................................................2–3

*United States v. Oldbear,*
    568 F.3d 814 (10th Cir. 2009) .................................................................30

*United States v. Olis,*
    429 F.3d 540 (5th Cir. 2005) .....................................................................5

*United States v. Prather,*
    2023 WL 4564765 (S.D. Ohio July 17, 2023).........................................11

*United States v. Raza,*
    876 F.3d 604 (4th Cir. 2017) .....................................................................6

*United States v. Reed,*
    908 F. 3d 102 (5th Cir. 2018) ...................................................................19

*United States v. Rigas,*

2004 WL 360444 (S.D.N.Y. Feb. 26, 2004) ......................................................5, 21

*United States v. Riley,*
550 F.2d 233 (5th Cir. 1977) ....................................................................................1

*United States v. Robinson,*
583 F.3d 1265 (10th Cir. 2009) ..............................................................................33

*United States v. Roussel,*
705 F.3d 184 (5th Cir. 2013) ..................................................................................32

*United States v. Santos,*
2022 WL 1698171 (D.N.J. Mar. 22, 2022) ..............................................................5

*United States v. Saunders,*
2013 WL 2903071 (E.D. La. June 13, 2013) ..........................................................37

*United States v. Shellef,*
507 F.3d 82 (2d Cir. 2007) ........................................................................................3

*United States v. Simpson,*
2024 WL 409723 (W.D. La. Feb. 2, 2024) ................................................................2

*United States v. Smith,*
2019 WL 4281908 (M.D. Ala. Sept. 10, 2019) .........................................................7

*United States v. Takhalov,*
827 F.3d 1307 (11th Cir. 2016) ................................................................................3

*United States v. Taylor,*
210 F.3d 311 (5th Cir. 2000) ............................................................................37, 39

*United States v. Thomas,*
2013 WL 6073581 (D. Conn. Nov. 18, 2013) .........................................................30

*United States v. Wasman,*
641 F.2d 326 (5th Cir. 1981) ..............................................................................1, 16

*United States v. Weaver,*
860 F.3d 90 (2d Cir. 2017) ................................................................................11, 23

*United States v. Williams,*
2020 WL 4927482 (E.D. Tex. Aug. 21, 2020) ........................................................42

*In re Winship,*
397 U.S. 358 (1970) ...................................................................................33–34, 35

**Statutes and Rules:**

18 U.S.C. § 1348 ................................................................................2, 17

18 U.S.C. § 1349 ...................................................................................2

Fed. R. Crim. P. 12.1 ...........................................................................34

Fed. R. Evid. 104(b) ............................................................................45

Fed. R. Evid. 402 .................................................................................36

Fed. R. Evid. 403 .................................................................................36

Fed. R. Evid. 404 .................................................................................36

Fed. R. Evid. 801(c)(2) ........................................................................16

Fed. R. Evid. 803 ...........................................................................14, 36

Fed. R. Evid. 1002 ...............................................................................36

Defendants Edward Constantinescu, Perry "PJ" Matlock, John Rybarczyk, Gary Deel, Stefan Hrvatin, Tom Cooperman, and Mitchell Hennessey, (collectively, "Defendants") jointly submit this brief in opposition to the government's motions *in limine*.

## I. The Government's Motion Seeks to Interfere with Defendants' Right to Present a Complete Defense.

The government attempts to preclude the defense from introducing a host of relevant evidence and to gag the Defendants' counsel from making compelling arguments at trial. The government is incorrect that arguments and evidence bearing directly on relevant issues at trial—including the defendants' intent and materiality of the statements at issue—are impermissible "jury nullification."

The Fifth Circuit has reversed several convictions where a defendant was not permitted to argue or present evidence in support of his defense. *See, e.g., United States v. Wasman*, 641 F.2d 326, 329 (5th Cir. 1981); *United States v. Foshee*, 578 F.2d 629, 633 (5th Cir. 1978) (remanding and admonishing that the defense "should be given a full opportunity . . . to use what evidence was admitted…to argue that they acted in good faith without the intent to defraud"); *United States v. Riley*, 550 F.2d 233, 238 (5th Cir. 1977) (reversing conviction where defense was precluded and noting that "[h]is defense may or may not be reasonable to a jury but we believe he should have the right to present it"). The Second Circuit reversed a securities fraud criminal case twice where the district court excluded relevant evidence on materiality and the defendant's intent. *See United States v. Litvak*, 808 F.3d 160 (2d Cir. 2015); *United States v. Litvak*, 889 F.3d 56 (2d Cir. 2018).

Relevance under Rule 401 of the Federal Rules of Evidence is a low threshold. *See, e.g., Litvak,* 808 F.3d at 190. Importantly, for over fifty years, the Fifth Circuit has maintained "a liberal policy as to the admission of evidence tending to prove good or bad faith" in federal fraud

cases. *United States v. Diamond*, 430 F.2d 688, 692 (5th Cir. 1970); *see also United States v. Foshee*, 578 F.2d at 634 ("proof of intent is paramount because the good faith of a defendant is ordinarily a complete defense") (cleaned up). This "'liberal policy' as to the admission of evidence tending to prove good or bad faith allows both the Government and the Defendants to introduce *any evidence remotely bearing* on the question of fraudulent intent." *United States v. Simpson*, 2024 WL 409723, at *2 (W.D. La. Feb. 2, 2024) (emphasis added). It is entirely proper for the jury to hear evidence and consider "whether or not the defendant had a good faith belief that what he or she was doing was legal," because if there is "reasonable doubt as to whether or not the defendant had a good faith belief that what he or she was doing was legal," the jury "must acquit the defendant." *United States v. Greenlaw*, 84 F.4th 325, 354 (5th Cir. 2023) (quoting district court's jury instruction on good faith).

As a whole, the government seeks to interfere substantially with the Defendants' constitutional rights to defend themselves and right to effective assistance of counsel. The requests set forth in Section II of the government's brief should be denied outright.

## II.  The Government's Recitation of the Law and Issues Relevant at Trial is Incomplete and Incorrect.

The government's recitation of the applicable law is incomplete or incorrect in several ways. All Defendants are charged with federal securities fraud and conspiracy to commit federal securities fraud. *See* 18 U.S.C. §§ 1348, 1349.

Importantly, to prove fraudulent intent, the government must prove beyond a reasonable doubt that each defendant's intent was to deprive a someone of his or her money or property by means of deception. The Fifth Circuit is clear that "a defendant cannot be convicted of wire fraud on the basis of a lie alone." *Greenlaw*, 84 F.4th at 351. Federal criminal fraud requires the intent "to deprive the victim of money or property by means of deception." *Id.* at 350 (quoting *United*

*States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020)). A "scheme to defraud" requires a defendant to intend to "deceive the victims out of their money for his own financial benefit." *Id.* at 352 (quoting *United States v. Baker*, 923 F.3d 390, 402-03 (5th Cir. 2019)). "It has long been our understanding that an 'intent to defraud' requires 'an intent to (1) deceive, *and* (2) cause some harm to result from the deceit.'" *Id.* at 350 (quoting *United States v. Evans*, 892 F.3d 692, 712 (5th Cir. 2018)) (emphasis in original)).

Further, a theory that "investors were . . . denied the right to make an informed decision when considering whether to make [an] investment" is not actionable under the federal fraud statutes because "'the right to make informed decisions about the disposition of one's assets' is not a property interest[.]" *SEC v. Govil*, 86 F.4th 89, 105 (2d Cir. 2023) (quoting *Ciminelli v. United States*, 598 U.S. 306, 315 (2023)); *accord United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007) (the "cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes"); *United States v. Takhalov*, 827 F.3d 1307, 1314 (11th Cir. 2016) (adopting the reasoning in *Shellef* and holding that "even if a defendant lies, and even if the victim made a purchase because of that lie, a wire-fraud case must end in acquittal if the jury nevertheless believes that the alleged victims 'received exactly what they paid for'"). Thus, whether the Defendants had an intent to obtain money or property from people who saw their statements on public social media pages by deceiving them and whether these individuals received what they paid for are relevant issues at trial.

The government is also incorrect that the materiality standard in federal securities cases is a subjective standard based on who the government says were "intended victims." Mot. at 13. It is well-established in federal securities law that "[t]he question of materiality[ ] . . . is an objective one, involving the significance of an omitted or represented fact to a reasonable investor." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 445 (1976); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013) ("materiality is judged according to an objective standard").

"The [Supreme] Court also explicitly has defined a standard of materiality under the securities laws" in securities fraud cases. *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988). The Fifth Circuit has echoed the Supreme Court that the correct standard for materiality in securities cases is "whether the information disclosed would have been misleading, on those points about which the information's adequacy is questioned, to a reasonable potential investor who read the information as a whole." *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186 (5th Cir. 1988). This objective materiality standard contemplates:

> [A] showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*Id.* at 208 (quoting *TSC Indust., Inc.*, 426 U.S. at 449); *see also Basic Inc.*, 485 U.S. at 231-32. Put another way, "[a] statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock." *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1215 (D. Kan. 2002) (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118, 1119 (10th Cir. 1997)). "[W]hether information is material also depends on other

information already available to the market; unless the statement 'significantly altered the total mix of information' available, it will not be considered material." *Id.*

"By all counts, courts assess materiality through an objective lens." *United States v. Santos*, 2022 WL 1698171, at *3 (D.N.J. Mar. 22, 2022) (collecting cases amongst circuits). The Fifth Circuit has elaborated that a "scheme to defraud" incorporates this objective standard, "focused on whether the statement is of a type capable of influencing a reasonable decision maker." *Evans*, 892 F.3d at 712. This objective, reasonable investor standard for materiality has also been applied in several federal criminal securities cases. *See, e.g., Litvak*, 808 F.3d at 183-84 (reiterating that the materiality standard is an objective standard as articulated in *TSC Industries*); *United States v. Hatfield*, 724 F. Supp. 2d 321, 324-25 (E.D.N.Y. 2010) (applying "reasonable investor" standard for materiality in Section 1348 prosecution); *United States v. Rigas*, 2004 WL 360444, at *2 (S.D.N.Y. Feb. 26, 2004) (citing *TSC Industries* for materiality standard in securities fraud case). And, the Fifth Circuit has recognized that principles for civil securities fraud can provide "useful guidance" and, in some instances, "should be the backdrop for criminal responsibility" because, among other reasons, "it is attuned to stock market complexities." *United States v. Olis*, 429 F.3d 540, 546 (5th Cir. 2005) (reversing where district court failed to "take into account the impact of extrinsic factors on [a] stock price decline" because failure to consider those factors "would greatly overstate [defendant's] personal criminal culpability").

Importantly, "[m]ateriality cannot be proven by the mistaken beliefs of the worst informed trader in a market." *Litvak*, 889 F.3d at 65; *see also Litvak*, 808 F.3d at 183-84 (noting that a defendant in a securities fraud case would be left in an "untenable position" if the "odd limitation" of permitting only "victim" testimony to determine materiality because "the jury is to evaluate materiality in an objective manner"). Additionally, "[t]o be actionable, a statement or

omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).

The government is, thus, incorrect when it suggests that the Fifth Circuit in *Greenlaw* applied *Neder v. United States* in support of a different, subjective materiality standard. *See* Mot. at 12-13. The Fifth Circuit in *Greenlaw* did not cite to *Neder* for materiality, and the issue of whether materiality in a securities case involving publicly disseminated information should be judged under an objective reasonable investor standard or a different, subjective standard was not in any way at issue in *Greenlaw*. *Neder* itself referenced the "common-law" understanding of materiality to include "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Neder v. United States*, 527 U.S. 1, 22 n.5 (1999); *see also United States v. Raza*, 876 F.3d 604 (4th Cir. 2017) (reading *Neder* as applying a subjective standard when the fraud is directed to the government but applying an objective standard when fraud is directed to a private party); *United States v. Betts-Gaston*, 860 F.3d 525, 532 (7th Cir. 2017) ("whether a statement is material depends on its effect on 'a reasonable person'"). The Fifth Circuit in *Evans*, which referenced the "objective" materiality test in a federal fraud case, cited *Neder* and plainly did not view it as requiring a subjective standard. *See Evans*, 892 F.3d at 710. And when Section 1348 was enacted, the Supreme Court had long defined the concept of materiality in the securities fraud context. *See, e.g.*, *Basic Inc.*, 485 U.S. at 231-32.

Accordingly, whether a reasonable investor would have found the government's alleged omissions to be material and whether the omissions altered the total mix of information available to reasonable investors, will both be issues relevant at trial.

**III. The Government's Requests to Bar Defendants from Presenting a Complete Defense Should Be Denied.**

**A. Defendants Are Not Engaging in Jury Nullification.**

Defendants have not, and will not, argue for jury nullification: such arguments are entirely unnecessary here. The government seeks to preclude relevant evidence on the general, unsupported assertion that the only purpose for introducing such evidence would be jury nullification. But such evidence is relevant to the Defendants' innocence. Defendants are entitled to present evidence regarding the context surrounding the trades and posts at issue. Such evidence is highly relevant and highly probative to the elements of intent, materiality, and falsity. Defendants have maintained their innocence and are confident that a jury will properly acquit them of all charges.

**B. Evidence of Specific Instances of Good Conduct (Including Evidence That the Defendants Profited From Similar Trading That is Not Alleged to Be Fraudulent) Is Highly Relevant Because Good Conduct Squarely Rebuts Criminal Intent.**

The government asks the Court to generally preclude *all* evidence and arguments of (1) Defendants' other "good" conduct, including stock trades outside of the Trial Episodes, and (2) character evidence and evidence of specific instances of good conduct. *See* Mot. at 15-19. For the reasons set forth below, the government's motion should be denied.

*First*, the government's motion should be denied (or at least held in abeyance until the evidence is presented at trial) because the government entirely fails to identify any specific evidence or exhibits that it expects the defendants to offer at trial, rendering the government's motion premature at best. *See United States v. Smith*, 2019 WL 4281908, at *1 (M.D. Ala. Sept. 10, 2019) ("The Government's motion does not specifically identify any good character evidence that it expects Mr. Smith to offer. In the abstract, all such evidence is not clearly inadmissible.")

(internal quotations and citations omitted). For this reason alone, this Court should deny the government's motions *in limine*. *See Aperia Sols., Inc. v. Evance, Inc.,* 2021 WL 1171870, at *1 (N.D. Tex. Mar. 29, 2021) ("Evidence should not be excluded *in limine* unless it is clearly inadmissible on all potential grounds.") (internal quotations and citations omitted); *see also Johnson v. El Paso Healthcare Sys., Ltd.*, 2013 WL 12393903, at *2 (W.D. Tex. Feb. 26, 2013) ("[B]etter practice to wait until trial to rule on objections when admissibility depends upon what facts may be developed there, unless the evidence is clearly inadmissible.").

*Second*, the Defendants are not seeking to admit any evidence of other stock trades or good conduct under Rule 405(b), which generally prohibits the introduction of evidence related to specific character traits unless such evidence is an "essential element of a charge, claim or defense." Rather, the evidence that the government seeks to exclude with its motions is plainly admissible to assist the jury in determining that Defendants did not have *intent* to obtain money for property from anyone and believed the statements they made. *See United States v. Forkner*, No. 4:21-cr-00268, Dkt. 175 at 2 (N.D. Tex. March 16, 2022) (in the case of the Boeing pilot who was later acquitted at trial, Judge O'Connor denied government's motion to exclude "good conduct" evidence and ruled that such evidence was admissible as intrinsic to the charged crime).

Importantly, the fact that Defendants should be allowed to rebut the government's allegations concerning intent so as to provide critical context does not mean that the government should be permitted to introduce evidence beyond the 19 alleged substantive counts. The government's argument at page 18, which asserts that it would be unfair to the government to allow Defendants to introduce evidence of other trading in light of the government's decision to "limit the episodes the United States may introduce" misses the mark completely. The limitation

restricting to the government's case-in-chief to substantive counts alleged in the Superseding Indictment (with the additional benefit of an subjecting the jury to a excessively lengthy trial) does not preclude a defendant from presenting a viable defense at trial.

*And third*, the court should reject the government's assertion that the Court can preclude "irrelevant character evidence and evidence of specific instances of good conduct" for two reasons. Dkt. No. 538 at 18-19. *First*, as discussed above, the government concedes that the purposes of Defendants' witnesses are "unclear"; thus, any attempt to preclude such "unclear" evidence is premature. *Second*, a conviction for securities fraud requires a "specific intent to defraud" a victim of money or property. *See Greenlaw,* 84 F.4th at 339. Accordingly, if a defendant acts in good faith, that is a complete defense to the charged crimes. *See, e.g., id.* at 354 (good-faith instruction); *United States v. Dockray*, 943 F.2d 152, 154-55 (1st Cir. 1991) ("good faith is absolute defense to charge of mail or wire fraud…"). Specific instances of "good conduct," such as, for example "teaching others how to trade stocks" as the government asserts, is undoubtedly relevant to establishing a "good faith" defense and are therefore admissible at trial.

### C. The Defendants Must Be Able to Cross-Examine Witnesses Testifying Against Them, Including on the Grounds That Their Actions Were Not Reasonable and That They Are Not True Victims of Any Crime.

The government argues that the Court should "preclude all evidence, argument and cross-examination attempting to blame the victims" in this case (see pp. 19-21). The government's arguments, which first ask the Court to assume with no factual basis that the witnesses are actually crime victims, is misplaced and should be rejected because it is inconsistent with the Defendants' constitutional right to put on a meaningful defense. *See Crane v. Kentucky*, 476 U.S.

683, 690 (1986) ("The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.").

The government's witness list includes dozens of individuals who allegedly followed the Defendants public Twitter or Discord accounts. The purpose of the testimony, as set forth in both the Superseding Indictment and the FBI 302 reports, is that these individuals decided to buy (and not sell certain stocks) because the subset of Defendants who traded these stocks failed to disclose their intent to sell these stocks that some of Defendants tweeted about or mentioned in a chat room. According to the government, these individuals are now "victims" of Defendants' conduct and argues that the Court should prohibit Defendants' from contesting this narrative.

The government has it exactly backwards. The defense is not attempting to victim blame or construct a defense based on the intelligence or gullibility of an individual, as the government asserts in their motion papers. Rather, the defense strongly disputes that the individuals chosen by the government to testify are "victims" in the first place. Indeed, evidence produced by the government strongly suggests that these so-called "victims" were fully aware that the Defendants were selling stock and had the intent to sell stock. After all, given that the Defendants openly advertised the fact that they were day traders, Twitter followers would, by definition, have had to have known that the defendants were selling shares.

Likewise, cross-examination as to specific research a witness conducted before purchasing a stock based on the tweets of a defendant is not meant to establish a victim's negligence. Rather, it goes directly to the heart of materiality, an issue that will undoubtedly be important at the upcoming trial. Indeed, a person who buys stocks based on a complete lack of investigation or due diligence is hard-pressed to claim that a twitter influencer's alleged failure to disclose his stock sales is material to their purchasing choices as a "reasonable decision maker."

*See Evans*, 892 F.3d at 712 (materiality test is an "objective" standard, focusing on whether a statement or omission is 'of a type capable of influencing a reasonable decision maker").[1]

The governing case law is in accord. In *United States v. Mark A. Forkner*, No. 4:21-cr-00268, Dkt. No. 175 at 2 (N.D. Tex. March 16, 2022), the case involving the government's efforts to find a Boeing pilot liable for the crash of the Boeing Max airplanes, the government argued nearly the exact same motion as they do here, seeking to preclude the defense from "introducing any evidence blaming groups of victims or accusing those victims of negligence." Judge O'Connor, sitting in the Northern District of Texas, swiftly denied the government's motion *in limine*, ruling that evidence that victims were not in fact victims, even though it may imply that various "groups were blameworthy or negligent" was admissible as part of Forkner's defense not only to show that the groups were not victims but also to demonstrate "evidence of bias." *Id*. Notably, Mr. Forkner was acquitted at trial. The same principles apply here. Numerous other cases support the denial of the government's motion. In *United States v. Prather*, 2023 WL 4564765, at *2 (S.D. Ohio July 17, 2023); *United States v. Baver*, 2023 WL 4138319, at *4-5 (D. Utah June 22, 2023).

### D. The Defendants Must Be Permitted to Use FINRA's SONAR Reports That Prove Conclusively That No Pump and Dump Occurred.

As this Court is aware, after significant argument the government was ordered to produce records from FINRA concerning the Trading Episodes. FINRA produced business records that contained analysis of trading data first flagged to FINRA by its SONAR super-computer

---

[1] The government claims that "[n]either reasonableness nor reliance have any place …" under the standard enunciated in *Neder v. United States*, 527 U.S. at 24-25. *See* Mot. at 30. That is incorrect. As discussed above, Fifth Circuit case law makes clear that materiality is an objective standard that hinges on statements' ability to influence a "reasonable decision maker." *See Evans*, 892 F.3d at 711; *United States v. Abrahem*, 678 F.3d 370, 375 (5th Cir. 2012) (same). Given this, it is of little moment that the government cites a case from the Second Circuit (*see* Mot. at 21, *citing United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017)) in attempting to argue otherwise.

system.[2] These business records are highly exculpatory for two reasons. *First*, to the extent records exist, they tend to establish that FINRA's super computers—designed to monitor every trade in the market—did not establish that there was a pump and dump of the type alleged by the government in the Superseding Indictment. *Second*, to the extent that records of the Trading Episodes do not exist, that demonstrates that FINRA's super-computers did not determine that any pump and dump of the type alleged by the government existed. Either way, the records are highly exculpatory and admissible as business records (or lack thereof). The government, of course, does not want these highly exculpatory records (or lack of a record) to come into evidence and offers a host of meritless objections.

*First*, the government contends that arguments that FINRA's SONAR super-computers failed to identify the Defendants' conduct are irrelevant and unfairly prejudicial. The government maintains that there is no indication that FINRA actually reviewed or investigated the Defendants or their social-media activity. This argument fails for the simple reason that it fails to grapple with the fact that the SONAR system monitors "*every* transaction that takes place in both equities and options markets," and looks for everything "from suspiciously well-timed trades ahead of a corporate announcement to huge jumps in trading activity on penny stocks." *See* Dkt. No. 534 at p. 2 and Ex. B and C. In short, the SONAR records are the direct output of a FINRA technology that evaluates *every* market trade *every* day. Put differently, FINRA reviews every trade in the market, regardless of whether a human FINRA employee is the one ordering the investigation.

Thus, given that the Defendants are alleged to have engaged in pump and dumps of 19 stocks, it is axiomatic that if Defendants' conduct caused market increases and decreases of such

---

[2] *See* Dkt. No. 534 at pages 2-4 for examples of the FINRA SONAR reports at issue.

a magnitude that there truly was a "pump and dump," the SONAR system would have picked up on this market manipulation and flagged it for FINRA investigators to further analyze. While the government asserts that the SONAR reports are akin to a cop failing to notice a bank robbery in process during a late-night drive-by of the bank because the robbers could have taken "the safe out the back door," a more apt comparison is one involving a computer system monitoring withdrawals of money from a customer bank account. If the software keeping track of bank balances fails to detect a withdrawal from an account, it is not because there was some hidden withdrawal that no one saw, it is because the withdrawal at issue *never occurred in the first place*.

Next, the government asserts, condescendingly, that this Texas jury will be "confuse[d]" by the introduction of the one-page FINRA SONAR reports, but the reports are written in plain simple English: "no unusual volume," "no unusual price" changes, "no unusual promotional activity." A jury will not be confused.

None of the cases cited by the government merit a different conclusion. In *United States v. Klein*, 2017 WL 1316999, at *10 (E.D.N.Y. Feb. 10, 2017), as an example, the court declined to allow the defense to introduce into evidence an SEC complaint that contradicted the indictment. An SEC complaint, of course, is a court-document drafted by a party that offers unproven allegations about a defendant. Here, to the contrary, the FINRA SONAR documents are business records that simply document the results of FINRA's super-computer trading analysis system. Notably a key government trial witness Peter Melley is a FINRA employee. [3]

---

[3] *United States v. Gluk,* 831 F.3d 608, 615-616 (5th Cir. 2016) largely forecloses the Government's argument regarding jury "confusion." In *Gluk*, the defendants sought to offer SEC documents into evidence to show that the SEC concluded two others at their company were responsible but the Government raised a Rule 403 objection. As the Fifth Circuit related "[t]he government worried that the "jury may have [incorrectly] believed that the SEC [was] better

Finally, the government complains that Mr. Rybarczyk's attorneys wish to call a FINRA witness to testify that the FINRA trade and market monitoring super-computers did not detect the alleged pump-and-dumps that the government claims in the Superseding Indictment. In so doing, the government constructs a straw man argument, asserting that "Defendant seems to suggest from this information that FINRA did not believe there was anything to investigate in most of the Trial Episodes and, thus, there could not be a fraud." Not so. The Superseding Indictment purports to allege a multimillion-dollar pump and dump scheme. Yet FINRA's super computers—machines designed to detect market manipulation events such as pump and dumps—did not determine that a pump and dump had taken place. This is no different than a person seeking to introduce evidence from a seismograph when challenging a government allegation that an earthquake struck downtown Houston on a certain date and time.

Further, and contrary to the government's suggestion, the introduction of the SONAR records would not require the government to introduce "counter evidence" such as the fact that the "FINRA did in fact refer several Defendants' conduct to the SEC for suspected fraudulent and manipulative behavior on multiple occasions …." As set forth in the reply brief of Mr. Rybarczyk filed at Dkt. No. 562, the SONAR records are business records in that they were created in the ordinary course of FINRA's business as an agency that monitors the financial markets. *See* Fed. R. Evid. 803(6). The FINRA referral reports— lengthy reports drafted well

---

positioned to make factual findings"; that is to say that the jury may have been intimidated into blindly adopting the SEC's conclusions when the jury's fair judgment should be the sole determinant of guilt or innocence." The Court disagreed, reasoning, "the jury is perfectly capable of weighing the evidence contained in the SEC documents against other evidence to the contrary and making an independent decision. Weighing evidence against other evidence is a core function of the jury, and we find no reason to be concerned that a properly instructed jury would improperly defer to the SEC's findings." *Id*. at 615-616.

after the operative events took place and which involve suppositions and conclusions by FINRA investigators as gleaned from trading records—are, conversely, not business records and therefore not admissible into evidence. The government is, of course, entitled to find business records or testimony to contradict the FINRA SONAR reports but apparently it cannot do so, relying instead on after-the-fact investigative analysis that is inadmissible under any rule of evidence.[4]

For all these reasons, the government's motion should be denied.

### E. The Government Misunderstands Hearsay, and the Defendants Must Be Permitted to Introduce Admissible Evidence Relevant to Their Intent and Materiality

The government's motion *in limine* concerning "Defendants' attempts to introduce inadmissible hearsay" is a catchall, boilerplate motion not currently fit for resolution. As the Court ruled during the February 20, 2024 hearing, the parties and the Court will address the admissibility of each exhibit on an exhibit-by-exhibit basis. Accordingly, Defendants will address any specific objections at the pretrial conference. In the interim, Defendants deny that any of their exhibits contain inadmissible hearsay.

The government argues it may select certain statements of the Defendants, remove them from the context in which they were made completely, scrub them of the way they actually

---

[4] To the extent government argues in footnote nine on page 22 that the SONAR reports are inadmissible because they include the results of the SONAR technology and the conclusions drawn from these results, the Supreme Court has held that "portions of investigatory reports" otherwise admissible "are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). The Fifth Circuit has held similar reports in similar circumstances in the past admissible, even where the prosecution made a Rule 403 objection similar to the government here. *See United States v. Gluk,* 831 F.3d 608, 615-616 (5th Cir. 2016) (citing *Smith v. Universal Services, Inc.*, 454 F.2d 154 (5th Cir. 1972)).

appeared on Discord and Twitter, and tell the jury they are "false" or "misleading" without presenting evidence supporting that. Yet, it seeks to preclude the Defendants from presenting evidence to show that the government's process of cherry-picking and sanitizing these messages, or the context in which these messages were made, or that they were *not* misleading, they were *not* intended to defraud anyone, and they were *not* made with the intent to take money from people who followed them on social media. The government's motion on this point is not appropriately decided *in limine* and should be denied. Defendants must be able to present their complete defense. *Accord Wasman*, 641 F.2d at 329 (reversing conviction where defendant was precluded from introducing evidence tending to disprove the falsity of a statement).

### F. The Defendants Must Be Able to Present the Jury with the Total Mix of Information Available In the Market to Determine Materiality and the Defendants' Intent, Including Statements Made Alongside, and Precursors To, Their Messages.

The government's motion to exclude information that was presented alongside or presented before social media posts that the government alleges were intended to be materially misleading must be denied. The government seeks to preclude highly relevant, exculpatory contemporaneous statements Defendants made because such statements directly contradict the government's theory of fraud.[5] The government's characterization of the paragraphs on the Defendants' home pages and other public tweets and videos explaining how their messages and posts should be understood by the reader is not an issue of reliance, nor is the government correct

---

[5] Despite asserting that the warning statements are hearsay in its subheading, the government actually spends its time arguing that the statements are irrelevant. And despite the government's conclusory claim that Defendants' statements are hearsay, they are not. For one, Defendants' statements are not offered for the truth of the matter. *See* Fed. R. Evid. 801(c)(2). And to the extent the Court finds that the statements are offered for the truth of the matter, Defendants' contemporaneous statements recording their then existing states of mind (i.e., intent) fall within a recognized exception to hearsay. *See id.* at 803(3).

that this is irrelevant because "fraudsters cannot disclaim away fraud." Mot. at 29. This evidence is highly relevant to both (1) whether the challenged statements were materially false or misleading; and (2) whether any defendant had an intent to defraud social media followers. *See* 18 U.S.C. § 1348; *Greenlaw*, 84 F.4th at 351 (holding that to establish a crime of fraud, the government must prove that a defendant intended "to deprive the victim of money or property by means of deception"). The government attempts to impose a blanket preclusion on "disclaimer" communications (warnings) that Defendants made to the very same audience they are supposed to have defrauded through communications. This attempt is as misguided as it is contrary to the foundation of evidentiary law. These statements survive any relevancy or hearsay challenge. A fair trial requires that these exculpatory communications be considered by a trier of fact in a case that fundamentally includes an analysis about *what* communications were made by the Defendants.

### i. Types of Statements

*Two Types of Statements. Warnings/Admonitions and Disclaimers.* As a threshold matter, it is important to differentiate between two types of communications Defendants make that the government appears to conflate all as one group of "disclaimers." Defendants throughout the evidentiary record in this matter make 1) "warning/admonitions", and, separately, they also make; 2) "disclaimer"-type communications.

*Examples of Warnings/Admonitions.* "Warnings/Admonitions" include the numerous statements that Defendants made on Twitter, directly to others, or through the Atlas chat room site that provided viewers/readers with clear admonishments to consider before and while using the site and any information within it. For example, the "Atlas Rules" that all Atlas users acknowledge before being allowed into the Atlas Trading chat room, states, among other things,

"*Do your own DD* [Due Diligence]*, and have a plan for your trades! Do not follow blindly."* The Rules also state in no uncertain terms to "...*Trade at your own risk...*" Elsewhere, Defendant Matlock and others communicated things, in and out of the site, such as, "*...don't buy/sell any security based on my Tweets*..." and other similar admonitions. There are myriad examples of these types of *imperative*, command-like statements by the Defendants throughout Atlas, the discord channel the government intends to introduce numerous statements from.

*Examples of Disclaimers.* "Disclaimers" are similar in admonishing tone but are declarative assertions such as "*I am not a financial advisor*" and other similar statements found on several of the Defendants' twitter pages. Other disclaimers include, for example, the items listed in the Atlas Site Disclaimer documents, which had to be reviewed and acknowledged by all Atlas users before joining. Such language included: "*....ATLAS TRADING is not providing any trading or investment advice in any way whatsoever nor is ATLAS TRADING making any recommendations for anyone to buy, sell or sell short any trading or investment vehicle...*"

### ii. The Communications Should Not Be Excluded on Hearsay Grounds

The government is incorrect that these statements should be excluded on hearsay grounds, for several reasons.

*Warnings/Admonishments are Admissible Non-Hearsay <u>Imperative</u> Statements, Not Declarative Hearsay Statements.* Hearsay fundamentally requires first a *statement* which Federal Rule of Evidence 801(a) defines as, "a person's oral *assertion*, written *assertion*, or nonverbal conduct, if the person intended it as an *assertion*." (Emphasis added). The type of assertive statements that fall within the hearsay definition declare or assert facts. They are declarative sentences, like "the sky is blue" and are offered for the truth of the matter asserted. Contrast this however, with Warning/Admonition statements like, "*do your own due diligence,*" which are not

18

*assertions* referenced in Rule 801(a). Rather than being declarative, they are *imperative* statements. Imperative sentences giving orders or commands fall outside the hearsay definition; if these statements are relevant at all they are ordinarily relevant simply because the sentences were uttered. EDWARD J. IMWINKELRIED, EVIDENTIARY FOUNDATIONS SECTION 10.02[2][a] (12TH ED., 2023). Here, the government does not object to the authenticity of these utterances and they are not hearsay statements (they are not declarative assertions), and therefore they are not inadmissible hearsay.

 *Warnings/Admonishments are Offered for a Legitimate Non-Hearsay Purpose: The Effect on the Listener.* Relatedly, even if the warning/admonishments were somehow considered hearsay statements, they are offered for a legitimate non-hearsay purpose. They are offered for the fact that these statements were uttered in the universe of communications that Internet viewers saw if they used the Atlas Trading site; they are offered for the effect on those listeners, and therefore not inadmissible hearsay. *United States v. Reed*, 908 F. 3d 102, 120 (5th Cir. 2018) ("Ordinarily, a statement is not hearsay if it is offered to prove the statement's effect on the listener.").

 *Disclaimer Statements Are Likewise Admissible*. These statements like "*I'm not a financial advisor*" or the contents of the Atlas Disclaimer stating that that nothing on the site is intended by taken as financial advice, are not inadmissible hearsay. While these statements are indeed declarative assertions, they are not offered for a hearsay purpose. Instead, these statements are offered for the fact that they were *uttered* in the first place and for the effect on the listener/reader. They are therefore not inadmissible.

 *The Communications are Admissible Under Rule 803(3) Because They Are Statements of Then-Existing State of Mind.* Even if some of these communications could be viewed as hearsay

and for a hearsay purpose, they are nonetheless admissible under Rule 803(3)'s exception because they encompass "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional . . . condition (such as mental feeling)[.]" Fed. R. Evid. 803(3). As discussed below, these communications are highly probative of the Defendants' intent and what they thought at the time.

### iii. The Communications Are Relevant

Put plainly, the government is seeking to preclude evidence that the Defendants *actually disclosed the information that the government says was omitted in a false and misleading way*. It is the functional equivalent of a party trying to preclude introducing an insurance policy in a trial in which the language contained in the policy itself was the key dispute. Several of the Defendants maintained language on their Twitter profiles that was directly relevant to understanding their other Twitter posts, including the posts that the government is now challenging as false and misleading. These other posts and language on the Defendants' social media pages *were actually posted and visible* to others who viewed the Defendants' social media pages.

For example, during a significant period of the alleged conspiracy, Mr. Hennessey stated in his Twitter profile: "I actively trade positions & could be buying or selling any stock mentioned at any time." And Mr. Matlock admonished Atlas Trading members to: "Do your own DD! Posts are not a recommendation to buy or sell any security!" These statements are not "disclaimers" as the government argues. Rather, these contemporaneous statements by Defendants directly contradict the government's theories of falsity, intent, and materiality, showing that the Defendants did not intend to deceive anybody. They are highly relevant and admissible. Several of the Defendants also posted, on several occasions, information regarding

how their Twitter posts should be interpreted, and warnings intended to avoid misunderstanding the context of certain Twitter posts. And, importantly, before *anyone* was permitted to access the Atlas Trading Discord server, they were presented with information that provided critical context to messages displayed in the Discord chat room, including warnings and educational information.

This evidence is essential and relevant to the jury's determination of whether the statements at issue are material. As discussed above, materiality demands the government prove beyond a reasonable doubt that "a reasonable investor would deem the content of a misstatement a substantial factor to be considered in the making of the particular investment decision." *Litvak*, 889 F.3d at 65. Put another way, [t]he test of materiality is of course whether a certain fact 'would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.' *Rigas*, 2004 WL 360444, at *2 (quoting *TSC Indus. Inc.*, 426 U.S. at 449); *see also Basic Inc.,* 485 U.S. at 231-32.

To properly evaluate the "total mix" of information available that "total mix" must be presented to the jury. This is especially true where the government's contested statements came by way of Twitter posts and a message board on Discord, during a time of extreme market volatility. Twitter posts, by their nature, cannot exceed a certain number of characters, and the messages on Discord were displayed alongside several other statements that users were required to review before accessing the server. To suggest that one post should be considered at the exclusion of all the others under these circumstances is like arguing that one may ascertain the "true meaning" of a statement made in a press release by looking at one sentence of a press release and therefore the rest of the press release may be precluded *in limine*.

The government cites "relevancy" as a reason these statements should be excluded. To support this notion, the government cites Fifth Circuit cases supporting the notion that "disclaimers" do not insulate a defendant from federal charges, nor do they render other oral representations immaterial (Dkt. No. 538 at 28-29), but that is completely inapposite as to whether the disclaimers in this case should be considered by a jury. The cases cited analyze whether Disclaimers would inoculate Defendants from legal liability, not whether they should be admissible as relevant circumstantial evidence, particularly when Defendants' intent is so significantly at issue.

The government is also incorrect that this information is only probative of reliance, and its position that the total mix of available information is not relevant to materiality in a securities case is squarely foreclosed by decades of Supreme Court and Fifth Circuit precedent, which the government does not cite to or address. *See, e.g.*, *TSC Indus. Inc.*, (stating the relevant standard and inquiry to determine *materiality*); *Isquith*, 847 F.2d at 208 (describing same objective "total mix" standard as the appropriate standard for *materiality*). Several courts have acknowledged that the information the government is seeking to exclude is very relevant to the issue of materiality and must be considered in reaching the materiality determination. *See, e.g., San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 245 (4th Cir. 2023) ("because materiality is contextual, it can be 'negate[d]' by adequate warnings and disclaimers"); *Micholle v. Ophthotech Corp.*, 2019 WL 4464802, at *7 (S.D.N.Y. Sept. 17, 2019) (whether an opinion is materially misleading based on an omission must "take into account the 'statement's context,' including relevant 'hedges, disclaimers, or qualifications'").

This evidence is also highly probative to negate the Defendants' intent to defraud social media followers out of money who never bought anything from the Defendants. The jury must

be able to evaluate *all* of the information that the Defendants said to the public on Twitter to in determining that the posts that the defendants were making were not done with an intent to defraud. Accordingly, Defendants must be able to present this evidence to the jury. *See Litvak*, 808 F.3d at 190; *United States v. Brandt,* 196 F.2d 653, 657 (2d Cir.1952) ("since [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh" its relevance (internal citation omitted)); *see also United States v. Collorafi,* 876 F.2d 303, 305 (2d Cir.1989) (same). None of the contextual social media posts Defendants will introduce at trial are misleading or confusing, yet the opposite is true: the government's attempt to show the jury only a handful of statements, taken completely out of context, would be misleading.[6]

---

[6] The government's cases are inapposite because they address a completely different situation— where misleading statements are made and then small print disclaimers are presented, after the fact, to attempt to disclaim liability for saying something earlier that was misleading. The principal case the government relies on—*United States v. Weaver*, 860 F.3d 90, 93 (2d Cir. 2017) (per curiam)—illustrates these cases' inapposite nature. Weaver, the CEO of a company that sold vending machines, orchestrated a scheme whereby his employees solicited potential customers through false representations in promotional materials and over the phone. *Id.* at 93. The representations in the promotional materials or statements made on the phone were false. *After* the customers had been fraudulently induced and "agreed to purchase the machines, they were required to sign a contract setting forth the terms of those purchases." *Id.* Those contracts included a general disclaimer provision that the Second Circuit concluded did "not render *prio*r false statements [outside the contracts] immaterial for purposes of criminal fraud statutes." *Id.* (emphasis added). So too in *United States v. Ghilarducci*, 480 F.3d 542, 546 (7th Cir. 2007), and *United States v. Lucas*, 516 F.3d 316, 340 (5th Cir. 2008), the other cases relied on by the government.
After the fact disclaimers are not the evidence that the government is trying to preclude through its motion. The government here is trying to preclude evidence of information that was presented *at the time or before* the statements were made, because that information *would have been understood by a reasonable investor at the time the purportedly misleading statements were made*. For example, a warning a defendant includes in his Twitter bio would be among the first statements any viewer of that bio would see.

It is axiomatic to the tenets of a constitutionally fair trial that the entire universe of authentic and relevant admissible communications be considered by the jury in this matter, not just those the government deems helpful to its case. These statements are *highly* probative and admission of these statements would only assist a trier of fact, not confuse them. The statements are admissible as either non-hearsay, statements that are offered for a legitimate non-hearsay purpose, or both. Accordingly, the statements in question should be duly considered by a jury.

### G. The Fifth Circuit Has Been Clear That Evidence That "Victims" Did Not Lose Money is Probative of an Intent to Defraud, and Evidence That the Defendants Lost Money is Probative of Their Lack of Intent to Defraud and Their Lack of Participation in a Conspiracy.

The government seeks to preclude Defendants from introducing evidence related to the lack of "success of the scheme," but the Defendants do not plan to argue at trial that the failure or success of the "scheme" is evidence of reliance or loss causation, which is not a part of the case. Defendants do, however, plan to introduce evidence related to Defendants' disparate profits, losses, and trading strategies on stocks, and do intend to highlight that the witnesses who the government is presenting as "witnesses" did not lose money (or would not have lost money if they acted as reasonable investors). All of this evidence is probative of the Defendants' intent. The Fifth Circuit rejected a similar argument proffered by the government in a federal fraud case, recognizing that while "[t]he success of a scheme to defraud" is not a requirement for federal fraud, "specific intent to defraud is an essential element of the crime," and, thus, "[i]n determining intent, it is clear that the jury may consider that the [purported victims] were not defrauded since they suffered no financial loss." *United States v. Foshee*, 569, F.2d 401, 403 (5th Cir. 1978), *opinion amended in part by* 578 F.2d 629.

Defendants' trading histories and strategies, including whether they made or lost money, are relevant to and probative of (1) the fact that a defendant believed his tweets when he made

speculations about the future price of the stock or identified a stock as one that others may like to consider as a stock to day trade or swing trade and (2) that Defendants did not intend to defraud anybody. Additionally, as to Count One, Defendants' disparate trading strategies, histories, profits, and losses are circumstantial evidence that Defendants did not enter an agreement.

The government also seeks to preclude Defendants' 1099-Bs. These documents accurately reflect Defendants' trading of stock, including all stocks at issue in Counts 1-20. They are actual trading records, authentic and reliable. Taken together they show that Defendants traded on their own, employing disparate trading strategies. This is relevant and probative circumstantial evidence for the jury in making its determination that Defendants never agreed to commit securities fraud (Count One, conspiracy to commit securities fraud).

**H. The Government's Request to Preclude Defendants from Pointing Out Its Causation Deficiencies Should be Denied Because It is Relevant to Rebut Much of the Government's Case, Including Materiality and Intent.**

The government seeks to gag the Defendants from pointing out key deficiencies in the government's case related to its inability to show intent and that its causation deficiencies render the government's theory of motive and intent unpersuasive. It also seeks to preclude Defendants from presenting evidence that other market factors—not any of the Defendants' behavior— caused stock price movement and increased trading volume. The government's argument on this point is premised on several basic fundamental points of securities law that are wrong.

While the government is correct that in did not bring a "market manipulation" case, it nonetheless seeks to use causation and market manipulation language when presenting to the jury, including the highly prejudicial and inaccurate phrase "pump and dump," which describes a form of market manipulation. *See, e.g., Mausner v. Marketbyte LLC*, 2013 WL 12073832, at *7 (S.D. Cal. Jan. 4, 2013) ("Pump-and-dump schemes are a type of market manipulation"); *Alki*

*Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 487 n.14 (S.D.N.Y. 2011) (describing a "'pump and dump' market manipulation scheme"); *SEC v. One or More Unknown Traders in Common Stock of Certain Issuers*, 853 F. Supp. 2d 79, 82 (D.D.C. 2012) (describing the scheme as "a modern-day, technological version of the traditional 'pump-and-dump' market manipulation scheme"). For the reasons set forth in the Defendants' motion *in limine* regarding causation evidence, we agree that the government cannot prove that any of this was a "pump and dump" and therefore should be precluded from continuing to use that term to describe Defendants' conduct. But Defendants seek to introduce evidence related to other market actors and factors to assist the jury in determining the Defendants lacked an intent to defraud, the statements they made were not false, or were not material.

The government cannot divorce the issue of intent from causation. The issue is not, as the government frames, "whether Defendants' believed they could cause market movement." Mot. at 33. Believing that one could move the market is not a crime. The question is whether the Defendants *intended*, by way of their statements, to obtain money or property from anybody by means of deceit. *See supra* Section II. The Defendants must be permitted to rebut the Government's evidence and argument by showing the jury all of the factors that were moving the market, including those that caused Defendants to believe their stock picks were good ones.

## I. The SEC's and Congress's Determinations are Relevant.

The SEC's (and Congress's) determination that multiple factors during COVID lockdowns and the Meme Stock events of 2021 caused hundreds of instances of extreme volatility in volume and price of stocks is relevant several things. First, whether the Defendants believed stock tickers such as CEI (Count 14), DATS (Count 15), and others named in the Superseding Indictment would likely experience similar volatility in volume and price goes directly to their intent when they made certain comments about the stocks. Second, this information is relevant to whether Defendants' statements speculating about or predicting that those stocks would reach a certain price were "false" at all. *See Greenlaw*, 84 F.4th at 353-55. Third, this is relevant to whether Defendants had the specific intent to defraud people by making the statements.

Moreover, the determination by Congress and the SEC that volatility of price and volume of hundreds of stocks during 2021 occurred because of many social, cultural, economic, and political factors unrelated to Defendants is relevant because, for example, defendant Constantinescu made the majority of his profits in trading Meme Stocks (Super. Ind. ¶ 1) and obtained the overwhelming majority his followers (Super. Ind. ¶ 2) as a result of his trading of Meme Stocks, and thus he had no motive or intent to attempt to obtain money or property from his followers through deceit. Also, the market conditions that existed during the time these statements were made on Twitter is also relevant to materiality. *See Basic Inc.*, 485 U.S. at 231; *Litvak*, 808 F.3d at 183 ("[t]he full context and circumstances in which [the securities] are traded were *undoubtedly* relevant to the jury's determination of materiality").

**J. The Defendants Must Be Permitted to Rebut the Government's Theory That the Defendants Intended to Defraud Social Media Followers Because Defendants' Intent is a Key Element the Government Must Prove.**

The government's request that this Court prohibit the Defendants from arguing or introducing evidence that the Defendants did not intend to defraud followers out of money or property, but instead actually were motivated for the followers to engage in profitable trades, must be denied and would constitute reversible error if granted. The government argues that this evidence is irrelevant. Nothing could be further from the truth. The Fifth Circuit in *Greenlaw* made clear that to sustain a conviction, the government must prove a "scheme to defraud," which requires a defendant to intend to "deceive the victims out of their money for his own financial benefit." 84 F.4th at 352. Further, "proof of intent is paramount because the good faith a defendant is ordinarily a complete defense." *Foshee*, 578 F.2d at 633. Evidence that the Defendants wanted their social media followers to make money is *directly contrary* to an essential element of the government's case: that the Defendants intended to obtain money or property from the followers by making certain statements. The Fifth Circuit has long admonished that defendants must be given full opportunity to use even circumstantial evidence to argue that they acted in good faith without the intent to defraud. *See, e.g., id.* at 634 (remanding and stating defendants "should be given a full opportunity on remand to use whatever evidence was admitted, circumstantial as it may be, to argue that they acted in good faith without the intent to defraud").

**K. Defendants Do Not Intend to Argue Selective Prosecution.**

Defendants will not argue selective prosecution. Defendants do intend, however, to provide the jury with critical context surrounding Defendants, their trades, the stock market, and social media during the relevant time period. The government's claim that contextual arguments

about the commonality of financial commentary—or even just sharing stock picks with friends—is tantamount to impermissible assertions of selective prosecution is misplaced. Defendants are entitled to put on a defense that they had no intent to commit securities fraud and were merely sharing their ideas on various stocks with their friends like countless other Americans do. Such evidence and arguments have nothing to do with selective prosecution and should be permitted.

> **L. The Defendants Must Be Permitted to Introduce Evidence and Argument about the Conduct of Uncharged Individuals Because It Squarely Rebuts Criminal Intent.**

The Government asks this Court to rule, in the abstract, that the "conduct (or potential misconduct) of others either on social media, in the stock market, or otherwise, is not relevant to the issues at trial." Specifically, the Government contends that the fact that "other uncharged individuals were talking about these stocks on social media" constitutes both hearsay and is "legally irrelevant." The Government's premature argument is wrong and should be denied.

*First*, that others were discussing stocks on social media is not hearsay because the statements are not, as the Government concedes, being introduced for their truth. Instead, the statements are being introduced simply for the fact that others were discussing the same stocks on social media as the Defendants. *Second*, that others were discussing the same stock as Defendants in the same forums is not "legally irrelevant." As the government knows, one key issue in this case is whether the Defendants had the specific intent to defraud. Clearly, that hundreds if not thousands of others were engaged in the same forums discussing (or touting) the same stocks is evidence that militates against a finding that the Defendants had an intent to defraud, and further supports a jury's conclusion that the Defendants acted in good faith. Thus, the government is incorrect on both counts.

*United States v. Oldbear,* 568 F.3d 814, 821 (10th Cir. 2009), as cited by the government, is unhelpful to their argument. In *Oldbear* the defendant, a tribe member, asserted that the lower court violated his due process rights by excluding the testimony of a witness who: 1) was not a tribe employee, 2) was uninformed about the emergency assistance application process, and 3) had no knowledge of subjects relevant to the criminal case. *Id*. at 821. As the court made clear, "[s]uch evidence could not prove whether the tribe approved Oldbear's expenditures, nor could it shed any light on her state of mind." *See also United States v. Hernandez,* 693 F.2d 996, 1000 (10th Cir.1982) (concluding the district court did not err in excluding certain testimony on relevance grounds because the witnesses admitted they had "no knowledge of [the defendant's] intent").

Here, by contrast, the "other individuals" and their statements that are at issue are parties who were tweeting about the very same stocks alleged by the government to be at the heart of the Defendants' alleged criminal activity, and who have evidence highly relevant to the Defendants' intent and state of mind. In addition, in *Oldbear*, the witness was being offered to show that others "may have been the beneficiaries of improper conduct" (*Oldbear*, 568 F.3d at 821), whereas here, the Defendants are seeking to admit evidence concerning statements made by other individuals to show that *no improper conduct occurred*. Thus, the situation here is the exact opposite of that in *Oldbear*.

Similarly, in *United States v. Thomas* (a case citing to *Oldbear*), the court held that the evidence at issue—evidence that other members of the Tribal Council used their credit cards for personal expenditures—was irrelevant to Thomas' state of mind because there was no evidence that Thomas knew that other members of the Tribal Council used their cards for personal expenditures. 2013 WL 6073581 at *2 (D. Conn. Nov. 18, 2013). Here, by contrast, it is self-

evident that the Defendants were aware that other individuals were publicly tweeting about the same stocks as them on social media. Thus, *Thomas* too is not applicable here.

For all these reasons, the government's motion here should be denied.

### M. The Defendants Should Not Be Precluded From Arguing that the Defendants Lacked Criminal Intent and That Their Conduct is Not Criminal.

Like the government's selective prosecution argument, the government's novelty argument is an inappropriate attempt to preclude Defendants from arguing to the jury that their conduct is simply not criminal. Context in this case is critical. As Defendants discussed during the February 20, 2024 hearing, there is hardly anything unusual about friends exchanging ideas about stocks and sharing "plays" with one another. Hundreds of thousands of traders across America do this every day—not to mention the numerous financial TV and radio shows that do the same—and those numbers have only grown since the COVID-19 pandemic. The fact that Defendants' conduct was consistent with what thousands of others do routinely is probative of both materiality, falsity, and intent—elements the government must prove beyond a reasonable doubt. Defendants should be allowed to present evidence and argue that because Defendant' conduct was consistent with widespread, unchallenged (until now) practice Defendants' statements were both immaterial and never made with the intent to commit securities fraud.

### N. The Defendants Should Be Able to Cross-Examine Government Witnesses About Their Investigation (or Lack Thereof).

While the Defendants agree that the jury should not hear demands for or comments about discovery, this does not limit Defendants' rights to cross-examine government witnesses on investigative decisions about what evidence to collect. Defendants must be permitted to cross-examine the government's witnesses on the investigative process in this case (or lack thereof) even though such decisions naturally impacted the government's "pretrial discovery."

### O. The Government's Uncalled Witnesses Argument is Premature.

Once again, the government's boilerplate motion *in limine* is devoid of specific facts and therefore premature. It may well be the case, depending on the circumstances, that the Defendants are entitled to present evidence and argument regarding the government's failure to call a witness. But such a determination will not be possible until the witness is identified and circumstances known.

### P. Defendants Must Be Permitted Wide Latitude in Cross-Examination of the Government's Cooperating Defendants.

Defendants must be permitted to cross-examine any cooperating witness, including Knight and Sabo, on the benefits they are receiving from testifying for the government and their resulting biases. In fact, *United States v. Roussel*, 705 F.3d 184 (5th Cir. 2013)—the case the government relies on—supports Defendants' rights to do just that. Under *Roussel*, Defendants are entitled to cross-examine Knight and Sabo on the specifics of their potential sentences, including, among other things, the maximum statutory penalties they faced before pleading guilty, that the government agreed to drop certain charges against them, the resulting statutory cap on their sentences, and that "the government could ask for an even lesser sentence depending on the value of [their] cooperation." *Id.* at 194. The possible exposure Knight and Sabo faced under the sentencing guidelines prior to pleading guilty and agreeing to testify, and their exposure post-guilty plea provided a powerful incentive for them to testify in a way that benefits the government's case. In fact, the *Roussel* Court found it important that "the jury knew about a possible 25-year sentencing reduction[.]" *Id.* at 195. The government's inappropriate attempt to limit Defendants' cross-examination of Knight and Sabo should be denied.

**Q. Cross-Examination on Witnesses Having Impaired Ability to Recollect Events and Other Relevant Drug Use is Appropriate Impeachment.**

Defendants do not intend to offer evidence of Knight's, or any other witness's, *irrelevant* drug use. Nor do Defendants intend to offer Knight's drug use to attack his character. Defendants are entitled, however, to offer evidence of Knight's *relevant* drug use to impeach him, including his "ability to perceive or recall events or testify accurately about them." *Sec. Nat'l Bank of Sioux City, Iowa v. Abbott Labs.*, 2013 WL 12140998, at *11 (N.D. Iowa Aug. 13, 2013) (first citing *United States v. Robinson*, 583 F.3d 1265, 1272, 1274–75 (10th Cir. 2009), then citing *Kunz v. DeFelice*, 538 F.3d 667, 677 (7th Cir. 2008)). The evidence the government produced to Defendants illustrates that Knight was significantly impaired due to substance use more often than not during the time frame of the alleged conspiracy, including during public events where Knight made comments the government seeks to introduce against Defendants who were not even present when these statements were made. Defendants are accordingly entitled to cross Knight on his pervasive drug and alcohol use, and offer evidence regarding it, to afford the jury the opportunity to question Knight's truthfulness and his "ability to remember and testify accurately about events related to the case," *see id.* at *11 (citing *United States v. Maynie*, 257 F.3d 908, 918 (8th Cir. 2001)), and to provide context for statements the government wishes to introduce.

**R. The Defendants Could Raise The Advice of Counsel Defense.**

Defendants are not currently asserting any advice of counsel defenses, but they are entitled to present any such defense. No Defendant has waived any such defense despite the government's claim that its unilateral email requesting information about potential defenses somehow created a waiver. It did not. As the government knows, it bears the burden of proof to establish each element of the charged counts beyond a reasonable doubt. *See In re Winship*, 397

U.S. 358, 362 (1970). Defendants, on the other hand, have no burden. Rather, Defendants' cases must necessarily adapt and respond to the government's case-in-chief. If any Defendant discovers an advice of counsel defense and determine the need to raise said defense based on the government's case, the government will be provided with sufficient notice.

> **S.** **The Government Misunderstands What an Alibi Notice or Witness Entails, and The Defendants Are Not Barred From Rebutting the Government's Suggestion That The Defendants Were the Individuals Posting From the Accounts.**

The government misunderstands the meaning of an alibi defense. It does not, as the government contends, preclude "evidence or argument suggesting that it was not a particular Defendant who was either posting on social media and/or trading stocks during one or more of the Trial Episodes." Mot. at 54. Those are two separate concepts.

Rule 12.1 is unambiguous about how an alibi notice works: upon request by the government, "the defendant must serve written notice [which] must state: (A) each specific place where the defendant claims to have been at the time of the alleged offense; and (B) the name, address, and telephone number of each alibi witness on whom the defendant intends to rely." The Fifth Circuit defines an alibi defense as that which "precludes the defendant's guilt by placing him, when the offense occurred, at a location different from that at which he allegedly committed the crime." *United States v. Chambers*, 922 F.2d 228, 240 (5th Cir. 1991); *Roper v. United States*, 403 F.2d 796, 798 (5th Cir. 1968) ("[T]he essence of alibi is the impossibility of the defendant's guilt based on his physical absence from the locus of the crime."). All that Rule 12.1 requires is that, if a defendant is going to say "I could not have committed the robbery at this location because I am going to call Witness-1, who will testify that I was with Witness-1 at the date and time of the robbery," that information is disclosed pretrial. Rule 12.1 has *absolutely nothing* to do with the government being required to establish that an electronic account was

accessed and used by a particular person. The government remains responsible for proving these foundational elements, and the Defendants remain free to rebut them because they have nothing to do with witnesses testifying to the Defendants being physically absent from the locus of an alleged crime. Nor did the Government identify a physical location for any of the alleged charges. The government's request for notice of alibi defense specified the request for "each of the trial episodes" in the Superseding Indictment. There is not a location element for these charges; therefore, there cannot be any alibi defense to disclose.

### T.  The Government Misreads the Court's August 31, 2023 Order.

The government misreads the Court's August 31, 2023 order. The Court did not find that Defendants' arguments are without any basis in law, nor did it find that Defendants are precluded from raising relevant defenses related to those arguments at trial. Importantly, the Court emphasized that it was "required to take the allegations of the indictment as true and to determine whether an offense has been stated." Dkt. No. 385 at 2. The Court then stated that it must deny Defendants' motions to dismiss if there were "disputed facts." *Id.* Put differently, the court did not reject that the First Amendment could provide a defense outright. Instead, the Court took the allegations in the Superseding Indictment as true and concluded that, if they are true, the First Amendment provides no defense to fraud. The government's argument completely fails to account for this procedural posture.

At trial, there is no presumption that the allegations contained in the Superseding Indictment are true. Quite the opposite. The government bears the burden to prove each and every one of its allegations true beyond a reasonable doubt. *See Winship*, 397 U.S. at 362. Defendants must accordingly be allowed to argue any and all lawful defenses, including defenses concerning Defendants' First Amendment rights, their lack of fiduciary or fiduciary-like duties,

and the lack of regulatory requirements. That does not mean that Defendants will argue that fraud is protected speech, for example. Defendants instead will argue that no fraud occurred here, and, therefore, the speech at issue here is core, protected speech under the First Amendment that cannot possibly be deemed criminal. *See Lowe v. SEC*, 472 U.S. 181, 205 (1985). The same analysis applies to Defendants' remaining defenses, all of which should be permitted at trial.[7]

## IV. The Government's Attempt to Preadmit its Inadmissible Exhibits Wholesale is Inappropriate.

The government's exhibits are inadmissible for a host of reasons and their admission is improper for several reasons and under several rules, including but not limited to Federal Rules of Evidence 1002, 402, 403, 404, and 803.[8] This Court has already made clear that it intends to hear argument on each of the government's exhibits. The Defendants will explain their specific objections to the admissibility of each exhibit at the pretrial conference and, if necessary, during trial.

It is worth noting that many of the government's created exhibits are not summaries of anything voluminous, but instead are recreations of actual business records that have been tweaked to be more favorable to the government than what the actual evidence reflects. Admitting these exhibits invites a due process violation that almost certainly will result in reversal on appeal.

---

[7] The government's concern over Defendants' potential defenses is more properly addressed at the jury charge conference as that will be the appropriate time to dispute how to instruct the jury on the law, including whether Defendants are entitled to a particular instruction on any given defense.

[8] Additionally, the Defendants' motion to suppress evidence derived from the government's illegal general search remains pending. Many of these exhibits are subject to suppression in the event the Court determines that blanket suppression is the appropriate remedy for the government's unconstitutional mishandling of the Twitter and Discord account data.

**V. Defendants' Exhibits are Not Admissible Summary Charts and Having Garibotti Testify About Their Contents Violates the Confrontation Clause.**

The Government's motion to preadmit over 50 documents, some of which are over 70 pages long, as "summary charts," so that its paid witness Maria Garibotti can testify to the substance of these charts is inappropriate and would violate the Confrontation Clause.

**A. The Government's Exhibits are Not Properly Admitted Under Rule 1006 Because They Do More Than Summarize and Are Inaccurate, Misleading, and Confusing.**

"[A]dmission of Rule 1006 evidence runs the risk of inaccuracy, allowing proponents, either purposefully or accidentally, to shrink or grow figures to the benefit of their case behind the obfuscating screen of other vast or complex piles of evidence." *Su v. East Penn. Manufacturing Co. Inc.*, 2023 WL 2796120, at *1 (E.D. Pa. Apr. 5, 2023). "The Fifth Circuit has repeatedly cautioned district courts against allowing the government to use a summary chart to assume that which it must prove beyond a reasonable doubt as operative facts of the alleged offense." *United States v. Saunders*, 2013 WL 2903071, at *5 (E.D. La. June 13, 2013). "A necessary precondition to the admission of summary charts is that they accurately reflect the underlying records or testimony, particularly when they are based, in part, on the government's factual assumptions." *United States v. Taylor*, 210 F.3d 311, 315–16 (5th Cir. 2000). If "admission of the chart allow[s] the government to assume that which it [is]required to prove beyond a reasonable doubt," then "admi[ting] the chart into evidence [is] error." *Id.* at 316; *see also Saunders*, 2013 WL 2903071, at *7 (refusing to admit government's power point slide under Rule 1006 because it "contains prejudicial information beyond the scope of the underlying telephone records" and "assumes operative facts that the Government is required to prove as part of the alleged offense"). While Defendants intend to argue why each exhibit should not be

admitted at the Court's pretrial conference, some problems that could never be fixed with these exhibits are addressed below.

As a threshold matter, the underlying records that the government seeks to introduce are not voluminous. The Defendants' underlying trading records are no different than introducing bank account records, which are routinely admitted in criminal cases. The government is taking issue with only a limited subset of Twitter messages and Discord messages across all seven Defendants, which is also not voluminous. And, certainly, excerpts of messages between Defendants that are taken from a phone or a private account is the sort of routine trial evidence marked and introduced in criminal cases—none of these messages are alleged to have transpired over several months or years that would render them voluminous.

The only thing that renders this data even arguably voluminous is the government's tactical decision to lump it all together into one central, misleading document. If a prosecutor attempted to admit as, for example, "Exhibit 2" a document that combined both bank records and records obtained from a phone, such exhibit would not be admitted under one exhibit sticker. But the government combined *far more* than that here, and across *nine defendants.* The government's exhibits themselves actually make the information *more difficult* to review, *more voluminous*, and runs the risk for *more confusion* than if the jury were presented with the underlying records themselves. On that basis alone, the government's exhibits should be excluded.

But the government really has chosen to rely on these charts because they are not summaries at all. Here, as in *Saunders* and *Taylor*, the exhibits of which the government seeks preadmission do far more than merely (and, often, incorrectly) summarize records that they purport to summarize. Here, the charts combine several different groups of defendants together in different "episodes." The decision to group each set of defendants together gives the

misleading impression that these defendants conspired with each other—even when the government has no evidence to support such a thing. For example, several charts include defendants who *never posted anything* about the stock at issue, others include defendants *who never traded the stock at issue*, and several charts portray the defendants together *when there is no evidence that they spoke with the other defendants or were even aware of the other defendants' statements or trading activity*. In other words, similarly to the inappropriate evidence in *Taylor*, these charts crate "connections . . . that did not exist." 210 F.3d at 316. These are not "summaries," this is evidence manufactured together to create the illusion of conspiracy evidence.

Because the government's charts are themselves voluminous, it is virtually certain that a juror will not pore over each of these in their entirety to see whether they are actually truthful (nor do they have the underlying data in evidence at their disposal to make such a comparison). And there is a *strong*, if not *certain* risk that they will only review the first page of each of these charts, which is highly misleading. For example, it lists the number of posts on Discord or Twitter that the defendant allegedly posted about the stock, whether the government contends that the posts were false or inaccurate or not. Presenting the information this way is misleading and confusing and would run the risk of jurors convicting the defendants because they posted numerous times about a stock (something that is not illegal at all and, in fact, is protected by the First Amendment) as opposed to convicting them on the basis of evidence of illegal activity. Indeed, several defendants are listed on these charts *when they have not been accused, in any way, of posting anything false about the stock at issue*. This is confusing and highly unduly prejudicial, and is not a proper "summary" of anything.

Moreover, the combination of what the government is representing to be true copies of underlying data will mislead the jury into giving these charts undue weight and will confuse the jury into believing that these government-created documents contain the universe of evidence that should be considered. For example, the government's exhibits purport to summarize what the Defendants' said about the stocks, but this is contested and not true. The tweets involved memes and videos which are omitted from these charts—this sanitizing makes these charts misleading and incomplete—they make the expression look more like financial advice (which it was not) and less like entertainment designed to build a social media following. Additionally, it is not true that the messages in the charts are the only messages "about the stocks." There were many messages and discussions going on that explained changes in the market—which was just as, if not more, important to trading decisions during this time period than a particular company's prospects. The judgment call of including these messages but not others and not including the full and accurate Tweets themselves takes this out of the bounds of a summary and instead into a misleading, sanitized document that will mislead the jury.

These charts also include records of certain of the Defendants' trades together, which is incredibly misleading. None of the Defendants could see each others' trading occurring in real time, but presenting it all together suggests that the Defendants would have known what the others were doing. Absent evidence to show that, for any of the 19 counts, they were trading together, presenting the trading records together is unduly prejudicial, incredibly misleading, and cannot be presented to the jury in this manner.

And finally, the charts that the government is attempting to use are completely inappropriate because they contain a value judgment reserved for the jury on the ultimate issue of whether the statements were false. It will be up to the jury to decide whether the government

has proven that *any* of the statements about *any* of the stocks were materially false or misleading. Including this inappropriate label throughout these exhibits is precisely the type of inappropriate chart that "assumes" what the government instead "must prove" and should be excluded as a result. There is no question that the government would not be able to introduce as evidence a handwritten chart from a prosecutor highlighting in red Sharpie particular Twitter messages that he believes are false. The exhibits that the government seeks to have its paid witness testify about are exactly that. All of the exhibits contain "false" designations that were provided to Garibotti by DOJ. Having the inadmissible evidence come out of Garibotti's mouth instead of a prosecutor's does not render it appropriately admitted.

Introducing any of these exhibits at trial would be inappropriate and invite reversible error under *Taylor* and other cases. Notably, the government's brief makes no effort to explain how these exhibits are appropriate under *Taylor* and how their introduction would not invite reversible error. [9]

---

[9] As an additional point, preadmission of any of these exhibits is inappropriate, even if the Court disagrees with the above. As discussed above, the defense knows that many of these exhibits contain factually incorrect information and do not summarize evidence that will otherwise be introduced at trial. The government has not put any of the underlying records on its exhibit list, and there is no question that the summaries do more than summarize voluminous records. If the government wants to rely on these exhibits at trial and the court does not think they are inadmissible under *Taylor* and Rule 403, the government should, at minimum, be required to establish a foundation to admit them at trial at their own peril and, in the event the defense can show they are, in fact, inaccurate, they must not be admitted. *Accord United States v. Covarrubia*, 52 F.3d 1068 (5th Cir. 1995) (finding error in the district court's admission of summary charts because they were based in part on evidence not properly before the jury because there was a discrepancy in the admitted charts and certain information contained in the charts was not contained in the underlying records).

### B. Garibotti's Testimony is Not Appropriate Summary Testimony and Would Violate the Confrontation Clause.

The government's plan to admit and sponsor these exhibits through its paid witness Garibotti is inappropriate and would violate the Confrontation Clause. The Fifth Circuit has made clear that "testimony by an advocate summarizing and organizing the case for the jury . . . [is] not justified by the Federal Rules of Evidence or our precedent. For example, summary witnesses are not to be used as a substitute for, or a supplement to, closing argument." *United States v. Fullwood*, 342 F.3d 409, 414 (5th Cir. 2003). "The Confrontation Clause . . . is binding, and we may not disregard it at our convenience." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 325 (2009). The Supreme Court and the Fifth Circuit have long made clear that the introduction of testimonial statements at trial, without the opportunity to cross-examine the declarant, violates the Confrontation Clause. *See, e.g.*, *id.*; *United States v. Hill*, 63 F.4th 335, 358 (5th Cir. 2023). A document or report is "testimonial" when it was "prepared in connection with a criminal investigation or prosecution" and contains "analysis" or "representations relating to past events and human actions." *Hill*, 63 F.4th at 358-59.

Importantly, even "some statements that are admissible under a hearsay exception may be inadmissible under the Confrontation Clause due to the "unique potential for prosecutorial abuse" that arises from the '[i]nvolvement of government officers in the production of testimony with an eye toward trial.'" *United States v. Williams*, 2020 WL 4927482, at *4 (E.D. Tex. Aug. 21, 2020) (quoting *Crawford v. Washington*, 541 U.S. 36, 56 n.7 (2004)).

Here, there is no question that the government's exhibits are testimonial: they were created solely for this trial. Having Garibotti testify about the substance of these records is completely inappropriate because much of the data contained therein, and the judgment calls about what was and was not pertinent, *was not done by Garibotti*. Garibotti makes clear that

some undisclosed person from the DOJ gave the messages that she included in the exhibits, someone from DOJ determined the "episode" time periods, and someone from DOJ gave her the designations of what it believed to be "false".

If this Court were to permit Garibotti to sponsor and testify about these exhibits at trial, doing so would violate the Confrontation Clause. The Defendants will not be able to effectively challenge the government's numerous misleading decisions about what information to omit versus what information to include in these charts, because these decisions were made not by Garibotti, but instead by undisclosed people at the DOJ who are not testifying. Indeed, while the Government still has refused to disclose the information it was ordered to disclose by this Court about who made the decisions and methodology regarding the "processing" of "timestamps," the Government's inability to say *who* made those decisions highlights that it was not Garibotti. The label of certain messages as "false," too, is not an analysis by Garibotti, but instead is by unpresented testimony from undisclosed individuals who work for the DOJ. It is unclear whether Garibotti even made the decision of whether the information contained in her reports were true and accurate summaries of the underlying records themselves—this, too, appears to have been influenced by DOJ.

Under these circumstances, Garibotti brings nothing to the table besides being a mouthpiece to regurgitate the DOJ's legal arguments while serving as a shield from cross-examination because she is not the person who actually decided what was or was not false or misleading, which messages were or were not relevant, which time periods should constitute an "episode," and whether it is appropriate to combine each group of Defendants together for each episode.  Under these circumstances, it is not possible for her to have first-hand knowledge that any of these exhibits are "true and accurate" depictions of anything other than DOJ advocacy.

To permit her to testify and sponsor these exhibits would be no better than letting a chemist who did no underlying work on a report testify about the report's substance, when the chemist who actually did the analysis was, in fact, the prosecutors on the case. The Confrontation Clause does not allow such a thing, and Garibotti cannot be allowed to do so here.

### VI. The Government Has Failed to Show Its Evidence of Stock Transactions Beyond the 19 Charged Stocks is Appropriate and Will Triple the Length of this Trial and Confuse the Jury.

The government's request to introduce extraneous "trading episodes" about other stocks during different time periods that expands the trial to nearly three times the amount of substantive securities violations alleged in the Superseding Indictment should be denied under Rule 403 because introduction of these other stock episodes is confusing, misleading, cumulative, and will needlessly delay trial. The outside evidence is also inadmissible under Rule 404(b) because they are extrinsic and serve nothing more than an inappropriate propensity purpose.

For background purposes, the Defendants refer to Constantinescu's motion *in limine* to exclude extraneous materials under Rules 403 and 404(b). *See* Dkt. No. 537.

The government's motion states that inclusion of 35 additional trading episodes that are not in the Superseding Indictment should be admitted as "intrinsic" to the charged crimes because they "arise out of the same transactions or series of transactions" as what is in the Superseding Indictment. Mot. at 8. This is not true. Many of the additional trading episodes are for stocks that are not charged in the Superseding Indictment at all, and the government does not explain *how* trading these different stocks "arise out of" anything in the Superseding Indictment. Nor could they be explained as being a part of the conspiracy count. The government has refused to look for *Brady* material for the Defendants' trading activity that occurred during the charged

conspiracy count, arguing that it is "irrelevant" and "not a part of the case." The government cannot, on one side of its mouth, refuse to seek and produce *Brady* material for events that occurred during the charged conspiracy time period, and then, out of the other side of its mouth, summarily claim that certain trades "arise out of the same transactions." Nor are these extra episodes "demonstrate how the conspiracy was structured." Again, the government does not explain *how any* of the extra trading episodes demonstrate this. Nor could they—several of the proposed extra trading episodes involve *only a single defendant*.

The 35 extra episodes should also be excluded under Rule 404(b). Again, the government's brief fails to articulate, for any one of the additional 35 stocks episodes, *how and why* any of the extra 35 episodes is necessary to show a non-propensity purpose not already sufficiently addressed by the government's hundreds of other exhibits. Nor does the government explain how a defendant's behavior involving "Stock A" has any relevance beyond propensity to evaluate the defendant's behavior involving "Stock B."

The government has completely failed to make the requisite showing, as it must, that any of this evidence pertained to *illegal* stock trading, that is, a bad act. Under Rule 104(b) and *United States v. Gutierrez-Mendez*, none of this evidence may be admitted because no proper purpose has been established. "Under Rule 104(b), evidence is admissible only if there is evidence sufficient to support a finding that the alleged conduct actually occurred." *United States v. Gutierrez-Mendez*, 752 F.3d 418, 424 (5th Cir. 2014) (finding error where the government introduced evidence purportedly under Rule 404(b) but failed to establish that the purported bad act even occurred); *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). If the government believed that it could prove beyond a

reasonable doubt that these trading episodes were illegal activity, the government has had *plenty* of time to supersede the Superseding Indictment and make them a part of the case.

The government's attempted inclusion of the additional 35 stock episodes will require the government to establish prior to their admission, for each of the extra episodes, that each defendant engaged in a "bad act." It is unclear how and when the government intends to make this showing, as those facts are absent from the government's exhibits and will take considerable time given the government's attempt to include 35 additional stock episodes as "additional bad acts" in order to actually prove the charged 19 stock periods.

For example, Government Exhibit 47A, one of the Extra Stock Exhibits, is a 26-page created document involving KAVL, a stock that does not appear in the Superseding Indictment. Both Constantinescu and Matlock are listed in this exhibit with other defendants as if they all conspired together to conduct illegal activity. This makes no sense; Constantinescu did not post a single tweet or discord message about this stock during the time period, and the exhibit does not reflect that Constantinescu otherwise communicated with anyone about this stock, let alone entered an agreement with others to commit securities fraud. Matlock posted one message about this stock (in a list with several other stocks), *which is not alleged to be false or misleading at all*, and he did not trade any shares of this stock during the time period. In other words, this exhibit is *misleading* because it suggests that Constantinescu and Matlock are a part of a larger conspiracy *based on purely benign, legal conduct*, trading a stock through *bona fide* free market transactions at prevailing market rates without ever even talking about it. Despite their inclusion, it does not show a bad act and does not make any of the charged counts against Constantinescu or Matlock any more likely than not. It appears that its inclusion, like three quarters of the stocks

that do not appear in the Superseding Indictment, serves solely to inflate the profit alleged and create an illusion of conspiracy where none existed.

If these exhibits were to be admitted at trial, the government's failure to properly designate (i) which exhibits are extrinsic and (ii) what proper purpose each serves, would render the trial record completely incomprehensible. The jury must be instructed that they are only to consider Rule 404(b) evidence for limited, prescribed purposes. The government's failure to identity any of this makes it virtually certain that the jury cannot be properly instructed on how they should consider this evidence.

The likelihood of undue prejudice from introducing this extraneous evidence is overwhelming. The government has marked these exhibits in the exact same way as the evidence for its substantive counts. The subject matter of this data is complex and there is an extremely high likelihood that the jury will be confused that evidence of completely legal trading activity and posting on social media is actually a "bad act" upon which they should convict the Defendants. The jury is already going to be asked to keep track of 19 different stock tickers at different times involving various configurations of nine defendants. Allowing introduction will mean that the jury will be confused and misled.

Any relevance the extra trading episodes may have is dwarfed by the evidence's cumulative nature, its potential to confuse and mislead the jury, and unnecessary delay. If the government is permitted to introduce the uncharged episodes, it will be introducing to the jury that certain groups of defendants, or even just one defendant, engaged in conduct involving different stocks for 54 different time periods. Some of these exhibits the government intends to introduce are incredibly lengthy—for example, a single exhibit comprised of 70+ pages, much of which is often misleading and/or incorrect.

While the government has tried to say that it does not intend to go through this proof with the jury (essentially conceding that it hopes it is only considered as propensity evidence), the Defendants *must* be given the opportunity to rebut the government's proof if it is entered into evidence. Even if all seven Defendants were able to address one purported stock episode per trial day (something that is highly unlikely in a securities fraud case even when a single defendant is involved), **that would take close to *three months of trial days merely to address these created charts*.** And, as discussed above, there is no question that permitting the government to flood the jury's mind with uncharged conduct will mislead and confuse them when, months later, they are asked to determine whether the government has proven the *charged* conduct. Accordingly, the government's motion should be denied.

*       *       *       *

In conclusion, the government's motions *in limine* should be denied in their entirety.

Dated: February 27, 2024

Respectfully submitted,

FORD O'BRIEN LANDY, LLP

/s/ Jamie Hoxie Solano
Matthew A. Ford
Texas Bar No. 24119390
mford@fordobrien.com
Jamie Hoxie Solano
Admitted Pro Hac Vice
jsolano@fordobrien.com
Stephen R. Halpin III
S.D. Tex. Bar No.
NY5944749
3700 Ranch Road 620 South,
Suite B
Austin, Texas 78738
Telephone: (512) 503-6388
Facsimile: (212) 256-1047

*Attorneys for Defendant*
*Edward Constantinescu*

JACKSON WALKER LLP

/s/ Laura Cordova
Laura Marie Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
Michael J. Murtha
State Bar No. 24116801
mmurtha@jw.com
1401 McKinney St, Suite
1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

*Attorneys for Defendant*
*Mitchell Hennessey*

HILDER & ASSOCIATES, P.C.

/s/ Q. Tate Williams
Q. Tate Williams
Texas Bar No.: 24013760
Philip H. Hilder
Texas Bar No. 09620050
Stephanie K. McGuire
Texas Bar No. 11100520
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-9111–telephone
(713) 655-9112–facsimile
philip@hilderlaw.com
tate@hilderlaw.com
stephanie@hilderlaw.com

*Attorneys for Defendant*
*John Rybarczyk*

NEAL DAVIS LAW FIRM

/s/ Neal A. Davis
Neal Andrew Davis
1545 Heights Blvd
Houston, Texas 77008
Telephone: (832)-723-9900
SBN#24038896
Neal@nealdavislaw.com

*Attorney for Defendant*
*Gary Deel*

CARLOS M. FLEITES, P.A.

/s/ Carlos M. Fleites
Carlos M. Fleites
407 Lincoln Road, Suite 12-E
Miami Beach, Florida 33139
Tel: (305) 672-8434
Fax: (305)534-7087
FL. Bar No.: 0370850
Cmfleites@mylawyr.com

*Attorney for Defendant*
*Stefan Hrvatin*

CHIP LEWIS LAW OFFICES

/s/ Chip Lewis
Chip Lewis
1207 S. Shepherd Dr.
Houston, Texas 77019
Tel: (713) 523-7878
Federal ID#24313
Chip@chiplewislaw.com

*Attorney for Defendant*
*Tom Cooperman*

ASHCROFT SUTTON REYES, LLC


*/s/ Luis A. Reyes*
Luis A. Reyes
lreyes@ashcroftlawfirm.com
Texas Bar No. 90001831
Johnny Sutton
jsutton@ashcroftlawfirm.com
Texas Bar No. 19534250
Ashcroft Sutton Reyes, LLC
919 Congress Ave., Ste. 1325
Austin, TX 78701
Phone: (512) 370-1800
Facsimile: (512) 397-3290

*Attorneys for Defendant*
*PJ Matlock*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2024, a true and correct copy of the foregoing document has been electronically served on all counsel of record via the Court's CM/ECF system.

*/s/ Jamie H. Solano*
Jamie H. Solano